## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALIANZA AMERICAS, YANET DOE, PABLO DOE, and JESUS DOE, on behalf of themselves and all others similarly situated,<br><br>　　　　　*Plaintiffs*,<br><br>　　v.<br><br>RONALD D. DESANTIS, Governor of Florida, in his official and personal capacities; JARED W. PERDUE, Secretary of the Florida Department of Transportation, in his official and personal capacities; LAWRENCE A. KEEFE, Florida Public Safety Czar, in his official and personal capacities; JAMES UTHMEIER, Chief of Staff to Florida Governor, in his official and personal capacities; STATE OF FLORIDA; THE FLORIDA DEPARTMENT OF TRANSPORTATION; JAMES MONTGOMERIE; PERLA HUERTA; and VERTOL SYSTEMS COMPANY, INC.,<br><br>　　　　　*Defendants*. | Civil Action No. 1:22-cv-11550-ADB |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF
## JOINT MOTION TO TRANSFER

Defendants' Motions to Dismiss explain why the District of Massachusetts is an improper venue. *See, e.g.*, State Defendants' MTD §II. But if the Court concludes otherwise, it should still transfer the case to the U.S. District Court for the Northern District of Florida. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. §1404(a). Section 1404(a)'s "purpose is 'to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Wiley v. Gerber Prod. Co.*, 667 F. Supp. 2d 171, 172 (D. Mass. 2009) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).[1]

---

[1] Because the Motion to Transfer is filed alongside Defendants' Motions to Dismiss, this memorandum assumes familiarity with the Motions to Dismiss and the First Amended Class Action Complaint for brevity's sake rather than repeating their facts and arguments.

**A.  This case could have been brought in the Northern District of Florida.**

This action "might have been brought"—and indeed *should* have been brought—in the Northern District of Florida. 28 U.S.C. §1404(a). That is because the Northern District of Florida is where "a substantial part of the events or omissions giving rise to the claim occurred." *Id.* §1391(b)(2). Plaintiffs challenge a Florida law, passed by the Florida Legislature, and signed by Florida Governor Ronald DeSantis, who is a Defendant. *See* Section 185, Ch. 2022-156, Laws of Florida (2022); Am. Compl. ¶¶32-36. Florida implemented the law in part through a contract between Defendant Florida Department of Transportation (FDOT)—which is headed by Defendant Secretary Jared Perdue— and Florida-based Defendant Vertol Systems Company, Inc., whose Chief Executive Officer is Defendant James Montgomerie (also in Florida). *See* Am. Compl. ¶¶19, 24-26, 40-45. The lawsuit claims these Florida-based Defendants implemented Section 185 unlawfully along with two other Florida officials also named as Defendants—Lawrence Keefe and James Uthmeier—and Perla Huerta. *Id.* ¶¶20-22. The State of Florida itself is also named as a Defendant. *Id.* ¶23. And all the alleged conduct for a majority of the Defendants occurred exclusively in the Northern District of Florida (the State, FDOT, Governor, Secretary, and Uthmeier). As a result, "a substantial part of the events or omissions giving rise to the claim occurred" there, making it a proper venue. *See* 28 U.S.C. 1391(b)(2).

**B.  The interests of justice and convenience of parties and witnesses support transfer.**

This case should be transferred to the Northern District of Florida. "When considering a motion to transfer venue, courts consider both private and public interest factors, including '1) the plaintiff's choice of forum, 2) the relative convenience of the parties, 3) the convenience of the witnesses and location of documents, 4) any connection between the forum and the issues, 5) the law to be applied and 6) the state or public interests at stake.'" *Fed. Ins. Co. v. XTRA Intermodal, Inc.*, 2015 WL 4275181, at *4 (D. Mass.) (Burroughs, J.) (citing *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 n.6 (2013)). The public-interest factors include "the local interest in having

localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine*, 571 U.S. at 63 n.6 (cleaned up). The private-interest factors include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing[] witnesses; … and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* (cleaned up). These factors favor transfer.

      *(1) Plaintiff's choice of forum.* Typically, "a plaintiff enjoys some degree of deference for his original choice of forum." *Adelson v. Hananel*, 510 F.3d 43, 53 (1st Cir. 2007). But "'the weight to be accorded plaintiff's choice of forum varies with the circumstances of the case.'" *XTRA Intermodal*, 2015 WL 4275181, at *4. Plaintiffs' choice of forum should be heavily discounted because this is a class action, and "[i]n putative class action suits, … the plaintiff's choice of forum deserves considerably less weight." *Dress v. Capital One Bank (USA), N.A.*, 368 F. Supp. 3d 178, 181 (D. Mass 2019); *see also Johnson v. N.Y. Life Ins. Co.*, 2013 WL 1003432, at *3 (D. Mass.) ("A plaintiff's choice of forum is less significant, for example, in the context of class actions."); 15 Wright & Miller, Fed. Practice & Procedure §3848 (4th ed. Apr. 2022) ("Thus, courts have held that the factor is entitled to little weight … in class actions.").

      *(2) The relative convenience of the parties.* This factor favors transfer. There are three Class Plaintiffs, Plaintiff Alianza Americas, and nine defendants. All nine defendants reside in Florida and the three named Class Plaintiffs' locations are unknown, though they appear to be in Massachusetts. *See* Joanna Slater, *A lawyer and a sheriff help Martha's Vineyard migrants get a 'bit of justice,'* Wash. Post (Jan. 20, 2023), perma.cc/9NCG-U635. Alianza is incorporated in California with its principal place of business in Chicago, Illinois. Am. Compl. ¶16. The center of gravity is thus Florida. *See XTRA Intermodal*, 2015 WL 4275181, at *5 (comparing the number of parties and their locations). But more importantly, Plaintiffs have asserted claims against the State of Florida itself, FDOT, and four

government officials in their official capacity—including the State's chief executive. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." (citation omitted)). And the "burden on … states from litigating" in other states "is substantial." *PTI, Inc. v. Philip Morris Inc.*, 100 F. Supp. 2d 1179, 1190 n.8 (C.D. Cal. 2000). "The conflict with state sovereignty is perhaps the most compelling factor—requiring … states to submit to [another state's] jurisdiction constitutes an extreme impingement on state sovereignty." *Id.*; *see also Stone v. State of Tex.*, 76 Cal. App. 4th 1043, 1050 (1999) (recognizing that the burden on Texas "to defend against … claims in California would be considerable"). The convenience-of-the-parties factor thus favors Florida.

*(3) The convenience of the witnesses and location of documents.* This factor likewise favors transfer. "Courts have noted that of all the factors considered in a change-of-venue motion, 'the convenience of expected witnesses is probably the most important factor, and the factor most frequently mentioned.'" *XTRA Intermodal*, 2015 WL 4275181, at *5. "At this early stage of the litigation, it is somewhat difficult to predict whether and to what extent resolution" of this case "will involve witnesses or other evidence located in" Massachusetts. *Id.* Although Defendants believe this suit should be dismissed in its entirety on the pleadings, if depositions or live testimony are ordered, it would be considerably more efficient to conduct such matters in Florida. Most obviously, the First Amended Class Action Complaint makes clear that Plaintiffs will seek each of the State Defendants' testimony (Governor DeSantis, Secretary Perdue, James Uthmeier, and Lawrence Keefe). *Cf. also* Appendix A (titled, "Potential Witnesses").[2] The Amended Complaint also highlights other Florida

---

[2] To be sure, State Defendants do not concede that these state government officials can or should be compelled to sit for a deposition for multiple reasons, including the immunity principles set forth in their Motion to Dismiss, the well-settled apex doctrine applicable to high-ranking government officials, and state-law executive privileges.

officials' conduct that Plaintiffs believe is relevant to their claims. *See, e.g.*, Am. Compl. ¶39 (noting that FDOT "issued guidelines to manage the State of Florida's 'Relocation Program.'"); *id.* ¶45 (noting FDOT official Paul Baker handled Vertol's bid); *id.* ¶185 (highlighting Jeremy Redfern Deputy Press Secretary to Governor DeSantis). Plaintiffs also suggest that the budgeting process itself is relevant, which means Plaintiffs may try to call Florida officials involved in that process as witnesses. *See, e.g.*, *id.* ¶¶32, 35. Diverting these individuals away from their official duties to travel to Massachusetts for trial—rather than in their home district—will be burdensome.

Plaintiffs will also likely seek the testimony of the contractor Defendants Vertol and Montgomerie. *See id.* ¶¶25-26, 67, 131. And because Defendant Vertol coordinated the flights, Plaintiffs may likewise seek its other employees' testimony. *See, e.g.*, *id.* ¶150 (noting other Vertrol employees were on the flights). As the Amended Complaint acknowledges, Vertol is based in Florida—and of course its employees are primarily located there as a result. *See id.* ¶25.

On the other hand, Alianza is based in Chicago, so the difference between this venue and the Northern District of Florida is negligible. And though the three Class Plaintiffs may testify, there are far more potential witnesses in Florida and Texas than Massachusetts. In short, "Defendants have established that witnesses, documents, and other evidence are far more likely to reside in" Florida "than in Massachusetts." *XTRA Intermodal*, 2015 WL 4275181, at *6.[3]

*(4) Any connection between the forum and the issues; (5) the law to be applied; (6) the state or public interests at stake.* The final three factors are interrelated and also favor transfer. To start with, this dispute addresses the legality of a Florida state law and policy (Section 185), funded by a Florida legislative appropriation, that was executed by Florida officials and individuals who live there.

---

[3] The relevant documents are also all in the Northern District of Florida. For example, the First Amended Class Action Complaint repeatedly highlights text messages, emails, bidding documents, and proposals that are in Florida. *See* Am. Compl. ¶¶46, 50, 52.

And Florida "possesses an *atypically strong* interest in having [Florida]-based courts hear and resolve controversies involving its litigated … statute." *Pritzker v. Yari*, 42 F.3d 53, 64 n.9 (1st Cir. 1994) (emphasis added); *see also Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008) ("At the same time, Arizona, as a sovereign, has a strong interest in not having an out-of-state court evaluate the validity of its laws.").

In addition, almost all the relevant conduct occurred in Florida (and Texas). *See, e.g.*, Am. Compl. ¶¶32-59. That should be no surprise because "where a plaintiff's claims turn on a state's cross-border enforcement actions in the plaintiff's state of residency, courts typically find that the 'events giving rise to the claims' occurred where the relevant state officials are located." *Def. Distributed v. Platkin*, __ F. Supp. 3d __, 2022 WL 2967304, at *10 (D.N.J.). Indeed, a judge's recent "review of cases against *government officials* who attempt to enforce a state law" shows that "the litigation has taken place in the governmental official's state." *Def. Distributed v. Grewal*, 971 F.3d 485, 499 n.3 (5th Cir. 2020) (Higginson, J., concurring).

"'[A] district's familiarity with the governing law is [also] an appropriate factor to consider' in this analysis." *Riemer & Braunstein LLP v. Monroe Cap. Mgmt. Advisors LLC*, 2019 WL 2141821, at *6 (D. Mass.) (Burroughs, J.). Here, "[t]he nature of this action is one that really challenges the constitutionality of the state statutes. The merits of the claims go to construction of state and federal law." *Omaha Tribe of Nebraska v. Barnett*, 245 F. Supp. 2d 1049, 1055 (D. Neb. 2003). "The fundamental sovereignty of [Florida] could be impinged if [it is] not permitted to determine in [its] state[] whether [Section 185] [is] constitutional.… Federal judges sitting in" Florida "will be better able to construe [its] respective laws than would this court." *Id.* Florida law also governs the merits of Plaintiffs' state tort claims. *See, e.g.*, State Defendants' Motion to Dismiss §§VI.C-D. This case also requires a court to navigate Florida's absolute immunity for its state officials, *id.* §VI.A, and Florida's limited waiver of sovereign immunity, *id.* §§VI.B, VI.D.1. The latter is a particularly complicated analysis that requires

a court to decide whether, when, and to what extent Florida has waived its immunity and what steps a plaintiff must take before filing a lawsuit against Florida and its officials. *Id.* Florida's federal courts are better equipped to address these issues and, indeed, have done so many times over. *See, e.g.*, *Strong v. City of Naples*, 2022 WL 14029702, at *1 (M.D. Fla.).

This case raises Florida's related "'home venue privilege'" for the state-law claims, which also "weighs heavily in favor" of transfer. *MSPA Claims 1, LLC v. Halifax Health, Inc.*, 2017 WL 7803813, at *5 (S.D. Fla.) (emphasis omitted). As the Florida Supreme Court has explained:

> It has long been the established common law of Florida that venue in civil actions brought against the state or one of its agencies or subdivisions, absent waiver or exception, properly lies in the county where the state, agency, or subdivision, maintains its principal headquarters. Such a rule promotes orderly and uniform handling of state litigation and helps to minimize expenditure of public funds and manpower.

*Carlile v. Game & Fresh Water Fish Comm'n*, 354 So. 2d 362, 363-64 (Fla. 1977) (cleaned up). Florida's statutory immunity waiver likewise has a venue requirement: "Any such action may be brought in the county where the property in litigation is located or, if the affected agency or subdivision has an office in such county for the transaction of its customary business, where the cause of action accrued." Fla. Stat. §768.28(1); *see* State Defendants' Motion to Dismiss §II. "'Absent waiver or application of an identified exception,'" these venue requirements "'appear[] to be an absolute right'" and "weigh[] *heavily* in favor of transferring this case" to the Northern District of Florida. *MSPA Claims*, 2017 WL 7803813, at *4-7 (transferring to the federal district court encompassing the defendant's home county).

One final factor warrants transfer. "[C]ourts have concluded that it conserves judicial resources, and furthers the interests of the parties, to transfer a case from a forum in which there is a difficult question of personal jurisdiction or venue to a district in which there are no such uncertainties." 15 Wright & Miller §3854 & n.35 (4th ed. 2022) (collecting cases). This case raises both substantial personal jurisdiction and venue issues. *See* State Defendants' Motion to Dismiss §§I-II. Almost all those issues disappear if the case is in the Northern District of Florida.

**CONCLUSION**

For all these reasons, the Court should grant the motion to transfer to the Northern District of Florida.

Dated: February 28, 2023

Thomas C. Frongillo
  (BBO# 180690)
CAMPBELL CONROY & O'NEIL, P.C.
1 Constitution Wharf, Suite 310
Boston, MA 02129
Tel: 617-241-3092
TFrongillo@campbell-trial-lawyers.com

Respectfully submitted,

*/s/ Bryan Weir*

Jeffrey M. Harris (admitted *pro hac vice*)
Bryan Weir (admitted *pro hac vice*)
C'Zar Bernstein (admitted *pro hac vice*)
Thomas S. Vaseliou (admitted *pro hac vice*)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
Tel: (703) 243-9423
bryan@consovoymccarthy.com
jeff@consovoymccarthy.com
czar@consovoymccarthy.com
tvaseliou@consovoymccarthy.com

*Counsel for State of Florida, Florida Department of Transportation, Governor DeSantis, and Secretary Perdue*

Ashley Moody
Attorney GENERAL OF FLORIDA

*/s/ Bilal Ahmed Faruqui*

Bilal Ahmed Faruqui (admitted *pro hac vice*)
SPECIAL COUNSEL
Office of the Attorney General
Civil Litigation Division
The Capitol, PL-01
Tallahassee, Florida 32399-1050
Bilal.Faruqui@myfloridalegal.com
(850) 414-3757
Florida Bar Number 0015212

*Counsel for the State of Florida*

*/s/ Jeff Aaron*

Jeff Aaron (admitted *pro hac vice*)
GRAYROBINSON, P.A.
301 East Pine Street, Suite 1400
Orlando, FL 32801
Tel: 407-244-5644
jeff.aaron@gray-robinson.com
cindi.garner@gray-robinson.com

Ashley Lukis (admitted *pro hac vice*)

*/s/ Jesse Panuccio*

Jesse Panuccio (admitted *pro hac vice*)
BOIES SCHILLER FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Tel: (954) 356-0011
jpanuccio@bsfllp.com

*Counsel for James Uthmeier*

*/s/ Brian T. Kelly*

Brian T. Kelly (BBO# 549566)
Christopher J. Stevens (admitted *pro hac vice*)
NIXON PEABODY LLP
Exchange Place
53 State Street
Boston, MA 02109-2835
Tel: 617-345-1000
bkelly@nixonpeabody.com
*Counsel for Vertol Systems Company, Inc., and James Montgomery*

GRAYROBINSON, P.A.
301 S Bronough Street, Suite 600
Tallahassee, FL 3230
Tel: 850-507-9090
ashley.lukis@gray-robinson.com
vanessa.reichel@gray-robinson.com

*Counsel for Lawrence A. Keefe*


s/ *George W. Vien*
_____
George W. Vien (BBO# 547411)
Nicholas J. Ramacher (BBO# 680258)
DONNELLY, CONROY & GELHAAR, LLP
260 Franklin Street, Suite 1600
Boston, MA 02110
Tel: 617-720-2880
gwv@dcglaw.com
njr@dcglaw.com

*Counsel for Perla Huerta*

**CERTIFICATE OF SERVICE**

I hereby certify that I filed this document through the Court's ECF system on February 28, 2023, which will therefore automatically be sent electronically to all counsel of record via the CM/ECF system.

Dated: February 28, 2023                                    _s/ Bryan Weir_____