UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

ALIANZA AMERICAS, YANET DOE, PABLO DOE, and JESUS DOE, on behalf of themselves and all others similarly situated,

Plaintiffs,

-against-

RONALD D. DESANTIS, Governor of Florida, in his official and personal capacities; JARED W. PERDUE, Secretary of the Florida Department of Transportation, in his official and personal capacities; LAWRENCE A. KEEFE, Florida Public Safety Czar, in his official and personal capacities; JAMES UTHMEIER, Chief of Staff to Florida Governor, in his official and personal capacities; STATE OF FLORIDA; THE FLORIDA DEPARTMENT OF TRANSPORTATION; JAMES MONTGOMERIE; PERLA HUERTA; and VERTOL SYSTEMS COMPANY, INC.,

Defendants.

Civil Action No. 1:22-cv-11550-ADB

Leave to File Memorandum in Excess of Page Limits Granted on February 21, 2023 [PACER Dkt. 76]

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY DEFENDANTS VERTOL SYSTEMS COMPANY, INC. AND JAMES MONTGOMERIE TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Brian T. Kelly
Christopher J. Stevens (admitted *pro hac vice*)
NIXON PEABODY LLP
Exchange Place
53 State Street
Boston, Massachusetts 02109-2835
Telephone:  617-345-1000
Facsimile:  855-714-9513
bkelly@nixonpeabody.com

*Attorneys for Defendants Vertol Systems Company, Inc. and James Montgomerie*

Table of Contents

Page

Table of Authorities ................................................................................................... iii

Preliminary Statement ................................................................................................. 1

Background ................................................................................................................... 2

Standard of Review ...................................................................................................... 5

Argument ...................................................................................................................... 6

I.      THE VERTOL DEFENDANTS ARE NOT SUBJECT TO PERSONAL
        JURISDICTION IN THIS DISTRICT ........................................................... 7

        A.      The Massachusetts Long-Arm Statute Does Not Confer Personal
                Jurisdiction Over the Vertol Defendants ........................................... 7

        B.      Exercising Personal Jurisdiction Over the Vertol Defendants Would
                Violate Due Process ......................................................................... 11

II.     THE DISTRICT OF MASSACHUSETTS IS NOT A PROPER VENUE FOR
        PLAINTIFFS' CLAIMS AGAINST THE VERTOL DEFENDANTS .......... 13

III.    PLAINTIFFS LACK STANDING TO ASSERT MOST OF THEIR CLAIMS .............. 14

IV.     THE VERTOL DEFENDANTS ARE NOT STATE ACTORS AND
        THEREFORE CANNOT BE LIABLE UNDER 42 U.S.C. § 1983 ................ 18

V.      IF THE VERTOL DEFENDANTS WERE STATE ACTORS, THEY WOULD
        BE IMMUNE FROM LIABILITY .................................................................. 21

VI.     THE AMENDED COMPLAINT FAILS TO STATE ANY FEDERAL CLAIM
        AGAINST THE VERTOL DEFENDANTS ...................................................... 22

        A.      Plaintiffs Fail To State a Claim Under Section 1983 ...................... 22

                1.      Plaintiffs Fail To Allege a Violation of Substantive Due Process .......... 22

                2.      Plaintiffs Were Not Denied Equal Protection Under the Law ................ 25

                3.      Plaintiffs Were Not Denied Procedural Due Process ............................ 26

                4.      Plaintiffs' Fourth Amendment Claim Fails for Lack of a "Seizure." ....... 27

        B.      Plaintiffs Fail To State a Claim Under Section 1985 ...................... 28

VII.    THE AMENDED COMPLAINT FAILS TO PLAUSIBLY ALLEGE ANY
        STATE LAW CLAIM AGAINST THE VERTOL DEFENDANTS .............. 29

        A.      Plaintiffs Fail To State a False Imprisonment Claim ....................... 31

        B.      Plaintiffs Fail To State a Fraud Claim ............................................ 32

Table of Contents (continued)

Page

C.    Plaintiffs Fail To State a Claim for Intentional Infliction of Emotional Distress............................................................................................35

D.    Plaintiffs Fail To State a Claim for Negligent Infliction of Emotional Distress............................................................................................37

E.    Plaintiffs Fail To State a Civil Conspiracy Claim. ...............................37

F.    Plaintiffs Fail To State an Aiding and Abetting Claim..........................38

VIII.   PLAINTIFFS' ALLEGATIONS ARE PARTICULARLY INADEQUATE AS TO MR. MONTGOMERIE ...............................................................................39

Conclusion ...........................................................................................................................40

Table of Authorities

Cases                                                                                               Pages

*Access Now, Inc. v. Otter Products, LLC,*
        280 F. Supp. 3d 287 (D. Mass. 2017)....................................................   9

*Ace Am. Ins. Co. v. Oyster Harbors Marine, Inc.,*
        310 F. Supp. 3d 295 (D. Mass. 2018)....................................................   7

*Aguilar v. United States Immigration &*
        *Customs Enforcement Div. of the*
        *Dep't of Homeland Sec.,*
        510 F.3d 1 (1st Cir. 2007)...............................................................   23, 24, 25

*Albright v. Oliver,*
        510 U.S. 266 (1994)........................................................................   23

*Am. Postal Workers Union v. Frank,*
        968 F.2d 1373 (1st Cir. 1992)..........................................................   15

*Anderson v. Creighton,*
        483 U.S. 635 (1987)........................................................................   22

*Ashcroft v. Iqbal,*
        556 U.S. 662 (2009)........................................................................   *passim*

*Aulson v. Blanchard,*
        83 F.3d 1 (1st Cir. 1996).................................................................   28

*Azumi LLC v. Lott & Fischer, PL,*
        No. 21-11311, 2022 WL 3369197
         (D. Mass. Aug. 16, 2022)...............................................................   8

*Barrington Cove Ltd. P'ship v.*
        *R.I. Hous. & Mortg. Fin. Corp.,*
        246 F.3d 1 (1st Cir. 2001)...............................................................   25

*Bd. of Regents of State Colleges v. Roth,*
        408 U.S. 564 (1972)........................................................................   26, 27

*Behringer v. Behringer,*
        884 S.W.2d 839 (Tex. App. 1994)....................................................   37

*Bohnenberger v. MCBC Hydra Boats, LLC,*
        No. 16-11368, 2017 WL 3976566
         (D. Mass. Sept. 7, 2017) ...............................................................   7

*Boit v. Gar-Tec Prod., Inc.*,
   967 F.2d 671 (1st Cir. 1992) ............................................................... 5

*Boston Hides & Furs v. Sumitomo Bank*,
   870 F. Supp. 1153
   (D. Mass. 1994) ................................................................................ 30

*Boston Post Partners II, LLP v. Paskett*,
   No. 15-13804, 2016 WL 3746474
   (D. Mass. July 8, 2016) ..................................................................... 10

*Britton v. Maloney*,
   196 F.3d 24 (1st Cir. 1999) ............................................................... 28

*Brower v. Cnty. of Inyo*,
   489 U.S. 593 (1989) .......................................................................... 28

*Buchannan v. Cty. of Bolivar*,
   99 F.3d 1352 (6th Cir. 1996) ............................................................ 26

*Bushkin Assocs., Inc. v. Raytheon Co.*,
   393 Mass. 622 (1985) ....................................................................... 30

*Butler v. Yusem*,
   44 So. 3d 102 (Fla. 2010) ................................................................. 32

*California v. Hodari D.*,
   499 U.S. 621 (1991) .......................................................................... 28

*Casstevens v. Smith*,
   269 S.W.3d 222 (Tex. 2008) ......................................................... 33, 34

*Chang v. JPMorgan Chase Bank, N.A.*,
   845 F.3d 1087 (11th Cir. 2017) ........................................................ 39

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398, 413-14 (2013) ......................................................... 15, 16

*Clemente v. Horne*,
   707 So. 2d 865 (Fla. Dist. Ct. App. 1998) ....................................... 36

*Cnty. of Sacramento v. Lewis*,
   523 U.S. 833 (1998) ...................................................................... 23, 24

*Collision Commc'ns, Inc. v.
   Nokia Sols. & Networks*,
   485 F. Supp. 3d 282 (D. Mass. 2020) ................................................ 9

*Council of Ins. Agents & Brokers v.*
   *Juarbe-Jimenez,*
    443 F.3d 103 (1st Cir. 2006) ........................................................................ 14

*Creditwatch, Inc. v. Jackson,*
   157 S.W.3d 814 (Tex. 2005) ...................................................................... 35, 36

*Cruden Bay Holdings, LLC v. Jezierski,*
   No. 21-01170, 2022 WL 447080
   (N.D. Tex. Feb. 14, 2022) ......................................................................... 39

*Cruz-Arce v. Management*
   *Admin. Servs. Corp.,*
   19 F.4th 538 (1st Cir. 2021) ................................................................ 18, 19, 22

*Cunningham v. Ardrox, Inc.,*
   40 Mass. App. Ct. 279 (1996) .................................................................... 10

*DaCosta v. Gonzales,*
   449 F.3d 45 (1st Cir. 2006) ....................................................................... 26, 27

*Daimler AG v. Bauman,*
   571 U.S. 117 (2014) ................................................................................... 7

*Dantzler, Inc. v. Empresas Berrios*
   *Inventory & Operations, Inc.,*
   958 F.3d 38 (1st Cir. 2020) ........................................................................ 18

*Daynard v. Ness, Motley, Loadholt,*
   *Richardson & Poole, P.A.,*
   290 F.3d 42 (1st Cir. 2002) ........................................................................ 12

*Deauville Hotel Mgmt., LLC v. Ward,*
   219 So. 3d 949 (Fla. Dist. Ct. App. 2017) ................................................ 35

*DePoutot v. Raffaelly,*
   424 F.3d 112 (1st Cir. 2005) ...................................................................... 24

*Dep't of Homeland Sec. v.*
   *Regents of the Univ. of California,*
   140 S. Ct. 1891 (2020) .............................................................................. 29

*Doe #1 v. JetBlue Airways Corp.,*
   No. 20-11623, 2021 WL 3375107
   (D. Mass. Aug. 3, 2021) ........................................................................ *passim*

*Doyle v. Hasbro, Inc.*,
103 F.3d 186 (1st Cir. 1996) ........................................................................ 35

*Driscoll v. McCann*,
505 F. Supp. 3d 32
(D. Mass. 2020) ............................................................................................. 12

*Droukas v. Divers Training*
*Academy, Inc.*,
375 Mass. 149 (1978) ...................................................................................... 9

*Elliott v. Elliott*,
58 So. 3d 878
(Fla. Dist. Ct. App. 2011) ............................................................................. 37

*Enter. Crude GP LLC v. Sealy*
*Partners, LLC*,
614 S.W.3d 283 (Tex. App. 2020) ................................................................ 38

*Equal Means Equal v. Dep't of Educ.*,
450 F. Supp. 3d 1
(D. Mass. 2020) ................................................................................. 6, 16, 17

*Estades-Negroni v. CPC Hosp.*
*San Juan Capestrano*,
412 F.3d 1 (1st Cir. 2005) ............................................................................ 20

*Foisie v. Worcester Polytechnic Inst.*,
967 F.3d 27 (1st Cir. 2020) .......................................................................... 30

*Francois v. Hatami*,
565 F. Supp. 3d 1259
(S.D. Fla. 2021) ............................................................................................. 38

*Frank v. Gaos*,
139 S. Ct. 1041 (2019) .................................................................................... 6

*Frazier v. Bailey*,
957 F.2d 920 (1st Cir. 1992) ................................................................... 21, 22

*Freeman v. Town of Hudson*,
849 F. Supp. 2d 138
(D. Mass. 2012) ............................................................................................. 23

*Frith v. Whole Foods Mkt., Inc.*,
38 F.4th 263 (1st Cir. 2022) .................................................................... 29, 30

*Get In Shape Franchise, Inc. v.*
    *TFL Fishers, LLC*,
    167 F. Supp. 3d 173
    (D. Mass. 2016) ................................................................................................ 6

*Gill v. Nakamura*,
    No. 14-13621, 2015 WL 5074475
    (D. Mass. July 24, 2015) .................................................................................. 5

*Graham v. Connor*,
    490 U.S. 386 (1989) ........................................................................................ 23

*Grasso v. Ard Contracting, Inc.*,
    No. 21-310, 2022 WL 2654990
    (N.D. Fla. June 8, 2022) ................................................................................. 36

*Guckenberger v. Boston Univ.*,
    957 F. Supp. 306 (D. Mass. 1997) ................................................................. 16

*Guthrie v. Tifco Indus.*,
    941 F.2d 374 (5th Cir. 1991) .......................................................................... 35

*Harder v. Edwards*,
    174 So. 3d 524
    (Fla. Dist. Ct. App. 2015) ......................................................................... 31, 32

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982) ................................................................................. 21, 22

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) ........................................................................................ 16

*Hill v. Celebrity Cruises, Inc.*,
    No. 09-23815, 2010 WL 11442595
    (S.D. Fla. Sept. 14, 2010) .............................................................................. 33

*Hunt v. Washington State Apple*
    *Advertising Comm'n*,
    432 U.S. 333 (1977) ........................................................................................ 16

*In re Air Crash Disaster at Boston,*
    *Mass. on July 31, 1973*,
    399 F. Supp. 1106 (D. Mass. 1975) ............................................................... 31

*In re Asacol Antitrust Litig.*,
    907 F.3d 42 (1st Cir. 2018) .............................................................................. 6

*Jackson v. Metro Edison Co.*,
    419 U.S. 345 (1974) ............................................................................................... 19

*Jeneski v. Cty. of Worchester*,
    476 F.3d 14 (1st Cir. 2007) ................................................................................... 29

*Johns v. Kaelblein*,
    644 F. App'x 325 (5th Cir. 2016) ......................................................................... 39

*Jupiter v. Ashcroft*,
    396 F.3d 487 (1st Cir. 2005) ................................................................................. 27

*Kahama VI, LLC v. HJH, LLC*,
    No. 11-2029, 2013 WL 6511731
    (M.D. Fla. Dec. 12, 2013) ..................................................................................... 38

*Kantrow v. Celebrity Cruises, Inc.*,
    510 F. Supp. 3d 1311 (S.D. Fla. 2020) ............................................................... 36

*Katz v. Belveron Real Est. Partners, LLC*,
    28 F.4th 300 (1st Cir. 2022) ................................................................................. 34

*Kaul v. Boston Partners, Inc.*,
    No. 21-10326, 2021 WL 3272216
    (D. Mass. July 30, 2021) ....................................................................................... 14

*Kim v. Jung Hyun Chang*,
    249 So. 3d 1300
    (Fla. Dist. Ct. App. 2018) ..................................................................................... 37

*Klaxon Co. v. Stentor Elec. Mfg. Co*.,
    313 U.S. 487 (1941) ............................................................................................... 30

*Kuan Chen v. United States*
    *Sports Acad., Inc*.,
    956 F.3d 45 (1st Cir. 2020) ..................................................................................... 5

*Lifchits v. Integon Nat'l Ins. Co.*,
    No. 18-12637, 2020 WL 4756272
    (D. Mass. Aug. 17, 2020) ....................................................................................... 13

*Lincoln v. Fla. Gas Transmission Co. LLC*,
    608 F. App'x 721 (11th Cir. 2015) ....................................................................... 35

*Lloyd v. Jones*,
    No. 18-211, 2019 WL 4786874

(E.D. Tex. Sept. 10, 2019) ........................................................................... 39

*Medici v. Lifespan Corp.*,
   239 F. Supp. 3d 355 (D. Mass. 2017) ........................................................ 7

*Mello v. K-Mart Corp.*,
   604 F. Supp. 769 (D. Mass. 1985) ............................................................ 12

*Metro. Life Ins. Co. v. McCarson*,
   467 So. 2d 277 (Fla. 1985) ....................................................................... 35

*Moore v. S.N.H. Med. Ctr.*,
   No. 08-11751, 2009 WL 5214879
   (D. Mass. Aug. 18, 2009) .......................................................................... 13

*Mulero-Carrillo v. Roman-Hernandez*,
   790 F.3d 99 (1st Cir. 2015) ....................................................................... 25

*N. Am. Cath. Educ. Programming
   Found., Inc. v. Cardinale*,
   567 F.3d 8 (1st Cir. 2009) ......................................................................... 34

*Nat'l Ass'n of Consumer Advocs. v. Uejio*,
   521 F. Supp. 3d 130 (D. Mass. 2021) ...................................................... 15

*Nieves v. McSweeney*,
   241 F.3d 46 (1st Cir. 2001) ....................................................................... 28

*O'Grady v. Safety-Kleen Systems, Inc.*,
   No. 19-11814, 2020 WL 1514604
   (D. Mass. Mar. 30, 2020) .......................................................................... 10

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) .................................................................................. 15

*Parker v. Landry*,
   935 F.3d 9 (1st Cir. 2019) ......................................................................... 40

*Patton v. United Parcel Serv., Inc.*,
   910 F. Supp. 1250 (S.D. Tex. 1995) ........................................................ 37

*Paylan v. Teitelbaum*,
   No. 15-159, 2018 WL 1189487
   (N.D. Fla. Jan. 11, 2018) ........................................................................... 32

*Perkins v. Cty. of Attleboro*,
   969 F. Supp. 2d 158 (D. Mass. 2013) ...................................................... 28

*Pettengill v. Curtis*,
    584 F. Supp. 2d 348 (D. Mass. 2008) ........................................................... 11

*Plastiquim S.A. v. Odebrecht Constr., Inc.*,
    337 So. 3d 1270 (Fla. Ct. App. 2022) ......................................................... 38

*Randall's Food Markets, Inc. v. Johnson*,
    891 S.W.2d 640 (Tex. 1995) .......................................................................... 32

*Rendell-Baker v. Kohn*,
    457 U.S. 830 (1982) ......................................................................................... 21

*Rivers v. Dillards Dep't Store, Inc.*,
    698 So. 2d 1328
    (Fla. Dist. Ct. App. 1997) ........................................................................... 32

*Rodriguez-Garcia v. Davila*,
    904 F.2d 90 (1st Cir. 1990) ........................................................................... 19

*Ruhrgas AG v. Marathon Oil Co.*,
    526 U.S. 574 (1999) ........................................................................................... 7

*S. Cnty. Sand & Gravel Co. v.*
*Town of S. Kingstown*,
    160 F.3d 834 (1st Cir. 1998) ......................................................................... 23

*Sader v. Padron*,
    No. 18-22891, 2018 WL 7287159
    (S.D. Fla. Dec. 19, 2018) ............................................................................. 34

*Santiago v. Puerto Rico*,
    655 F.3d 61 (1st Cir. 2011) ................................................................... *passim*

*Sinochem Int'l Co. v. Malaysia*
*Int'l Shipping Corp.*,
    549 U.S. 422 (2007) ........................................................................................... 7

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ..................................................................................... 6, 14

*Stanton v. AM Gen. Corp.*,
    50 Mass. App. Ct. 116 (2000) ........................................................................ 8

*Strahan v. AT&T Mobility LLC*,
    270 F. Supp. 3d 535 (D. Mass. 2017) .......................................................... 19

*Tomas v. Buckley*,
  No. 19-12079, 2020 WL 2616304
  (D. Mass. May 22, 2020) ............................................................................................... 10

*Tummel v. Milane*,
  787 F. App'x 226 (5th Cir. 2019) .................................................................................. 38

*Turner v. Charter Sch. USA, Inc.*,
  No. 18-24005, 2020 WL 620392
  (S.D. Fla. Jan. 14, 2020) ............................................................................................... 32

*UBS Fin. Servs., Inc. v. Aliberti*,
  483 Mass. 396 (2019) .................................................................................................... 30

*United Healthcare Services, Inc. v. Next Health, LLC*,
  No. 17-00243, 2021 WL 764035
  (N.D. Tex. Feb. 26, 2021) ............................................................................................. 39

*United States v. Swiss Am. Bank, Ltd.*,
  191 F.3d 30 (1st Cir. 1999) ........................................................................................... 11

*United States v. Swiss Am. Bank, Ltd.*,
  274 F.3d 610 (1st Cir. 2001) ......................................................................................... 12

*United States ex rel. Kelly v.*
  *Novartis Pharms. Corp.*,
  827 F.3d 5 (1st Cir. 2016) ............................................................................................. 35

*Vapotherm v. Santiago*,
  38 F.4th 252 (1st Cir. 2022) .......................................................................................... 12

*Victim Rts. L. Ctr. v. Cardona*,
  552 F. Supp. 3d 104
  (D. Mass. 2021) .............................................................................................................. 17

*Wal-Mart Stores, Inc. v. Rodriguez*,
  92 S.W.3d 502 (Tex. 2002) ........................................................................................... 31

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990) ....................................................................................................... 15

*Williams v. Astra USA, Inc.*,
  68 F. Supp. 2d 29 (D. Mass. 1999) ............................................................................... 30

*Williams v. WMX Techs., Inc.*,
  112 F.3d 175 (5th Cir. 1997) ........................................................................................ 32

*Williams v. Worldwide Flight SVCS., Inc.*,
   877 So. 2d 869 (Fla. Dist. Ct. App. 2004) ............................................................... 37

*Willis v. Gami Golden Glades, LLC*,
   967 So. 2d 846 (Fla. 2007)...................................................................................... 37

*World Class Yachts, Inc. v. Murphy*,
   731 So. 2d 798 (Fla. Ct. App. 1999).......................................................................... 39

*Zaremba v. Cliburn*,
   949 S.W.2d 822 (Tex. App. 1997)............................................................................. 36

<u>Statutes and Rules</u>

28 U.S.C. § 1391.............................................................................................................. 13

Mass. Gen. L. ch. 223A, § 3 .......................................................................................... 8, 9, 11

87 Fed. Reg. at 63, 508-09 ............................................................................................... 29

<u>Secondary Sources</u>

Restatement (Second) of Conflict of Laws § 145 ............................................................. 31

Restatement (Second) of Torts § 46 ................................................................................. 37

Defendants Vertol Systems Company, Inc. ("Vertol") and its Chief Executive Officer James Montgomerie (collectively the "Vertol Defendants") respectfully submit this Memorandum of Law in support of their motion to dismiss the Amended Complaint of Plaintiffs Alianza Americas ("Alianza"), Yanet Doe, and Pablo Doe pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (3), and (6).

## Preliminary Statement

The Amended Complaint asserts 14 claims for injunctive, declaratory, and class action relief against six Florida governmental entities and officers.  It also asserts 11 of those claims against a Florida corporation (Vertol) and two private Florida residents (Mr. Montgomerie and another Defendant, Perla Huerta).  The "Relocation Program" it challenges was authorized by a Florida Statute and was implemented, in part, through a government contract between the Florida Department of Transportation ("FDOT") and Vertol.  The material events alleged occurred in Florida and Texas.

And yet Plaintiffs filed this case in federal court in the District of Massachusetts.  The Commonwealth, however, is plainly not an appropriate forum for three reasons.  First, there are no grounds for the Commonwealth to exercise personal jurisdiction over the Vertol Defendants.  Second, this court is an improper venue because all Defendants reside in the State of Florida, the clear center of gravity for this case.  Third, most of the claims asserted against the Vertol Defendants are brought by persons (and an entity) without standing to seek the relief demanded.

Even if Plaintiffs could overcome these threshold defects requiring immediate dismissal or transfer, their claims against the Vertol Defendants are still fatally defective.  Plaintiffs' causes of action based on federal law simply fail to state a claim upon which relief may be granted—again for three reasons.

First, as a threshold matter, the Vertol Defendants are not state actors and therefore cannot be held liable under 42 U.S.C. §§ 1983 or 1985.  Second, the Amended Complaint fails to show that Plaintiffs were deprived of any federally protected right at all, much less by the Vertol Defendants specifically.  Third, even if the Vertol Defendants were deemed state actors and Plaintiffs had adequately alleged deprivation of a federally protected right, the Vertol Defendants would then be entitled to qualified immunity.

Plaintiffs' common law tort claims similarly fail to state any claim upon which relief may be granted.  While Plaintiffs do not bother to allege specifically what law governs their claims, the Amended Complaint implies (and common-sense dictates) that Florida law applies. Plaintiffs fail to allege facts sufficient to support the required elements of the claims they assert under applicable law.

All claims asserted against the Vertol Defendants should therefore be dismissed with prejudice.  Alternatively, this case should be transferred to Florida.

<u>Background</u>

The following facts, unless otherwise noted, are taken from the Amended Complaint, and are deemed true only for purposes of this motion.  Vertol is a privately-owned company headquartered in Florida.  Amended Complaint ("AC") [PACER Dkt. 21] ¶ 25.  It is registered with the Florida Department of Transportation ("FDOT"), AC ¶ 47, and operates a fleet of fixed and rotary wing aircraft for chartered flight services within the continental United States, AC ¶ 48.  Mr. Montgomerie is its sole officer.  AC ¶ 26.  While Plaintiffs do not actually allege

his residence, it is plain from their pleading that Mr. Montgomerie resides in the Northern

District of Florida.  *See* AC ¶¶ 25, 26, 67, 131.[1]

In the summer of 2022, FDOT sought bids "to implement and manage a program to

relocate out of the State of Florida foreign nationals who are not lawfully present in the United

States."  AC ¶ 41.  The successful bidder would,

> under the supervision of a Project Manager and upon request of certain designated
> state and local law enforcement or criminal justice agencies, arrange or provide
> either ground or air transportation to assist in the voluntary relocation of
> Unauthorized Aliens who are found in Florida and have agreed to be relocated to
> another state in the United States or the District of Columbia.

AC ¶ 41 (internal quotation marks omitted).  As later explained by FDOT, this could include not

only persons already in Florida, but outside the State as well.  AC ¶ 52.

Vertol was the successful bidder for the FDOT contract.  AC ¶ 45.  The first specific

relocation directed by FDOT, described in the Amended Complaint as "Project 1," was "the

facilitation of the relocation of individuals to the State of Massachusetts or other, [sic] proximate

northeastern state designated by FDOT based upon the extant conditions."  AC ¶ 51.  Vertol

submitted a proposal for those services, which FDOT accepted, and was later paid "out of

Florida's general revenue fund" using money allocated by Section 185 of Florida's 2022 General

Appropriations Act.  AC ¶¶ 35-36, 39-40, 54-56.  Vertol then "engaged [Defendant Perla] Huerta

to carry out a number of . . . vendor responsibilities related to recruiting immigrants for

transportation."  AC ¶¶ 57, 69.  Ms. Huerta is a native Spanish speaker and the only Defendant

alleged to have spoken directly with any Plaintiff.  AC ¶¶ 69, 78.

---

[1] The Amended Complaint's 342 paragraphs include just 16 mentioning Mr.
Montgomerie.  *See* AC ¶¶ 3, 25, 26, 45-47, 62, 67, 68, 109, 127, 131, 192, 272, 319, 328.

Ms. Huerta went to San Antonio, Texas to recruit willing migrants interested in receiving free transportation to a sanctuary jurisdiction.  *See* AC ¶¶ 60, 69.  Specifically, Ms. Huerta "offer[ed] to help immigrants" turned away from a well-known Migrant Resource Center (the "Center") in San Antonio after learning that "[i]mmigrants are typically allowed to stay . . . for just three days, and many immigrants have no place to go once they are turned out."  AC ¶¶ 74, 78.  These migrants included Plaintiffs Yanet Doe, Pablo Doe, and Jesus Doe, three Venezuelan aliens who had crossed the border into Texas without authorization.  AC ¶¶ 13-15, 70, 74, 77, 84, 89.  Ms. Huerta provided them with meals, necessities, and shelter in a hotel.  AC ¶¶ 81, 88.  Plaintiff Yanet Doe was "living on the street" with her family prior to encountering Ms. Huerta.  AC ¶ 77.  Plaintiff Jesus Doe similarly "slept on the streets nearby" the Center before Ms. Huerta offered him lodging and transportation.  AC ¶ 89.

Ms. Huerta allegedly told Plaintiff Yanet Doe that she was "arranging a flight to a city in the Northeast."  AC ¶ 82.  Similarly, Ms. Huerta allegedly told Jesus Doe that "she could get him on a plane to Washington, Oregon, or Massachusetts, and could pay for him to stay in a hotel while he waited for the flight."  AC ¶ 92.

Plaintiffs here, along with 46 other migrants, ultimately accepted this offer of transportation to a sanctuary state.  AC ¶ 200.  Each signed an "Official Consent to Transport" form, written in both English and Spanish, disclosing that the destination settled on was Massachusetts.  AC ¶ 117.  The form read, in relevant part:

> I, _____, born on _____, agree to be transported by the benefactor or its designated representative outside of Texas, to locations in sanctuary States.
>
> I agree to hold the benefactor or its designated representatives harmless of all liability arising out of or in any way relating to any injuries and damages that may occur during the agreed transport to locations outside of Texas until the final destination of Massachusetts.

AC ¶ 117.

On September 14, 2022, those 49 migrants boarded two planes and were flown to Martha's Vineyard.  During the flights, the migrants received "a copy of U.S. Citizenship and Immigration Services (USCIS) Form AR-11, entitled 'Alien's change of Address Card,' accompanied by a document written in Spanish instructing Class Plaintiffs on how to change their addresses with USCIS."  AC ¶ 142.  Upon landing in Martha's Vineyard, the migrants were greeted by waiting vans, which drove them a short distance to a community center.  AC ¶ 149.

## Standard of Review

Plaintiffs' various claims must be measured against several standards.  First, Plaintiffs bear the "burden of proving that personal jurisdiction may be exercised in the forum state." *Kuan Chen v. United States Sports Acad., Inc.*, 956 F.3d 45, 54 (1st Cir. 2020).  Conclusory or "unsupported allegations in the[] pleadings" will not suffice for this purpose.  *Boit v. Gar-Tec Prod., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992).  Instead, Plaintiffs must offer factual support sufficient to make a prima facie showing that personal jurisdiction exists.  *E.g.*, *id*.

Second, in opposing a motion under Federal Rule of Civil Procedure 12(b)(3), "'the burden of establishing venue is on the plaintiff.'"  *Doe #1 v. JetBlue Airways Corp.*, No. 20-11623, 2021 WL 3375107, at *8 (D. Mass. Aug. 3, 2021) (Burroughs, J.) (quoting *Gill v. Nakamura*, No. 14-13621, 2015 WL 5074475, at *2 (D. Mass. July 24, 2015)).  "In cases involving multiple claims and defendants, the plaintiff bears the burden of demonstrating that venue is proper with respect to each claim and each defendant."  *Get In Shape Franchise, Inc. v. TFL Fishers, LLC*, 167 F. Supp. 3d 173, 195 (D. Mass. 2016) (citation omitted).

Third, "federal courts lack jurisdiction if no named plaintiff has standing."  *Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019) (citation omitted).  To establish standing, a named plaintiff must "clearly . . . allege facts demonstrating" that she "(1) suffered an injury in fact, (2) that is

fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (cleaned up) (citation omitted); *accord, e.g.*, *Equal Means Equal v. Dep't of Educ.*, 450 F. Supp. 3d 1, 5 (D. Mass. 2020).[2]

Fourth, "[t]o survive a motion to dismiss" pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Importantly, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). If "a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (cleaned up). Plaintiffs' claims fail to satisfy any of these standards, as discussed below.

<u>Argument</u>

As a threshold matter, Plaintiffs' claims are defective as a matter of jurisdiction, venue, and standing. Because "[a] federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits,'" *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)), this Court can dispose of this case on any one of these grounds without reaching any other argument.

---

[2] Plaintiffs in a putative class action cannot cure their own lack of standing by pointing to proposed absent class members. *E.g.*, *In re Asacol Antitrust Litig.*, 907 F.3d 42, 48 (1st Cir. 2018) ("In a class action suit with multiple claims, at least one *named* class representative must have standing with respect to each claim.") (citation omitted) (emphasis added).

I.  THE VERTOL DEFENDANTS ARE NOT SUBJECT TO PERSONAL JURISDICTION
     IN THIS DISTRICT

"In Massachusetts, a court may exercise personal jurisdiction over a foreign defendant if

such jurisdiction is authorized by state statute and its exercise does not offend the Due Process

Clause of the Fourteenth Amendment." *Ace Am. Ins. Co. v. Oyster Harbors Marine, Inc.*, 310 F.

Supp. 3d 295, 302 (D. Mass. 2018) (quoting *Bohnenberger v. MCBC Hydra Boats, LLC*, No. 16-

11368, 2017 WL 3976566, at *4 (D. Mass. Sept. 7, 2017)).  Here, there are no grounds for the

exercise of personal jurisdiction under the applicable long-arm statute.  And even if there were,

Vertol's Massachusetts contacts are so minimal that the exercise of personal jurisdiction would

violate due process.

   A.   The Massachusetts Long-Arm Statute Does Not Confer Personal Jurisdiction
         Over the Vertol Defendants.

Plaintiffs do not allege that Massachusetts has general jurisdiction over the Vertol

Defendants, nor could they, because neither is "at home" in the Commonwealth.  *Daimler AG v.*

*Bauman*, 571 U.S. 117, 122 (2014) (citation omitted); *accord*, *e.g.*, *Medici v. Lifespan Corp.*, 239

F. Supp. 3d 355, 369 (D. Mass. 2017) ("[I]t is clear that the Court cannot exercise general

jurisdiction over [Defendant]" where "[n]othing in the facts set forth by [Plaintiff] suggests that

[Defendant] is 'essentially at home' in Massachusetts or that this is an 'exceptional' case such

that the exercise of general jurisdiction would be appropriate.").  Similarly, while the

Massachusetts long-arm statute provides eight instances in which the exercise of specific

jurisdiction over foreign defendants is appropriate, *see* Mass. Gen. L. ch. 223A, § 3, Plaintiffs do

not even allege which one or more of those instances they believe applies to the Vertol

Defendants.  *See* AC ¶ 11.  None of them do.

Several of these eight instances are easily dispensed with.  Plaintiffs do not allege any

interest in or use of any real property, any contract to insure, maintenance of any domicile, or the

existence of any relevant personal or marital relationship.  Thus, none of those four subsections

apply.  *See* Mass. Gen. L. ch. 223A, § 3(e)-(h).  This leaves subsections 3(a), (b), (c), and (d).

Each is addressed in greater detail below, but none of them are satisfied.

   ***Subsection 3(a).***  "[T]o establish jurisdiction under § 3(a), plaintiff must allege facts

which satisfy two requirements:  1) that defendant transacted business in Massachusetts and 2)

that the claims at issue arose from that transaction of business."  *Azumi LLC v. Lott & Fischer,*

*PL*, No. 21-11311, 2022 WL 3369197, at *2 (D. Mass. Aug. 16, 2022) (citation omitted).  The

Amended Complaint makes neither showing.  Instead, it acknowledges that the relevant contracts

for the transportation at issue were bid on, awarded, and executed in Florida, *see* AC ¶¶ 40-57,

and that Plaintiffs agreed to be transported while in Texas.  *See* AC ¶¶ 87, 95, 98.

   Performance of those agreements occurred predominantly elsewhere, too:  the flights

were commenced in Texas, landed in Florida, continued over a number of different states with a

stop for fuel (in South Carolina in one instance and in North Carolina in the other), and only

briefly landed in Massachusetts so that Plaintiffs could deplane.  *See* AC ¶¶ 128-32, 147, 150.

Such "limited in-forum activity," *Azumi*, 2022 WL 3369197, at *3, cannot constitute "transaction

of business in this Commonwealth" for this purpose.  *See also*, *e.g.*, *Stanton v. AM Gen. Corp.*,

50 Mass. App. Ct. 116, 118-19 (2000) (purchasing certain component parts from Massachusetts

company and selling vehicles to Massachusetts dealership insufficient to constitute transacting

business in Massachusetts).

   Nor do Plaintiffs' claims "arise from" Vertol's limited contact with Massachusetts.

"[P]ersonal jurisdiction is not proper under § 3(a)" where "Plaintiffs do not allege and have not

otherwise proven that any of [Defendants'] 'contacts with the Commonwealth constitute[d] the

first step in a train of events that result[ed] in the . . . injury.'"  *Doe #1*, 2021 WL 3375107, at *5

(quoting *Access Now, Inc. v. Otter Products, LLC*, 280 F. Supp. 3d 287, 291 (D. Mass. 2017)).

Plaintiffs do not allege any Massachusetts activity as the "first step" in a chain of events resulting

in their injuries.  Jurisdiction under subsection 3(a) also fails for this reason.

*Subsection 3(b).*  The claims against the Vertol Defendants also do not arise from

"contracting to supply services or things in this commonwealth."  Mass. Gen. L. ch. 223A,

§ 3(b).  To the contrary, they arise from providing transportation (a service) to people in Texas.

*See, e.g.*, AC ¶¶ 40, 48.  Nor are people "things" being delivered to Massachusetts.  Even if they

were, the limited nature of the transportation here (a single occurrence) does not satisfy the

requirements of subsection 3(b).  *See, e.g., Droukas v. Divers Training Academy, Inc*., 375 Mass.

149, 159 (1978) ("Even if we were to find here that the defendant had contracted to supply the

two marine engines in Massachusetts, we would not consider that transaction, isolated in nature

and void of any other significant contacts with the Commonwealth" sufficient to satisfy Section

3(b) or constitutional requirements for the exercise of personal jurisdiction).

*Subsection 3(c)*.  "'[S]ection 3(c) requires a well-pleaded allegation that a defendant did

some act *in* the Commonwealth that caused the plaintiff harm.'"  *Doe #1*, 2021 WL 3375107, at

*5 (quoting *Collision Commc'ns, Inc. v. Nokia Sols. & Networks*, 485 F. Supp. 3d 282, 293 (D.

Mass. 2020)) (emphasis in original).  In other words, "[p]laintiffs must . . . allege that defendants

took some action *in* Massachusetts that caused the plaintiffs to be injured in Massachusetts."

*O'Grady v. Safety-Kleen Systems, Inc.*, No. 19-11814, 2020 WL 1514604, at *4 (D. Mass. Mar.

30, 2020) (Burroughs, J.) (citation omitted) (emphasis added).  The Amended Complaint again

comes up short.

First, Plaintiffs fail to allege that the Vertol Defendants committed any of the allegedly

tortious conduct *in* Massachusetts.  *See Boston Post Partners II, LLP v. Paskett*, No. 15-13804,

2016 WL 3746474, at *8 (D. Mass. July 8, 2016) (subsection 3(c) not satisfied when "the conduct that caused [Plaintiff's] injuries occurred entirely outside of Massachusetts.").[3]  Rather, the material events purported to give rise to Plaintiffs' claims—*i.e.* making fraudulent statements, selecting migrants for discriminatory reasons, conspiring with Florida officials, and so on—are alleged to have occurred in Florida and Texas, well before Plaintiffs ever set foot in Massachusetts.  The Amended Complaint therefore fails to allege that tortious conduct occurred in Massachusetts.  Subsection 3(c) is not satisfied under such circumstances.  *See O'Grady*, 2020 WL 1514604, at *4 (collecting cases).

Second, Plaintiffs have not adequately alleged that their injuries occurred in Massachusetts.  At most, Plaintiffs allege that they felt the effects of out-of-state conduct here in the Commonwealth.  *See*, *e.g.*, AC ¶¶ 155-56.  But that "do[es] not constitute 'injury in this commonwealth'" for the purposes of specific jurisdiction.  *Cunningham v. Ardrox, Inc.*, 40 Mass. App. Ct. 279, 282 (1996) (citation omitted); *accord Tomas v. Buckley*, No. 19-12079, 2020 WL 2616304, at *4 (D. Mass. May 22, 2020) ("Although Plaintiff may have . . . experienced the effects of the accident in Massachusetts, that is insufficient for the Court to exercise personal jurisdiction.") (citation omitted).  Specific jurisdiction does not exist under subsection 3(c) for this added reason.

***Subsection 3(d).***  Finally, "[s]ection 3(d) . . . is applicable only if the defendant is subject to general personal jurisdiction in Massachusetts."  *Doe #1*, 2021 WL 3375107, at *6 (citing

---

[3] The plaintiff in *Paskett* also argued that specific jurisdiction was appropriate because allegedly tortious conduct was "expressly aimed" at Massachusetts and "the effects of that conduct w[ere] felt in Massachusetts."  *Id.* (citation omitted)  The court rejected that theory, holding that "it is inconsistent with the text of Section 3(c)."  *Id.*

*Pettengill v. Curtis*, 584 F. Supp. 2d 348, 357 (D. Mass. 2008)).[4]  Plaintiffs have not and cannot establish general jurisdiction over the Vertol Defendants, *supra* at 7-8, and fail to satisfy this subsection for that reason alone.  Moreover, this subsection "requires that the injury itself *occur* in Massachusetts and does not apply merely because the plaintiff feels the effects of a tortious injury there."  *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 37 (1st Cir. 1999) (emphasis added).  As discussed above, Plaintiffs also have not made that required showing here.

As these arguments prove, Plaintiffs have not established grounds for exercising personal jurisdiction over the Vertol Defendants under any of the grounds provided by the Massachusetts long-arm statute.  Plaintiffs' claims against the Vertol Defendants should therefore be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2).

> B.  <u>Exercising Personal Jurisdiction Over the Vertol Defendants Would Violate Due Process.</u>

Because personal jurisdiction over the Vertol Defendants does not exist either as a matter of general jurisdiction, *see supra* at 7-8, or under the Massachusetts long arm statute, "'the Court need not reach the question of whether [plaintiff's] assertion is constitutionally sound.'"  *Doe #1*, 2021 WL 3375107, at *7 (quoting *Mello v. K-Mart Corp.*, 604 F. Supp. 769, 772 (D. Mass. 1985)).  But were the Court to ask that question, it would find the Amended Complaint's allegations of personal jurisdiction deficient from a constitutional perspective as well.

"Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities."  *Driscoll v. McCann*, 505 F. Supp. 3d 32, 39

---

[4] Subsection 3(d) permits personal jurisdiction for "causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth."  Mass. Gen. L. ch. 223A, § 3(d).

(D. Mass. 2020) (Burroughs, J.) (quoting *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001)).  To demonstrate this, plaintiffs must satisfy three conditions:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities.  Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable.  Third, the exercise of jurisdiction must . . . be reasonable.

*Id.* (quoting *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A*., 290 F.3d 42, 60 (1st Cir. 2002)).

To satisfy the first condition, Plaintiffs must show a causal link between each of the Vertol Defendants' in-state activities and a resulting injury.  But, as noted earlier, the Amended Complaint does not allege tortious conduct by the Vertol Defendants in Massachusetts that "gave birth to" Plaintiffs' causes of action.  *Id.* (citation omitted).  *See also Vapotherm v. Santiago*, 38 F.4th 252, 261 (1st Cir. 2022) ("[I]n-state injury alone is not sufficient under the Due Process Clause to prove relatedness for tort claims.") (citation omitted).  Any conduct alleged to have occurred in Massachusetts therefore does not amount to a "'substantial factor in bringing about [Plaintiffs'] harm.'"  *Driscoll*, 505 F. Supp. 3d at 40 (citation omitted).[5]  Accordingly, the exercise of personal jurisdiction over the Vertol Defendants is not only inappropriate under Massachusetts law; it would be unconstitutional as well.

---

[5] Plaintiffs cannot satisfy the other two conditions for the exercise of jurisdiction either.  As to purposeful availment, "the defendant's contacts in the forum state must give him notice such that he could 'reasonably anticipate being haled into court there.'"  *Vapotherm*, 38 F.4th at 261-62 (citation omitted).  Performing a Florida contract for transportation from Texas and Florida to another state does not lead to the conclusion that one would expect to be sued in the other state if the transportation successfully terminated there.  Nor would jurisdiction be reasonable given the limited nature of the contact at issue, especially since the material events alleged indisputably occurred elsewhere.

II.   THE DISTRICT OF MASSACHUSETTS IS NOT A PROPER VENUE FOR
      PLAINTIFFS' CLAIMS AGAINST THE VERTOL DEFENDANTS

The absence of personal jurisdiction over the Vertol Defendants in this judicial district

also makes it an improper venue.  *See*, *e.g.*, *Doe #1*, 2021 WL 3375107, at *8 (citing *Moore v.*

*S.N.H. Med. Ctr.*, No. 08-11751, 2009 WL 5214879, at *10 (D. Mass. Aug. 18, 2009)).  This

matter should be dismissed or transferred for this reason alone.  *See also Lifchits v. Integon Nat'l*

*Ins. Co.*, No. 18-12637, 2020 WL 4756272, at *8-9 (D. Mass. Aug. 17, 2020) (Burroughs, J.).

But even if personal jurisdiction did exist, this District remains an improper venue for Plaintiffs'

claims.

Plaintiffs could have properly commenced this action: (1) in "a judicial district in which

any defendant resides, if all defendants are residents of the State in which the district is located,"

or (2) in a judicial district where "a substantial part of the events or omissions giving rise to the

claim occurred."  28 U.S.C. § 1391(b).[6]  Because the Amended Complaint affirmatively alleges

or concedes that all Defendants, most of whom are elected or appointed officials of the State of

Florida, reside in Florida *see*, *e.g.*, AC ¶¶ 18-26, 67, 131, venue would therefore be proper in any

judicial district of Florida in which at least one defendant resides.  *See* 28 U.S.C. § 1391(b)(1).

Plaintiffs, however, opted to file suit in Massachusetts, where none of the Defendants

resides and where virtually none of the material events in this case occurred.  Massachusetts is

plainly improper given the circumstances.  *Kaul v. Boston Partners, Inc.*, No. 21-10326, 2021

WL 3272216, at *2 (D. Mass. July 30, 2021) (Burroughs, J.) (venue improper in Massachusetts

when "[t]he overwhelming majority of [Plaintiff's] factual allegations relate to events and

omissions occurring" out-of-state).

---

[6] A third option, for venue "if there is no district in which an action may otherwise be
brought," 28 U.S.C. § 1391(b)(3), does not apply here.

While "a venue transfer is ordinarily preferable to dismissal," dismissal is appropriate where, as here, "plaintiff intentionally filed his claim in the wrong venue . . . ." *Id.* (citation and quotation omitted).  Here, that intent is plain on the face of the Amended Complaint.  Plaintiffs have sued nine defendants—including the Governor of Florida and several other high-ranking Florida officials—all of whom are alleged to reside in Florida.  It challenges a Florida statute and actions that were taken under that statute in Florida and Texas.  The three private parties caught up in this dispute, including the Vertol Defendants, have nothing to do with Massachusetts, either.  Dismissal is the appropriate remedy in such circumstances.  *See id.*

## III.   PLAINTIFFS LACK STANDING TO ASSERT MOST OF THEIR CLAIMS

As noted earlier, in a putative class action, plaintiffs must "clearly . . . allege facts demonstrating" for each claim that a named plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc.*, 578 U.S. at 338 (cleaned up) (citation omitted). An injury in fact is "'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Council of Ins. Agents & Brokers v. Juarbe-Jimenez*, 443 F.3d 103, 107 (1st Cir. 2006) (citation omitted). Causation means not only that the "injury must be fairly traceable to the defendant's challenged action" but also not "to some third party's independent action." *Id.* at 108 (citation omitted). And redressability means not only that a favorable decision will remedy the alleged injury, *id.* (citation omitted), but (where, as here, a plaintiff seeks prospective relief), that a named plaintiff faces a real and immediate threat that it will again suffer the injury complained of, *see, e.g.*, *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) (dismissing case where class sought to enjoin courts from utilizing allegedly discriminatory sentencing procedures because, although particular class members had been injured by the allegedly unconstitutional practices, there was no real and

immediate threat that those particular members would again be subjected to them).  *See generally Whitmore v. Arkansas*, 495 U.S. 149, 155-58 (1990) (harm alleged must be either presently ongoing or "certainly impending").

Here, the Doe Plaintiffs may have standing to seek damages, individually, for their own past claims.  They have not, however, plausibly alleged that they are likely ever again to be transported by Vertol (or to be transported pursuant to any action by any other Defendant, for that matter).[7]  They therefore clearly lack standing to seek prospective, class-based relief.  *See, e.g., Am. Postal Workers Union v. Frank*, 968 F.2d 1373, 1377 (1st Cir. 1992).

Alianza is an even worse position.  It has standing only if it demonstrates either that one of its members satisfies the same requirements for standing as any other plaintiff ("associational standing"), or if it demonstrates that it can do so in its own right ("organizational" or "direct standing").  *See Nat'l Ass'n of Consumer Advocs. v. Uejio*, 521 F. Supp. 3d 130, 141 (D. Mass. 2021) (citation omitted).  It has done neither.

To establish associational standing, Alianza must show that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; *and* (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977) (emphasis added).  But the Amended Complaint does not allege that any of the other named Plaintiffs (or any other person transported to Massachusetts)—persons who otherwise might have standing to sue in their own name—is an

---

[7] Where prospective relief, as here, depends on discretionary actions by multiple actors, the Supreme Court has expressed a special "reluctan[ce] to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment" in the future.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413-14 (2013) (citation omitted).  Plaintiffs have offered nothing to overcome this high bar.

Alianza member.  Instead, Alianza refers vaguely to assistance Alianza has offered to "member organizations in responding to the needs of immigrants who have been duped and transported to places where they lack access to housing and transportation."  AC ¶ 17.  It does not even identify these "member organizations."  These allegations fall well short of establishing that any Alianza member would have standing and therefore dooms any claim that Alianza has associational standing.  *See*, *e.g.*, *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 320-21 (D. Mass. 1997).

Alianza fares no better as to organizational or "direct" standing.  "The Supreme Court has held that an advocacy organization may achieve such standing if its mission has been 'frustrated' by the challenged conduct *and* it has expended resources to combat it."  *Equal Means Equal*, 450 F. Supp. 3d at 7 (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)) (emphasis in original).  "However, the Supreme Court has also held that simply expending resources based on an *anticipated* harm is not enough to establish standing."  *Id.* (citing *Clapper*, 568 U.S. at 133) (emphasis in original).  The allegations in the Amended Complaint do not satisfy these requirements.

First, Alianza fails adequately to allege that its organizational purpose has been frustrated.  Alianza "focuses its work on improving the quality of life for all those in the United States-Mexico-Central America migration corridor and on promoting humane, just, and equitable policies."  AC ¶ 16.  The Amended Complaint does not say at all, much less in the necessary detail, how the alleged conduct of Defendants (much less the Vertol Defendants) frustrated this purpose.  *Equal Means Equal*, 450 F. Supp. 3d at 8 (no organizational standing where "Plaintiffs have not stated the injury to [the organization's] mission with particularity.").

Second, with respect to causation, the Amended Complaint alleges only that Alianza has been "forced to divert programmatic and media resources from its usual activities," "assist

member organizations in responding to the needs of immigrants who have been duped," and

"mobilize staff to educate member organizations and government officials about Defendant's

actions."  AC ¶ 17.  These allegations are conclusory and devoid of factual support.  Even if they

were not, diversion of resources alone does not suffice to establish standing.  *See Victim Rts. L.*

*Ctr. v. Cardona*, 552 F. Supp. 3d 104, 125-26 (D. Mass. 2021) ("[D]iverting resources from

daily operations, delaying programing, reallocating staff, updating educational material, and

spending time analyzing [defendant's conduct] to continue serving victims in accordance with

their missions do not qualify as frustrating an organization's purpose.").

Third, the Amended Complaint fails to establish that the relief sought will redress any

alleged harm.  This is especially so given that Florida's decision to provide transportation for

migrants who wish to be transported elsewhere is neither unprecedented nor unique.  The

Amended Complaint itself acknowledges that "[i]n early 2022, the governors of Texas and

Arizona began to send buses of immigrants who had recently crossed into those states from

Mexico to major metropolitan areas in the eastern United States."  AC ¶ 27.  It alleges that "[t]he

State of Texas . . . has bused more than 6,200 immigrants to Washington, D.C.," another "2,000

immigrants to New York City and 300 immigrants to Chicago," and that "the State of Arizona

has bused over 1,000 immigrants to Washington, D.C."  AC ¶ 27.  Thus, even if Alianza were to

obtain injunctive relief to foreclose the State of Florida from proceeding with its own

transportation program, that would not stop Texas, Arizona, New York City, or any other state or

municipality.  *See*, *e.g.*, *Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.*, 958

F.3d 38, 49 (1st Cir. 2020) (dismissing claim for lack of redressability where non-parties "would

not be bound to treat [Plaintiff] differently in the event of an injunction or declaration of

unconstitutionality.").

As this indicates, Alianza lacks standing to pursue its claims here.  Its presence is unnecessary for the Doe Plaintiffs to pursue their own claims for compensatory damages, and both it and those individual Plaintiffs lack standing to pursue prospective relief.

IV.   THE VERTOL DEFENDANTS ARE NOT STATE ACTORS AND THEREFORE CANNOT BE LIABLE UNDER 42 U.S.C. § 1983

The Vertol Defendants are unquestionably private parties.  Private parties cannot be sued under 42 U.S.C. § 1983 except in certain rare circumstances when "the conduct complained of transpired under color of state law and . . . a deprivation of federally secured rights ensued." *Santiago v. Puerto Rico*, 655 F.3d 61, 68 (1st Cir. 2011).  Here, the Amended Complaint fails to plausibly allege that the Vertol Defendants acted under color of state law.  The Section 1983 claims against them, AC ¶¶ 211-31, 253-68, should therefore be dismissed.  *See Cruz-Arce v. Management Admin. Servs. Corp.*, 19 F.4th 538, 543-45 (1st Cir. 2021).

There are "three general ways in which a private party may become a state actor within the purview of [S]ection 1983": (1) by assuming a public function traditionally exclusively reserved to the State; (2) by taking action that was compelled by the state; or (3) by acting so closely with the state such that it may be fairly deemed a joint participant in state action.  *Id.* at 544 (citation omitted).  Plaintiffs have alleged no facts establishing any of these requirements.[8]

***The Public Function Test.***  "Under the public function test, state action inheres 'in the exercise by a private entity of powers traditionally *exclusively* reserved to the State.'"  *Santiago*, 655 F.3d at 69 (emphasis in original) (quoting *Jackson v. Metro Edison Co.*, 419 U.S. 345, 352

---

[8] The Amended Complaint alleges almost nothing about Mr. Montgomerie.  To the extent that any facts are alleged that could establish "state actor" status, none of them are specific to him (and none of them are sufficient as to Vertol itself, of course).  Being an officer or owner of a company alleged to be a state actor does not make an individual a state actor.  *Strahan v. AT&T Mobility LLC*, 270 F. Supp. 3d 535, 542 (D. Mass. 2017) (mall owner was not a state actor simply because he employed the mall security officers who arrested plaintiff).

(1974)).  "Exclusivity is an important qualifier, and its presence severely limits the range of eligible activities."  *Id.* (citation omitted).  As a result, "[t]he Supreme Court has found this aspect of the test to be satisfied only in narrowly circumscribed contexts . . . in which a particular function rests at the core of a state's sovereign responsibilities."  *Cruz-Arce*, 19 F.4th at 545 (collecting cases).

      This test plainly is not satisfied here.  Plaintiffs do not allege that the Vertol Defendants exercised any power that has historically been exclusively reserved to the state, nor could they plausibly do so.  Transporting people from one point to another, by airplane or otherwise, certainly is not such a power.  *See*, *e.g.*, *Santiago*, 655 F.3d at 69 (transportation of students to and from school is not an exclusive state function).  Like the maritime shipping services long held not to satisfy this test, air travel is "typically a function of the private sector."  *Rodriguez-Garcia v. Davila*, 904 F.2d 90, 98 (1st Cir. 1990).  The Vertol Defendants are therefore not state actors under the public function test.

      ***The State Compulsion Test.***  To establish state action under this test, "a plaintiff must demonstrate a particularly close tie between the state and the private party's conduct, such that the conduct may fairly be regarded as state action."  *Santiago*, 655 F.3d at 71 (citation omitted). This "requires more than the taking of action against a backdrop of applicable state regulations." *Id*.  Nor is acting "in accordance with the procedures outlined in [a] state statutory scheme" sufficient.  *Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 5 (1st Cir. 2005).

      The Amended Complaint does not allege that the State of Florida compelled the Vertol Defendants to do anything.  Plaintiffs make allegations about Florida's 2022 General Appropriations Act and the "Relocation Program" it authorized and funded, *see* AC ¶¶ 35-39, but allege nothing that compelled anyone to act as a result.  To the contrary, the Amended

- 19 -

Complaint alleges that FDOT "solicited bids from vendors to fly immigrants from Florida to other states." AC ¶ 40. It goes on to allege that "FDOT received three bids in response to its request for quotes," AC ¶ 43, and that "Defendant Vertol . . . submitted a bid, and ultimately secured the contract," AC ¶ 45. In other words, FDOT solicited bids, Vertol voluntarily submitted one, and Vertol was selected on a competitive basis to provide the services covered by the bid as it saw fit. That is not "state compulsion."

**The Joint Action Test.** Under the joint action test, "a plaintiff must show that the private party's actions are attributable to the state through a symbiotic relationship between the two." *Santiago*, 655 F.3d at 71 (citation omitted). An ordinary working relationship will not do. A showing of "mutual interdependence" is required. *Id.* (citation omitted). Courts weigh three factors in determining whether such "mutual interdependence" exists: (1) whether the private entity is, or is not, independent in the conduct of its day-to-day affairs; (2) whether the private party used public facilities to engage in the challenged conduct; and (3) whether the state shared in the profits from the private party's allegedly rights-depriving conduct. *Id.* (citation omitted). The first factor is the "most salient," *id.* (citation omitted), but the Amended Complaint fails to plead facts sufficient to support any of them.

First, Plaintiffs do not allege that the State of Florida participated in Vertol's day-to-day affairs. They allege only limited coordination with respect to the single so-called "Relocation Project." Second, Plaintiffs do not allege that Vertol or Mr. Montgomerie utilized Florida government facilities to engage in the challenged conduct. Third, Plaintiffs do not allege that Florida shared in Vertol's profits. Instead, their Amended Complaint alleges that the State of Florida paid Vertol. *See* AC ¶ 25. But it is well settled that the "[a]cts of . . . private contractors

do not become acts of the government by reason of their significant or even total engagement in performing public contracts." *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982).

Plaintiffs appear to assume that the Vertol Defendants acted under color of state law because they performed a government contract and were paid with public funds.  Put simply, however, "[a] private party cannot be transformed into a state actor simply because it is paid with government funds for providing a service." *Santiago*, 655 F.3d at 72.

V.   IF THE VERTOL DEFENDANTS WERE STATE ACTORS, THEY WOULD BE IMMUNE FROM LIABILITY

If, despite the failure of Plaintiffs' allegations to that effect, the Vertol Defendants were deemed state actors, they would then have qualified immunity from Plaintiffs' claims.  Private parties under contract to perform government functions are entitled to such qualified immunity "because they are the functional equivalent of public officials." *Frazier v. Bailey*, 957 F.2d 920, 929 (1st Cir. 1992).  This means they "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Here, the Amended Complaint does not allege that any identified conduct by a Vertol Defendant violated any clearly established statutory or constitutional right, much less that any reasonable person would have known that the conduct at issue violated such a right.

To the extent the Amended Complaint contains any allegations to this effect, they are wholly conclusory.  *See*, *e.g.*, AC ¶¶ 221-22, 226, 255-58, 263-66.  "[A] plaintiff must allege more than conduct that violates an 'abstract' constitutional principle; he must plead with particularity a concrete constitutional right." *Frazier*, 957 F.2d at 929 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  Similarly, the Amended Complaint does not even allege—much less plausibly allege—that a reasonable person would have known that any such

rights were violated.  Indeed, the Amended Complaint fails to allege that any such rights were

violated at all, much less by the Vertol Defendants specifically.  *See infra* at 22-30.

VI.   THE AMENDED COMPLAINT FAILS TO STATE ANY FEDERAL CLAIM
      AGAINST THE VERTOL DEFENDANTS

Plaintiffs purport to assert claims under both 42 U.S.C. §§ 1983 and 1985 against the

Vertol Defendants.  Even if those claims cleared the hurdles of state action (as to the former

statute) and qualified immunity, they must fail for the independent reason that Plaintiffs have

failed to allege facts sufficient to state a claim in either instance.

A.      Plaintiffs Fail To State a Claim Under Section 1983.

"To make out a Section 1983 claim, a plaintiff must allege facts sufficient to show that

the defendants acted under color of state law and caused the deprivation of federal rights." *Cruz-

Arce*¸ 19 F.4th at 543 (citation omitted).  The Vertol Defendants have already established that

they did not act "under color of state law." *See supra* at 18-21.  But Plaintiffs' Section 1983

claim against them also fails because it does not plausibly any action by the Vertol Defendants

that caused the deprivation of a federally protected right.

1.      Plaintiffs Fail To Allege a Violation of Substantive Due Process.

"Protections afforded by the substantive component of the Due Process Clause have

generally been limited to 'matters relating to marriage, family, procreation, and the right to

bodily integrity.'" *Freeman v. Town of Hudson*, 849 F. Supp. 2d 138, 154, n. 10 (D. Mass. 2012)

(quoting *Albright v. Oliver*, 510 U.S. 266, 272 (1994)).  Those issues are not in play here.  In

addition, "[w]hen a specific provision of the Constitution protects individuals against a particular

kind of [misconduct] by government actors, individuals seeking redress . . . must assert their

claims under that particular constitutional rubric instead of invoking the more generalized notion

of substantive due process." *S. Cnty. Sand & Gravel Co. v. Town of S. Kingstown*, 160 F.3d 834,

835 (1st Cir. 1998) (citation omitted); *accord Graham v. Connor*, 490 U.S. 386, 395 (1989).  To

try to meet this requirement, Plaintiffs contend that two specific provisions of the Constitution—

specifically the Equal Protection Clause and the Fourth Amendment, as applied to states via the

Fourteenth Amendment—were violated in this case.  *See* AC ¶¶ 224-31, 253-60, 261-68.  Their

claims must therefore be vetted under the "particular constitutional rubric" associated with those

provisions and not under substantive due process jurisprudence.  *See S. Cnty. Sand & Gravel

Co.*, 160 F.3d at 835 (citation omitted).

   Even if substantive due process were at issue here, however, the "'threshold question'"

for such a claim "'is whether the behavior . . . is so egregious, so outrageous, that it may be fairly

said to shock the contemporary conscience.'"  *Aguilar v. United States Immigration & Customs

Enforcement Div. of the Dep't of Homeland Sec.*, 510 F.3d 1, 21 (1st Cir. 2007) (quoting *Cnty. of

Sacramento v. Lewis*, 523 U.S. 833, 847, n. 8 (1998)).  The Supreme Court has acknowledged

the "particular need to preserve the constitutional proportions of constitutional claims, lest the

Constitution be demoted to what we have called a font of tort law."  *Lewis*, 523 U.S. at 847, n. 8.

"Consistent with this need to refrain from constitutionalizing ordinary misfeasance or

malfeasance, the 'shock the conscience' standard erects a high hurdle for would-be claimants."

*Aguilar*, 510 F.3d at 21.  "'Negligently inflicted harm is categorically beneath the threshold'"

needed to satisfy this test.  *Id.* (quoting *Lewis*, 523 U.S. at 849).  Historically, only deliberate

conduct "'intended to injure in some way unjustifiable by any government interest'" has been

sufficient to meet this test.  *Id.* (quoting *DePoutot v. Raffaelly*, 424 F.3d 112, 119 (1st Cir.

2005)).

   Plaintiffs' allegations do not clear this very high bar.  In *Aguilar*, for example, plaintiffs

challenged actions taken by federal immigration officials that included detaining immigrants,

transferring them to other jurisdictions, and separating families that had been detained together. *See* 510 F.3d at 22.  The First Circuit described the substantive due process claim as follows: "petitioners claim in essence that their immediate detention and swift transfer to distant DROs wreaked havoc with their right to make decisions about the care, custody, and control of their minor children, leaving many minors unattended." *Id.*  But even those allegations were not "so 'extreme, egregious, or outrageously offensive' as to cross the 'shock the conscience' line." *Id.* (quoting *DePoutot*, 424 F.3d at 119).

In part, this was because the plaintiffs' allegations of willfulness were undermined by the fact that the defendant "took at least some measures to alleviate any resultant harm." *Id.* Specifically, defendant had "attempted to coordinate with social services agencies to assure adequate care of dependent children and in fact took affirmative steps before and after the [challenged conduct] to attend to family needs." *Id.* at 22, n. 5.

Here, the Amended Complaint makes allegations that similarly undercut any argument of willfulness or malicious intent.  Take the case of "Yanet Doe."  The Amended Complaint alleges that, prior to meeting Defendant Huerta, she and her family had been forced out of a shelter and were "living on the street."  AC ¶ 77.  But Defendant Huerta "picked up Plaintiff Yanet Doe and her family and took them to a hotel, where they stayed for five days."  AC ¶ 81.  Defendant Huerta then brought Yanet Doe and her family "meals and provide[d] them basic necessities" during this time.  AC ¶ 81.  And despite claiming that no one was expecting the Doe Plaintiffs in Martha's Vineyard, the Amended Complaint alleges that they encountered "waiting vans" upon arrival that "took them to a local community center."  AC ¶ 149.  These "measures to alleviate any resultant harm" doom any substantive due process claim here, just as they did in *Aguilar*. *See* 510 F.3d at 22.

2.     Plaintiffs Were Not Denied Equal Protection Under the Law.

Plaintiffs' equal protection claim can fare no better.  "[F]or an equal protection claim to survive a motion to dismiss, a plaintiff must allege facts plausibly demonstrating that 'compared with others similarly situated, [the plaintiff was] selectively treated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'"  *Mulero-Carrillo v. Roman-Hernandez*, 790 F.3d 99, 106 (1st Cir. 2015) (quoting *Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp.*, 246 F.3d 1, 7 (1st Cir. 2001)).  Where, as here, the claim is intentional discrimination, "the plaintiff must plead and prove that the defendant acted with discriminatory purpose." *Iqbal*, 556 U.S. at 676 (citation omitted).  This "requires more than 'intent as volition or intent as awareness of consequences.'" *Id.* (citation omitted).  "It instead involves a decisionmaker's undertaking a course of action because of, not merely in spite of, the action's adverse effects upon an identifiable group." *Id.* at 676-77 (cleaned up) (citation omitted).

Plaintiffs make no such showing here.  To the extent there are any allegations of discriminatory intent, they are conclusory and entirely devoid of factual support.  The Amended Complaint itself acknowledges that Vertol was simply doing the job it was hired to do. AC ¶¶ 45, 48-55.  The only motivation ascribable to the Vertol Defendants was therefore to perform the valuable contract Vertol had entered into with FDOT.  This fact, along with the legitimate policy-based motivations that the Amended Complaint also acknowledges (and which the State Defendants address in their motion), *see* AC ¶¶ 33, 180, further demonstrate how Plaintiffs have failed to make any plausible allegation that the Vertol Defendants took any action "because of, not merely in spite of, the action's adverse effects upon an identifiable group." *Iqbal*, 556 U.S. at 677 (cleaned up) (citation omitted).  *See also*, *e.g.*, *id.* at 681-82; *Buchannan v. Cty. of Bolivar*, 99 F.3d 1352, 1356-57 (6th Cir. 1996).

- 25 -

3.      Plaintiffs Were Not Denied Procedural Due Process.

Plaintiffs' procedural due process claim, *see* AC ¶¶ 253-60, is similarly doomed.  The Amended Complaint alleges that Plaintiffs have "a protected liberty and/or property interest in having their federal immigration claims proceed without state interference," and that the Vertol Defendants encroached upon that right by "interfering with [their] ability to participate in their federal immigration proceedings."  AC ¶¶ 255-56.  But Plaintiffs fail to allege any facts establishing a protectable interest, or an unlawful infringement of it by the Vertol Defendants, that would support this conclusory assertion.

"A due process claim requires that a cognizable liberty or property interest be at stake." *DaCosta v. Gonzales*, 449 F.3d 45, 50 (1st Cir. 2006) (citation omitted).  But "the range of interests protected by procedural due process is not infinite."  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 570 (1972).  Instead, "the words 'liberty' and 'property' in the Due Process Clause of the Fourteenth Amendment must be given some meaning."  *Id.* at 572.

The asserted interest of the Doe Plaintiffs is "having their federal immigration claims proceed without state interference."  AC ¶ 255.  For an interest to be protectable, however, "a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  *Roth*, 408 U.S. at 577.  There is no such entitlement here.  *See Jupiter v. Ashcroft*, 396 F.3d 487, 492 (1st Cir. 2005) ("Adjustment of status is not an entitlement, but, rather, a matter of administrative discretion") (quotation and citation omitted).  Immigration proceedings and the oft-resulting adjustment of one's status "is a discretionary form of relief" that "does not rise to the level of such a protected interest."  *DaCosta*, 449 F.3d at 50 (citation omitted).  Having therefore failed to plead the existence of a constitutionally protectible interest, Plaintiffs have failed to make out any procedural due process claim.

Even if Plaintiffs had a protectable interest, however, they have failed to allege any actionable interference with it.  While they contend that their transport to Martha's Vineyard "required them to undergo the additional procedure of updating immigration authorities on their address of residence," they admit that they were "provided with U.S. Citizenship and Immigration Services' Form AR-11, an immigration form used to process changes of applicants' addresses with USCIS."  AC ¶ 256-57.  This is tantamount to an admission that the Doe Plaintiffs could change address without any prejudice whatsoever to their ongoing immigration proceedings—and that the Vertol Defendants assisted Plaintiffs in reporting that change as they were required to do.  That is the opposite of "interference."

    4.    Plaintiffs' Fourth Amendment Claim Fails for Lack of a "Seizure."

Plaintiffs' Fourth Amendment claim fails for one simple reason:  their allegations, even taken as true, do not establish that any "seizure" occurred.  A Fourth Amendment claim typically involves allegations of the use of physical force, or threats of the same.  Neither are alleged here. Yet even when such draconian means are alleged, "neither the use of physical force nor a show of authority amounts to a seizure unless it results in the 'intentional acquisition of physical control' over the subject and causes a 'termination of [his or her] freedom of movement.'" *Britton v. Maloney*, 196 F.3d 24, 30 (1st Cir. 1999) (quoting *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596-97 (1989)).  "In order for a seizure to occur, the subject must 'yield' to the assertion of authority over him and thereby have his liberty restrained."  *Id.* (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)).

The Amended Complaint does not allege the use of *any* physical force or other conduct by the Vertol Defendants amounting to a "show of authority."  It lacks any plausible allegations that the Vertol Defendants intentionally acquired physical control over Plaintiffs or terminated their freedom of movement.  To the contrary, Plaintiffs concede that they travelled to hotels

voluntarily, *see* AC ¶¶ 81-82, and "accepted Defendants' offers of transportation," AC ¶ 264.

These allegations fall woefully short of asserting a plausible constitutional claim.  *See Britton*,

196 F.3d at 30.  *See also Nieves v. McSweeney*, 241 F.3d 46, 56 (1st Cir. 2001).

      B.      <u>Plaintiffs Fail To State a Claim Under Section 1985.</u>

      Plaintiffs' Section 1985 conspiracy claim, *see* AC ¶¶ 269-78, fails for reasons similar to

the fatal deficiencies in their Section 1983 claim.  To plead a claim under Section 1985(3), a

plaintiff must allege "the existence of (1) a conspiracy, (2) a conspiratorial purpose to deprive a

person or class of persons, directly or indirectly, of the equal protection of the laws or of equal

privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and

(4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected

right or privilege." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996).  "Moreover, a plaintiff

may recover 'only when the conspiratorial conduct of which he complains is propelled by some

racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Perkins v. Cty. of*

*Attleboro*, 969 F. Supp. 2d 158, 178 (D. Mass. 2013) (quoting *Aulson*, 83 F.3d at 3) (cleaned up).

The Amended Complaint does not satisfy these requirements.

      First, Plaintiffs fail to allege any plausible violation of the Equal Protection Clause (or

any other specific Constitutional provision).  *See supra* at 25-26.  Because no such constitutional

violation has been alleged, "the conspiracy claim has no purchase." *Jeneski v. Cty. of*

*Worcester*, 476 F.3d 14, 18 (1st Cir. 2007).

      Second, Plaintiffs fail adequately to allege that the Vertol Defendants acted with

discriminatory intent.  Plaintiffs attempt to avoid this conclusion by alleging that they suffered a

disparate impact because of their national origin.  *See* AC ¶ 75 ("Ultimately, all of the

immigrants who were transported to Martha's Vineyard were Latin immigrants from Venezuela

or Peru.").  But "because Latinos make up a large share of the unauthorized alien population, one

- 28 -

would expect them to make up an outsized share of" immigration programs dealing with

unauthorized aliens.  *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct.

1891, 1915-16 (2020) (plurality opinion) (citation omitted).  In other words, "[i]t should come as

no surprise that a legitimate policy" of transporting recently processed migrants at the border

"would produce a disparate, incidental impact on [Venezuelans and Peruvians], even though the

purpose of the policy was not to target [Venezuelans] or [Peruvians]."  *Iqbal*, 556 U.S. at 681.[9]

Rather than this common-sense explanation for any alleged "disparate impact," however,

Plaintiffs ask the Court to infer that the Vertol Defendants acted with discriminatory intent.

First, this conflicts with the facts pleaded, *see* AC ¶¶ 33, 45, 48-55, 180, which establish non-

discriminatory commercial and policy-based motivations for performing a contract with the State

of Florida.  *See also supra* at 3.  Second, such an inference is simply impermissible when it

conflicts with common sense, as it does here.  *See Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263,

275 (1st Cir. 2022) ("Common sense . . . suggests that [Defendants] would have had non-race-

based reasons.") (citation omitted).

VII.   THE AMENDED COMPLAINT FAILS TO PLAUSIBLY ALLEGE ANY STATE
       LAW CLAIM AGAINST THE VERTOL DEFENDANTS

Plaintiffs allege diversity jurisdiction as to their state law claims.  *See* AC ¶ 10.  But they

fail to allege which state's law they believe applies to those claims.  *See* AC ¶¶ 279-335.

Massachusetts choice of law rules apply to that determination.  *Klaxon Co. v. Stentor Elec. Mfg.

Co.*, 313 U.S. 487, 496 (1941); *accord*, *e.g.*, *Boston Hides & Furs v. Sumitomo Bank*, 870 F.

Supp. 1153, 1159 (D. Mass. 1994).  The Commonwealth follows "a functional choice-of-law

_____

[9] The United States has officially recognized a "surge" of migrants at the Texas border,
particularly ones from Venezuela, and a surge in the number of "conditional releases" of those
migrants into the United States.  *See* 87 Fed. Reg. at 63, 508-09.

approach that responds to the interests of the parties, the States involved, and the interstate

system as a whole," an approach "explicitly guided by the Restatement (Second) of Conflict of

Laws." *UBS Fin. Servs., Inc. v. Aliberti*, 483 Mass. 396, 406, n. 12 (2019) (citation omitted);

*accord*, *e.g.*, *Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 41 (1st Cir. 2020) (citing

*Bushkin Assocs., Inc. v. Raytheon Co.*, 393 Mass. 622, 632 (1985)).

Under Section 145 of the Restatement, "'[t]he rights and liabilities of the parties with

respect to an issue in tort are determined by the local law of the state which, with respect to that

issue, has the most significant relationship to the occurrence and the parties' as determined by

factors laid out in § 6 of the Restatement." *UBS Fin. Servs.*, 483 Mass. at 406, n. 12.  *See also*,

*e.g.*, *Williams v. Astra USA, Inc.*, 68 F. Supp. 2d 29, 36, n. 1 (D. Mass. 1999) (citation omitted).

Here, Massachusetts does not, when compared to Florida and Texas, have a significant

relationship with the parties or the events in this case.  Plaintiffs are suing senior Florida

officials—including its Governor—Florida residents, and a Florida-based company over the

implementation of a Florida law intended to advance Florida's public policy interests.  In that

context, Florida's law of sovereign immunity will also play a substantial part (as Plaintiffs

themselves recognize, *see* AC ¶ 314).  *See* Restatement (Second) of Conflict of Laws § 145 cmt.

d ("[T]he local law of the state where the parties are domiciled, rather than the local law of the

state of conduct and injury, may be applied to determine whether one party is immune from tort

liability."); *In re Air Crash Disaster at Boston, Mass. on July 31, 1973*, 399 F. Supp. 1106, 1112

(D. Mass. 1975) ("The interest of each state in the application of its own law is an important

consideration.").  As this indicates, Florida has the most significant relationship to the issues

before the Court.  Finally, because Plaintiffs have alleged at least one state law claim that clearly

does not exist under Texas law, negligent infliction of emotional distress, AC ¶¶ 306-15, it seems

likely that they are attempting to choose Florida law.[10]  Florida law should therefore apply.

Regardless, Plaintiffs have failed to state any claim upon which relief could be granted.

>   A.   <u>Plaintiffs Fail To State a False Imprisonment Claim.</u>

A false-imprisonment claim requires allegations of facts demonstrating: (1) "the unlawful

detention and deprivation of liberty of a person" (2) "against that person's will" (3) "without

legal authority or 'color of authority'" and (4) "which is unreasonable and unwarranted under the

circumstances." *Harder v. Edwards*, 174 So. 3d 524, 530 (Fla. Dist. Ct. App. 2015) (citation

omitted).  *See also Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002) (similar)

(citation omitted).  Plaintiffs cannot establish the first element, unlawful detention, for the same

reasons that doomed their Fourth Amendment claim.  *See supra* at 27-28.  The Amended

Complaint similarly fails plausibly to allege that any Plaintiff was confined, detained, or

otherwise restrained against his or her will.  This alone is fatal to a claim of false imprisonment.

*See*, *e.g.*, *Harder*, 174 So. 3d at 530.  *See also Randall's Food Markets, Inc. v. Johnson*, 891

S.W.2d 640, 645-46 (Tex. 1995).  To the contrary, the Amended Complaint affirmatively

establishes that the Doe Plaintiffs willingly accepted the transportation and lodging offered them.

*See*, *e.g.*, *supra* at 4-5.[11]

---

[10] "Texas law does not recognize" claims for "a negligent-infliction-of-emotional-distress." *Retana v. Twitter, Inc*., 419 F. Supp. 3d 989, 999 (N.D. Tex. 2019) (citation omitted). *See also Boyles v. Kerr*, 855 S.W.2d 593, 594 (Tex. 1993).

[11] Nor do Plaintiffs plead facts plausibly establishing any "unreasonable" confinement. *See*, *e.g.*, *Rivers v. Dillards Dep't Store, Inc*., 698 So. 2d 1328, 1331 (Fla. Dist. Ct. App. 1997); *accord, e.g.*, *Paylan v. Teitelbaum*, No. 15-159, 2018 WL 1189487, at *14-15 (N.D. Fla. Jan. 11, 2018). The Doe Plaintiffs concede that they were not "aware" of their purported "confinement" on a flight that was not going to a major metropolitan destination until "just minutes before landing in Martha's Vineyard." AC ¶¶ 134, 143. Upon landing, they then clearly had "a reasonable means of escape," *Turner v. Charter Sch. USA, Inc.*, No. 18-24005, 2020 WL 620392, at *9-10 (S.D. Fla. Jan. 14, 2020) (citation omitted), meaning that they were not "confined."

B.     Plaintiffs Fail To State a Fraud Claim.

To state a claim for fraud of the kind attempted in the Amended Complaint, Plaintiffs would have to allege facts plausibly establishing: "'(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation.'" *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (citation omitted) (emphasis removed); *accord, e.g.*, *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (similar) (citation omitted). Plaintiffs have not adequately alleged these elements.

Plaintiffs' fraud claim centers on three alleged misstatements: (1) that their flights were arranged by an "anonymous benefactor"; (2) that their destination was to be a "city"; and (3) that they would receive certain benefits when they arrived. AC ¶¶ 22, 71, 82, 84, 118. But none of these alleged misstatements could plausibly be considered material representations on which the Doe Plaintiffs could reasonably have relied to their detriment.

First, any statement that the flights were arranged by an "anonymous benefactor" as opposed to detailing the various roles of the Defendants was not a material misstatement. The only allegation that Defendants' identities would have been material is the conclusory assertion that Plaintiffs would not have agreed to partake in a "political stunt." AC ¶¶ 159, 162, 168. But "many immigrants have no place to go once they are turned out by the Migrant Resource Center," AC ¶¶ 74, 77, 89; Plaintiff Jesus Doe was sleeping "on the streets," AC ¶ 89; and Plaintiff Yanet Doe and her family were "living on the street," AC ¶ 77. Given these conditions, it is implausible that the precise identity of those offering free relief from these conditions was material. *See Hill v. Celebrity Cruises, Inc.*, No. 09-23815, 2010 WL 11442595, at *6 (S.D. Fla. Sept. 14, 2010) (dismissing negligent misrepresentation claim because plaintiff failed to show he

would have made a different decision absent defendant's alleged misrepresentations); *Casstevens v. Smith*, 269 S.W.3d 222, 232 (Tex. 2008) (finding "a vague statement professing an attitude of good faith" insufficient to support a fraud claim).

Second, claiming that one Defendant's reference to relocation to a "city" was a material misrepresentation is similarly wrong (and conflicts with other allegations made by Plaintiffs). Plaintiffs say that "Yanet Doe" asked Defendant Huerta "whether she could arrange for her family to go to New York" and that Defendant Huerta answered (honestly) that "they would likely go to Washington, D.C., or another sanctuary *state*."  AC ¶ 78 (emphasis added). Similarly, Plaintiffs allege that "Jesus Doe" was told that "[Huerta] could get him on a plane to Washington, Oregon, or Massachusetts, and could pay for him to stay in a hotel while he waited for the flight."  AC ¶ 92.  Plaintiffs agreed to go despite not knowing exactly where they would be going—proving conclusively that the ultimate destination being a "city" was not material.

Nor could any alleged statements that Plaintiffs would have access to employment, housing, legal assistance, and other benefits when they arrived have been material misstatements. The Amended Complaint lacks any specifics on this point, such as the job the Plaintiffs would be performing, whom they would be performing it for, what their housing situation would be, or the provider or nature of any legal assistance, making the alleged generic statements immaterial. *See*, *e.g.*, *Sader v. Padron*, No. 18-22891, 2018 WL 7287159, at *8 (S.D. Fla. Dec. 19, 2018); *Casstevens*, 269 S.W.3d at 232.  Given that even Ms. Huerta did not initially know Plaintiffs' ultimate destination—a fact that she was open with Plaintiffs about, as discussed above—further

undermines any argument that these general statements were material (or could reasonably have been relied upon, for that matter).[12]

Finally, the sparse allegations that Plaintiffs do make fail to satisfy Federal Rule of Civil Procedure Rule 9(b).  *See Katz v. Belveron Real Est. Partners, LLC*, 28 F.4th 300, 308 (1st Cir. 2022) ("'Rule 9(b)'s heightened pleading requirements apply not only to claims of fraud simpliciter but also to related claims as long as the central allegations of those claims effectively charge fraud.'") (cleaned up) (citation omitted).  Rule 9(b) requires "'a claimant . . .  [to] specify what the underlying misrepresentation was, who made it, . . .  when and where it was made,'" *id*. at 308 (citation omitted), and "the basis for inferring scienter," *N. Am. Cath. Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009).  "'Mere allegations of fraud, corruption or conspiracy, averments to conditions of mind, or referrals to plans and schemes are too conclusional to satisfy the particularity requirement.'"  *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir. 1996) (citation omitted); *accord United States ex rel. Kelly v. Novartis Pharms. Corp.*, 827 F.3d 5, 13 (1st Cir. 2016) ("Conclusory allegations and references to 'plans and schemes' are not sufficient.") (citation omitted).  Here, the Amended Complaint's "'allegations of fraud, . . .  averments to conditions of mind, [and] referrals to plans and schemes are too conclusorial to satisfy the particularity requirement, no matter how many times such accusations are repeated.'" *Doyle*, 104 F.3d at 194 (citation omitted).

---

[12] Any alleged misrepresentations in documents given to the Doe Defendants in flight, *see* AC ¶¶ 134-41, likewise do not support a fraud claim.  Those Plaintiffs could not have relied on those documents to their detriment.  The decision to accept the travel offered them could not have been based on information they received "just minutes before landing."  AC ¶ 134.

C.      Plaintiffs Fail To State a Claim for Intentional Infliction of Emotional Distress.

"Under Florida law, a claim for intentional infliction of emotional distress has four elements: "(1) deliberate or reckless infliction of mental suffering, (2) outrageous conduct, (3) the conduct caused the emotional distress, and (4) the emotional distress was severe." *Lincoln v. Fla. Gas Transmission Co. LLC*, 608 F. App'x 721, 722 (11th Cir. 2015) (citation omitted).  *See also Guthrie v. Tifco Indus.*, 941 F.2d 374, 379 (5th Cir. 1991) (similar) (citation omitted). Plaintiffs have not adequately alleged facts satisfying all four of these elements.

It is not enough that "the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278 (Fla. 1985). *See also Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 817-18 (Tex. 2005) (similar) (citation omitted).  Liability exists "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Metro. Life Ins.*, 467 So. 2d at 279; *see also Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 955 (Fla. Dist. Ct. App. 2017) ("[E]ven purposeful conduct that one knows is going to hurt another is not outrageous enough to support a claim."); *see also Zaremba v. Cliburn*, 949 S.W.2d 822, 828 (Tex. App. 1997) (similar).

Furthermore, the conduct of which Plaintiffs accuse the Vertol Defendants would not be "outrageous" even if true.  "Mere deception . . . does not amount to the extreme and outrageous conduct required for a claim of intentional infliction of emotional distress." *Grasso v. Ard Contracting, Inc.*, No. 21-310, 2022 WL 2654990, at *3 (N.D. Fla. June 8, 2022) (citation omitted).  Defendants provided food and shelter to Plaintiffs, who had previously been homeless

with no access to any support or resources, AC ¶¶ 77, 89, 193, and transported them to what is widely considered a "sanctuary" jurisdiction.  Even if Martha's Vineyard was not Plaintiffs' preferred destination, the Vertol Defendants' alleged conduct falls far short of "outrageous." *See*, *e.g.*, *Clemente v. Horne*, 707 So. 2d 865, 867 (Fla. Dist. Ct. App. 1998) ("anxiety and/or stress associated with being constructively evicted from one's residence . . . and not having suitable alternative housing" insufficient to state a claim) (citation omitted); *Kantrow v. Celebrity Cruises, Inc.*, 510 F. Supp. 3d 1311, 1325-26 (S.D. Fla. 2020) (allegations that cruise ship "lied, concealed, and misrepresented to its passengers that everybody onboard the Eclipse was healthy," and thus took no safety precautions, insufficient to state a claim).  *See also Creditwatch*, 157 S.W.3d at 817-18 ("Assuming all this is true, it was callous, meddlesome, mean-spirited, officious, overbearing, and vindictive—but not 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'") (citation omitted).

Similarly, Plaintiffs fail to allege any facts demonstrating that the Doe Plaintiffs' emotional distress was "so severe that no reasonable person could be expected to endure it." *Kim v. Jung Hyun Chang*, 249 So. 3d 1300, 1306 (Fla. Dist. Ct. App. 2018) (citation omitted). "[S]ignificant feelings of fright, shame, worry, and humiliation . . . occasioned by the acts of others are, even if regrettable, an unavoidable part of living in society." *Id.* at 1306. *See also Patton v. United Parcel Serv., Inc.*, 910 F. Supp. 1250, 1271 (S.D. Tex. 1995) (citation omitted); *Behringer v. Behringer*, 884 S.W.2d 839, 844 (Tex. App. 1994) (citation omitted).  The Doe Plaintiffs allege that they felt "scared and confused," AC ¶ 155, "terrified," AC ¶ 170, "helpless, defrauded, desperate, anxious," AC ¶¶ 156, 160, 164, 169, and distrustful, AC ¶ 157.  Some of them allegedly experienced asthmatic symptoms, AC ¶ 169, lack of sleep, AC ¶¶ 161, 165,

vertigo, AC ¶ 165, headaches, AC ¶ 165, and "harm to dignity and autonomy," AC ¶¶ 157, 161, 166.  They do not allege that they suffered severe symptoms, such as depression or suicidal thoughts, debilitating headaches, or post-traumatic stress disorder, or that any symptoms continue.  *See* Restatement (Second) of Torts § 46 cmts. j, k; *Williams v. Worldwide Flight SVCS., Inc.*, 877 So. 2d 869, 870 (Fla. Dist. Ct. App. 2004).  The emotional distress they allege they suffered simply is not "severe."  *Kim*, 249 So. 3d at 1306; *accord Patton*, 910 F. Supp. at 1272 (headaches, insomnia, physical exhaustion, and loss of motivation not severe emotional distress under Texas law) (citation omitted).

      D.    <u>Plaintiffs Fail To State a Claim for Negligent Infliction of Emotional Distress.</u>

Stating a claim for negligent infliction of emotional distress where a plaintiff "has not suffered an impact" requires that "the complained-of mental distress . . . be manifested by physical injury," among other things.  *Willis v. Gami Golden Glades, LLC*, 967 So. 2d 846, 850 (Fla. 2007) (cleaned up) (citation omitted).  Plaintiffs allege "headaches, difficulty sleeping, disorientation, and behavioral changes."  AC ¶ 312.  But such symptoms are insufficient under Florida law.  *See, e.g.*, *Elliott v. Elliott*, 58 So. 3d 878, 882 (Fla. Dist. Ct. App. 2011) ("headaches, diabetes, sleep apnea, stress, insomnia, anxiety, loss of appetite, hair loss, and bowel trouble . . . are not the sort of the discernable physical injuries discussed in [Florida precedent]").  Plaintiffs simply do not allege facts sufficient to state a claim for negligent infliction of emotional distress.

      E.    <u>Plaintiffs Fail To State a Civil Conspiracy Claim.</u>

Civil conspiracy requires:  "(1) an agreement between two or more parties; (2) to do an unlawful act or a lawful act by unlawful means; (3) the execution of some overt act in pursuance of the conspiracy; and (4) damage to the plaintiff as a result of said acts."  *Plastiquim S.A. v. Odebrecht Constr., Inc.*, 337 So. 3d 1270, 1273 (Fla. Ct. App. 2022) (citation omitted).  But "the

gist of a civil action for conspiracy is not conspiracy itself but the civil wrong which is done pursuant to the conspiracy." *Berger v. Levin*, 231 So. 2d 875, 877 (Fla. Ct. App. 1970) (citation omitted).  Plaintiffs have failed to state a claim for any such "civil wrong," so their conspiracy claim must also fail.  *Kahama VI, LLC v. HJH, LLC*, No. 11-2029, 2013 WL 6511731, at *4 (M.D. Fla. Dec. 12, 2013); *accord*, *e.g.*, *Tummel v. Milane*, 787 F. App'x 226, 227 (5th Cir. 2019) (Texas law); *Enter. Crude GP LLC v. Sealy Partners, LLC*, 614 S.W.3d 283, 308-09 (Tex. App. 2020) (same).

Furthermore, the only agreement alleged by Plaintiffs is the Vertol Defendant's contract with the State of Florida.  *See*, *e.g.*, AC ¶ 319.  Plaintiffs have not adequately alleged any overt act in furtherance of a supposed conspiracy with the State of Florida or its officials, only that the Vertol Defendants performed a contract which they had no reason to believe was unlawful.  *See Francois v. Hatami*, 565 F. Supp. 3d 1259, 1269 (S.D. Fla. 2021) (dismissing conspiracy claim because alleged overt act—execution of contract—was not an act separate from the conspiracy, but rather constituted the conspiracy itself).[13]

### F.    Plaintiffs Fail To State an Aiding and Abetting Claim.

It is unclear the extent to which Florida law recognizes a civil claim for aiding and abetting.  At best, some courts have "assumed" that such a claim may exist for aiding and abetting fraud.  *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1097 (11th Cir. 2017) (citation omitted).  Any such claim—if it exists—would require adequately pleading an

---

[13] Under Florida law, a complaint must "set forth clear, positive, and *specific* allegations of civil conspiracy."  *World Class Yachts, Inc. v. Murphy*, 731 So. 2d 798, 799 (Fla. Ct. App. 1999) (emphasis added).  Plaintiffs' allegations fail this test as well.

underlying tort by someone else, the supposed aider and abettor's "knowledge" of it, and "substantial assistance" in its commission.  *See id.* at 1097-98 (citation omitted).[14]

Plaintiffs have not adequately alleged any tort claim against the other Defendants.  They have also failed to allege knowing and substantial assistance by the Vertol Defendants.  By analogy to fraud claims, this would require allegations of fact plausibly demonstrating that the Vertol Defendants, in performing their "ordinary business" of air transport, "actually knew" that the "transactions" in which they were engaging "were assisting . . . in committing a *specific* tort." *Id.* at 1098 (cleaned up) (citation omitted) (emphasis added).  None of Plaintiffs' allegations satisfy this test.

VIII.   PLAINTIFFS' ALLEGATIONS ARE PARTICULARLY INADEQUATE AS TO MR. MONTGOMERIE

The entire Amended Complaint is fatally defective.  But there was particularly no good faith basis for suing Mr. Montgomerie.  As noted earlier, *see supra* at 19, n. 9, the Amended Complaint barely mentions him.  Its most relevant allegation is that he was "in close communication with Defendants Keefe and Huerta to execute the transportation of immigrants to Martha's Vineyard and was present" (not in Massachusetts) "for a portion of the flights to Martha's Vineyard."  AC ¶ 26.  Plaintiffs do not allege that he made any misrepresentations to them, directed Ms. Huerta to do so, or even that he knew of any alleged misrepresentations.  His company was doing no more than performing a contract for services that he had every reason to believe was legal under Florida law.  Absent any allegations of more direct involvement in

---

[14] To the extent Texas law recognizes aiding and abetting claims, *see Cruden Bay Holdings, LLC v. Jezierski*, No. 21-01170, 2022 WL 447080, at *5 (N.D. Tex. Feb. 14, 2022); *United Healthcare Services, Inc. v. Next Health, LLC*, No. 17-00243, 2021 WL 764035, at *7 (N.D. Tex. Feb. 26, 2021), it may use a similar test, *see, e.g.*, *Johns v. Kaelblein*, 644 F. App'x 325, 327 (5th Cir. 2016) (citation omitted); *Lloyd v. Jones*, No. 18-211, 2019 WL 4786874, at *14 (E.D. Tex. Sept. 10, 2019) (citation omitted).

allegedly tortious conduct, he is not properly a defendant—and certainly not in this Court.  *See*, *e.g.*, *Parker v. Landry*, 935 F.3d 9, 15 (1st Cir. 2019) (one's "*own* acts or omissions must work a constitutional violation" to trigger liability) (citation omitted) (emphasis added).

<u>Conclusion</u>

For the reasons stated above, this Court should dismiss all claims against the Vertol Defendants, with prejudice, or transfer this action to a proper venue.

Dated: February 28, 2023

NIXON PEABODY LLP

 /s/ Brian T. Kelly
Brian T. Kelly (BBO No. 549566)
Christopher J. Stevens (admitted *pro hac vice*)
Nixon Peabody LLP
Exchange Place
53 State Street
Boston, Massachusetts 02109-2835
Telephone:  617-345-1000
Facsimile:  855-714-9513
bkelly@nixonpeabody.com

Attorneys for Defendants Vertol Systems
Company, Inc. and James Montgomerie

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the forgoing was filed electronically on February 28, 2023, and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing.

/s/ Brian T. Kelly
Brian T. Kelly
Nixon Peabody LLP
Exchange Place
53 State Street
Boston, Massachusetts 02109-2835
Telephone:  617-345-1000
Facsimile:  855-714-9513
bkelly@nixonpeabody.com

Attorneys for Defendants Vertol Systems
Company, Inc. and James Montgomerie

- 41 -