UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

———————————————————————————

ALIANZA AMERICAS, YANET DOE,
PABLO DOE, and JESUS DOE, on behalf of
themselves and all others similarly situated,

      Plaintiffs,

v.

RONALD D. DESANTIS, Governor of Florida, in his
official and personal capacities; JARED W. PERDUE,
Secretary of the Florida Department of Transportation, in
his official and personal capacities; LAWRENCE A.
KEEFE, Florida Public Safety Czar, in his official and
personal capacities; JAMES UTHMEIER, Chief of Staff
to Florida Governor, in his official and personal capacities;
STATE OF FLORIDA; THE FLORIDA DEPARTMENT
OF TRANSPORTATION; JAMES MONTGOMERIE;
PERLA HUERTA; and VERTOL SYSTEMS
COMPANY, INC.,

      Defendants.

———————————————————————————

No. 1:22-cv-11550-ADB

**Leave to File
Oversize Brief Granted
on February 24, 2023**

**PERLA HUERTA'S BRIEF IN SUPPORT OF HER MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL
JURISDICTION, LACK OF SUBJECT-MATTER JURISDICTION, IMPROPER
<u>VENUE, AND FAILURE TO STATE A CLAIM</u>**

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................II

TABLE OF AUTHORITIES ......................................................................................... IV

INTRODUCTION ...........................................................................................................1

BACKGROUND .............................................................................................................4

ARGUMENT ..................................................................................................................6

I.      LEGAL STANDARD .............................................................................................6

II.     MS. HUERTA IS NOT SUBJECT TO PERSONAL JURISDICTION IN THE
DISTRICT OF MASSACHUSETTS, AND VENUE IS IMPROPER...............................7

        A.     The Massachusetts Long-Arm Statute Does Not Confer Personal
Jurisdiction Over Ms. Huerta ....................................................................7

        B.     Exercising Personal Jurisdiction Over Ms. Huerta Would Violate Due
Process ...................................................................................................11

        C.     The District of Massachusetts is an Improper Venue ...........................12

III.    ALL SECTION 1983 CLAIMS SHOULD BE DISMISSED ...........................12

        A.     Ms. Huerta Is Not a State Actor.............................................................12

        B.     If Ms. Huerta Were a State Actor, She Would Be Immune from Liability ..........15

        C.     Plaintiffs Do Not Plausibly Allege Any Deprivation of Their
Constitutional Rights ..............................................................................15

                1.     Plaintiffs Were Not Denied Equal Protection Under the Law..................15

                2.     Plaintiffs Fail to Allege Violations of Substantive or Procedural
Due Process or Fourth Amendment Seizure ...............................................18

IV.    PLAINTIFFS HAVE NOT STATED A CLAIM UNDER SECTION 1985 ...................18

V.     PLAINTIFFS DO NOT STATE ANY STATE LAW CLAIM AGAINST MS.
HUERTA ....................................................................................................................19

        A.     Plaintiffs Have Not Adequately Alleged that Ms. Huerta Engaged in Fraud........20

B.  Plaintiffs Have Not Stated a Claim for Intentional Infliction of Emotional Distress ................................................................................................................. 25

1.  Plaintiffs Have Not Plausibly Alleged Outrageous Conduct under Either Florida or Texas Law ...................................................................... 25

2.  Plaintiffs Have Not Plausibly Alleged Severe Emotional Distress under Either Florida or Texas Law .......................................................... 27

C.  Plaintiffs Do Not State Claims for False Imprisonment, Negligent Infliction of Emotional Distress, Civil Conspiracy, or Aiding and Abetting ........ 29

VI.  ALIANZA AMERICAS LACKS STANDING FOR ALL CLAIMS, AND INDIVIDUAL PLAINTIFFS LACK STANDING FOR MOST OF THE RELIEF THEY SEEK ................................................................................................................. 30

CONCLUSION ................................................................................................................. 30

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                                                        <u>Pages</u>

*Ace Am. Ins. Co. v. Oyster Harbors Marine, Inc.*,
   310 F. Supp. 3d 295, 302 (D. Mass. Feb. 23, 2018) ..................................................... 7

*Artuso v. Vertex Pharms., Inc.,*
   637 F.3d 1, 9 (1st Cir. 2011) ......................................................................................... 28

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................... 6, 16, 18

*Azumi LLC v. Lott & Fischer, PL,*
   No. 22-cv-22598-BLOOM/Otazo-Reyes,
   2022 WL 3369197 (D. Mass. Aug. 16, 2022) ................................................................ 8

*Behringer v. Behringer*,
   884 S.W.2d 839, 844 (Tex. App. 1994) ........................................................................ 28

*Bohnenberger v. MCBC Hydra Boats, LLC*,
   No. 16-11368, 2017 WL 3976566 (D. Mass. Sept. 7, 2017) .......................................... 7

*Boit v. Gar-Tec Prod., Inc.*,
   967 F.2d 671, 675 (1st Cir. 1992) ................................................................................... 7

*Boston Post Partners II, LLP v. Paskett*,
   No. 15-13804-FDS, 2016 WL 3746474 (D. Mass. July 8, 2016) ................................... 9

*Boyles v. Kerr*,
   855 S.W.2d 593, 594 (Tex. 1993) ................................................................................. 20

*Burnette v. Dell Mktg., L.P.*,
   No. 17-705, 2018 WL 11322678 (W.D. Tex. June 18, 2018) ....................................... 26

*Butler v. Yusem*,
   44 So. 3d 102, 105 (Fla. 2010) ...................................................................................... 20

*Cadle Co. v. Davis*,
   No. 04–09–00763–CV, 2010 WL 5545389 (Tex. App. Dec. 29, 2010) ....................... 23

*Casey v. Cohan*,
   740 So.2d 59, 62 (Fla. Dist. App. Ct. 1999) ................................................................. 21

*Cf., Jones v. Zearfoss*,
   456 S.W.3d 618, 624 (Tex. App. 2015) ........................................................................ 23

*Cf. Simon v. Celebration Co.*,
   883 So.2d 826, 833 (Fla. Dist. Ct. App. 2004) .............................................................. 24

*Clemente v. Horne*,
   707 So. 2d 865, 867 (Fla. Dist. Ct. App. 1998) .............................................................. 27

*Creditwatch, Inc. v. Jackson*,
   157 S.W.3d 814, 818 (Tex. 2005).................................................................................. 29

*Cruz-Arce v. Management Admin. Servs. Corp.*,
   19 F.4th 538 (1st Cir. 2021)......................................................................................... 13

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*,
   290 F.3d 42, 60 (1st Cir. 2002)..................................................................................... 11

*Deauville Hotel Mgmt., LLC v. Ward*,
   219 So. 3d 949, 955 (Fla. Dist. Ct. App. 2017) .............................................................. 26

*Dep't of Homeland Sec. v. Regents of the Univ. of California*,
   140 S. Ct. 1891, 1915-16 (2020)................................................................................... 17

*Doe #1 v. JetBlue Airways Corp.*,
   No. 20-cv-11623-ADB, 2021 WL 3375107 (D. Mass. Aug. 3, 2021) ........................ 9

*Doyle v. Hasbro, Inc.*,
   103-4 F.3d 186, 194 (1st Cir. 1996)............................................................................ 24-25

*Driscoll v. McCann*,
   505 F. Supp. 3d 32, 40 (D. Mass. 2020) ........................................................................ 11

*Foisie v. Worcester Polytechnic Inst.*,
   967 F.3d 27, 41 (1st Cir. 2020).................................................................................... 19

*Franchise Tax Board of California v. Hyatt*,
   139 S. Ct. 1485, 1490, 1494 (2019)............................................................................ 19

*Grasso v. Ard Contracting, Inc.*,
   No. 4:21-cv-310-WS/MJF, 2022 WL 2654990 (N.D. Fla. June 8, 2022) ................... 27

*Guthrie v. Tifco Indus.*,
   941 F.2d 374, 379 (5th Cir. 1991) ............................................................................... 25

*Hill v. Celebrity Cruises, Inc.*,
   No. 09-23815, 2010 WL 11442595 (S.D. Fla. Sept. 14, 2010) ................................... 22

*In re Air Crash Disaster at Boston, Mass. on July 31, 1973,*
    399 F. Supp. 1106, 1112 (D. Mass. Aug. 21, 1975) ....................................................... 20

*Jackson v. Metro Edison Co.,*
    419 U.S. 345 (1974).......................................................................................................... 13

*Kantrow v. Celebrity Cruises, Inc.,*
    510 F. Supp. 3d 1311, 1324 (S.D. Fla. 2020) ................................................................. 25

*Katz v. Belveron Real Est. Partners, LLC,*
    28 F.4th 300, 308 (1st Cir. 2022)..................................................................................... 24

*Kim v. Jung Hyun Chang,*
    249 So. 3d 1300, 1306 (Fla. Dist. Ct. App. 2018) ......................................................... 27

*Klaxon Co. v. Stentor Elec. Mfg. Co.,*
    313 U.S. 487, 496 (1941)................................................................................................... 19

*Kuan Chen v. United States Sports Acad., Inc.,*
    956 F.3d 45, 54 (1st Cir. 2020)........................................................................................... 7

*Liberty Mut. Ins. Co. v. Steadman,*
    968 So. 2d 592, 594 (Fla. Dist. Ct. App. 2007).  ........................................................... 26

*Lincoln v. Fla. Gas Transmission Co. LLC,*
    608 F. App'x 721, 722 (11th Cir. 2015) .......................................................................... 25

*Medici v. Lifespan Corp.,*
    239 F. Supp. 3d 355, 369 (D. Mass. 2017) ..................................................................... 10

*Metro. Life Ins. Co. v. McCarson,*
    467 So. 2d 277, 278-9 (Fla. 1985) ................................................................................... 25

*Mulero-Carrillo v. Roman-Hernandez,*
    790 F.3d 99, 106 (1st Cir. 2015)...................................................................................... 16

*N. Am. Cath. Educ. Programming
Found., Inc. v. Cardinale,*
    567 F.3d 8, 13 (1st Cir. 2009)........................................................................................... 24

*O'Grady v. Safety-Kleen Sys., Inc.,*
    No. 1:19-cv-11814-ADB, 2020 WL 1514604 (D. Mass. Mar. 30, 2020) .................... 9

*Patton v. United Parcel Serv., Inc.,*
    910 F. Supp. 1250, 1271 (S.D. Tex. 1995) ..................................................................... 28

*Retana v. Twitter, Inc.*,
   419 F. Supp. 3d 989, 999 (N.D. Tex. 2019),  aff'd, 1 F.4th 378 (5th Cir. 2021)  ........   20

*Sader v. Padron*,
   No. 18-22891, 2018 WL 7287159 (S.D. Fla. Dec. 19, 2018).....................................   23

*Samson Lone Star Ltd. P'ship v. Hooks*,
   497 S.W.3d 1, 13-14 (Tex. App. 2016)  ......................................................................   21

*San Antonio Independent School Dist. v. Rodriguez*
   411 U.S. 1, 28-29 (1973)  ............................................................................................   16

*Santiago v. Puerto Rico*,
   655 F.3d 61, 68 (1st Cir. 2011)....................................................................................   13

*Shafaii Children's Tr. & Party & Reception Ctr., Inc. v. W. Am. Ins. Co.*,
   417 S.W.3d 614, 624 (2013)  .......................................................................................   22

*Stanton v. AM Gen. Corp.*,
   50 Mass. App. Ct. 116 (2000).......................................................................................   8

*Tomas v. Buckley*,
   No. 19-12079, 2020 WL 2616304 (D. Mass. May 22, 2020).....................................   10

*UBS Fin. Servs., Inc. v. Aliberti,*,
   483 Mass. 396, 406, n.12 (2019)  ................................................................................   19

*United States v. Swiss Am. Bank, Ltd.*,
   191 F.3d 30 (1st Cir. 1999)...........................................................................................   10

*United States v. Swiss Am. Bank, Ltd.*,
   274 F.3d 610 (1st Cir. 2001).........................................................................................   11

*United States ex rel. Kelly v. Novartis Pharms. Corp.*,
   827 F.3d 5 (1st Cir. 2016).............................................................................................   24

*Williams v. Astra USA, Inc.*,
   68 F. Supp. 2d 29 (D. Mass. 1999)...............................................................................   19

*Williams v. WMX Techs., Inc.*,
   112 F.3d 175 (5th Cir. 1997).........................................................................................   21

*Williams v. Worldwide Flight SVCS., Inc.*,
   877 So. 2d 869 (Fla. Dist. Ct. App. 2004) ...................................................................   29

Statutes and Rules

42 U.S.C. § 1983 ................................................................................... 12

42 U.S.C. § 1985 ................................................................................... 18

Fed. R. Civ. P. 12 ................................................................................. 1, 10

Mass. Gen. L. ch. 223A, § 3 ................................................................. 7-10

87 Fed. Reg. at 63, 508-09 ................................................................... 18

Secondary Sources

Restatement (Second) of Conflict of Laws § 145 ................................. 19-20

Restatement (Second) of Torts § 46 ..................................................... 28-29

Defendant Perla Huerta submits this memorandum in support of her motion to dismiss Plaintiffs' First Amended Complaint ("FAC") (i) pursuant to Fed. R. Civ. P. 12(b)(2) because Ms. Huerta is not subject to personal jurisdiction in the District of Massachusetts, (ii) pursuant to Fed. R. Civ. P. 12(b)(1) because Plaintiff Alianza Americas lacks standing, (iii) pursuant to Fed. R. Civ. P. 12(b)(3) because the District of Massachusetts is an improper venue, and (iv) pursuant to Fed. R. Civ. P. 12(b)(6) because Ms. Huerta is not a state actor or is protected by qualified immunity, and because Plaintiffs have not alleged a constitutional injury or other claim.

## INTRODUCTION

Plaintiffs' complaint is a political polemic dressed as a legal document.  Stripped of its rhetoric, the complaint alleges that Ms. Huerta – who migrated to the United States herself and holds citizenship in both the United States and Mexico – gave Yanet Doe, Pablo Doe, and Jesus Doe (collectively, the "Individual Plaintiffs") food, basic necessities, and hotel rooms in Texas after she found them "living on the street."  (FAC ¶¶ 77, 81, 88, 89, 92.)  She then helped them board a flight to Massachusetts.  The Individual Plaintiffs' chief complaint is that they landed in Martha's Vineyard, rather than a "city," and that their flight was used by a politician they disagree with.  The complaint repeatedly alleges that the Individual Plaintiffs were promised "employment, housing, and legal assistance," but the Individual Plaintiffs never allege that they did not <u>receive</u> those services – instead, they repeat only that "Defendants did not <u>arrange</u> for" those services.  (FAC ¶ 293 (emphasis added).)  Similarly, Plaintiffs repeatedly claim that they were "stranded" on Martha's Vineyard, but they nowhere allege that they are still there or were, in fact, unable to leave.  Dislike of a politician, and free food, hotel rooms, and transportation, are unusual facts on which to build claims for constitutional deprivation.

Plaintiffs also admit (i) that "[a]ll Class Plaintiffs were in Texas when they were duped into participating in Defendants' scheme" (FAC ¶ 98); (ii) that Ms. Huerta "most recently lived

1

in Tampa, Florida" and worked "in and around San Antonio, Texas" (FAC ¶ 22); (iii) that "the flights originated in Texas" (FAC ¶ 180); (iv) that Ms. "Huerta did not board either of the planes" (FAC ¶ 126); and (v) that she did not inform "any Massachusetts officials . . . providers of social services, or local organizations" in Massachusetts (FAC ¶ 4).  Those admissions, and the lack of allegations concerning Ms. Huerta's contacts with Massachusetts, are fatal to Plaintiffs' efforts to have their claims against Ms. Huerta tried in Massachusetts.

Plaintiffs likewise make no effort to establish that Ms. Huerta was a government actor, which is fatal to Counts I, II, V, and VI.  They cannot.  Ms. Huerta is twice removed from the State of Florida.  "<u>Defendant Vertol</u> engaged Defendant Huerta to carry out a number of the vendor responsibilities."  (FAC ¶ 57 (emphasis added).)  And Vertol itself was not a government actor – it merely provided a hired service for the State of Florida.  If Plaintiffs had properly alleged that Ms. Huerta was a government actor – they did not – she would then be protected by qualified immunity.  In addition, Plaintiffs have not plausibly alleged that Ms. Huerta deprived them of any constitutional right or privilege, mandating dismissal of Counts I, II, V, VI, and VII.

Nor have they properly alleged their state-court claims, Counts VIII, IX, X, XI, XII, and XIII.  Two of those counts, negligent infliction of emotional distress and aiding and abetting, are not recognized claims under the applicable law.  Plaintiffs cannot meet the heightened pleading standard for fraud because they have not adequately alleged material misrepresentations or injury.  Plaintiffs also cannot meet the "high bar" for intentional infliction of emotional distress given their own allegations that these types of transportation programs are ubiquitous and their limited allegations concerning distress.  Finally, Plaintiffs' aiding and abetting and civil conspiracy counts fail because Plaintiffs do not adequately allege an underlying tort.

Finally, even if there were viable claims against Ms. Huerta, and there are not, those claims could not be prosecuted by Alianza Americas, which does not have standing.  Plaintiffs do not allege that any of the Individual Plaintiffs are Alianza Americas' members.  Nor do they alleged that Alianza America's stated purpose of "improving the quality of life for all those in the United States-Mexico-Central America migration corridor and on promoting humane, just, and equitable policies" (FAC ¶ 16) has been frustrated, that Ms. Huerta caused that frustration, or that the alleged frustration could be redressed by an injunction here.  Alianza Americas is not a proper plaintiff.  Nor are Individual Plaintiffs likely to encounter similar circumstances again, making them improper plaintiffs for prospective relief.

As described more fully below and in the Memorandum of Law in Support of Motion by Defendants Vertol Systems Company, Inc. and James Montgomerie to Dismiss or Transfer (the "Vertal Defendants' Motion to Dismiss Brief"), which is incorporated herein, all Counts against Ms. Huerta should be dismissed.

Some of the issues raised in Ms. Huerta's motion are identical to issues argued in the Vertol Defendants' Motion to Dismiss Brief, which will also be filed on February 28, 2023.  To reduce the burden on the Court and the parties, Ms. Huerta will not repeat the same arguments. She will instead refer to the appropriate section or sections of the Vertol Defendants' Motion to Dismiss Brief.  Ms. Huerta incorporates, and will not repeat, the following sections of the Vertol Defendants' Motion to Dismiss Brief:

- Point II:  The District of Massachusetts Is Not a Proper Venue for Plaintiffs' Claims (pages 13-14);

- Point III:  Plaintiffs Lack Standing to Assert Most of Their Claims (pages 14-18);

- Point V:  If the Vertol Defendants Were State Actors, They Would Be Immune from Liability (pages 21-22);

- Point VI.A.1:  Plaintiffs Fail to Allege a Violation of Substantive Due Process (pages 22-24);

- Point VI.A.3:  Plaintiffs Were Not Denied Procedural Due Process (pages 26-27);

- Point VI.A.4:  Plaintiffs' Fourth Amendment Claim Fails for Lack of a "Seizure" (pages 27-28);

- Point VI.B:  Plaintiffs Fail to State a Claim under Section 1985 (pages 28-29);

- Point VII.A:  Plaintiffs Fail to State a False Imprisonment Claim (page 31);

- Point VII.D:  Plaintiffs Fail to State a Claim for Negligent Infliction of Emotional Distress (page 37);

- Point VII.E:  Plaintiffs Fail to State a Civil Conspiracy Claim (pages 37-38);

- Point VII.F:  Plaintiffs Fail to State an Aiding and Abetting Claim (pages 38-39).

Where Plaintiffs' allegations or Ms. Huerta's situation mean that her issues are not the same as those argued in the Vertol Defendants' Motion to Dismiss, Ms. Huerta will make her arguments in full.

## BACKGROUND[1]

The State of Florida engaged Vertol Systems Company, Inc. ("Vertol") after Vertol responded to a request for bids issued by the Florida Department of Transportation ("FDOT"). (FAC ¶ 41.)  Vertol was tasked with "the facilitation of the relocation of individuals to the State

---

[1] As she must on a motion to dismiss, Ms. Huerta relies on the well-pleaded facts as alleged in the Amended Complaint.  She does not admit any fact alleged therein.

of Massachusetts or other, proximate northeastern state designated by FDOT based upon the extant conditions."  (FAC ¶ 51.)

"Vertol engaged Huerta to carry out a number of . . . vendor responsibilities related to recruiting immigrants for transportation." (FAC ¶¶ 57, 69.)  Ms. Huerta focused her attention on San Antonio, Texas – where she met migrants willing to receive free transportation to a sanctuary jurisdiction.  (See FAC ¶¶ 60, 69.)  Ms. Huerta identified a Migrant Resource Center (the "Center") in San Antonio, where "[i]mmigrants are typically allowed to stay . . . for just three days, and many immigrants have no place to go once they are turned out."  (FAC ¶ 74.)  Ms. Huerta "offer[ed] to help immigrants" turned away from the Center.  (FAC ¶ 78.)

The migrants that Ms. Huerta helped included Plaintiffs Yanet Doe, Pablo Doe, and Jesus Doe.  (FAC ¶¶ 13-15, 70, 74, 77, 84, 89.)  Ms. Huerta provided the migrants with meals, necessities, and shelter in a hotel.  (FAC ¶¶ 81, 88.)  Before Ms. Huerta helped them, Plaintiff Yanet Doe was "living on the street" with her family (FAC ¶ 77), and Plaintiff Jesus Doe "slept on the streets" near the Center.  (FAC ¶ 89.)

"During their stay at the hotel, Defendant Huerta told Plaintiff Yanet Doe that she was arranging a flight to a city in the Northeast."  (FAC ¶ 82.)  She told Pablo Doe that she worked for people "who wanted to help them, including getting them free to flights to 'sanctuary cities.'"  She told Jesus Doe that "she could get him on a plane to Washington, Oregon, or Massachusetts, and could pay for him to stay in a hotel while he waited for the flight."  (FAC ¶ 92.)

In time, forty-nine migrants agreed to be transported.  (FAC ¶ 200.)  Each migrant signed an "Official Consent to Transport" form that was written in both English and Spanish.  (FAC ¶ 117.)  It reads in relevant part:

> I, _____, born on _____, agree to be transported by the benefactor or its designated representative outside of Texas, to locations in sanctuary states.

> I agree to hold the benefactor or its designated representatives harmless of all liability arising out of or in any way relating to any injuries and damages that may occur during the agreed transport to locations outside of Texas until the final destination in Massachusetts.

(FAC ¶ 117.)

Those migrants later boarded two planes in San Antonio, Texas.  (FAC ¶¶ 121, 129.)  Ms. Huerta "did not board either of the plains."  (FAC ¶ 126.)  After brief stops in Florida and to refuel, the two planes flew to Martha's Vineyard, Massachusetts.  (FAC ¶¶ 129, 132, 147.)  Among other things, the migrants were provided "a copy of U.S. Citizenship and Immigration Services (USCIS) Form AR-11, entitled 'Alien's change of Address Card,' accompanied by a document written in Spanish instructing Class Plaintiffs on how to change their addresses with USCIS."  (FAC ¶ 142.)  After landing, vans took the migrants to the Martha's Vineyard Community Services.  (FAC ¶ 152.)

## ARGUMENT

## I.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Although "a court must accept as true all of the allegations in a complaint," that requirement "is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. at 679.  Where, as here, "a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  Id. at 678 (cleaned up).

As described below, Plaintiffs must meet separate standards to show jurisdiction, proper

venue, and standing.

## II.   MS. HUERTA IS NOT SUBJECT TO PERSONAL JURISDICTION IN THE DISTRICT OF MASSACHUSETTS, AND VENUE IS IMPROPER

Plaintiffs have the "burden of proving that personal jurisdiction may be exercised in the

forum state." Kuan Chen v. U.S. Sports Acad., Inc., 956 F.3d 45, 54 (1st Cir. 2020).  Plaintiffs

cannot rely solely on conclusory or "unsupported allegations in their pleadings" to make a *prima*

*facie* showing that personal jurisdiction exists.  Boit v. Gar-Tec Prod., Inc., 967 F.2d 671, 675

(1st Cir. 1992).  "In Massachusetts, a court may exercise personal jurisdiction over a foreign

defendant if such jurisdiction is authorized by state statute and its exercise does not offend the

Due Process Clause of the Fourteenth Amendment."  Ace Am. Ins. Co. v. Oyster Harbors

Marine, Inc., 310 F. Supp. 3d 295, 302 (D. Mass. Feb. 23, 2018) (Burroughs, J.) quoting

Bohnenberger v. MCBC Hydra Boats, LLC, 2017 WL 3976566, at *4 (D. Mass. Sept. 7, 2017).

Here, Plaintiffs cannot show that personal jurisdiction is either authorized by the Massachusetts

Long Arm Statute or commensurate with Due Process.

### A.   The Massachusetts Long-Arm Statute Does Not Confer Personal Jurisdiction Over Ms. Huerta

Plaintiffs make the conclusory allegation that this "Court has personal jurisdiction over

Defendants under Massachusetts G.L. c. 223A § 3," but they do not identify which part of

Section 3 is applicable to Ms. Huerta, a foreign defendant.  (FAC ¶ 11.)  Jurisdiction plainly does

not arise from Ms. Huerta's interest in or use of any real property, a contract to insure,

maintenance of a domicile, or a personal or marital relationship.  See M.G.L. ch. 223A §§ 3(e)-

(h).  Nor is there a reasonable argument that Ms. Huerta was "contracting to supply services or

things in this commonwealth."  M.G.L. ch. 223A § 3(b).  Rather, Plaintiffs allege that Ms.

Huerta was "the lead recruiter of immigrants in and around San Antonio, Texas" and that "Vertol

engaged Defendant Huerta to carry out a number of the vendor responsibilities relating to recruiting immigrants for transportation . . . until they could be transported to Martha's Vineyard." (FAC ¶¶ 22, 57 (emphasis added).) Ms. Huerta was not engaged to do or supply anything in Massachusetts, and she did not. Sections 3(a), 3(c), and 3(d) will be analyzed in more detail, but they likewise do not confer jurisdiction.

Section 3(a). This action does not arise from Ms. Huerta "transacting any business in this Commonwealth." M.G.L ch. 223A § 3(a). Section 3(a) "imposes real limitations," requiring Plaintiffs to "allege facts which satisfy two requirements: 1) that defendant transacted business in Massachusetts and 2) that the claims at issue arose from that transaction of business." Azumi LLC v. Lott & Fischer, PL, No. 22-cv-22598-BLOOM/Otazo-Reyes, 2022 WL 3369197, at *2 (D. Mass. Aug. 16, 2022).

Neither requirement is met here. The only conduct allegedly undertaken in Massachusetts is landing planes and arranging for passengers' transport from the Martha's Vineyard Airport to a community center. But Plaintiffs do not allege that Ms. Huerta was involved in any of those activities. And they admit that: (i) "[a]ll Class Plaintiffs were in Texas when they" agreed to "participat[e] in Defendants' scheme" (FAC ¶ 98); (ii) Ms. Huerta carried out all of her tasks "in and around San Antonio, Texas" (FAC ¶ 22); (iii) Ms. "Huerta did not board either of the planes" (FAC ¶ 126); and (iv) Ms. Huerta did not inform "any Massachusetts officials . . . providers of social services, or local organizations" in Massachusetts (FAC ¶ 4).

Massachusetts courts hold that even "limited in-forum activity" is insufficient to confer personal jurisdiction under Section 3(a). Azumi, 2022 WL 3369197, at *3; Stanton v. AM Gen. Corp., 50 Mass. App. Ct. 116, 118 (2000) (purchasing certain component parts from Massachusetts company and selling vehicles to Massachusetts dealership insufficient to

constitute transacting business).  Here, Plaintiffs allege <u>no</u> facts connecting Ms. Huerta to Massachusetts.

Nor do the claims at issue here "arise from" any contact with Massachusetts.  "The arising from inquiry asks whether the defendant's contacts with the Commonwealth constitute the first step in a train of events that result[ed] in the . . . injury."  <u>Doe #1 v. JetBlue Airways Corp.</u>, No. 20-cv-11623-ADB, 2021 WL 3375107, at *5 (D. Mass. Aug. 3, 2021) (Burroughs, J.) (quotations omitted).  Accordingly, "personal jurisdiction is not proper under § 3(a)" where "Plaintiffs do not allege and have not otherwise proven that any of [Defendants'] contacts with the Commonwealth constitute[d] the first step in a train of events that result[ed] in the injury." <u>Id.</u> (cleaned up).  Plaintiffs do not allege any actions by Ms. Huerta that touched Massachusetts and could plausibly have caused any injury to them.

<u>Section 3(c)</u>.  Ms. Huerta did not "caus[e] tortious injury by an act or omission in this commonwealth."  M.G.L. ch. 223A §3(c).  "[S]ection 3(c) requires a well-pleaded allegation that a defendant did some act <u>in</u> the Commonwealth that caused the plaintiff harm."  <u>Id.</u> (emphasis original); <u>see also</u> <u>O'Grady v. Safety-Kleen Sys., Inc.</u>, No. 1:19-cv-11814-ADB, 2020 WL 1514604, at *4 (D. Mass. Mar. 30, 2020) (Burroughs, J.) ("Plaintiffs must . . . allege that defendants took some action in Massachusetts that caused the plaintiffs to be injured in Massachusetts.").  But Plaintiffs do not allege that Ms. Huerta took <u>any</u> action in Massachusetts. <u>See</u> <u>Boston Post Partners II, LLP v. Paskett</u>, No. 15-13804-FDS, 2016 WL 3746474, at *8 (D. Mass. July 8, 2016) (holding that Section 3(c) was not satisfied when "the conduct that caused [Plaintiff's] injuries occurred entirely outside of Massachusetts.").

<u>Section 3(d)</u>.  Under Section 3(d), a person may be subject to personal jurisdiction for "causing tortious injury in this commonwealth by an act or omission outside this commonwealth

if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth."  Plaintiffs have not alleged that Ms. Huerta conducted any "business," engaged in any "course of conduct," or derived any "revenue" in Massachusetts.

"Section 3(d) . . . is applicable only if the defendant is subject to general personal jurisdiction in Massachusetts."  Doe #1, 2021 WL 3375107, at *6.  Plaintiffs make no effort to alleged that Ms. Huerta is subject to general jurisdiction in Massachusetts, nor could they.  Ms. Huerta does not reside or own property in, do business in, or have substantial contact with Massachusetts.  See Medici v. Lifespan Corp., 239 F. Supp. 3d 355, 369 (D. Mass. 2017) ("[I]t is clear that the Court cannot exercise general jurisdiction over [Defendant]" where "[n]othing in the facts set forth by [Plaintiff] suggests that [Defendant] is 'essentially at home' in Massachusetts or that this is an exceptional case such that the exercise of general jurisdiction would be appropriate.").

Nor have Plaintiffs adequately alleged that they were injured "in this commonwealth." M.G.L. ch, 223A § 3(d).  "[S]ection 3(d) requires that the injury itself occur in Massachusetts, and does not apply merely because the plaintiff feels the effects of a tortious injury there."  U.S. v. Swiss Am. Bank, Ltd., 191 F.3d 30, 37 (1st Cir. 1999); Tomas v. Buckley, No. 19-cv-12079-ADB, 2020 WL 2616304, at *4 (D. Mass. May 22, 2020) (Burroughs, J.) ("Although Plaintiff may have . . . experienced the effects of the accident in Massachusetts, that is insufficient for the Court to exercise personal jurisdiction.").

There are no grounds to exercise personal jurisdiction over Ms. Huerta under the Massachusetts Long Arm Statute.  Plaintiffs' claims against Ms. Huerta should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

**B.      Exercising Personal Jurisdiction Over Ms. Huerta Would Violate Due Process**

Because the Massachusetts Long Arm Statute does not confer personal jurisdiction over Ms. Huerta, "the Court need not reach the question of whether [plaintiff's] assertion is constitutionally sound." Doe #1, 2021 WL 3375107, at *7.  But Plaintiffs have not and cannot allege that due process would allow personal jurisdiction over Ms. Huerta.

"Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001).[2]  To show specific jurisdiction, Plaintiffs must satisfy three conditions:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities ["relatedness'"].  Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable ["purposeful availment"].  Third, the exercise of jurisdiction must ... be reasonable ["reasonableness"].

Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 60 (1st Cir. 2002).

To establish "relatedness," Plaintiffs must show that (1) "the injury would not have occurred 'but for' the defendant's forum-state activity" and (2) "the defendant's in-state conduct gave birth to the cause of action." Driscoll v. McCann, 505 F. Supp. 3d 32, 40 (D. Mass. 2020) (Burroughs, J.).  Plaintiffs cannot meet either prong, because, as shown above, they have not alleged any conduct in Massachusetts by Ms. Huerta.  The only relevant act alleged in the Complaint that may have occurred in Massachusetts was when "just minutes before landing in Martha's Vineyard, each member of the Class was given a red folder containing several

---

[2] Plaintiffs do not and could not allege that Ms. Huerta is subject to general jurisdiction in Massachusetts.  See Part II.A, above.

documents" that Plaintiffs allege were fraudulent or inaccurate.  (FAC ¶ 134.)  But, as Plaintiffs

concede, Ms. Huerta "did not board either of the plains," so she could not have been involved in

that act.  (FAC ¶ 126.)  Because they do not allege that Ms. Huerta had any contact with

Massachusetts, Plaintiffs also cannot show purposeful availment or reasonableness.

> The exercise of personal jurisdiction over Ms. Huerta in this case would therefore violate

Due Process.

### C.      The District of Massachusetts is an Improper Venue

> Because all Defendants are Florida residents, and all material events occurred in Texas or

Florida, the District of Massachusetts is an improper venue.

> Ms. Huerta's arguments on this issue are substantively identical to those made by the

Vertol Defendants.  Ms. Huerta therefore incorporates and relies on Point II of the Vertol

Defendants' Motion to Dismiss Brief at 13-14.

## III.   ALL SECTION 1983 CLAIMS SHOULD BE DISMISSED

> Ms. Huerta is clearly a private party, not a government official.  She is not alleged to

have been employed by Florida.  She is not alleged to have held herself out as a Florida official –

to the contrary, Plaintiffs complain vociferously that "she concealed that she was working on

behalf of Defendant State of Florida and at the behest of Defendant DeSantis . . . ."  (E.g., FAC

¶ 94.)  Plaintiffs do not even allege that Ms. Huerta contracted with Florida; rather, they

recognize that "Vertol engaged [Ms.] Huerta."  (FAC ¶ 57.)  Although she is twice removed

from any government actor, Plaintiffs nevertheless contend that she was a state actor who

violated their constitutional rights.  Plaintiffs' allegations show otherwise.

### A.      Ms. Huerta Is Not a State Actor

> Counts I, II, V, and VI seek to state claims against Ms. Huerta under 42 U.S.C. § 1983.

Private parties like Ms. Huerta cannot be sued under Section 1983 unless "the conduct

complained of transpired under color of state law and [ ] a deprivation of federally secured rights ensued." Santiago v. Puerto Rico, 655 F.3d 61, 68 (1st Cir. 2011). Plaintiffs do not plausibly allege that Ms. Huerta acted under color of state law, so the Section 1983 claims should be dismissed. See Cruz-Arce v. Mgmt. Admin. Servs. Corp., 19 F.4th 538, 543-45 (1st Cir. 2021).

There are "three general ways in which a private party may become a state actor within the purview of [S]ection 1983": "First, . . . if it assumes a public function which, by tradition, is exclusively reserved to the state (the public function test). Second, . . . if its conduct is coerced or significantly encouraged by the state (the state compulsion test). Third, . . . if it and the state have entered into so symbiotic a relationship that they have become joint participants in the challenged conduct (the nexus/joint action test)." Cruz-Arce, 19 F.4th at 544. The Complaint fails to plausibly allege facts sufficient to satisfy any one of them.

The Public Function Test. "Under the public function test, state action inheres 'in the exercise by a private entity of powers traditionally exclusively reserved to the State.'" Santiago, 61 F.3d at 69 (emphasis original) quoting Jackson v. Metro Edison Co., 419 U.S. 345, 352 (1974). "Exclusivity is an important qualifier, and its presence severely limits the range of eligible activities." Id. This test is "satisfied only in narrowly circumscribed contexts . . . in which a particular function rests at the core of a state's sovereign responsibilities." Cruz-Arce, 19 F.4th at 545 (collecting cases).

Plaintiffs do not allege that Ms. Huerta exercised any power that has historically been exclusively reserved to the state, nor could they plausibly do so. Transporting people from one point to another is not such a power. See Santiago, 655 F.3d at 69 (holding that transportation of students to and from school is not an exclusive state function). And Plaintiffs cannot plausibly contend that Ms. Huerta was a state actor because her actions affected immigration. Rather,

Plaintiffs argue that "[t]he authority to regulate immigration is exclusively reserved to the <u>federal</u> government" and therefore preempts Florida law.  (FAC ¶¶ 246, 249 (emphasis added).) Plaintiffs further assert that "paying for, coordinating, and executing the travel of immigrants . . . to various locations across the country . . . directly conflicts with and attempts to supplant federal immigration law."  (FAC ¶ 250.)  Ms. Huerta's alleged actions therefore cannot "rest[] at the core of [Florida's] sovereign responsibilities."  <u>Cruz-Arce</u>, 19 F.4th at 545.

The State Compulsion Test.  To satisfy the state compulsion test, "a plaintiff must demonstrate a particularly close tie between the state and the private party's conduct, such that the conduct may fairly be regarded as state action."  <u>Santiago</u>, 61 F.3d at 71.  Here, the Complaint is devoid of allegations that Florida compelled Ms. Huerta to do anything at all.  At best, Plaintiffs identify only a few communications between Ms. Huerta and a Florida employee, Mr. Keefe, while admitting that Ms. Huerta worked for Vertol.  That is not "state compulsion."

The Nexus/Joint Action Test.  Under the nexus/joint action test, "a plaintiff must show that the private party's actions are attributable to the state through a symbiotic relationship between the two."  <u>Santiago</u>, 61 F.3d at 71.  An ordinary working relationship will not do.  First Circuit precedent is clear that a showing of "mutual interdependence" is required.  *Santiago*, 61 F.3d at 71.  Courts weigh three factors in determining whether it exists:  (1) whether the private entity is, or is not, independent in the conduct of its day-to-day affairs; (2) whether the private party used public facilities to engage in the challenged conduct; and (3) whether the state shared in the profits from the private party's allegedly rights-depriving conduct.  See <u>Santiago</u>, 655 F.3d at 71.  The first factor is the "most salient."  <u>Id.</u> (quotation omitted).

Plaintiffs cannot meet any of these factors.  There are no allegations that the State of Florida was involved in Ms. Huerta's affairs.  Plaintiffs merely allege limited coordination on

one project.  Similarly, there are no allegations that Ms. Huerta – or anyone else – used Florida

government facilities.  Nor is there is any allegation that Ms. Huerta made any profits, much less

that Florida shared them.  Plaintiffs make much of the fact that <u>Vertol</u> had a government contract

and was paid by Florida.  But that is Vertol, not Ms. Huerta.  And it is insufficient.  "A private

party cannot be transformed into a state actor simply because it is paid with government funds

for providing a service."  <u>Santiago</u>, 655 F.3d at 72.

Plaintiffs have not alleged that Ms. Huerta is a state actor, and the Section 1983 claims

should be dismissed in their entirety for that reason.

**B.      If Ms. Huerta Were a State Actor, She Would Be Immune from Liability**

Ms. Huerta is not a state actor.  If she were, however, the claims must be dismissed

because she is immune from liability.

Ms. Huerta's arguments on this issue are substantively identical to those made by the

Vertol Defendants.  Ms. Huerta therefore incorporates and relies on Point V of the Vertol

Defendants' Motion to Dismiss Brief at 21-22.

**C.      Plaintiffs Do Not Plausibly Allege Any Deprivation of Their Constitutional Rights**

"To make out a Section 1983 claim, a plaintiff must allege facts sufficient to show that

the defendants acted under color of state law and caused the deprivation of federal rights."  <u>Cruz-</u>

<u>Arce</u>, 19 F.4th at 543.  Ms. Huerta did not act "under color of state law."  <u>See</u> Part III.A, above.

But any Section 1983 claim against her also fails because the Plaintiffs do not plausibly allege

that Ms. Huerta caused the deprivation of their federally protected rights.

1.      <u>Plaintiffs Were Not Denied Equal Protection Under the Law</u>

"Generally, for an equal protection claim to survive a motion to dismiss, a plaintiff must

allege facts plausibly demonstrating that 'compared with others similarly situated, [the plaintiff

was] selectively treated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'"   Mulero-Carrillo v. Roman-Hernandez, 790 F.3d 99, 106 (1st Cir. 2015).  Where the claim is intentional discrimination, "the plaintiff must plead and prove that the defendant acted with discriminatory purpose."  Iqbal, 556 U.S. at 676.  This "requires more than intent as volution or intent as awareness of consequences."  Id. (quotations omitted).  "It instead involves a decisionmaker's undertaking a course of action because of, not merely in spite of, the action's adverse effects upon an identifiable group."  Id. at 676-77 (cleaned up).

Plaintiffs cannot make that showing.  Plaintiffs do not allege any discriminatory intent or motivation specific to Ms. Huerta.  Instead, Plaintiffs rely on group pleading, claiming that Defendants "specifically preyed on recent immigrants—and in particular, on recent Latinx immigrants from Venezuela and Peru—because they believed that transporting Latinx immigrants to Martha's Vineyard would fuel greater political outcry about unauthorized crossings at the southern border than if white or other non-Latinx immigrants were targeted." (FAC ¶ 238.)  But that conclusory motivation, whatever its applicability to other Defendants who hold political positions, does not plausibly apply to Ms. Huerta.  Plaintiffs make no allegations that Ms. Huerta specifically had any motivation to target "Latinx immigrants."

Plaintiffs' allegation that Defendants targeted Individual Plaintiffs "because they believed that such immigrants would lack resources and be susceptible to their false offers of jobs, services, and benefits" (FAC ¶ 238) likewise does not help them.  To the contrary, it provides a non-discriminatory reason that Ms. Huerta allegedly identified Plaintiffs.  A group's resources or lack thereof is not an "impermissible consideration."  See San Antonio Independent School Dist. v. Rodriguez, 411 U.S. 1, 28-29 (1973) (holding that Texas school-financing statute that

disadvantaged poorer school districts did not violate Equal Protection Clause because "this Court has never heretofore held that wealth discrimination alone provides an adequate basis for invoking strict scrutiny . . . .").

Plaintiffs also cannot allege that Ms. Huerta treated Individual Plaintiffs differently than "others similarly situated."  Mulero-Carrillo, 790 F.3d at 106.  That is because Plaintiffs make no effort to identify others who were "similarly situated."  Plaintiffs claim "[o]n information and belief" that "Defendants have not approached any non-Latinx individuals . . . [or] recent immigrants from countries outside South America."  (FAC ¶¶ 239-240.)  But those conclusory suppositions must be read in context with Plaintiffs' specific allegations, which allege that Ms. Huerta was in Texas, and specifically "near the Migrant Resource Center in San Antonio, known to many immigrants as 'San Pedro 7000.'"  (FAC ¶ 74.)  Plaintiffs make no allegations that there were any non-Latinx migrants living at, or on the streets near, the Center.  And Plaintiffs quote specific communications in which Ms. Huerta sought information about "migrants," "immigrants," and "refugees," not "Latinx" or "South American" migrants.  (FAC ¶¶63, 64, 66.)

None of those factual allegations indicate that Ms. Huerta specifically targeted "Latinx" or "South American" individuals.  Rather, Plaintiffs ask this Court to infer that Ms. Huerta, herself a migrant from Mexico and a dual citizen, had discriminatory intent, when correlation – Ms. Huerta talked to migrants in an area with many South American immigrants – is the more likely, and less offensive, explanation.  "[B]ecause Latinos make up a large share of the unauthorized alien population, one would expect them to make up an outsized share of" the migrants that Ms. Huerta spoke to.  Dep't of Homeland Sec. v. Regents of the Univ. of California, 140 S. Ct. 1891, 1915-16 (2020) (plurality opinion).  "It should come as no surprise that" talking to migrants at the Center "would produce a disparate, incidental impact on [South

Americans], even though the purpose of the policy was not to target [South Americans]." Iqbal, 556 U.S. at 681.[3]

Absent Plaintiffs' implausible, conclusory inferences, there is no basis to establish any discriminatory intent by Ms. Huerta.

       2.       Plaintiffs Fail to Allege Violations of Substantive or Procedural Due Process or Fourth Amendment Seizure

Ms. Huerta allegedly provided Individual Plaintiffs with food, basic necessities, and hotel rooms in Texas after she found them "living on the street," and then helped them board a flight to Massachusetts. (FAC ¶¶ 77, 81, 88, 89, 92.) Those allegations cannot state claims for substantive due process, procedural due process, or Fourth Amendment "seizure."

Ms. Huerta's arguments on these issues are substantively identical to those made by the Vertol Defendants. Ms. Huerta therefore incorporates and relies on Point VI.A.1 at 22-24 (substantive due process), Point VI.A.3 at 26-27 (procedural due process), and Point VI.A.4 at 27-28 (seizure) of the Vertol Defendants' Motion to Dismiss Brief.

## IV.    PLAINTIFFS HAVE NOT STATED A CLAIM UNDER SECTION 1985

Plaintiffs' conspiracy claim under 42 U.S.C. § 1985(3) fails because they cannot plausibly allege any violation of the Equal Protection Clause (or any other Constitutional provision), see Part C.III.1 above, or that Ms. Huerta acted with discriminatory intent.

Ms. Huerta's argument on this issue is substantively identical to those made by the Vertol Defendants. Ms. Huerta therefore incorporates and relies on Point VI.B of the Vertol Defendants' Motion to Dismiss Brief at 28-29.

---

[3] The United States has officially recognized a "surge" of migrants at the Texas border, particularly ones from Venezuela, and a surge in the number of "conditional releases" of those migrants into the United States. See 87 Fed. Reg. at 63,508-09.

## V.     PLAINTIFFS DO NOT STATE ANY STATE LAW CLAIM AGAINST MS. HUERTA

Plaintiffs do not allege which states' law they believe applies to their state-law claims.

Massachusetts choice of law rules apply to that determination.  Klaxon Co. v. Stentor Elec. Mfg.

Co., 313 U.S. 487, 496 (1941).  Massachusetts follows "a functional choice-of-law approach that

responds to the interests of the parties, the States involved, and the interstate system as a whole,"

an approach "explicitly guided by the Restatement (Second) of Conflict of Laws . . . ."  UBS Fin.

Servs., Inc. v. Aliberti, 483 Mass. 396, 406, n.12 (2019) (citations omitted); Foisie v. Worcester

Polytechnic Inst., 967 F.3d 27, 41 (1st Cir. 2020).

Tort claims are governed by the law of the state that "has the most significant relationship

to the occurrence and the parties' as determined by factors laid out in § 6 of the Restatement."

UBS Fin. Servs., 483 Mass. at 406, n. 12; see also Williams v. Astra USA, Inc., 68 F. Supp. 2d

29, 36 (D. Mass. 1999).  Florida and its officials argue that Florida has the most significant

relationship to the parties and events in this case, and that Florida law therefore applies.  See

generally State Defendants' Motion to Dismiss.  Ms. Huerta agrees.  Plaintiffs are suing senior

Florida officials, Florida residents, a Florida-based company, and the State of Florida itself over

the implementation of a Florida law intended to advance Florida's public policy interests.  Ms.

Huerta herself resides in Florida, as Plaintiffs acknowledge.  (FAC ¶ 22 ("Perla Huerta . . . most

recently lived in Tampa, Florida.").  In addition, Florida's law of sovereign immunity will also

play a substantial part, see Part III.B,[4] above, as Plaintiffs themselves recognize, see FAC ¶ 314.

---

[4] In fact, Florida and its officials can only be sued under Florida law because the Constitution does not "permit[] a State to be sued by a private party without its consent in the courts of a different State."  Franchise Tax Board of California v. Hyatt, 139 S. Ct. 1485, 1490, 1494 (2019).  Florida has not waived its sovereign immunity for causes of action under the laws of Massachusetts or Texas, and Plaintiffs do not distinguish between Florida, its officials, and Ms. Huerta in alleging their state-law claims.

Florida therefore has the most significant relationship to this case.  See Restatement (Second) of Conflict of Laws § 145 cmt. d ("[T]he local law of the state where the parties are domiciled, rather than the local law of the state of conduct and injury, may be applied to determine whether one party is immune from tort liability . . . ."); In re Air Crash Disaster at Boston, Mass. on July 31, 1973, 399 F. Supp. 1106, 1112 (D. Mass. Aug. 21, 1975) ("The interest of each state in the application of its own law is an important consideration.").  Finally, because Plaintiffs have alleged at least one state law claim that clearly does not exist under Texas law, negligent infliction of emotional distress, FAC ¶¶ 306-15, it seems likely that they are attempting to choose Florida law.[5]  Florida law should therefore apply.

There is no plausible basis for believing that Massachusetts law applies to the claims against Ms. Huerta.  However, because all of Plaintiffs allegations concerning Ms. Huerta specifically occurred in Texas, Ms. Huerta will address both Florida and Texas law.  As shown below, Plaintiffs have not stated any state-law tort claim against Ms. Huerta under either Florida or Texas law.

### A.    Plaintiffs Have Not Adequately Alleged that Ms. Huerta Engaged in Fraud

To state a fraud claim under Florida law, Plaintiffs must allege:  (1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation."  Butler v. Yusem, 44 So. 3d 102, 105 (Fla. 2010). Under Texas law, a plaintiff must allege: "1) a misstatement or omission; 2) of material fact; 3) made with the intent to defraud; 4) on which the plaintiff relied; and 5) which proximately

---

[5] "Texas law does not recognize" claims for "a negligent-infliction-of-emotional-distress." Retana v. Twitter, Inc., 419 F. Supp. 3d 989, 999 (N.D. Tex. 2019), aff'd, 1 F.4th 378 (5th Cir. 2021); Boyles v. Kerr, 855 S.W.2d 593, 594 (Tex. 1993).

caused the plaintiff's injury." <u>Williams v. WMX Techs., Inc.</u>, 112 F.3d 175, 177 (5th Cir. 1997) (citations omitted).  Plaintiffs do not plausibly allege several of these elements.

Plaintiffs do not plausibly allege any material misrepresentations.  <u>See</u> <u>Casey v. Cohan</u>, 740 So.2d 59, 62 (Fla. Dist. App. Ct. 1999) ("[A misrepresentation] must not only be relied upon as an inducement to some action, but it must also be so material to the interests of the party thus relying and acting upon it, that he is pecuniarily prejudiced by its falsity, is placed in a worse position than he otherwise would have been."); <u>Samson Lone Star Ltd. P'ship v. Hooks</u>, 497 S.W.3d 1, 13-14 (Tex. App. 2016) ("A material representation is one which a reasonable person would attach importance to and would be induced to act on in determining his choice of actions in the transaction in question." (cleaned up).).  Plaintiffs' fraud claim centers on three alleged statements:  (1) that the flights were arranged by an "anonymous benefactor," (2) that the destination was a "city," and (3) that Plaintiffs would receive certain amorphous benefits at their destination.  (FAC ¶¶ 22, 71, 82, 84, 118.)  None are actionable.

First, Ms. Huerta's alleged representations that the flights were arranged by an "anonymous benefactor" were immaterial.  Plaintiffs do not plausibly allege why the organizer or funding source for food, necessities, and lodging that Ms. Huerta provided, and the flights she facilitated, mattered to Individual Plaintiffs.[6]  Plaintiffs assert in conclusory fashion that they would not have agreed to partake in a "political stunt."  (FAC ¶¶ 159, 162, 168.)  But they also acknowledge that "many immigrants have no place to go once they are turned out by the Migrant Resource Center" (FAC ¶¶ 13-15, 77), and are thus "particularly vulnerable and in need of help." (FAC ¶ 74.)  Indeed, Plaintiff Jesus Doe was sleeping "on the streets" (FAC ¶ 89), and Plaintiff

---

[6] There are no allegations that Ms. Huerta made any representations to, or had any interaction with, Alianza Americas.

Yanet Doe and her family were "living on the street" (FAC ¶ 76).  Given these conditions, it is implausible that Plaintiffs would not have accepted free food, lodging, and transportation if Ms. Huerta had said that the state of Florida was funding that food, lodging, and transportation, or said nothing.  See Hill v. Celebrity Cruises, Inc., No. 09-23815, 2010 WL 11442595, at *6 (S.D. Fla. Sept. 14, 2010) (dismissing negligent misrepresentation claim because plaintiff failed to show he would have made a different decision absent defendant's alleged misrepresentations) No "reasonable person" in Plaintiffs situation would "determin[e] his [or her] choice of actions" based on who was providing the aid.  Samson, 497 S.W.3d at 13.  Nor was the alleged representation untrue:  Florida was "anonymous" as to Individual Plaintiffs – it was undisclosed – and it was their "benefactor."  See "[B]enefactor," Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/benefactor, accessed 2/28/2023 ("someone or something that provides help or an advantage: one that confers a benefit").

Second, any alleged misrepresentations regarding Plaintiffs' ultimate destination were similarly immaterial, and Plaintiffs cannot allege reliance.  See Butler, 44 So. 3d at 105 (requiring "statement concerning a material fact . . . [and] reliance on the representation"); Shafaii Children's Tr. & Party & Reception Ctr., Inc. v. W. Am. Ins. Co., 417 S.W.3d 614, 624 (2013) (requiring "a material representation . . . [and] reliance on the representation").  Plaintiffs allege that "Yanet Doe" asked Ms. Huerta "whether she could arrange for her family to go to New York" and that Ms. Huerta answered (honestly) that "they would likely go to Washington, D.C., or another sanctuary state."  (FAC ¶ 78 (emphasis added).)  Similarly, Plaintiffs allege that "Jesus Doe" was told that "[Ms. Huerta] could get him on a plane to Washington, Oregon, or Massachusetts, and could pay for him to stay in a hotel while he waited for the flight."  (FAC ¶ 92.)  Again, this was true – Jesus Doe stayed in a hotel and flew to Massachusetts.  And the

Official Consent to Transfer disclosed, in both English and Spanish, that the Individual Plaintiffs had a "final destination of Massachusetts." (FAC ¶ 117.) Again, that was true. Individual Plaintiffs agreed to go despite not knowing their exact destination – proving conclusively that the ultimate destination was immaterial to them and they did not rely on any alleged representations about their destination. Cf., Jones v. Zearfoss, 456 S.W.3d 618, 624 (Tex. App. 2015) (holding alleged misrepresentation that water came from toilet rather than sink was immaterial as a matter of law).

Third, Plaintiffs allege that Ms. Huerta represented that, when they arrived at their destination, "Class Plaintiffs would find jobs, housing, services, and resources waiting for them." (FAC ¶ 288.) But those alleged assurances are too vague to be actionable as fraud. See Sader v. Padron, No. 18-22891, 2018 WL 7287159, at *7-8 (S.D. Fla. Dec. 19, 2018) ("completely conclusory" allegations that defendant made "misrepresentations regarding his services and intentions with the Plaintiff's acquisition of the investment property by representing that he would act as Plaintiff's agent and in the Plaintiff's best interest . . . failed to state a claim for fraud"); Cadle Co. v. Davis, No. 04–09–00763–CV, 2010 WL 5545389, at *8 (Tex. App. Dec. 29, 2010) (mem. op.) (holding that "general statement . . . is legally insufficient to support the jury's finding on fraud"). Notably, the Amended Complaint is devoid of any specifics – such as the job the Plaintiffs would be performing, whom they would be performing it for, what their housing situation would be, or the provider and nature of any legal assistance. But this is hardly surprising given that Plaintiffs were not concerned even about which state they were going to.

In addition, Plaintiffs are silent about their fate after arriving on Martha's Vineyard. They complain only that "Defendants did not alert anyone" in Martha's Vineyard (FAC ¶ 293). That conclusory statement is disproved by Plaintiffs' own allegations that "waiting vans [] took

them to a local community center, Martha's Vineyard Community Services." (FAC ¶ 149.)
More important is what is missing – there are no allegations that Individual Plaintiffs are now
homeless, hungry, or bereft of services, and they appear well-supplied with "legal assistance"
(FAC ¶ 1). Cf. Simon v. Celebration Co., 883 So.2d 826, 833 (Fla. Dist. Ct. App. 2004)
("[A]llegations . . . that the defendants falsely stated that they intended to implement a
curriculum of 'proven best practices' that would include 'technology' and 'whatever it takes' . . .
are too vague to provide the essential foundation for a fraud claim.").

Finally, Plaintiffs imply that the documents allegedly given to Individual Plaintiffs on the
planes (see FAC ¶¶ 134-41) were also fraudulent. But there are no allegations that Ms. Huerta
was involved in providing those documents – she did not board the planes. And it would have
been impossible for Individual Plaintiffs to rely on those documents. They allege they received
the information "just minutes before landing," when they allegedly "had no ability to refuse
transportation to the island." (FAC ¶¶ 137, 146.)

Plaintiffs' fraud claim cannot satisfy Rule 9(b)'s heightened pleading standards. See
Katz v. Belveron Real Est. Partners, LLC, 28 F.4th 300, 308 (1st Cir. 2022) ("Rule 9(b)'s
heightened pleading requirements apply not only to claims of fraud simpliciter but also to related
claims as long as the central allegations of those claims effectively charge fraud."). That rule
requires "a claimant . . . [to] specify what the underlying misrepresentation was, who made it,
. . . when and where it was made," id. at 308, and "the basis for inferring scienter," N. Am. Cath.
Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 13 (1st Cir. 2009). "Mere allegations
of fraud, corruption or conspiracy, averments to conditions of mind, or referrals to plans and
schemes are too conclusional to satisfy the particularity requirement." Doyle v. Hasbro, Inc.,
103 F.3d 186, 194 (1st Cir. 1996) (cleaned up); accord United States ex rel. Kelly v. Novartis

<u>Pharms. Corp.</u>, 827 F.3d 5, 13 (1st Cir. 2016) ("Conclusory allegations and references to 'plans and schemes' are not sufficient."). Here, Plaintiffs' "allegations of fraud, . . . averments to conditions of mind, [and] referrals to plans and schemes are too conclusorial to satisfy the particularity requirement, no matter how many times such accusations are repeated." <u>Doyle</u>, 104 F.3d at 194.

### B. Plaintiffs Have Not Stated a Claim for Intentional Infliction of Emotional Distress

"Under Florida law, a claim for intentional infliction of emotional distress has four elements: (1) deliberate or reckless infliction of mental suffering, (2) outrageous conduct, (3) the conduct caused the emotional distress, and (4) the emotional distress was severe." <u>Lincoln v. Fla. Gas Transmission Co. LLC</u>, 608 F. App'x 721, 722 (11th Cir. 2015). "[T]he cause of action for IIED is sparingly recognized by the Florida courts." <u>Kantrow v. Celebrity Cruises, Inc.</u>, 510 F. Supp. 3d 1311, 1324 (S.D. Fla. 2020) (cleaned up).

"Under Texas law, to prevail on a claim for intentional infliction of emotional distress a plaintiff must establish that the defendant acted intentionally or recklessly; that the conduct was 'extreme and outrageous'; that the actions of the defendant caused the plaintiff emotional distress; and, that the emotional distress suffered by the plaintiff was severe." <u>Guthrie v. Tifco Indus.</u>, 941 F.2d 374, 379 (5th Cir. 1991) (citations omitted).

#### 1. <u>Plaintiffs Have Not Plausibly Alleged Outrageous Conduct</u>

The Florida Supreme Court has explained that "[i]t has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." <u>Metro. Life Ins. Co. v. McCarson</u>, 467 So. 2d 277, 278-79 (Fla. 1985). "Liability has been found

only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id.; see also Deauville Hotel Mgmt., LLC v. Ward, 219 So. 3d 949, 955 (Fla. Dist. Ct. App. 2017) ("[E]ven purposeful conduct that one knows is going to hurt another is not outrageous enough to support a claim."). This is an "objective[]" inquiry and "a question of law." Liberty Mut. Ins. Co. v. Steadman, 968 So. 2d 592, 594 (Fla. Dist. Ct. App. 2007).

Under Texas law, even conduct deemed "callous, meddlesome, mean-spirited, officious, overbearing, and vindictive" may not be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Creditwatch, 157 S.W.3d at 817-18. This is a "high bar," and Plaintiffs' allegations against Ms. Huerta fail to clear it. Burnette v. Dell Mktg., L.P., No. 17-705, 2018 WL 11322678, at *4 (W.D. Tex. June 18, 2018).

Even assuming, without conceding, that Ms. Huerta engaged in the conduct Plaintiffs allege, the conduct is not so outrageous as to be actionable. According to Plaintiffs, Ms. Huerta provided Individual Plaintiffs with food, necessities, and free shelter, after she found them living on the streets. She then coordinated free transportation for them. Plaintiffs do not allege that Ms. Huerta coordinated the media attention they decry, or that she sought to benefit from any alleged injury to Plaintiffs. In addition, Plaintiffs acknowledge that "[i]n early 2022, the governors of Texas and Arizona began to send buses of immigrants who had recently crossed into those states from Mexico to major metropolitan areas in the eastern United States." (FAC ¶ 27.) "The State of Texas . . . has bused more than 6,200 immigrants to Washington, D.C.", another "2,000 immigrants to New York City and 300 immigrants to Chicago," and "the State of Arizona has bused over 1,000 immigrants to Washington, D.C." (FAC ¶ 27.) Plaintiffs cannot

plausibly allege that all of these similar programs, comprising multiple states and nearly 10,000 individuals, are "utterly intolerable." Creditwatch, 157 S.W.3d at 818.

And "Mere deception … does not amount to the extreme and outrageous conduct required for a claim of intentional infliction of emotional distress." Grasso v. Ard Contracting, Inc., No. 4:21-cv-310-WS/MJF, 2022 WL 2654990, at *3 (N.D. Fla. June 8, 2022). Even if Martha's Vineyard was not Plaintiffs' expected destination, Ms. Huerta's alleged conduct falls far short of actions that were still insufficiently outrageous to state a claim for intentional infliction of emotional distress. See, e.g., Clemente v. Horne, 707 So. 2d 865, 867 (Fla. Dist. Ct. App. 1998) ("The anxiety and/or stress associated with being constructively evicted from one's residence under the circumstances presented in this case, and not having suitable alternative housing is certainly understandable. It is not, however, the type of conduct that is so outrageous in character and so extreme in degree as to go beyond the bounds of decency and be deemed utterly intolerable in a civilized community."); Kantrow, 510 F. Supp. 3d at 1323-24 (insufficiently outrageous where cruise ship operator allegedly "lied, concealed, and misrepresented to its passengers that everybody onboard the Eclipse was healthy when it knew that was false" and did not take any safety precautions like quarantine).

Plaintiffs therefore cannot satisfy the outrageousness element of a claim for intentional infliction of emotional distress.

### 2.    Plaintiffs Have Not Plausibly Alleged Severe Emotional Distress

Under Florida law, emotional distress must be "so severe that no reasonable person could be expected to endure it." Kim v. Jung Hyun Chang, 249 So. 3d 1300, 1306 (Fla. Dist. Ct. App. 2018). "[S]ignificant feelings of fright, shame, worry, and humiliation . . . occasioned by the acts of others are, even if regrettable, an unavoidable part of living in society." Id. at 1306.

Under Texas law, "[a] claim of intentional infliction of emotional distress requires that there be sufficient proof of severe emotional distress, wholly apart from any outrageous conduct on the defendant's part." Patton v. United Parcel Serv., Inc., 910 F. Supp. 1250, 1271 (S.D. Tex. 1995) (quotations omitted). "The severity of distress is an element of the cause of action, not merely a matter of damages." Id. "The law intervenes only where the distress is so severe that no reasonable person should be expected to endure it." Behringer v. Behringer, 884 S.W.2d 839, 844 (Tex. App. 1994) (citing Restatement (Second) of Torts § 46, cmt. j).

Plaintiffs have not sufficiently alleged that they suffered severe emotional distress. Plaintiffs allege that they felt "scared and confused" (FAC ¶ 155), "terrified" (FAC ¶ 170), "helpless, defrauded, desperate, anxious" (FAC ¶¶ 156, 160, 164, 169), and distrustful (FAC ¶ 157). Some allegedly experienced lack of sleep (FAC ¶¶ 161, 165), vertigo (FAC ¶ 165), headaches (FAC ¶ 165), and "harm to dignity and autonomy" (FAC ¶¶ 157, 161, 166), and an unnamed purported Class Plaintiff allegedly "experienced asthmatic symptoms" (FAC ¶ 169). Plaintiffs do not allege that they suffered severe symptoms, such as depression or suicidal thoughts, debilitating headaches, or post-traumatic stress disorder. See Patton, 910 F. Supp. at 1272 (finding headaches, insomnia, physical exhaustion, and loss of motivation insufficient to establish severe emotional distress).

Plaintiffs' allegations are insufficient. First, the type of emotions they allege – fear, distress, anxiety, confusion, lack of sleep – are emotions that ordinary people endure. Even "significant feelings" of such emotions are insufficient. Kim, 249 So. 3d at 1306. Second, Plaintiffs do not exlpain how severe those emotions were. Rather, Plaintiffs conclusorily assert that they felt them. See Artuso v. Vertex Pharms., Inc., 637 F.3d 1, 9 (1st Cir. 2011) ("It is reasonable to expect that, if the plaintiff had any basis beyond speculation for asserting [severe

emotional distress], he would have described that basis in some detail in his complaint . . . .").
Third, Plaintiffs do not plausibly allege ongoing severe distress, and the duration of Plaintiffs'
alleged distress – one week at most – reinforces that it is not severe enough to be actionable.  See
Restatement (Second) of Torts § 46 cmt. j (1965) ("The intensity and the duration of the distress
are factors to be considered in determining its severity."); In re Standard Jury Instructions, 35 So.
3d at 758.  Fourth, "[n]ormally, severe emotional distress is accompanied or followed by shock,
illness, or other bodily harm, which in itself affords evidence that the distress is genuine and
severe."  Restatement (Second) of Torts § 46 cmt. k (1965); see also Williams v. Worldwide
Flight SVCS., Inc., 877 So. 2d 869, 870 (Fla. Dist. Ct. App. 2004) (The "physical contact
requirement [is] normally associated with the outrageous conduct necessary to state a valid claim
for intentional infliction of emotional distress").  Individual Plaintiffs, however, do not allege
any physical manifestations suggesting severe emotional distress.

As such, the emotional distress Plaintiffs allege they suffered simply does not rise to the
level necessary to state a claim for intentional infliction of emotional distress.

In addition, "[i]ntentional infliction claims cannot be used to circumvent the limitations
placed on the recovery of mental anguish damages under more established tort doctrines."
Creditwatch, Inc. v. Jackson, 157 S.W.3d 814, 818 (Tex. 2005) (quotation omitted).  Plaintiffs
have in fact asserted "more established" tort claims here, based on precisely the same facts.
Their intentional infliction of emotional distress claim fails for this reason as well.

### C.   Plaintiffs Do Not State Claims for False Imprisonment, Negligent Infliction of Emotional Distress, Civil Conspiracy, or Aiding and Abetting

Plaintiffs have not alleged false imprisonment because they voluntarily boarded the
planes and stayed at the hotel.  They cannot state a claim for negligent infliction of emotional
distress because they have not alleged a physical impact or physical manifestation of distress as

Florida law requires, and Texas law does not recognize such a claim. And their civil conspiracy and aiding and abetting counts fail because they have not properly alleged an underlying tort, and Texas law does not recognize a claim of aiding and abetting.

Ms. Huerta's arguments on these issues are substantively identical to those made by the Vertol Defendants. Ms. Huerta therefore incorporates and relies on Point VII.A at 31 (false imprisonment), Point VII.D at 37 (negligent infliction of emotional distress), Point VII.E at 37-38 (civil conspiracy), and Point VII.F at 38-39 (aiding and abetting) of the Vertol Defendants' Motion to Dismiss Brief.

## VI. ALIANZA AMERICAS LACKS STANDING FOR ALL CLAIMS, AND INDIVIDUAL PLAINTIFFS LACK STANDING FOR MOST OF THE RELIEF THEY SEEK

Individual Plaintiffs do not have standing seek prospective relief because they have not alleged a "real and immediate threat" that they will suffer similar injury at Defendants' hands. Alianza Americas does not have standing to assert any Count alleged in the Amended Complaint because it cannot demonstrate that either it or a member was or will suffer harm caused by Defendants.

Ms. Huerta's argument on this issue is substantively identical to those made by the Vertol Defendants. Ms. Huerta therefore incorporates and relies on Point III of the Vertol Defendants' Motion to Dismiss Brief at 14-18.

## <u>CONCLUSION</u>

For the foregoing reasons, Ms. Huerta respectfully requests that this Court dismiss all claims against her. If the Court reaches non-jurisdictional issues, Ms. Huerta requests that it dismiss all claims against her with prejudice.

PERLA HUERTA

By her attorneys,

 /s/ Nicholas Ramacher
George W. Vien (BBO No. 547411)
Nicholas Ramacher (BBO No. 680258)
DONNELLY, CONROY & GELHAAR, LLP
260 Franklin Street, Suite 1600 Boston,
Massachusetts 02110
(617) 720-2880
gwv@dcglaw.com
njr@dcglaw.com

Dated:  February 28, 2023

## CERTIFICATE OF SERVICE

I hereby certify that I filed this document through the Court's ECF system on February 28, 2023, which will therefore automatically be sent electronically to all counsel of record via the CM/ECF system.

 /s/ Nicholas Ramacher
Nicholas Ramacher