# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALIANZA AMERICAS, YANET DOE, PABLO DOE, and JESUS DOE, on behalf of themselves and all others similarly situated,<br><br>   *Plaintiffs*,<br><br> v.<br><br>RONALD D. DESANTIS, Governor of Florida, in his official and personal capacities; JARED W. PERDUE, Secretary of the Florida Department of Transportation, in his official and personal capacities; LAWRENCE A. KEEFE, Florida Public Safety Czar, in his official and personal capacities; JAMES UTHMEIER, Chief of Staff to Florida Governor, in his official and personal capacities; STATE OF FLORIDA; THE FLORIDA DEPARTMENT OF TRANSPORTATION; JAMES MONTGOMERIE; PERLA HUERTA; and VERTOL SYSTEMS COMPANY, INC.,<br><br>   *Defendants*. | Civil Action No. 1:22-cv-11550-ADB<br><br>**Leave to file granted on May 24, 2023** |

## STATE DEFENDANTS' REPLY TO MOTION TO DISMISS

# TABLE OF CONTENTS

Table of Authorities ...............................................................................................................iv

Introduction & Summary of Argument .............................................................................1

Argument ............................................................................................................................2

**I.   This Court lacks personal jurisdiction over Florida and its officials. ..........................2**

    A. The Massachusetts long-arm statute does not confer jurisdiction here...........................2

    B. The exercise of personal jurisdiction would violate due process. ..................................6

        1.  Plaintiffs cannot show relatedness and purposeful availment. ..................................6

        2.  The exercise of jurisdiction would not be reasonable................................................7

    C. *Hyatt* prohibits haling Florida and its officials into a Massachusetts court. ..................9

**II.  This venue is improper. ................................................................................................9**

    A. Venue is improper for all claims. ................................................................................9

    B. Venue is improper for the state-law claims because Florida waived sovereign
       immunity only on the condition that such claims be filed in Florida...........................10

**III. Alianza Americas lacks standing.................................................................................11**

**IV. Plaintiffs concede that the Eleventh Amendment bars damages claims against
Florida and equitable relief based on the state claims. ...............................................12**

**V.  Plaintiffs fail to state a federal claim (Counts 1-7). ..................................................12**

    A. Qualified immunity bars Plaintiffs' federal damages claims. ......................................12

    B. Plaintiffs fail to state their fraud-based Due Process and Fourth Amendment
       claims (Counts 1, 5 & 6). ........................................................................................13

        1.  There are no plausible allegations of fraud committed by State Defendants........13

        2.  Qualified immunity bars the Due Process and Fourth Amendment claims. .........15

            a.  Substantive due process (Count 1)...............................................................15

            b.  Procedural due process (Count 5) ...............................................................16

            c.  Fourth Amendment seizure (Count 6) ........................................................18

    C. Plaintiffs fail to state their discrimination-based Equal Protection Clause,
       §1985(3), and Title VI claims (Counts 2, 3 & 7). ....................................................19

        1.  There are no plausible allegations of discriminatory conduct. ...........................19

        2.  Qualified immunity bars the equal protection and §1985(3) claims. ...................20

            a.  Equal Protection Clause (Count 2) ..............................................................20

            b.  §1985(3) (Count 7)......................................................................................21

        3.  Plaintiffs have abandoned their Title VI claim (Count 3). ...................................21

    D. Plaintiffs fail to state a claim for preemption (Count 4)..............................................22

**VI. Plaintiffs fail to state a claim under state law (Counts 8-14).** ...................................... **22**

    A. Florida substantive law applies. ....................................................................................22

    B. Florida and Massachusetts immunity and exhaustion rules bar Plaintiffs' claims. ........24

    C. Plaintiffs fail to plausibly allege claims under Florida or Massachusetts law. ..............26

        1. Negligent infliction of emotional distress (Count 11)....................................26

        2. Intentional infliction of emotional distress (Count 10) .................................27

        3. False imprisonment (Count 8) ..........................................................................28

        4. Fraud (Count 9) .................................................................................................29

        5. Civil conspiracy and aiding and abetting (Counts 12 and 13)..................29

        6. Ultra vires (Count 14) ......................................................................................30

Conclusion .................................................................................................................................30

## TABLE OF AUTHORITIES

**Cases**

*Acierno v. Cloutier*,
  40 F.3d 597 (3d Cir. 1994)................................................................................................2

*Aguilar v. ICE*,
  510 F.3d 1 (1st Cir. 2007) ......................................................................................... 15, 16

*Albright v. Oliver*,
  975 F.2d 343 (7th Cir. 1992) ........................................................................................28

*Anderson v. Century Products Co.*,
  943 F. Supp. 137 (D.N.H. 1996) ....................................................................................4

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) .......................................................................................... 13, 16, 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... passim

*Brown v. Montoya*,
  662 F.3d 1152 (10th Cir. 2011) ..................................................................................1, 2

*Bushkin Assocs., Inc. v. Raytheon Co.*,
  473 N.E.2d 662 (Mass. 1985) .......................................................................................24

*Butler v. Gualtieri*,
  41 F.4th 1329 (11th Cir. 2022) .....................................................................................11

*Caisse v. DuBois*,
  346 F.3d 213 (1st Cir. 2003) .........................................................................................26

*California v. Hadari D.*,
  499 U.S. 621 (1991) .......................................................................................................18

*Camreta v. Greene*,
  563 U.S. 692 (2011) .......................................................................................................18

*Chen v. U.S. Sports Acad., Inc.*,
  956 F.3d 45 (1st Cir. 2020) .........................................................................................2, 6

*Cmty. Mental Health Servs. v. Mental Health & Recovery Bd.*,
  150 F. App'x 389 (6th Cir. 2005) ...................................................................................2

*Cohen v. Drucker*,
  677 So. 2d 953 (Fla. Dist. Ct. App. 1996) ...................................................................25

*Collins v. Harker Heights*,
  503 U.S. 115 (1992) .......................................................................................................16

*Corsi v. Mueller*,
  422 F. Supp. 3d 51 (D.D.C. 2019) ..................................................................................2

*Cummings v. McIntire*,
  271 F.3d 341 (1st Cir. 2001) .........................................................................................16

*D.C. v. Wesby*,
    138 S. Ct. 577 (2018) ................................................................ 13, 16, 19, 21

*Dale v. United States*,
    2013 WL 2920428 (M.D. Fla.) ..................................................................27

*Daniels v. Williams*,
    474 U.S. 327 (1986) ..................................................................16

*Davis v. Dawson*,
    545 F. Supp. 3d 682 (S.D. Iowa 2021) ..................................................................18

*Debreceni v. Bru-Jell Leasing Corp.*,
    710 F. Supp. 15 (D. Mass. 1989) ..................................................................4

*Def. Distributed v. Platkin*,
    617 F. Supp. 3d 213 (D.N.J. 2022) ..................................................................10

*DHS v. Regents of the Univ. of California*,
    140 S. Ct. 1891 (2020) .......................................................... 12, 20

*Doe 1 v. Bost. Pub. Sch.*,
    2019 WL 1005498 (D. Mass.) ..................................................................16

*Eves v. LePage*,
    927 F.3d 575 (1st Cir. 2019) ..................................................................13

*Ex parte Young*,
    209 U.S. 123 (1908) ..................................................................12

*Feit v. Ward*,
    886 F.2d 848 (7th Cir. 1989) ..................................................................1, 2

*Frank v. Relin*,
    1 F.3d 1317 (2d Cir. 1993) ..................................................................2

*Frederick v. Carlson*,
    2023 WL 2333499 (D. Mass.) ..................................................................5

*Gallagher v. S. Shore Hosp., Inc.*,
    197 N.E.3d 885 (Mass. App. Ct. 2022) ..................................................................28

*Gemini Investors III, L.P. v. RSG, Inc.*,
    2009 WL 776740 (D. Minn.) ..................................................................10

*Glaros v. Perse*,
    628 F.2d 679 (1st Cir. 1980) ..................................................................3

*Grace v. Bd. of Trustees*,
    2022 WL 3754756 (D. Mass.) ..................................................................26

*Greebel v. FTP Software, Inc.*,
    194 F.3d 185 (1st Cir. 1999) ..................................................................14

*Grenier v. Cyanamid Plastics, Inc.*,
    70 F.3d 667 (1st Cir. 1995) ..................................................................21

*Hannon v. Beard,*
 524 F.3d 275 (1st Cir. 2008) ................................................................6, 7

*Hayduk v. Lanna,*
 775 F.2d 441 (1st Cir. 1985) ....................................................................14

*Helstrom v. North Slope Borough,*
 797 P.2d 1192 (Alaska 1990) ...................................................................28

*Hines v. Smith,*
 2018 WL 7050674 (D. Minn.) .....................................................................2

*Hopkins v. Yi,*
 2019 WL 3547085 (D. Mass.) .....................................................................8

*Howe v. Bank for Int'l Settlements,*
 194 F. Supp. 2d 6 (D. Mass. 2002) ............................................................9

*In re TelexFree Sec. Litig.,*
 2022 WL 3915989 (D. Mass.) .....................................................................3

*In re TelexFree Sec. Litig.,*
 357 F. Supp. 3d 122 (D. Mass. 2019) .......................................................30

*Jackson v. Shakespeare Found., Inc.,*
 108 So.3d 587 (Fla. 2013) ........................................................................29

*Jasty v. Wright Med. Tech., Inc.,*
 528 F.3d 28 (1st Cir. 2008) ......................................................................23

*Johnson v. Weiner,*
 19 So. 2d 699 (Fla. 1944) .........................................................................28

*Jupiter v. Ashcroft,*
 396 F.3d 487 (1st Cir. 2005) ....................................................................17

*Katz v. Belveron Real Est. Partners, LLC,*
 28 F.4th 300 (1st Cir. 2022) .....................................................................14

*Kaul v. Bos. Partners, Inc.,*
 2021 WL 3272216 (D. Mass.) ...................................................................10

*Kilbane v. Secretary,*
 438 N.E.2d 89 (Mass. 1982) ......................................................................3

*LaBella Winnetka, Inc. v. Vill. of Winnetka,*
 628 F.3d 937 (7th Cir. 2010) ....................................................................17

*Latell v. Triano,*
 2014 WL 6240001 (M.D. Fla.) ..................................................................29

*Libby v. Marshall,*
 833 F.2d 402 (1st Cir. 1987) ......................................................................9

*Liberty Mut. Ins. Co. v. Steadman,*
 968 So. 2d 592 (Fla. Dist. Ct. App. 2007) ...............................................28

*Lowe v. Scott,*
  959 F.2d 323 (1st Cir. 1992) ................................................................................17

*Luder v. Endicott,*
  253 F.3d 1020 (7th Cir. 2001) ...............................................................................12

*Lyle Richards Int'l, Ltd. v. Ashworth, Inc.,*
  132 F.3d 111 (1st Cir. 1997) ...............................................................................3, 4

*Madison v. Cruz,*
  359 F. Supp. 3d 135 (D. Mass. 2019) ....................................................................27

*Martinez v. Cui,*
  608 F.3d 54 (1st Cir. 2010) ...................................................................................15

*Martinez-Velez v. Rey-Hernandez,*
  506 F.3d 32 (1st Cir. 2007) .....................................................................................2

*Mass. Port Auth. v. Turo Inc.,*
  166 N.E.3d 972 (Mass. 2021) ................................................................................29

*McCarty v. Verizon New England, Inc.,*
  731 F. Supp. 2d 123 (D. Mass. 2010) ....................................................................28

*McGhee v. Volusia Cnty.,*
  679 So. 2d 729 (Fla. 1996) ....................................................................................11

*Mejia-Cabral v. Eagleton Sch., Inc.,*
  1999 WL 791957 (Mass. Super.) ...........................................................................24

*Mullenix v. Luna,*
  577 U.S. 7 (2015) ............................................................................................13, 19

*Mulvaney v. Meeks,*
  2021 WL 130970 (M.D. Ala.) ..................................................................................2

*Murphy v. Erwin-Wasey, Inc.,*
  460 F.2d 661 (1st Cir. 1972) ....................................................................................5

*Murray v. S.C. Dep't of Corr.,*
  2020 WL 3603782 (D.S.C.) ......................................................................................2

*Najas Realty, LLC v. Seekonk Water Dist.,*
  821 F.3d 134 (1st Cir. 2016) ..................................................................................26

*Nasir v. Town of Foxborough,*
  2020 WL 1027780 (D. Mass.) ................................................................................26

*Nazareth v. Herndon Ambulance Serv., Inc.,*
  467 So. 2d 1076 (Fla. Dist. Ct. App. 1985) ...........................................................25

*Nevada v. Hall,*
  440 U.S. 410 (1979) ...............................................................................................11

*O'Grady v. Safety-Kleen Sys., Inc.,*
  2020 WL 1514604 (D. Mass.) ...........................................................................4, 6, 7

*Omran v. United States*,
    2016 WL 4158556 (D. Mass.) ............................................................................... 1, 2

*Orantes-Hernandez v. Meese*,
    685 F. Supp. 1488 (C.D. Cal. 1988) ........................................................................ 17

*Pagan-Gonzalez v. Moreno*,
    919 F.3d 582 (1st Cir. 2019) ................................................................................... 18

*Palazzo Las Olas Grp. LLC v. City of Fort Lauderdale*,
    966 So. 2d 497 (Fla. Dist. Ct. App. 2007) ............................................................. 25

*Pan v. Gonzales*,
    489 F.3d 80 (1st Cir. 2007) ............................................................................... 4, 30

*Phillips Exeter Acad. v. Howard Phillips Fund*,
    196 F.3d 284 (1st Cir. 1999) ..................................................................................... 6

*Pilgrim v. Littlefield*,
    92 F.3d 413 (6th Cir. 1996) ..................................................................................... 17

*Polay v. McMahon*,
    10 N.E.3d 1122 (Mass. 2014) ................................................................................. 27

*PTI, Inc. v. Philip Morris Inc.*,
    100 F. Supp. 2d 1179 (C.D. Cal. 2000) .................................................................... 7

*Rahim v. Doe*,
    51 F.4th 402 (1st Cir. 2022) ........................................................................ 12, 15, 18

*Ramirez-Lluveras v. Rivera-Merced*,
    759 F.3d 10 (1st Cir. 2014) ..................................................................................... 14

*Redondo-Borges v. U.S. HUD*,
    421 F.3d 1 (1st Cir. 2005) ......................................................................................... 2

*Reicher v. Berkshire Life Ins. Co. of Am.*,
    360 F.3d 1 (1st Cir. 2004) ................................................................................. 23, 24

*Rivera v. Mass.*,
    16 F. Supp. 2d 84 (D. Mass. 2007) ........................................................................ 10

*Romero v. Brown*,
    937 F.3d 514 (5th Cir. 2019) ................................................................................... 18

*S. Bos. Betterment Tr. Corp. v. Bos. Redevelopment Auth.*,
    777 N.E.2d 812 (Mass. 2002) ................................................................................. 26

*Sacramento v. Lewis*,
    523 U.S. 833 (1998) ......................................................................................... 12, 16

*Salvador v. Meese*,
    641 F. Supp. 1409 (D. Mass. 1986) .......................................................................... 3

*Scott v. Flowers*,
    910 F.2d 201 (5th Cir. 1990) ..................................................................................... 2

*Seiferth v. Helicopteros Atuneros, Inc.*,
  472 F.3d 266 (5th Cir. 2006) ........................................................................................6

*Slotnick v. Staviskey*,
  560 F.2d 31 (1st Cir. 1977) ..........................................................................................14

*Stroman Realty, Inc. v. Wercinski*,
  513 F.3d 476 (5th Cir. 2008) ........................................................................................7

*Tatro v. Manor Care, Inc.*,
  625 N.E.2d 549 (Mass. 1994) ........................................................................................4

*Taylor v. Am. Chemistry Council*,
  576 F.3d 16 (1st Cir. 2009) ..........................................................................................29

*Testa v. Jupiter Island Compound, LLC*,
  358 So. 3d 780 (Fla. Dist. Ct. App. 2023) ....................................................................25

*Thomas v. Harrington*,
  909 F.3d 483 (1st Cir. 2018) ........................................................................................30

*Ticketmaster-New York, Inc. v. Alioto*,
  26 F.3d 201 (1st Cir. 1994) ............................................................................................5

*Tomas v. Buckley*,
  2020 WL 2616304 (D. Mass.) ........................................................................................5

*Torres v. Madrid*,
  141 S. Ct. 989 (2021) ....................................................................................................18

*Trindade v. Grove Servs., Inc.*,
  2020 WL 6566509 (D. Mass.) ......................................................................................24

*U.S. v. Ferrara*,
  54 F.3d 825 (D.C. Cir. 1995) ..........................................................................................3

*VAMOS, Concertación Ciudadana, Inc. v. Puerto Rico*,
  494 F. Supp. 3d 104 (D.P.R. 2020) ................................................................................2

*Viscito v. Nat'l Plan. Corp.*,
  34 F.4th 78 (1st Cir. 2022) ............................................................................................23

*Weimer v. Amen*,
  870 F.2d 1400 (8th Cir. 1989) .................................................................................16, 17

*Wendt-West v. Dep't of Education*,
  2021 WL 6551384 (C.D. Cal.) ........................................................................................9

*Whitley v. Albers*,
  475 U.S. 312 (1986) ......................................................................................................16

*Wolfe v. Strankman*,
  392 F.3d 358 (9th Cir. 2004) ..........................................................................................2

*Zell v. Meek*,
  665 So. 2d 1048 (Fla. 1995) ........................................................................................27

*Ziglar v. Abbasi*,
   582 U.S. 120 (2017) ..................................................................................................21

**Statutes**

42 U.S.C. §1983 ..........................................................................................................2

Fla. Stat. §768.28 .................................................................................................passim

Mass. Gen. Laws. Ann. Ch. 223A, §3 ...................................................................2, 3

**Other Authorities**

Restatement (Second) of Conflict of Laws (1971) ....................................................24

**Rules**

Fed. R. Civ. P. 4 ..........................................................................................................9

Fed. R. Civ. P. 8 ...................................................................................................13, 14

Fed. R. Civ. P. 9 .........................................................................................................14

**Regulations**

87 Fed. Reg. 63,507 (Oct. 19, 2022) ........................................................................20

88 Fed. Reg. 11,704 (Feb. 23, 2023) ........................................................................20

## INTRODUCTION & SUMMARY OF ARGUMENT

Page 16 of Plaintiffs' opposition gives the game away. Buried in footnote 4 on that page, Plaintiffs disclose that—incredibly—they "do not intend to pursue" any of the claims they brought "against Florida or FDOT" or "DeSantis, Keefe, Uthmeier, and Perdue in their official capacities." Opp. 16 n.4. But there's a catch. Plaintiffs "consent to dismissal of those claims *only* if the Court retains the case, and reserve their right to pursue them in the event of transfer to the Northern District of Florida." *Id.* Those are remarkable terms to dictate to the Court, and they reveal two realities about this case. ***First***, Plaintiffs are so desperate to remain in this forum that they will dismiss *six* Defendants and proceed with a severely limited case here rather than with a full case in Florida, where this matter belongs. That is open forum shopping, and this Court should not allow it. ***Second***, Plaintiffs' readiness to abandon half their case strongly suggests they gave little thought to many of their claims before filing. It also shows this case is largely a policy disagreement in search of a legal claim.

Even if the Court keeps the case on Plaintiffs' terms, any claims they have not abandoned should be dismissed. The personal-jurisdiction, venue, and sovereign-immunity defects that prohibit this dispute from proceeding here remain. Perhaps more importantly, however, Plaintiffs mistakenly believe they still can obtain equitable relief from State Defendants in their personal capacities. *See, e.g.*, Opp. 34. But "[i]njunctive relief … is not available against a defendant sued in his individual capacity." *Omran v. United States*, 2016 WL 4158556, at *12 (D. Mass.). Plaintiffs "may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011). "[T]he equitable relief [Plaintiffs] request[]—a declaration that the policy is unconstitutional and an injunction barring the defendants from imple-menting the policy in the future—can be obtained only from the defendants in their official capacities, not as private individuals." *Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989). "Accordingly, any claims

for injunctive relief against the individual Defendants in their personal capacity are subject to dismissal." *Omran*, 2016 WL 4158556, at \*12.[1]

That well-established rule resolves the remaining federal claims in this case. Without equitable relief, qualified immunity forecloses Plaintiffs' damages claims under §1983 and §1985(2) (Counts 1, 2, 5, 6, 7). And because there is no cause of action for damages under the Supremacy Clause and Plaintiffs cannot obtain equitable relief for their preemption claim (Count 4), it too must be dismissed. For these and other reasons, the Court should dismiss Plaintiffs' remaining federal claims.

Plaintiffs' state-law claims fare the same. Florida substantive law and immunities apply, and they require dismissal. And Massachusetts law (if it applies) does not save Plaintiffs: its immunity also bars Plaintiffs' claims. Plaintiffs also fail to state claims under Massachusetts law.

## ARGUMENT

### I.   This Court lacks personal jurisdiction over Florida and its officials.

#### A.   The Massachusetts long-arm statute does not confer jurisdiction here.

Plaintiffs rely on two provisions to satisfy their "burden of proving that personal jurisdiction may be exercised." *Chen v. U.S. Sports Acad., Inc.*, 956 F.3d 45, 54 (1st Cir. 2020); Opp. 17-22. Section 3(a) permits jurisdiction "over a person … as to a cause of action … arising from the person's (a) transacting business in" Massachusetts. Mass. Gen. Laws. Ann. Ch. 223A, §3(a). Section 3(c) permits

---

[1] Courts in every circuit—including this one—recognize that they cannot enjoin public officials in their personal capacities. *See, e.g.*, *VAMOS, Concertación Ciudadana, Inc. v. Puerto Rico*, 494 F. Supp. 3d 104, 120-21 (D.P.R. 2020); *Frank v. Relin*, 1 F.3d 1317, 1327 (2d Cir. 1993); *Acierno v. Cloutier*, 40 F.3d 597, 608-09 (3d Cir. 1994); *Murray v. S.C. Dep't of Corr.*, 2020 WL 3603782, at \*2 (D.S.C.); *Scott v. Flowers*, 910 F.2d 201, 213 (5th Cir. 1990); *Cmty. Mental Health Servs. v. Mental Health & Recovery Bd.*, 150 F. App'x 389, 401 (6th Cir. 2005); *Feit*, 886 F.2d at 858; *Hines v. Smith*, 2018 WL 7050674, at \*3 (D. Minn.); *Wolfe v. Strankman*, 392 F.3d 358, 360 n.2 (9th Cir. 2004); *Brown*, 662 F.3d at 1161 n.5; *Mulvaney v. Meeks*, 2021 WL 130970, at \*8 (M.D. Ala.); *Corsi v. Mueller*, 422 F. Supp. 3d 51, 68-69 (D.D.C. 2019).

Plaintiffs point to stray dicta to briefly argue otherwise. *See* Opp. 34 (quoting *Redondo-Borges v. U.S. HUD*, 421 F.3d 1, 7 (1st Cir. 2005)). But the First Circuit did not actually address the question in *Redondo-Borges*, and it has elsewhere explained that "equitable relief runs against officers in their official capacities." *Martinez-Velez v. Rey-Hernandez*, 506 F.3d 32, 39 (1st Cir. 2007).

jurisdiction "as to a cause of action … arising from the person's … (c) causing tortious injury by an act or omission in" Massachusetts. *Id.* §3(c). Neither provision confers jurisdiction here.[2]

Neither section 3(a) nor 3(d) can support "long-arm jurisdiction" *for any claim* over State Defendants "by virtue of a conspiracy." *Glaros v. Perse*, 628 F.2d 679, 682 (1st Cir. 1980). To subject State Defendants to jurisdiction based on a conspiracy theory, Plaintiffs would need to show that "the out-of-state co-conspirator[s] w[ere] or should have been aware" of conspiratorial acts. *Id.* But their "allegations of conspiracy were purely conclusory," *id.*, such as that State Defendants were aware of fraud, *infra* 13-15. "Accordingly, there are no facts set forth in the complaint warranting the exercise of personal jurisdiction over these Florida defendants even under a conspiracy theory." *Salvador v. Meese*, 641 F. Supp. 1409, 1413 (D. Mass. 1986). Even apart from that deficiency, long-arm jurisdiction still fails.

***First***, Plaintiffs have failed to satisfy their burden under section 3(a). Plaintiffs assert that "Defendants … hired and arranged for two planes to fly to and land in Martha's Vineyard." Opp. 18. But the allegations to which Plaintiffs refer do not allege that State Defendants "initiated or solicited the business transactions in Massachusetts," *Lyle Richards Int'l, Ltd. v. Ashworth, Inc.*, 132 F.3d 111, 113 (1st Cir. 1997), because they were initiated and solicited in *Florida*, Am. Compl. ¶¶40-54. Plaintiffs also assert that "[Defendants] hired video crews" and "vans." Opp. 18. Yet the allegations to which Plaintiffs refer do not allege State Defendants hired anyone. Am. Compl. ¶¶150-51. And they do not allege that State Defendants hired a *Massachusetts* videographer. *Id.* ¶¶148-51. The sole decision on which Plaintiffs rely, Opp. 18, is therefore inapposite. *See In re TelexFree Sec. Litig.*, 2022 WL 3915989, at *14 (D. Mass.) (defendant transacted business here because its agreement said the corporation "was based in Massachusetts" and the defendant "contracted to supply services in Massachusetts" (cleaned up)).

---

[2] Courts have rejected Plaintiffs' argument (at 17 n.5) that States are "persons." *U.S. v. Ferrara*, 54 F.3d 825, 832 (D.C. Cir. 1995); *Kilbane v. Secretary*, 438 N.E.2d 89, 90 (Mass. 1982).

Plaintiffs quibble with precedent that requires "the defendant's contacts" with Massachusetts to "constitute 'the first step in a train of events that resulted in the personal injury.'" *Lyle*, 132 F.3d at 114 (alteration omitted). But, to exercise personal jurisdiction under the long-arm statute, courts require that the "first step" be *in Massachusetts. See Tatro v. Manor Care, Inc.*, 625 N.E.2d 549, 553 (Mass. 1994); *O'Grady v. Safety-Kleen Sys., Inc.*, 2020 WL 1514604, at *3 (D. Mass.) (Burroughs, J.). This rule ensures the defendants' contacts in Massachusetts are sufficient to haul them into court here. In *Lyle*, the "first step" happened in Massachusetts where the plaintiff "would not have selected the defendant's California hotel *but for* the advertisements the defendant had placed in various Massachusetts media." 132 F.3d at 114. Here, Massachusetts was not central to Section 185's implementation. *E.g.*, Am. Compl. ¶106 (alleging that Florida also considered Illinois and California as destinations).

**Second**, Plaintiffs have also failed to satisfy their burden under section 3(c). *See* State Defs. MTD 18-19. To start, Plaintiffs must show "an independent basis for the assertion of personal jurisdiction for each claim" because "[j]urisdiction over one claim does not imply jurisdiction over another. A party may not rely on the doctrine of pendent jurisdiction." *Debreceni v. Bru-Jell Leasing Corp.*, 710 F. Supp. 15, 19 (D. Mass. 1989); *see also Anderson v. Century Products Co.*, 943 F. Supp. 137, 141 (D.N.H. 1996) (same). For the discrimination-based claims, State Defendants explained that "the alleged discrimination is either the policy itself, which was adopted in Florida, or the selection of migrants, which took place in Texas." State Defs. MTD 18. And the alleged discrimination, as Plaintiffs frame it, occurred when Huerta approached the migrants on the ground in Texas. *See* Am. Compl. ¶¶226-29. Plaintiffs have made "no reasoned argument to support" personal jurisdiction in Massachusetts over the discrimination-based claims. *See Pan v. Gonzales*, 489 F.3d 80, 87 (1st Cir. 2007).

Plaintiffs also fail to show fraudulent actions in Massachusetts to support their fraud-based claims. Opp. 20-22. All the alleged false statements occurred outside Massachusetts, and the detrimental reliance *preceded* the migrants' arrival in Massachusetts. And the first harm from the alleged

4

fraud occurred before Plaintiffs arrived in Massachusetts. *See* Am. Compl. ¶143 ("While in flight … Class Plaintiffs were informed for the first time that they were being taken to Martha's Vineyard."). Plaintiffs are thus incorrect (at 21) that the alleged fraud-based "torts were not complete until the Plaintiffs entered Massachusetts." On this point, Plaintiffs' reliance on *Murphy v. Ervin-Wasey, Inc.*, 460 F.2d 661 (1st Cir. 1972), is misplaced. *Murphy* affirmed that section 3(c) applies "[w]here a defendant knowingly sends *into a state* a false statement, intending that it should there be relied upon to the injury of a *resident of that state*, he has, for jurisdictional purposes, acted within that state." *Id.* at 664 (emphases added). Nothing like that happened here. And this Court would have to "extend[] the *Murphy* rationale" beyond its holding despite the First Circuit's "profound reservations about" doing so. *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 205 & n.5 (1st Cir. 1994). The other decisions Plaintiffs cite confirm this rule. *See, e.g.*, *Frederick v. Carlson*, 2023 WL 2333499, at *5 (D. Mass.) (distinguishing *Murphy* because the "communications were [not] directed … to induce action in Massachusetts").

So too with the infliction of emotional distress claims. Plaintiffs first felt the alleged harm in the air. Am. Compl. ¶144 (alleging Janet Doe was "devastated and terrified" after purportedly learning of the plane's destination for the first time). That Plaintiffs allegedly felt further "effects" later does not change when the torts were completed. State Defs. MTD 18-19; *see also Tomas v. Buckley*, 2020 WL 2616304, at *4 (D. Mass.) (collecting cases) ("Although Plaintiff may have … experienced the effects of the accident in Massachusetts, that is insufficient for the Court to exercise jurisdiction.").

Plaintiffs' unlawful imprisonment theory does not support jurisdiction either. An alleged imprisonment "shortly before … the planes landed," Opp. 19, categorically did not occur "in Massachusetts," *see* Am. Compl. ¶¶146 ("Class Plaintiffs were trapped midair on planes."). And there are no allegations supporting the claim that Defendants imprisoned Plaintiffs on the island "after the planes landed." Opp. 19; *see also* Opp. 66 (calling this a "second form of confinement"). If this theory were

viable, it would require showing that Defendants prevented the Plaintiffs' only means of departing the island. *See infra* 28. There are no such allegations, which means it cannot support personal jurisdiction.

And for the same reasons as section 3(a), Plaintiffs cannot show that State Defendants' "contacts with the Commonwealth constitute[d] the first step in a train of events that resulted in the injury" in Massachusetts. *O'Grady*, 2020 WL 1514604, at *4 (cleaned up). Plaintiffs' argument (at 21-22) "that selecting and targeting Massachusetts was indeed one of the 'first steps'" is a red herring, as the defendant's "'*contacts* with [Massachusetts]'" must be "'the first step.'" *Id.* (emphasis added).

**B. The exercise of personal jurisdiction would violate due process.**

**1. Plaintiffs cannot show relatedness and purposeful availment.**

Plaintiffs' relatedness analysis is restricted entirely to "Defendants' intentional and fraudulent inducement to and abandonment in Massachusetts," Opp. 23, despite their independent obligation to show that the discrimination-based claims are related to, or arise out of, State Defendants' Massachusetts contacts. *See Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 289 (1st Cir. 1999) ("Questions of specific jurisdiction are always tied to the particular claims asserted."). "Permitting the legitimate exercise of specific jurisdiction over one claim to justify the exercise of specific jurisdiction over a different claim that does not arise out of or relate to the defendant's forum contacts would violate the Due Process Clause." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274-75 & nn.5-6 (5th Cir. 2006). So Plaintiffs have failed to satisfy their "burden." *See Chen*, 956 F.3d at 54.

At any rate, the alleged conduct supporting the discrimination-based and fraud-based claims occurred and was completed before Plaintiffs stepped foot in Massachusetts. *See supra* 4-5. So neither the "cause in fact (*i.e.*, the injury would not have occurred but for the defendant's forum-state activity)" nor the "legal cause (*i.e.*, the defendant's in-state conduct gave birth to the cause of action)" are satisfied. *Hannon v. Beard*, 524 F.3d 275, 282 (1st Cir. 2008).

Plaintiffs also have not shown State Defendants purposefully availed themselves of Massachu-

setts. Plaintiffs rely primarily on *Hannon*. *See* Opp. 22-25. There, a Pennsylvania prison official "au-

thorized and directed" the transfer of a prisoner to Massachusetts "in retaliation for" the prisoner's

bringing lawsuits against the Department. 524 F.3d at 278. On its own terms, *Hannon* raised "a close

question" and a "unique factual situation." *Id.* at 283-84. And the court made clear that its reasoning

did *not* extend to cases in which plaintiffs "sue[] officials from the sending state for harms that occurred

while the [plaintiff] was in the sending state, and attempt[] to use the [Massachusetts-based] contacts

… to assert jurisdiction." *Id.* at 283. That is this precise case because the alleged conduct supporting

the discrimination-based and fraud-based counts was completed before the migrants landed in Mar-

tha's Vineyard. *See supra* 4. So too with the imprisonment and emotional distress claims. *Supra* 4-6.

### 2.  The exercise of jurisdiction would not be reasonable.

The reasonableness factors weigh against personal jurisdiction. ***First***, State Defendants have

"'demonstrate[d] some kind of special or unusual burden.'" Opp. 26. Plaintiffs continue to seek in-

junctive relief against enforcement of Florida's validly enacted law, so the burden of litigating in Mas-

sachusetts is substantial. *See* State Defs. MTD 21-22; *PTI, Inc. v. Philip Morris Inc.*, 100 F. Supp. 2d 1179,

1190 n.8 (C.D. Cal. 2000); *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008).

***Second***, relying on *Hannon*, Plaintiffs argue that "Massachusetts has a significant interest in"

preventing the kind of transportation alleged here. Opp. 26. But *Hannon* did not implicate enforcement

of a validly enacted statute of a sister State. *See Wercinski*, 513 F.3d at 487. Moreover, Plaintiffs are

neither in the custody of Massachusetts prisons (as in *Hannon*) nor are they "citizens" of Massachu-

setts, *see O'Grady*, 2020 WL 1514604, at *8. Plaintiffs also misunderstand the point that Massachusetts

has "'little interest in adjudicating disputes over other states' [laws].'" *Wercinski*, 513 F.3d at 487. On

this factor, it is not the law that "will be applied" that matters, as Plaintiffs argue (at 26); it is the law

that is being adjudicated—here Florida's prior Section 185 and new SB 6-B. *See* State Defs. MTD 12-13. Massachusetts lacks a strong interest in determining whether those statutes are lawful.

**Third**, Plaintiffs argue that Massachusetts is the more convenient forum because the migrants "are now residents of Massachusetts." Opp. 27. But that contradicts the allegation that they "intend to relocate to other parts of the country." Am. Compl. ¶202. Even setting that aside, Alianza and all defendants are not residents of Massachusetts. State Defs. MTD 23. Plaintiffs also rely (at 27) on the fact that "this is where their pro bono counsel are located." But "consideration of the location of … counsel is inappropriate for the jurisdictional analysis" because "'[i]t would be conceptually incoherent to permit the court to look to post-complaint contacts' to prove an authority to exercise personal jurisdiction." *Hopkins v. Yi*, 2019 WL 3547085, at *8 (D. Mass.).

**Fourth**, judicial efficiency counts against reasonableness. Without any authority, Plaintiffs assert that Massachusetts is the more efficient forum. Opp. 27. And they again incorrectly claim that this factor weighs in their favor because "their attorneys are all located" in Massachusetts. Nor do Plaintiffs contest that all the relevant witnesses and documents—other than themselves—are elsewhere. *See* State Defs. MTD 23. And because Florida law applies to the tort claims (not Massachusetts law), *see infra* 22-24, Florida's federal courts are better suited to adjudicate this dispute.

**Finally**, sovereignty issues weigh heavily against jurisdiction. Here again, Plaintiffs seek to enjoin a Florida law, and the exercise of jurisdiction over this dispute necessarily drags Florida into a Massachusetts federal court. State Defs. MTD 24. Plaintiffs have no response to that fact. Instead, Plaintiffs assert *ipse dixit* that Massachusetts has an interest against "transfers of persons into Massachusetts … in a fraudulent manner." Opp. 27. And of course, Plaintiffs ignore Florida's countervailing interests and the federalism implications that State Defendants highlighted. State Defs. MTD 24.

### C. *Hyatt* prohibits haling Florida and its officials into a Massachusetts court.

As State Defendants argued, State Defs. MTD 24-26, sovereign immunity does not "permit[]
a State to be sued by a private party without its consent in the courts of a different State." *Franchise
Tax Board of California v. Hyatt*, 139 S. Ct. 1485, 1490 (2019). So the "[s]ervi[ce of] a summons" on State
Defendants did not "establish[] personal jurisdiction over" them in this Court, Fed. R. Civ. P.
4(k)(1)(A); *Wendt-West v. Dep't of Education*, 2021 WL 6551384, at *3 (C.D. Cal.). Plaintiffs concede the
point (at 70) but try to get around the problem by conditionally dismissing Florida, FDOT, and the
official-capacity defendants (at 16 n.4). But Plaintiffs' continued pursuit of injunctive relief against the
officials still would subject Florida and FDOT to personal jurisdiction. "Regardless of the manner in
which a plaintiff designates the action, a suit should be regarded as an official-capacity suit, subject to
the defense of sovereign immunity, … 'if the effect of the judgment would be to restrain the Govern-
ment from acting, or to compel it to act.'" *Howe v. Bank for Int'l Settlements*, 194 F. Supp. 2d 6, 19 (D.
Mass. 2002). Because Plaintiffs seek injunctive relief against the officials "that would require them to
exercise their official powers in certain ways," "[i]t follows that the [State] is the real party in interest."
*Libby v. Marshall*, 833 F.2d 402, 405 & n.3 (1st Cir. 1987). Plaintiffs are thus still seeking to impermis-
sibly subject Florida to personal jurisdiction in Massachusetts. And the Court also lacks jurisdiction
over the officials in their personal capacities because Florida's sovereign immunity extends to them.
*See infra* 9-11, 22-23; State Defs. MTD 28-29 & n.6.

## II.  This venue is improper.

### A.  Venue is improper for all claims.

Plaintiffs defend their venue choice only briefly. Opp. 28-29. They agree they must show that
"'a substantial part of the events or omissions giving rise to the claim'" occurred in Massachusetts.
And they did not dispute State Defendants' arguments (at 27) that "[t]he overwhelming majority of
[Plaintiffs'] factual allegations relate to events and omissions occurring in" Florida and Texas, *Kaul v.*

*Bos. Partners, Inc.*, 2021 WL 3272216, at *2 (D. Mass.); that "where a plaintiff's claims turn on a state's cross-border enforcement actions …, courts typically find that the 'events giving rise to the claims' occurred where the relevant state officials are located,'" *Def. Distributed v. Platkin*, 617 F. Supp. 3d 213, 233 (D.N.J. 2022); or that "[w]hen misrepresentations are the underlying events of a litigation, courts generally look to the place where the misrepresentations were made, not that place they were received or relied upon, to determine where the underlying events occurred," *Gemini Investors III, L.P. v. RSG, Inc.*, 2009 WL 776740, at *2 (D. Minn.) (collecting cases). Plaintiffs' failure to dispute any of this is fatal to their case.

Plaintiffs make one argument why this is the proper venue: "Massachusetts is where the Plaintiffs were injured." Opp. 28. But that fails for two reasons. **First**, Massachusetts is *not* where Plaintiffs were injured or where the alleged torts were completed, as explained. *See supra* 4-6; State Defs. MTD 18-19, 26-28. **Second**, even if Plaintiffs were injured here, that "is the only allegation suggesting any connection between this suit and Massachusetts." *Kaul*, 2021 WL 3272216, at *2. That is not enough to establish venue where all the other relevant events happened outside Massachusetts. *Id.*

### B.  Venue is improper for the state-law claims because Florida waived sovereign immunity only on the condition that such claims be filed in Florida.

Florida's sovereign immunity renders this venue improper for Plaintiffs' state-law claims. *See* State Defs. MTD 28-29. A "'State's immunity encompasses not merely whether it may be sued, but where it may be sued.'" *Rivera v. Mass.*, 16 F. Supp. 2d 84, 87 (D. Mass. 2007). And Florida waived its sovereign immunity on the condition that any tort claims be filed in Florida state courts. Opp. 28-29.

Plaintiffs do not contest that, if Florida's sovereign immunity applies, then their tort claims must be filed in Florida state court. *See* Opp. 70. Plaintiffs instead try to get around this problem (like with personal jurisdiction) by dismissing Florida, FDOT, and the official-capacity defendants. But Florida's sovereign immunity covers the individual-capacity defendants as well. That is because Florida has "extend[ed] the veil of sovereign immunity to … governmental employees when they are acting

within the scope of employment, with the employing agency alone remaining liable." *McGhee v. Volusia Cnty.*, 679 So. 2d 729, 733 (Fla. 1996). And claims against those governmental employees—just like the ones against the State itself—must be filed in Florida state courts. Fla. Stat. §768.28(1).

Plaintiffs counter that Massachusetts "choice-of-law principles" decide whether Florida's sovereign immunity applies. But that is precisely the analysis the Supreme Court rejected in *Hyatt* when it overruled *Nevada v. Hall*, 440 U.S. 410 (1979). In *Hall*, the Court held that "immunity is available only if the forum State 'voluntarily' decides 'to respect the dignity of the defendant State as a matter of comity.'" *Hyatt*, 139 S. Ct. at 1492 (quoting *Hall*, 440 U.S. at 416) (cleaned up). After *Hyatt*, there is no choice; the defendant State's sovereign immunity cannot "be disregarded by the forum State." *Id.* at 1496. "The Constitution does not merely allow States to afford each other immunity as a matter of comity; it embeds interstate sovereign immunity within the constitutional design." *Id.* at 1497. Plaintiffs' authorities suggesting otherwise either do not involve sovereign immunity or pre-date *Hyatt*, or both. *See* Opp. 70-71 & n.40. Plaintiffs' tort claims thus must be filed in Florida state court.[3]

### III. Alianza Americas lacks standing.

Alianza does not seek damages; it seeks only equitable relief. *See* Opp. 28-32. Thus, the sole question left for Alianza's standing is whether it has standing to seek equitable relief. The Court need not reach that question, however, because Plaintiffs have given away their right to equitable relief, *see supra* 1-2 & n.1. If the Court disagrees on that point, Defendants rest on their opening brief's arguments on why Alianza lacks standing. *See* State Defs. MTD 30-32.

---

[3] Plaintiffs also argue that "any such immunity would derive from statutory law, not its sovereign status." Opp. 70. But "States retain their sovereign immunity from private suits brought in the courts of other States." *Hyatt*, 139 S. Ct. at 1492. And federal courts are "*Erie*-bound by Florida's substantive law on sovereign immunity." *Butler v. Gualtieri*, 41 F.4th 1329, 1336 (11th Cir. 2022).

## IV. Plaintiffs concede that the Eleventh Amendment bars damages claims against Florida and equitable relief based on the state claims.

Plaintiffs concede they cannot secure damages against Florida, FDOT, or the officials in their official capacities. Opp. 33. Instead, they insist that under *Ex parte Young*, 209 U.S. 123 (1908), the Eleventh Amendment permits equitable relief against the officials. Opp. 34. But Plaintiffs cannot "invoke *Ex Parte Young* … because they are not suing the defendants in their official capacities." *Luder v. Endicott*, 253 F.3d 1020, 1025 (7th Cir. 2001); *see supra* 1-2 & n.1. State Defendants also argued that Plaintiffs cannot obtain equitable relief based on their state-law claims. State Defs. MTD 34. Plaintiffs concede that point, too, and now insist that they "only seek equitable relief against the State Defendants based on federal law." Opp. 33-34. Because they cannot obtain equitable relief based on federal law, Plaintiffs' concession concerning state law means they cannot get equitable relief at all.

## V. Plaintiffs fail to state a federal claim (Counts 1-7).

### A. Qualified immunity bars Plaintiffs' federal damages claims.

None of the federal claims is supported by clearly established law. To satisfy their "'heavy burden,'" Plaintiffs had to "'identify either [1] controlling authority or [2] a consensus of persuasive authority sufficient to put an officer on notice that his conduct fell short of the constitutional norm.'" *Rahim v. Doe*, 51 F.4th 402, 410 (1st Cir. 2022). Plaintiffs provide neither. There are no controlling authorities or a consensus of persuasive authorities clearly establishing Plaintiffs' novel theory that the Constitution incorporates *sub silentio* the common-law tort of fraudulent inducement. *See Sacramento v. Lewis*, 523 U.S. 833, 848 (1998) (reiterating that "the Fourteenth Amendment is not a 'font of tort law' …."). Nor do any authorities clearly establish that high-level government officials violate anti-discrimination law by providing a benefit that incidentally results in disproportionate selection of aliens entering through the southern border. *See DHS v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1915 (2020) (plurality). Plaintiffs largely ignore their burden and assert there are three "overarching flaws in Defendants' qualified immunity arguments." Opp. 50-52. Each fall short.

**First**, Plaintiffs state (at 51) that "qualified immunity does not apply to requests for equitable relief." But Plaintiffs' litigation decisions have eliminated equitable relief from this case. *See supra* 1-2.

**Second**, Plaintiffs argue that qualified immunity should not be granted at the motion-to-dismiss stage. Opp. 51 & n.23 (relying on out-of-circuit precedent). But the First Circuit has explained that argument "would turn well-settled precedent on its head." *Eves v. LePage*, 927 F.3d 575, 583 n.5 (1st Cir. 2019). "The Supreme Court has repeatedly 'stressed the importance of resolving immunity questions at the earliest possible stage of the litigation.'" *Id.* (alteration omitted). As a result, "[a] decision of qualified immunity on a motion to dismiss is appropriate here." *Id.* at 583.

**Third,** Plaintiffs admit they can identify no cases with similar facts to this one but claim they don't need any. Opp. 51-52. To be sure, the Supreme Court does "not require a case directly on point." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). But it does require that "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* Plaintiffs' theories "must be 'settled law.'" *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018). They must show that "'the violative nature of *particular* conduct is clearly established.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). And those decisions must "'*squarely govern*[] the case here.'" *Id.* at 13. They cannot be "too factually distinct to speak clearly to the specific circumstances here." *Id.* at 18. As discussed in more detail below, *see infra* §V, "not a single judicial opinion ha[s] held" that conduct like that alleged here violated federal law. *al-Kidd*, 563 U.S. at 741. Qualified immunity thus requires the federal claims be dismissed.

### B. Plaintiffs fail to state their fraud-based Due Process and Fourth Amendment claims (Counts 1, 5 & 6).

#### 1. There are no plausible allegations of fraud committed by State Defendants.

Plaintiffs' three fraud-based claims—Counts 1, 5, and 6—must be dismissed because there are no plausible allegations supporting those claims against State Defendants. State Defs. MTD 35-41. The Amended Complaint fails to satisfy Rule 8's plausibility standard, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), and the heightened pleading standards for allegations of fraud and conspiracy, *see Katz*

*v. Belveron Real Est. Partners, LLC*, 28 F.4th 300, 308 (1st Cir. 2022); *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir. 1977). In short, Plaintiffs' opposition highlights "allegations of fraud, corruption or conspiracy, averments to conditions of mind, or referrals to plans and schemes" that "are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated." *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985).

Plaintiffs' opposition confirms there are no operative allegations supporting fraud by State Defendants. To start, none of the alleged "three misrepresentations" that Plaintiffs cite involved State Defendants. *See* Opp. 54-57. Each of them was Huerta allegedly mispresenting facts to Plaintiffs. *Id.* In fact, there are no viable allegations State Defendants even knew about the alleged misrepresentations. Plaintiffs cite only two allegations—paragraphs 113 and 114—to support their view that "Defendants knew that Class Plaintiffs were led to believe that the flights were sponsored by an 'anonymous benefactor,' that they were going to a large city in the Northeast, and that a wealth of services had been arranged for them upon arrival." Opp. 11. But both of those allegations are based only "[o]n information and belief," Am. Compl. ¶¶113-14—which cannot satisfy the applicable pleading standards, *see Greebel v. FTP Software, Inc.*, 194 F.3d 185, 193 (1st Cir. 1999). Plaintiffs have also failed to plausibly allege that Huerta made any viable misrepresentations to Plaintiffs. Huerta Reply Part III.B.

To be sure, Rule 9(b) allows mental states to "be alleged generally." *Accord* Opp. 15, 54. But "Rule 9(b)" and "Rule 8 do[] not empower [a plaintiff] to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Iqbal*, 556 U.S. at 686-87 (rejecting argument that Rule 9 permits a plaintiff to "allege … intent … with a conclusory allegation"). And there are no non-conclusory allegations of "a strong causal connection between the [officials'] conduct and the constitutional violation," *Ramirez-Lluveras v. Rivera-Merced*, 759 F.3d 10, 19 (1st Cir. 2014), or that the officials directed, "'knew of, condoned, and willfully and maliciously agreed to subject'" the migrants to the alleged deception, *see Iqbal*, 556 U.S. at 680; *id.* at 677.

14

Plaintiffs try to shore this up by noting State Defendants were involved in implementing Section 185 generally, separate from the alleged fraud. *See* Opp. 59-60. Yet the fact that "Perdue was in charge of soliciting quotes and selecting Vertol," for example, says nothing about whether he directed the allegedly fraudulent statements. Opp. 59. It just says that he was generally involved in the transportation efforts consistent with what the statute empowered him to do, which is perfectly lawful. So too with the other State Defendants. Plaintiffs emphasize the unremarkable fact that the Governor and officials supported the transportation program, Opp. 60, but this hardly means they ordered, orchestrated, engineered, or even knew of the alleged fraud on the ground, *see Iqbal*, 556 U.S. at 681-82 (allegations that high-level officials "'approved'" and "'cleared'" the policy were insufficient).

### 2.   Qualified immunity bars the Due Process and Fourth Amendment claims.

#### a.   Substantive due process (Count 1)

Plaintiffs incorrectly suggest that a deprivation of physical liberty alone can give rise to a substantive-due-process claim under section 1983. Opp. 38. The "touchstone of due process is the protection of the individual against arbitrary action of government" and "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Martinez v. Cui*, 608 F.3d 54, 64 (1st Cir. 2010) (cleaned up). Plaintiffs failed to "'identify either controlling authority or a consensus of persuasive authority,'" *Rahim*, 51 F.4th at 410, that the conduct here so shocks the conscience as to violate due process. In fact, the First Circuit held in the immigration context that the plaintiffs did "not state[] a viable substantive due process claim" where allegations "that their immediate detention and swift transfer to distant [removal] centers wreaked havoc with their right to make decisions about the care, custody, and control of their minor children, leaving many minors unattended." *Aguilar v. ICE*, 510 F.3d 1, 21-23 (1st Cir. 2007). If that was not a violation *on the merits*, then State Defendants cannot have violated "*clearly established*" substantive-due-process rights via the conduct alleged here.

Plaintiffs hardly even address *Aguilar*. *See* Opp. 41 n.15. They also ignore Supreme Court warn-ings "that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law," *Collins v. Harker Heights*, 503 U.S. 115, 128 (1992), including false imprisonment, *see Daniels v. Williams*, 474 U.S. 327, 333 (1986). They ignore authority that "a conspiracy between" high-ranking government officials and "other defendants … to fraudu-lently induce" plaintiffs to act to their detriment "are not the type of abusive governmental action" that state a substantive-due-process claim. *See Weimer v. Amen*, 870 F.2d 1400, 1401-03, 1405-06 (8th Cir. 1989). And they fail to explain why their allegations are more conscience-shocking than those in cases in which "courts have rejected due process claims," like allegations that officers caused a "mis-carriage." *Cummings v. McIntire*, 271 F.3d 341, 346-47 (1st Cir. 2001).

Here, Plaintiffs "cite cursorily to cases that deal with this right" but "conspicuously fail to build any bridge between these cases and the facts that they allege." *Aguilar*, 510 F.3d at 23. Cases addressing the Eighth Amendment, a high-speed chase, and a school's failure to protect students from sexual assault cannot bridge the gap to the facts alleged here. *See* Opp. 40 (citing *Whitley v. Albers*, 475 U.S. 312 (1986); *Sacramento v. Lewis*, 523 U.S. 833 (1998); *Doe 1 v. Bost. Pub. Sch.*, 2019 WL 1005498 (D. Mass.)). Nor can Plaintiffs' "broad historical assertions," *al-Kidd*, 563 U.S. at 742, taken from 19th-century legislative history do the trick, Opp. 39. The Supreme Court has "repeatedly stressed that courts must not 'define clearly established law at a high level of generality.'" *Wesby*, 138 S. Ct. at 590.

### b.  Procedural due process (Count 5)

Plaintiffs have also failed to carry their burden to show a clearly established violation of their procedural-due-process rights. To start, Plaintiffs are vague about what property interest they assert. In one breath they claim the interest is "to pursue their federal immigration claims without interference from State officials." Opp. 48 n.21. In the next, they say it is "[t]he individual interest in avoiding deportation." Opp. 49. At any rate, nowhere do Plaintiffs claim they were actually deprived of those

interests by the officials. The best they can do is point to allegations that they had immigration proceedings scheduled in October 2022, and assert that "[f]ailure to check in with ICE or attend immigration court hearings *can* result in arrest, deportation, and forfeiture of claims for immigration relief." Opp. 49 (emphasis added). But as explained, Plaintiffs filed their Amended Complaint *after* October and it does not allege that Plaintiffs missed any proceedings, nor do they allege any actual adverse consequences on this issue. State Defs. MTD 46 n.9. The opposite appears to be true. *Id.*

Plaintiffs also have not identified an interest *protected* by the Due Process Clause. Immigration status is "a matter of administrative discretion," so there "is no property interest involved" and "there is no cognizable liberty interest." *Jupiter v. Ashcroft*, 396 F.3d 487, 492 (1st Cir. 2005); *see* State Defs. MTD 46-47. Plaintiffs completely fail to address that line of binding cases. Instead, they point to a non-binding opinion stating that "Defendants have a constitutional duty not to obstruct plaintiffs' access to courts." *Orantes-Hernandez v. Meese*, 685 F. Sup. 1488, 1510 (C.D. Cal. 1988). Even if that case applied, there is no allegation that State Defendants obstructed Plaintiffs from doing anything.

Moreover, "when a state official is not acting pursuant to an established state procedure"— such as when in the context of a benefits program—"the state is not in a position to provide anything other than … postdeprivation remedies." *Lowe v. Scott*, 959 F.2d 323, 340 (1st Cir. 1992). A State cannot provide a "hearing," for example, before a state official commits a tort. *Id.* In these circumstances, "the due process inquiry is limited to the issue of adequacy of postdeprivation remedies provided by the state." *Id.* State Defendants outlined this principle in their motion to dismiss, *see* State Defs. MTD 47, and Plaintiffs did not respond to it or plead the inadequacy of post-deprivation remedies. Those failures are independently "fatal to [their] procedural due process claim." *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 944-45 (7th Cir. 2010); *see also Lowe*, 959 F.2d at 343-44; *Weimer*, 870 F.2d at 1404; *Pilgrim v. Littlefield*, 92 F.3d 413, 416-17 (6th Cir. 1996).

Finally, Plaintiffs argue that this Court must engage in a balancing test to determine the un-lawfulness of the conduct at issue, Opp. 48-49, but "[a] balancing test is difficult terrain for a party having to prove a clear violation of the law," *Romero v. Brown*, 937 F.3d 514, 520 (5th Cir. 2019).

### c.  Fourth Amendment seizure (Count 6)

State Defendants explained at length how Plaintiffs must plead they were restrained "by means of physical force or show of authority" and that Plaintiffs' "seizure-by-fraud" theory would require extending current doctrine to cover new types of conduct. State Defs. MTD 48. Plaintiffs respond that "the Supreme Court has never held that the 'means intentionally applied' *cannot* include the type of deception alleged here." Opp. 46 (emphasis added). But that is not how qualified immunity works. The question is not whether the plaintiff's theory of liability is foreclosed; the question is whether there is "'either controlling authority or a consensus of persuasive authority'" to show the plaintiff's theory is "clearly established." *Rahim*, 51 F.4th at 410. That it is an open question whether "seizure-by-fraud" is a viable theory shows it is *not* "clearly established." To date, the Supreme Court has es-tablished only two forms of seizure: by physical force or by a show of authority. *See Torres v. Madrid*, 141 S. Ct. 989, 995 (2021); *California v. Hadari D.*, 499 U.S. 621, 624-29 (1991).

Unable to identify any appellate decision that clearly established the unlawfulness of seizure-by-fraud-alone theory,[4] Plaintiffs analogize to alleged deception in Fourth Amendment "search" cases. Opp. 45-46. But even if *search* cases could clearly establish by analogy that deception alone can some-times constitute a *seizure*, those cases undermine Plaintiffs' position here. In *Pagan-Gonzalez v. Moreno*, 919 F.3d 582 (1st Cir. 2019), the First Circuit explained that "two types of deception have an imper-missibly coercive effect" in the search context. *Id.* at 594. It is "well established … that 'deception

---

[4] Plaintiffs identify an out-of-circuit district court decision. Opp. 46 (citing *Davis v. Dawson*, 545 F. Supp. 3d 682 (S.D. Iowa 2021)). District court decisions cannot clearly establish law. *See al-Kidd*, 563 U.S. at 741-42; *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011). In any event, the court held that the plaintiffs were seized when "armed, uniformed officers" clarified that they were not free to leave after the deception had already taken place. *Davis*, 545 F. Supp. 3d at 701.

18

invalidates consent when police *claim authority they lack*,'" or when they lie about a "false emergency scenario." *Id.* at 594-95 (emphasis added). Here, by contrast, Plaintiffs complain that the officials allegedly *did not disclose their authority*, Am. Compl. ¶¶80, 118, and there are no allegations that they lied about an imminent emergency. Accordingly, "the unlawfulness of [State Defendants'] conduct 'does not follow immediately from the conclusion'" that these search rules were clearly established. *Wesby*, 138 S. Ct. at 590. Plaintiffs' theory is surely not "'beyond debate.'" *Mullenix*, 577 U.S. at 16.

### C. Plaintiffs fail to state their discrimination-based Equal Protection Clause, §1985(3), and Title VI claims (Counts 2, 3 & 7).

#### 1. There are no plausible allegations of discriminatory conduct.

Plaintiffs' discrimination-based claims cannot survive *Iqbal*. State Defs. MTD 49-50. Plaintiffs try to distinguish *Iqbal* based on allegations that the officials were involved in implementing Section 185. *See* Opp. 43-44. But that suffers from the same mistake as in the fraud context: Plaintiffs must show that the officials themselves "purposefully adopted a policy" of transporting migrants "*because of* their race, religion, or national origin." *Iqbal*, 556 U.S. at 682-84 (emphasis added). Simply implementing the program does not establish that requisite intent. *See supra* 15.

*Iqbal* also forecloses Plaintiffs' attempt to infer discriminatory motive from the fact that the migrants are Latinos. In *Iqbal*, the Court considered allegations that the FBI "'arrested and detained thousands of Arab Muslim men'" and that high-level officials "'approved'" and "'cleared'" that policy. 556 U.S. at 681. The Court found these allegations did not support the plaintiff's discrimination theory at the pleadings stage. *Id.* at 681-82. That those detained were Arab Muslims was "consistent with" the discrimination theory, but the "more likely explanation[]" was a "nondiscriminatory intent to detain aliens who were illegally present in the United States and who had potential connections to" terrorism after 9/11. *Id.* Likewise, a transport program directed at the harmful effects to Florida of the border crisis "would produce a disparate, incidental impact on," *id.* at 682, Latinos, particularly "non-Mexican nationals" "from countries such as … Peru[] and Venezuela," 88 Fed. Reg. 11,704,

11,705, 11,708, 2023 WL 2162401 (Feb. 23); *accord* 87 Fed. Reg. 63,507, 63,508-09 (Oct. 19, 2022) (reporting "surge in migration of Venezuelan[s]"); State Defs. MTD 4-6. On those facts, the transports the officials "oversaw were likely lawful and justified by nondiscriminatory intent to [transport] aliens" who happened to be Venezuelan and Peruvian. *Iqbal*, 554 U.S. at 682. "As between that 'obvious alternative explanation' for the [transport], and the purposeful, invidious discrimination [Plaintiffs] ask [the Court] to infer, discrimination is not a plausible conclusion." *Id.* (citation omitted).

Plaintiffs' attempt to distinguish *Regents*, 140 S. Ct. 1891, is similarly unavailing. Opp. 42-43. In *Regents*, a majority held that the plaintiffs' "allegations [were] insufficient" to support their "claim that the rescission [of DACA] violates the equal protection guarantee." 140 S. Ct. at 1915-16 (plurality); *see id.* at 1919 n.1 (Thomas, J., concurring in the judgment) (also "reject[ing] respondents' equal protection claim"). The plaintiffs "allege[d] that animus is evidenced by … the disparate impact of the rescission on Latinos from Mexico." *Id.* at 1915. The Court disagreed. "[B]ecause Latinos make up a large share of the unauthorized alien population, one would expect them to make up an outsize share of recipients." *Id.* Plaintiffs argue that Florida's transportation program is different from rescinding DACA because DACA was a much bigger program. Opp. 42-43. But just like DACA, Section 185 applied to "unauthorized aliens," who are those "unlawfully present in the United States." And just like DACA, "because Latinos make up a large share of the unauthorized alien population, one would expect them to make up an outsize share" of those covered by the program. *See* 88 Fed. Reg. 11,704, 2023 WL 2162401. Were mere disparate impact alone enough, "virtually any generally applicable immigration policy could be challenged on equal protection grounds." *Regents*, 140 S. Ct. at 1916.

### 2.   Qualified immunity bars the equal protection and §1985(3) claims.

#### a.   Equal Protection Clause (Count 2)

Plaintiffs rest their equal-protection claim entirely on the fact that all the migrants are Latinos. Opp. 42-44. But that fact alone does not subject high-ranking officials to liability. *See supra* 19-20.

Defendants fail to "identif[y] a single precedent—much less a controlling case or robust consensus of cases—finding a … violation 'under similar circumstances.'" *Wesby*, 138 S. Ct. at 591.

### b. §1985(3) (Count 7)

Plaintiffs' defense of their §1985(3) claim merely repeats conclusory allegations of conspiracy that are insufficient to sustain the claim. Opp. 47. They again rely on allegations that the officials were involved in implementation, *id.*, but they identify no allegations that they shared a conspiratorial objective *to discriminate* as a means of implementation, State Defs. MTD 52. And Plaintiffs again fail to "identif[y] a single precedent—much less a controlling case or robust consensus of cases—finding a … [§1985] violation 'under similar circumstances.'" *Wesby*, 138 S. Ct. at 591.

It also has not been clearly established that (1) officials within and (2) agents of the same branch of government can conspire among themselves in violation of §1985. State Defs. MTD 52-53. Plaintiffs point to the First Circuit's "doubt" about whether the intra-corporate exception applies to §1985(3). Opp. 47 n.20. But that "doubt" confirms none of this is clearly established. And Plaintiffs themselves argue that Vertol, Montgomerie, and Huerta are state actors, Opp. 34-37, which would make them subject to this rule. In all events, "the fact that the courts are divided as to whether or not a §1985(3) conspiracy can arise from official discussions between or among agents of the same entity demonstrates that the law on the point is not well established." *Ziglar v. Abbasi*, 582 U.S. 120, 154 (2017). Plaintiffs do not even cite *Ziglar*, much less try to distinguish its obvious application here.

### 3. Plaintiffs have abandoned their Title VI claim (Count 3).

Plaintiffs abandoned their Title VI claim against Florida and FDOT. Opp. 37 n.12. Even if they hadn't, Plaintiffs have forfeited the claim for all Defendants by "failing to make [any] argument in [their] opposition" about it. *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 678 (1st Cir. 1995).

21

**D.  Plaintiffs fail to state a claim for preemption (Count 4).**

Plaintiffs have effectively conceded that a preemption claim can support only equitable relief. *Compare* State Defs. MTD 55-56 ("Nor can Plaintiffs obtain damages for their preemption claim."), *with* Opp. 74 n.42 (asserting only that "federal courts may issue equitable relief where state law is preempted by federal law"). But Plaintiffs have given up their ability to seek equitable relief by dismissing Florida, FDOT, and the official-capacity defendants. *See supra* 1-2 & n.1.

Plaintiffs' claim fails on the merits anyway. They agree that a transportation program is entirely lawful. Opp. 75-76. What makes this program preempted, they contend, is fraudulently inducing migrants to travel. But Plaintiffs provide no support for the idea that Congress *did not* preempt a migrant transportation program but *did* preempt the exact same program if implementing officials use fraud. There is none. State Defendants otherwise rest on their prior arguments.

**VI.  Plaintiffs fail to state a claim under state law (Counts 8-14).**

**A.  Florida substantive law applies.**

Florida tort law applies to this case. As explained, *Hyatt* requires the Court to apply Florida's sovereign immunity. *See supra* 9-11. And Florida has waived that immunity only for Florida tort law, *see* Fla. Stat. §768.28(1), so that is the only law that can possibly apply, *see* State Defs. MTD 59. Plaintiffs seemed to agree with this view when they filed their complaint because they cited Florida's sovereign-immunity statute (§768.28(1)) for the proposition that "Defendants State of Florida and FDOT have waived sovereign immunity for actions to recover damages in tort caused by the negligent acts or omissions of state or agency employees." Am. Compl. ¶314. That paragraph would make no sense if

Plaintiffs believed Massachusetts law and its immunities applied. The Court should thus be skeptical of Plaintiffs' about-face in response to the motions to dismiss.[5]

Even setting aside *Hyatt*, Florida law applies on Plaintiffs' own choice-of-law terms. "Massachusetts state courts apply 'a functional choice of law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole.'" *Reicher v. Berkshire Life Ins. Co. of Am.*, 360 F.3d 1, 5 (1st Cir. 2004). "'Under the functional approach, the forum applies the substantive law of the state which has the more significant relationship to the transaction in litigation.'" *Viscito v. Nat'l Plan. Corp.*, 34 F.4th 78, 83 (1st Cir. 2022); *see also Reicher*, 360 F.3d at 5 (listing factors).

Florida has the most significant connection to the dispute. The individuals are Florida officials who implemented a Florida law, and the remaining defendants are Florida residents. None of the Defendants set foot in Massachusetts during the relevant period; Section 185 (and SB 6-B) was passed in Florida; Vertol was hired in Florida; and all the alleged communications between the Defendants occurred outside Massachusetts. And neither Alianza nor Plaintiffs are residents of Massachusetts, as the latter "intend to relocate to other parts of the country." Am. Compl. ¶202.

Moreover, "the most relevant factor is 'certainty, predictability and uniformity.'" *Jasty v. Wright Med. Tech., Inc.*, 528 F.3d 28, 41 (1st Cir. 2008). A rule that applies the law and immunities of the State when its officials are sued for acts within the scope of employment is straightforward, easy to apply, and would lead to uniform and predictable results. It ensures the home State's laws govern official acts implementing that State's law. For similar reasons, comity strongly supports applying Florida law. "Probably the most important function of choice-of-law rules is to make the interstate and international systems work well. Choice-of-law rules, among other things, should seek to further harmonious

---

[5] Plaintiffs briefly contend that their Amended Complaint is not quintessential shotgun pleading. *Compare* State Defs. MTD 14-15, *with* Opp. 16 n.3. They claim that Defendants "understand the nature of the claims asserted against them" and that Defendants were not "'prejudice[d]'" by the complaint. Opp. 16 n.3. That is irreconcilable with Plaintiffs citing Florida law in their Amended Complaint but arguing that Massachusetts law applies. Opp. 53. The Amended Complaint is a shotgun pleading.

relations between states." Restatement (Second) of Conflict of Laws §6 cmt. *d* (1971); *see also Reicher*, 360 F.3d at 5 ("Maintenance of interstate and international order" is a factor). Applying Florida law and its immunities best achieves this outcome because this case "directly implicates important governmental functions and controversial policy choices," *Mejia-Cabral v. Eagleton Sch., Inc.*, 1999 WL 791957, at *2 (Mass. Super.), *i.e.*, the implementation of a Florida law and its policy choices.[6]

**B.   Florida and Massachusetts immunity and exhaustion rules bar Plaintiffs' claims.**

*Florida.* State Defendants explained that absolute immunity and exhaustion rules under Florida law bar Plaintiffs' claims. *See* State Defs. MTD 59-60; Opp. 70-73. Plaintiffs "fail[ed] to respond to" those issues, so, if Florida law applies, then Plaintiffs' claims are barred under both doctrines and "should be dismissed." *See Trindade v. Grove Servs., Inc.*, 2020 WL 6566509, at *4 (D. Mass.).

Plaintiffs' claims also do not fall within Florida's waiver of sovereign immunity. Fla. Stat. §768.28(1). To start, State Defendants were acting within the scope of their employment. *See* State Defs. MTD 61-62. Plaintiffs respond, in a single sentence, that the Florida officials acted outside the scope of their employment because they "transport[ed] immigrants from *Texas* for the purposes of personal political gain when the statute [*i.e.*, Section 185] pursuant to which the transportation was funded and effected authorized only transportation of immigrants from *Florida*." Opp. 72. This assertion is the same as Plaintiffs' *ultra vires* claim that they have now effectively abandoned. *See infra* 30. That was wise because Section 185 authorized Plaintiffs' transportation from Texas, through Florida, and onto Massachusetts. *See* State Defs. MTD 71. But any doubt on that issue was erased because SB 6-B repealed Section 185 and "approved" "[a]ll payments made" under Section 185. Ch. 2023-3, Laws

---

[6] Plaintiffs provide little substance to support their argument otherwise. Opp. 53. They rely primarily on a "one-factor test"—place of the injury—but Massachusetts has "replaced 'one-factor tests with a more functional approach.'" *Bushkin Assocs., Inc. v. Raytheon Co.*, 473 N.E.2d 662, 668 (Mass. 1985). Their analysis is incorrect even under that standard. The "last event giving rise to liability (and the Individual Plaintiffs' injuries)," Opp. 53, did not occur in Massachusetts, *see supra* 4-6.

of Florida (2023). Thus, the State has ratified the prior transportation, and as Plaintiffs concede, SB 6-B clearly authorizes transportation from outside Florida. *See* Opp. 75 n.41. At the very least, however, the alleged torts "were committed during the course of the employment and to further a purpose or interest … of the[ir] employer," even if Plaintiffs think the way they did so was "excessive or misguided." *Nazareth v. Herndon Ambulance Serv., Inc.*, 467 So. 2d 1076, 1078 (Fla. Dist. Ct. App. 1985).

Plaintiffs next assert that *Palazzo Las Olas Grp. LLC v. City of Fort Lauderdale*, 966 So. 2d 497 (Fla. Dist. Ct. App. 2007), and *Testa v. Jupiter Island Compound, LLC*, 358 So. 3d 780 (Fla. Dist. Ct. App. 2023), support the notion that Plaintiffs overcome §768.28 immunity because those cases found sufficient allegations of bad faith and involved "lesser abuses of public office" than those alleged here. Opp. 73. But §768.28 immunity does not turn on the level of the office holder at issue, so it does not matter whether the claim involves a statutory relocation program or local development application. What does matter—as *Palazzo* makes clear—is that courts must conduct a searching review of a plaintiff's complaint to ensure allegations of bad faith or malicious purpose are "minimally sufficient," *i.e.*, not conclusory. 966 So. 2d at 503.[7] Here, however, Plaintiffs lack detailed, non-conclusory allegations that each State Defendant personally took actions that demonstrate bad faith and malicious purpose. *See, e.g.*, *Cohen v. Drucker*, 677 So. 2d 953, 954 (Fla. Dist. Ct. App. 1996) (lack of non-conclusory allegations requires dismissal). "Meticulously plan[ning]" to carry out, and "extravagantly fund[ing]," Opp. 73, a statutorily authorized program is not evidence of malice or bad faith. To the contrary, planning and funding pursuant to a statutory authorization or command are precisely "action[s] in the scope … employment or function." Fla. Stat. §768.28(1).

***Massachusetts.*** The outcome is the same under Massachusetts law. Plaintiffs concede that "Massachusetts … affords a common-law immunity to public officials whose actions were taken 'in

---

[7] In *Testa*, the court *dismissed* the case on absolute-immunity grounds, and the language on statutory immunity is to become operative only if that holding is reversed. 358 So. 3d at 783. That part of the opinion is dicta and cannot be relied upon to establish controlling law on §768.28 immunity.

good faith, without malice, and without corruption.'" Opp. 72. And in Massachusetts, "'[t]here is every presumption in favor of the honesty and sufficiency of the motives actuating public officers in actions ostensibly taken for the general welfare.'" *S. Bos. Betterment Tr. Corp. v. Bos. Redevelopment Auth.*, 777 N.E.2d 812, 820 (Mass. 2002). That presumption means this immunity is even stronger than Florida's version. *See* Fla. Stat. §768.28(9)(a). In fact, "overcoming Massachusetts' common law immunity requires more" than overcoming "qualified immunity under federal law." *Nasir v. Town of Foxborough*, 2020 WL 1027780, at *9 (D. Mass.). For the same reasons as under Florida law, then, Massachusetts immunity bars the claims here. *See* State Defs. MTD 62-64.

Plaintiffs' main counterargument is that the transportation program was "part of a political stunt to boost … DeSantis's national profile." Opp. 72; *see also* Opp. 73 ("political gain"). But an alleged political motive does not mean the actions were in bad faith. That would mean every politician who campaigns on certain policies and then works to achieve them would meet this narrow exception for personal liability. Plaintiffs "failed to state a plausible claim that bad faith or malice, as opposed to a concern for the [the State of Florida's] residents' general welfare, motivated [the Florida officials'] behavior." *Najas Realty, LLC v. Seekonk Water Dist.*, 821 F.3d 134, 146 (1st Cir. 2016).

### C.  Plaintiffs fail to plausibly allege claims under Florida or Massachusetts law.

#### 1.  Negligent infliction of emotional distress (Count 11)

Massachusetts sovereign-immunity law bars negligence-based tort claims against public officials. *See Caisse v. DuBois*, 346 F.3d 213, 218 (1st Cir. 2003) ("Caisse's negligence claims against the Department of Corrections defendants in their individual capacities are barred because the Tort Claims Act shields public employees from personal liability for negligent conduct."); *Grace v. Bd. of Trustees*, 2022 WL 3754756, at *19 (D. Mass.) (dismissing NIED claim because of Massachusetts immunity). So even if Massachusetts immunities apply, Plaintiffs' NIED claim is barred.

Plaintiffs' claim also fails under Florida law because §768.28 bars negligence claims and because the harm must be "manifested by physical injury" and Plaintiffs have alleged no such injury. State Defs. MTD 61. Plaintiffs argue that "[i]nsomnia and depressive behavioral changes are physical 'manifestations … of psychic injury,' sufficient to support Individual Plaintiffs' tort claim." Opp. 61 n.31 (second alteration in original) (quoting *Zell v. Meek*, 665 So. 2d 1048, 1054 (Fla. 1995)). But that is not what *Zell* decided. The plaintiff in *Zell* did suffer from insomnia and depression, but those were "psychic injur[ies]"; there was a later "continued … progressive pattern of exacerbation before rising to the level of physical impairments within nine months." 665 So. 3d at 1054. It was those *physical* injuries that supported the claim. *Id.* at 1049-50, 1054. No such allegations exist here.

### 2.   Intentional infliction of emotional distress (Count 10)

The parties agree that the elements of IIED under Massachusetts law are materially identical to Florida law. Opp. 64 n.34. Like Florida, Massachusetts has "very" stringent elements of outrageousness and severity of emotion distress. *See Madison v. Cruz*, 359 F. Supp. 3d 135, 145-46 (D. Mass. 2019); *Polay v. McMahon*, 10 N.E.3d 1122, 1128 (Mass. 2014) ("'The standard for making a claim of [IIED] is very high.'"). And, like Florida law, "[c]onduct qualifies as extreme and outrageous only if it goes beyond all possible bounds of decency, and is regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (cleaned up). Plaintiffs have not stated a claim under Massachusetts law for the same reasons they have not stated one under Florida law. *See* State Defs. MTD 62-64.

State Defendants focus on two additional issues raised in Plaintiffs' opposition. **First**, Plaintiffs rely solely on one case—*Dale v. United States*, 2013 WL 2920428 (M.D. Fla.)—to argue they have adequately stated a claim under Florida law. *See* Opp. 64-65 n.34. But *Dale* applied *Louisiana* law, not Florida law. 2013 WL 2920428, at *2 & n.3. **Second**, Plaintiffs say (at 62) that Defendants' arguments "concern factual disputes that cannot be resolved on a motion to dismiss." Under Florida and Massachusetts law, however, outrageousness and severity of emotional distress are legal questions. *See, e.g.,*

*McCarty v. Verizon New England, Inc.*, 731 F. Supp. 2d 123, 130 (D. Mass. 2010) ("Whether a plaintiff has alleged facts sufficient to meet this standard is a question of law for the court."); *Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 595 (Fla. Dist. Ct. App. 2007) ("question of law").

### 3.  False imprisonment (Count 8)

Plaintiffs do not dispute that a plaintiff must be "aware of the restraint" to establish a false imprisonment claim. *See* State Defs. MTD 68. Nor do Plaintiffs dispute that they allegedly became aware of their destination only immediately before landing. Plaintiffs respond by adding a "second form of confinement." Opp. 66. Citing an Alaska case, Plaintiffs claim that Defendants somehow confined Plaintiffs to the entire island of Martha's Vineyard. *Id.* But in that case, the court merely speculated that the plaintiff "might have a claim sounding in false imprisonment" *if* the defendants had "prevented [the plaintiff's] only reasonable means of departure." *Helstrom v. North Slope Borough*, 797 P.2d 1192, 1199 (Alaska 1990). There are no allegations that State Defendants prevented Plaintiffs from leaving Martha's Vineyard; indeed, no Defendant even set foot in Massachusetts. The island was not a "'prison'"; Plaintiffs "could leave" whenever they wanted. *Albright v. Oliver*, 975 F.2d 343, 346 (7th Cir. 1992) (cited at Opp. 66). And they apparently did so. *See* State Defs. MTD 46 n.9.

Plaintiffs also do not dispute that Florida law requires a defendant to "have personally and actively participated" in the false imprisonment. *Johnson v. Weiner*, 19 So. 2d 699, 701 (Fla. 1944). They respond (at 67) that "[u]nder Massachusetts law, a 'person can be liable for false imprisonment carried out by third parties if they engage in conduct that sets in motion a false imprisonment.'" But that is true only if the person acts "knowing that there was no lawful basis for the imprisonment." *Gallagher v. S. Shore Hosp., Inc.*, 197 N.E.3d 885, 909 (Mass. App. Ct. 2022). That means Plaintiffs' argument hinges on their complaint having plausible allegations that the Florida officials had knowledge that fraud would be used. There are no such allegations. *See* State Defs. MTD 35-41; *supra* 13-15.

### 4. Fraud (Count 9)

Plaintiffs' fraud claim under either Massachusetts or Florida law suffers from the same plead-ing problems discussed for the fraud-based federal claims. *See supra* 13-15. Plaintiffs further assert that the Florida officials are liable for fraud because "each Defendant was deeply and purposefully involved in the fraudulent scheme" and because "[w]ithout each of the Defendant's efforts, the scheme would not have succeeded." Opp. 59. But "[i]n Massachusetts, a person is generally liable in common-law fraud only for fraudulent representations for which he himself is responsible." *Taylor v. Am. Chemistry Council*, 576 F.3d 16, 32 (1st Cir. 2009); *see also Latell v. Triano*, 2014 WL 6240001, at *6 (M.D. Fla.) ("The first element of a fraud claim requires the misrepresentation be made by the defendant." (citing *Jackson v. Shakespeare Found., Inc.*, 108 So.3d 587, 595 n.2 (Fla. 2013))). Plaintiffs do not contend that an exception to this rule applies, Opp. 59-60, and here all the alleged misstatements were made by Huerta, *see* Opp. 54-57. Plaintiffs try (at 59) to tie State Defendants to the alleged fraudulent statements by noting State Defendants were involved in implementing Section 185 separate from the alleged fraud. But, here again, that State Defendants were generally involved in executing the law says nothing about whether they directed fraudulent statements on the ground.

### 5. Civil conspiracy and aiding and abetting (Counts 12 and 13)

If the Court dismisses the underlying torts of fraud, false imprisonment, and infliction of emo-tional distress, then under both Massachusetts and Florida law, the Court must dismiss Plaintiffs' civil-conspiracy and aiding-and-abetting claims. *See* State Defs. MTD 69-70. Plaintiffs do not argue other-wise. *See* Opp. 68-69. But it is not these claims' only defect.

Plaintiffs must plausibly allege that the Florida officials knew another defendant was commit-ting the underlying torts. *See* Opp. 69-70; *Mass. Port Auth. v. Turo Inc.*, 166 N.E.3d 972, 981 (Mass. 2021) (aiding and abetting requires this knowledge); *Taylor*, 576 F.3d at 35 (same for civil conspiracy). But there are no plausible allegations that any of the Florida officials directed or knew that anyone

was committing fraud. *See supra* 13-15. Plaintiffs counter with a watered-down knowledge requirement under which "the knowledge element is satisfied when individuals are in direct communication and have reason to know of the fraud." Opp. 69. But that is not the standard. "Merely showing the defendant's 'general awareness' that their ostensible co-conspirator is engaged in tortious acts is insufficient." *Thomas v. Harrington*, 909 F.3d 483, 491 (1st Cir. 2018); *see also In re TelexFree*, 2022 WL 3915989, at *6 ("To state a claim for tortious aiding and abetting, a plaintiff must allege facts which give rise to a 'strong inference' that the defendant 'actually knew' that the underlying tort was being committed."). And even under Plaintiffs' standard State Defendants still would not "have reason to know of the fraud." In Plaintiffs' sole cited authority, for example, there were specific allegations that the defendant was concerned the company whose scheme it was abetting was bogus. *See In re TelexFree Sec. Litig.*, 357 F. Supp. 3d 122, 128 (D. Mass. 2019). There are no such specific allegations for any State Defendant.

Finally, Plaintiffs recognize that to state a civil-conspiracy claim (under Massachusetts or Florida law), they must plausibly allege "a shared conspiratorial objective" and "an intent to provide assistance to the scheme to defraud Class Plaintiffs to their detriment." Opp. 68. For the same reasons as the federal conspiracy claim, Plaintiffs do not adequately plead such elements. *See supra* 21.

### 6.   Ultra vires (Count 14)

Plaintiffs appear to drop their *ultra vires* claim. Opp. 75 n.41. In any event, the claim should be dismissed because (1) a plaintiff cannot obtain damages for an *ultra vires* claim, *see* State Defs. MTD 70-71, (2) Plaintiffs do not seek equitable relief based on their state claims, *see* Opp. 33-34, and (3) Section 185 or SB 6-B authorized the transport, *see supra* 24-25. It should also be dismissed because Plaintiffs made "no reasoned argument to support" this claim, so it is "abandoned." *Pan*, 489 F.3d at 87.

### CONCLUSION

For all these reasons, this Court should grant the motion to dismiss.

Dated: June 16, 2023

/s/ Thomas C. Frongillo
Thomas C. Frongillo
  (BBO# 180690)
CAMPBELL CONROY & O'NEIL, P.C.
20 City Square, Suite 300
Boston, MA 02129
Tel: 617-241-3092
TFrongillo@campbell-trial-lawyers.com

Counsel for State of Florida, Florida Department
of Transportation, Governor DeSantis, and Sec-
retary Perdue

Ashley Moody
ATTORNEY GENERAL OF FLORIDA

/s/ Bilal Ahmed Faruqui
Bilal Ahmed Faruqui (admitted pro hac vice)
SPECIAL COUNSEL
Office of the Attorney General
Civil Litigation Division
The Capitol, PL-01
Tallahassee, Florida 32399-1050
Bilal.Faruqui@myfloridalegal.com
(850) 414-3757
Florida Bar Number 0015212

Counsel for the State of Florida


/s/ Jesse Panuccio
Jesse Panuccio (admitted pro hac vice)
BOIES SCHILLER FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL  33301
Tel: (954) 356-0011
jpanuccio@bsfllp.com

Counsel for James Uthmeier

Respectfully submitted,

/s/ Bryan Weir
Jeffrey M. Harris (admitted pro hac vice)
Bryan Weir (admitted pro hac vice)
C'Zar Bernstein (admitted pro hac vice)
Thomas S. Vaseliou (admitted pro hac vice)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
Tel: (703) 243-9423
bryan@consovoymccarthy.com
jeff@consovoymccarthy.com
czar@consovoymccarthy.com
tvaseliou@consovoymccarthy.com

Counsel for State of Florida, Florida Department of Transpor-
tation, Governor DeSantis, and Secretary Perdue

/s/ Jeff Aaron
Jeff Aaron (admitted pro hac vice)
GRAYROBINSON, P.A.
301 East Pine Street, Suite 1400
Orlando, FL 32801
Tel: 407-244-5644
jeff.aaron@gray-robinson.com
cindi.garner@gray-robinson.com

Ashley Lukis (admitted pro hac vice)
GRAYROBINSON, P.A.
301 S Bronough Street, Suite 600
Tallahassee, FL 3230
Tel: 850-507-9090
ashley.lukis@gray-robinson.com
vanessa.reichel@gray-robinson.com

Counsel for Lawrence A. Keefe

**CERTIFICATE OF SERVICE**

I hereby certify that I filed this document through the Court's ECF system on June 16, 2023,

which will therefore automatically be sent electronically to all counsel of record via the CM/ECF

system.

Dated: June 16, 2023                                      _s/ Bryan Weir_____