UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

ALIANZA AMERICAS, YANET DOE, PABLO DOE, and JESUS DOE, on behalf of themselves and all others similarly situated,

Plaintiffs,

-against-

RONALD D. DESANTIS, Governor of Florida, in his official and personal capacities; JARED W. PERDUE, Secretary of the Florida Department of Transportation, in his official and personal capacities; LAWRENCE A. KEEFE, Florida Public Safety Czar, in his official and personal capacities; JAMES UTHMEIER, Chief of Staff to Florida Governor, in his official and personal capacities; STATE OF FLORIDA; THE FLORIDA DEPARTMENT OF TRANSPORTATION; JAMES MONTGOMERIE; PERLA HUERTA; and VERTOL SYSTEMS COMPANY, INC.,

Defendants.

Civil Action No. 1:22-cv-11550-ADB

Leave to File Reply Memorandum of 20 Pages Granted on May 24, 2023 [PACER Dkt. 104]

---

## REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS VERTOL SYSTEMS COMPANY, INC. AND JAMES MONTGOMERIE'S MOTION TO DISMISS

Brian T. Kelly
Christopher J. Stevens (admitted *pro hac vice*)
NIXON PEABODY LLP
Exchange Place
53 State Street
Boston, Massachusetts 02109-2835
Telephone: 617-345-1000
Facsimile: 855-714-9513
bkelly@nixonpeabody.com

*Attorneys for Defendants Vertol Systems Company, Inc. and James Montgomerie*

June 16, 2023

**TABLE OF CONTENTS**

Page

Preliminary Statement ................................................................................................1

Argument ....................................................................................................................3

I.   PLAINTIFFS STILL HAVE NOT SHOWN THAT THE VERTOL
     DEFENDANTS ARE SUBJECT TO PERSONAL JURISDICTION IN
     MASSACHUSETTS ..........................................................................................3

     A.   Plaintiffs Still Have Not Satisfied Subsection 3(a) of the Long-Arm
          Statute. ......................................................................................................3

     B.   Plaintiffs Still Have Not Satisfied Subsection 3(c) of the Long-Arm
          Statute. ......................................................................................................5

     C.   Exercising Personal Jurisdiction Here Would Offend Due Process. .......6

II.  MASSACHUSETTS STILL IS NOT A PROPER VENUE FOR THIS ACTION. ...........7

III. PLAINTIFFS STILL HAVE NOT SHOWN STANDING TO ASSERT MOST
     OF THEIR CLAIMS. ........................................................................................7

IV.  PLAINTIFFS STILL HAVE NOT SHOWN THAT THE VERTOL
     DEFENDANTS ARE STATE ACTORS. ............................................................8

     A.   Plaintiffs Still Have Not Satisfied the State Compulsion Test. ..............9

     B.   Plaintiffs Still Have Not Satisfied the Joint Action Test. .......................9

V.   IF THE VERTOL DEFENDANTS ARE STATE ACTORS, THEY STILL
     HAVE QUALIFIED IMMUNITY. ...................................................................10

VI.  PLAINTIFFS STILL HAVE NOT SHOWN THAT THEY HAVE STATED
     ANY FEDERAL CLAIM AGAINST THE VERTOL DEFENDANTS. .................10

     A.   Plaintiffs Still Fail To State a Substantive Due Process Claim. ...........11
     B.   Plaintiffs Still Fail To State an Equal Protection Claim. .......................11
     C.   Plaintiffs Still Fail To State a Fourth Amendment Claim. ....................12
     D.   Plaintiffs Fail To State a Procedural Due Process Claim. .....................14
     E.   Plaintiffs Fail To State a Civil Rights Conspiracy Claim. ....................15

VII. PLAINTIFFS STILL HAVE NOT STATED ANY COMMON LAW CLAIM
     AGAINST THE VERTOL DEFENDANTS. ......................................................15

     A.   Plaintiffs Still Fail To State a False Imprisonment Claim. ...................15
     B.   Plaintiffs Still Fail To State a Fraud Claim. .......................................166
     C.   Plaintiffs Still Fail to State a Claim for Intentional Infliction of Emotional
          Distress. ...................................................................................................17
     D.   Plaintiffs Still Fail to State a Claim for Negligent Infliction of Emotional
          Distress. ...................................................................................................18
     E.   Plaintiffs Still Fail to State a Civil Conspiracy Claim. .........................19
     F.   Plaintiffs Still Fail to State a Claim of Aiding and Abetting. ...............19

Table of Contents (continued)

Page

Conclusion ............................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilar v. United States Immigration & Customs Enforcement Div. of the Dep't of Homeland Sec.*,
510 F.3d 1 (1st Cir. 2007) ..................................................................................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................11, 12

*Ball v. Wal-Mart, Inc.*,
102 F. Supp. 2d 44 (D. Mass. 2000) ..................................................................16

*Blake v. Pro. Coin Grading Serv.*,
898 F. Supp. 2d 365 (D. Mass. 2012) ................................................................19

*Brooks v. Martha's Vineyard Transit Auth.*,
433 F. Supp. 3d 65 (D. Mass. 2020) ..................................................................18

*County of Sacramento v. Lewis*,
523 U.S. 833 (1998) ..........................................................................................11

*DaCosta v. Gonzales*,
449 F.3d 45 (1st Cir. 2006) ..............................................................................14

*Dagi v. Delta Airlines, Inc.*,
961 F.3d 22 (1st Cir. 2020) ..............................................................................15

*Davis v. Dawson*,
545 F. Supp. 3d 682 (S.D. Iowa 2021) ..............................................................13

*Debreceni v. Bru-Jell Leasing Corp.*,
710 F. Supp. 15 (D. Mass. 1989) ........................................................................5

*Driscoll v. McCann*,
505 F. Supp. 3d 32 (D. Mass. 2020) ................................................................6, 7

*Equal Means Equal v. Dep't of Educ.*,
450 F. Supp. 3d 1 (D. Mass. 2020) ..................................................................7, 8

*Estades-Negroni v. CPC Hosp. San Juan Capestrano*,
412 F.3d 1 (1st Cir. 2015) ..................................................................................9

*Focus on the Family v. Pinellas Suncoast Transit Auth.*,
344 F.3d 1263 (11th Cir. 2003) ......................................................................9, 10

*Goebel v. Schmid Bros.*,
   871 F. Supp. 68 (D. Mass. 1994) ........................................................................15

*Gonzalez-Fuentes v. Molina*,
   607 F.3d 864 (1st Cir. 2010) ...............................................................................11

*Gutierrez v. Mass. Bay Transp. Auth.*,
   437 Mass. 396 (2002) ..........................................................................................18

*Jupiter v. Ashcroft*,
   396 F.3d 487 (1st Cir. 2005) ...............................................................................14

*Kaul v. Boston Partners, Inc.*,
   No. 21-10326, 2021 WL 3272216 (D. Mass. July 30, 2021) (Burroughs, J.) .........7

*Kennedy v. Town Of Billerica*,
   617 F.3d 520 (1st Cir. 2010) ...............................................................................18

*Lyle Richards Int'l, Ltd. v. Ashworth, Inc.*,
   132 F.3d 111 (1st Cir. 1997) .................................................................................5

*Mass. Laborers' Health & Welfare Fund v. Philip Morris, Inc.*,
   62 F. Supp. 2d 236 (D. Mass. 1999) ....................................................................19

*McLaughlin v. J-PAC, LLC*,
   No. 10-2594, 2011 WL 1758945 (Mass. Super. Apr. 14, 2011) ...........................19

*Mora v. Angiodynamics, Inc.*,
   No. 21-11352, 2021 WL 5040333 (D. Mass. Oct. 28, 2021) (Burroughs, J) ..........5

*Mulder v. Kohl's Dep't Stores, Inc.*,
   No. 15-11377, 2016 WL 393215 (D. Mass. Feb. 1, 2016), *aff'd*, 865 F.3d 17
   (1st Cir. 2017) .....................................................................................................17

*Pagan-Gonzalez v. Moreno*,
   919 F.3d 582 (1st Cir. 2019) ...............................................................................13

*Perkins v. Londonderry Basketball Club*,
   196 F.3d 13 (1st Cir. 1999) ...................................................................................9

*Polay v. McMahon*,
   468 Mass. 379 (2014) ..........................................................................................17

*Santiago v. Puerto Rico*,
   655 F.3d 61 (1st Cir. 2011) ...................................................................................9

*Shaulis v. Nordstrom Inc.*,
  120 F. Supp. 3d 40 (D. Mass. 2015), *aff'd*, 865 F.3d 1 (1st Cir. 2017) ............................ 16, 17

*Sherkat v. New England Vill., Inc.*,
  No. 15-11074, 2015 WL 8215983 (D. Mass. Dec. 8, 2015), *aff'd*, 691 F.
  App'x 644 (1st Cir. 2016) ................................................................................................ 9

*Smith v. Comair, Inc.*,
  134 F.3d 254 (4th Cir. 1998) ......................................................................................... 16

*Soni v. Wespiser*,
  239 F. Supp. 3d 373 (D. Mass. 2017) ........................................................................... 17

*In re TelexFree Sec. Litig.*,
  No. 14-02566, 2022 WL 3915989 (D. Mass. Aug. 31, 2022) .......................................... 4

*Tomas v. Buckley*,
  No. 19-12079, 2020 WL 2616304 (D. Mass. May 22, 2020) ........................................... 5

*Torosian v. Garabedian*,
  206 F. Supp. 3d 679 (D. Mass. 2016) ........................................................................... 18

*Traverse v. Gutierrez Co.*,
  No. 18-10175, 2018 WL 5619201 (D. Mass. Oct. 30, 2018) .......................................... 20

*Victim Rts. L. Ctr. v. Cardona*,
  552 F. Supp. 3d 104 (D. Mass. 2021) ............................................................................. 8

**Statutes**

42 U.S.C. § 1985(3) ........................................................................................................... 15

**Other Authorities**

Mass. Gen. L. ch. 223A, §§ 3(a) and (c) ............................................................................. 3

Restatement (Second) of Torts § 36 .................................................................................. 16

Restatement (Second) of Conflicts of Laws § 145 ............................................................ 15

Restatement (Second) of Torts § 436A cmt. c ............................................................. 18, 19

Defendants Vertol Systems Company, Inc. ("Vertol") and its Chief Executive Officer James Montgomerie (collectively the "Vertol Defendants") respectfully submit this reply memorandum in further support of their motion pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (3), and (6) to dismiss the Amended Complaint of Plaintiffs Alianza Americas ("Alianza"), Yanet Doe, and Pablo Doe (the "Individual Plaintiffs" and, collectively with Alianza, "Plaintiffs").

<u>Preliminary Statement</u>

In 84 pages of their Corrected Consolidated Memorandum in Opposition to Defendants' Motion to Dismiss ("Plaintiffs' Br.") [PACER Dkt. 98], Plaintiffs never provide any convincing explanation, much less evidence, for why this Court should have jurisdiction over the Vertol Defendants.  Instead, they make arguments such as "[w]ithout hiring Vertol and directing the planes to Martha's Vineyard, Plaintiffs would not have been brought, under false pretenses, to Massachusetts . . . ."  Plaintiffs' Br. at 18.  But being an alleged intermediate link in a chain of causation is not a sufficient basis for personal jurisdiction or venue in Massachusetts.  The motion of the Vertol Defendants to dismiss should therefore be granted for at least five reasons.

First, Plaintiffs have not met the requirements for personal jurisdiction under subsections 3(a) and 3(c) of the Massachusetts long-arm statute, Mass. Gen. L. ch. 223A.  They have not, for example, shown that the Vertol Defendants either transacted business, or committed some act, in Massachusetts that caused Plaintiffs harm.  They have not even shown that any contact between the Vertol Defendants and Massachusetts was the first step, as opposed to an intermediate or last step, in any chain of events leading directly to Plaintiffs' alleged injury.

Second, Plaintiffs have not shown that they have standing to seek the relief they demand against the Vertol Defendants. The Individual Plaintiffs do not claim standing to seek injunctive

relief on a class-wide basis.  *See*, *e.g.*, Plaintiffs' Br. at 29-33.  Alianza does not claim

associational standing.  *Id.*  And as to organizational standing, Alianza has now effectively

conceded that it has no meaningful injury by proposing to drop many of its claims in exchange

for this Court retaining jurisdiction in Massachusetts.  *See id.* at 16 n.4, 37 n.12.[1]

Third, Plaintiffs have not shown that the Vertol Defendants are state actors under either

the "state compulsion" or "joint action" test.  At most, they have alleged that the Vertol

Defendants communicated with the State Defendants periodically while the contracted-for work

was performed.  Plaintiffs have not shown how such an ordinary contract relationship transforms

either Vertol Defendant into a state actor.

Fourth, even if the Vertol Defendants were state actors, Plaintiffs have not stated a

federal claim against them.  Plaintiffs have neither alleged nor shown that either Vertol

Defendant acted in a way "offensive to human dignity" as Plaintiffs admit is required.  *E.g.*,

Plaintiffs Br. at 38 (quoting, e.g., *Cummings v. McIntire*, 271 F.3d 341, 344 (1st Cir. 2001)

(where policeman hit plaintiff for asking directions, conduct did not rise the required level of

"offensive to human dignity," "so extreme as to 'shock the conscience'," or "brutal, inhumane,

---

[1] Alianza's causation argument for organizational standing also demonstrates its weakness.  Alianza argues that "Defendants' ongoing scheme injures Alianza," Plaintiffs' Br. at 30, without identifying what any Vertol Defendant did that directly caused that injury.  Alianza argues instead that the mechanism of injury was that a collective "scheme deceives immigrants . . . and then sequesters them in remote locations, keeping newly arrived immigrants from receiving actual assistance from Alianza . . . ."  *Id.*  But this would not cause Alianza to expend any additional resources (or suffer any injury).  So Alianza then claims that "when the scheme unfolds and immigrants are abandoned, it creates an unforeseen and urgent demand for Alianza's assistance . . . ."  *Id.*  But Alianza offers no proof that such assistance would be materially different than the assistance it would offer to immigrants anyway, or that any substantial group of immigrants would actually have sought that assistance from Alianza as opposed to some other provider because of the "scheme."  Alianza cannot claim organizational injury by asking the Court to presume that Alianza would have provided no help absent the supposed "scheme", but that it would have been forced to provide help if there was a "scheme."

or vicious.") (citations omitted)).  Nor have Plaintiffs alleged or shown that any Vertol

Defendant had the discriminatory motive needed for an equal protection or civil conspiracy

claim, had interfered intentionally with protected immigration proceedings as would be required

for a procedural due process claim, or had deceived any Individual Plaintiff in a coercive manner

as would be required for a Fourth Amendment claim.

Fifth, Plaintiffs have not stated any plausible common law claim, even if Massachusetts

law applies (which it does not).  They simply have not alleged facts as to the Vertol Defendants

supporting one or more of the necessary elements of any of their claims of false imprisonment,

fraud, intentional or negligent infliction of emotional distress, civil conspiracy, or aiding and

abetting.  They have not even alleged facts demonstrating any pecuniary loss (as required, for

example, for a fraud claim).

<u>Argument</u>

For each of the reasons summarized above, Plaintiffs have failed to rebut the grounds for

dismissal already shown by the Vertol Defendants.

I. PLAINTIFFS STILL HAVE NOT SHOWN THAT THE VERTOL DEFENDANTS
   ARE SUBJECT TO PERSONAL JURISDICTION IN MASSACHUSETTS.

Plaintiffs argue only two potential bases for personal jurisdiction over the Vertol

Defendants in this Court.  Plaintiffs' Br. at 16-21 (discussing MASS. GEN. L. ch. 223A, §§ 3(a)

and (c)).  They have carried their burden as to neither.

A. <u>Plaintiffs Still Have Not Satisfied Subsection 3(a) of the Long-Arm Statute.</u>

Plaintiffs argue that the Vertol Defendants transacted business in Massachusetts.  But

they point to no facts that would be admissible and sufficient to support such a conclusion for

purposes of subsection 3(a) of the Massachusetts long-arm statute.  They state, for example, that

"[t]hey" hired and arranged for two planes to fly to and land in Martha's Vineyard; that "[t]hey

hired video crews to film Class Plaintiffs disembarking from the planes and getting into vans hired by Defendants"; and that "they sought to and did benefit from media coverage of these actions in Massachusetts."  Plaintiffs' Br. at 18 (citing AC ¶¶ 53-54, 149-51).  But there are no allegations that either Vertol Defendant (or any other Defendant, as opposed to a generic "they") took any of these actions—or that either Vertol Defendant did so in Massachusetts or acted through any Massachusetts agent in doing so.

Citing *In re TelexFree Sec. Litig.*, *see* Plaintiffs' Br. at 18, does not cure this lack.  There, the defendant contracted to provide advice and assistance on marketing, organizational structure, product, and project management to "TelexFree" for it to use in Massachusetts.  *In re TelexFree Sec. Litig.*, No. 14-02566, 2022 WL 3915989, at *14 (D. Mass. Aug. 31, 2022).  The contract "specified that TelexFree . . . was "based in Massachusetts."  *Id.*  The court held that these facts supported a conclusion that the defendant was subject to personal jurisdiction for its "attempt[] to participate in the commonwealth's economic life."  *Id.* (quotation omitted).

Here, however, Plaintiffs have abandoned any argument for personal jurisdiction under subsection 3(b) of the Massachusetts long-arm statute (contracting to supply services or things in the Commonwealth) and they allege no facts that would bring their argument within the bounds of *TelexFree's* focus on "participat[ion] in the commonwealth's economic life."  They do not, for example, even allege that the Vertol Defendants contracted with any Massachusetts-based entity. The relevant contracts were for the transportation of individuals located in Texas; were bid on, awarded, and executed in Florida; did not specify Massachusetts as a destination certain; and were performed primarily in Texas and Florida.  AC ¶¶ 40-57, 87, 95, 98, 128-32, 147, 150.

B.      Plaintiffs Still Have Not Satisfied Subsection 3(c) of the Long-Arm Statute.

Subsection 3(c) of the Massachusetts long-arm statute applies when a defendant causes tortious injury by an act or omission in Massachusetts.  The requirement is an act or omission in Massachusetts by the defendant, not a feeling of effects by a plaintiff in Massachusetts.  *See Tomas v. Buckley*, No. 19-12079, 2020 WL 2616304, at *4 (D. Mass. May 22, 2020).  Plaintiffs therefore try to argue that "Defendants falsely imprisoned them in Massachusetts both shortly before and after the planes landed," Plaintiffs' Br. at 19, and that "Defendants' false imprisonment, fraud, and infliction of emotional distress claims were not complete until Plaintiffs were in Massachusetts," *id.* at 20.  But even if this were assumed to be true (and it cannot be, because Plaintiffs also allege that the same supposed wrong began in Texas, *e.g.*, AC ¶ 1), it would establish personal jurisdiction only for that limited subset of Plaintiffs' claims.  *E.g.*, *Debreceni v. Bru-Jell Leasing Corp.*, 710 F. Supp. 15, 19 (D. Mass. 1989).

In addition, Plaintiffs have at most shown that any action by a Vertol Defendant in Massachusetts was the *last* step in a chain of causation leading to Plaintiffs' alleged injuries.  Applicable law requires that "the defendant's contacts with the Commonwealth constitute 'the *first step* in a train of events that result[ed] in the personal injury.'" *Lyle Richards Int'l, Ltd. v. Ashworth, Inc.*, 132 F.3d 111, 114 (1st Cir. 1997) (quoting *Tatro v. Manor Care, Inc.*, 625 N.E.2d 549, 553 (Mass. 1994)) (emphasis added).  This Court has recently reiterated this standard in denying personal jurisdiction over out-of-state defendants.  *See*, *e.g.*, *Mora v. Angiodynamics, Inc.*, No. 21-11352, 2021 WL 5040333, at *4 (D. Mass. Oct. 28, 2021) (Burroughs, J) (dismissing for lack of personal jurisdiction under subsection 3(a) where plaintiff failed to show defendants' business activities in Massachusetts "were the first step in a chain of

events leading to her injuries.").  The Amended Complaint is clear, on its face, that the alleged

'first steps' giving rise to this action occurred elsewhere.  AC ¶¶ 1, 8, 59-60.[2]

        C.    <u>Exercising Personal Jurisdiction Here Would Offend Due Process.</u>

       Even if Plaintiffs had alleged and shown facts supporting personal jurisdiction under the

specific jurisdiction provisions in subsection 3(a) or 3(c) of  Massachusetts long-arm statute,

exercise of such jurisdiction over the Vertol Defendants would still offend due process.  Neither

Vertol Defendant, as Plaintiffs effectively concede, *see* Plaintiffs' Br. at 23 n. 8, has the type of

continuous and systemic contacts with Massachusetts that would create general jurisdiction.

Plaintiffs therefore argue that even a single contact with the Commonwealth is sufficient to

justify the exercise of specific personal jurisdiction so long as it creates a "substantial

connection" with the forum state.  *See id.*  But the single, very limited contact by Vertol with

Massachusetts did not create a "substantial connection" to the Commonwealth, and therefore is

not sufficient to justify the exercise of specific jurisdiction over it or Mr. Montgomerie.

       This Court's decision in *Driscoll v. McCann*, 505 F. Supp. 3d 32, 39-40 (D. Mass. 2020),

is instructive.  There, despite concluding that the defendant had sufficient contacts with

Massachusetts to justify personal jurisdiction otherwise, this Court held that specific jurisdiction

did not exist because those contacts were not a "substantial factor in bringing about" the

---

[2] Plaintiffs' allegations also affirmatively distance Mr. Montgomerie far, far from Massachusetts at all times, of course.  *See* AC ¶¶ 26, 67-68, 131.  Because they cannot allege any contacts between the Vertol Defendants and the Commonwealth that would normally satisfy subsections 3(a) or 3(c) of the long-arm statute and settled law, Plaintiffs attempt in a footnote to defend their choice to sue here "under the 'conspiracy theory' of personal jurisdiction." Plaintiffs' Br. at 22 n. 7.  Their only authority, *Glaros v. Perse*, completely undermines this argument.  In that case, the First Circuit not only declined to recognize a conspiracy theory of personal jurisdiction, but held that the allegations offered would have been insufficient to support such a theory anyway.  *See* 628 F.2d 679, 682 (1st Cir. 1980).  It noted that the "allegations of conspiracy were purely conclusory and did not specifically link" each out-of-state defendant "to acts committed within Massachusetts."  *Id.*  The same is true here.

plaintiff's harm.  *Id.* at 40.  There was no "demonstrable nexus" between the claims asserted in that case and the defendant's limited forum-based activities, *id.*, which is true here as well.

## II.    MASSACHUSETTS STILL IS NOT A PROPER VENUE FOR THIS ACTION.

Plaintiffs have not rebutted the Vertol Defendants' showing that "[t]he overwhelming majority of [Plaintiffs'] factual allegations relate to events and omissions" that occurred outside of Massachusetts.  *Kaul v. Boston Partners, Inc.*, No. 21-10326, 2021 WL 3272216, at *2 (D. Mass. July 30, 2021) (Burroughs, J.).  They simply assert, without proof, that "a substantial part of the events occurred in Massachusetts."  Plaintiffs' Br. at 29.

But even if Plaintiffs could demonstrate—which they have not—that personal jurisdiction were appropriate on the theory that one tort claim (false imprisonment) allegedly occurred in Massachusetts and others were not "completed" until the Plaintiffs arrived in Massachusetts and were "harmed," Plaintiffs' Br. at 4, *everything else* happened outside Massachusetts.  Even if Plaintiffs felt the effect of all those other out-of-state actions within Massachusetts, that is not enough to make Massachusetts the proper venue for claims against the Vertol Defendants.  *See Kaul*, 2021 WL 3272216, at *2.

## III.   PLAINTIFFS STILL HAVE NOT SHOWN STANDING TO ASSERT MOST OF THEIR CLAIMS.

Plaintiffs do not contest the Vertol Defendants' position that the Individual Plaintiffs lack standing to seek prospective class-based relief.  *See* Vertol MTD [PACER Dkt. 83], at 15.  Those Plaintiffs therefore may only pursue claims for individual damages at this point.  Alianza similarly does not contest the Vertol Defendants' position that Alianza lacks associational standing.  Thus, Alianza has standing only if it has organizational standing.  But to demonstrate such standing, it must demonstrate that "its mission has been 'frustrated'" as well as that it expended resources beyond what it would have expended otherwise.  *E.g.*, *Equal Means Equal v.*

*Dep't of Educ.*, 450 F. Supp. 3d 1, 7 (D. Mass. 2020) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)).  Plaintiffs' offer to drop many of their claims seeking equitable relief in exchange for this Court retaining jurisdiction undermines their arguments as to both of these elements.  *See also* State Defendants' Reply Br. at 1, 2, 11 [PACER Dkt. 105].

In any event, those arguments were already too weak to establish organizational standing. For example, Alianza again claims, in conclusory fashion, that it has been forced to divert resources, allocate staff, and otherwise respond to "Defendants' conduct."  *See* Plaintiffs' Br. at 30-31.  That is not enough to establish standing.  *See*, *e.g.*, *Victim Rts. L. Ctr. v. Cardona*, 552 F. Supp. 3d 104, 125-26 (D. Mass. 2021) ("diverting resources from daily operations, delaying programming, reallocating staff, updating education material, and spending time analyzing [defendant's conduct] to continue serving victims in accordance with their missions do not qualify as frustrating an organization's purpose.").[3]

## IV.   PLAINTIFFS STILL HAVE NOT SHOWN THAT THE VERTOL DEFENDANTS ARE STATE ACTORS.

Plaintiffs do not address Defendants arguments as to the "public function test" for state actors and therefore concede that it is not satisfied here.  *See* Plaintiffs' Br. at 34-37.  They focus instead on the "state compulsion" and "joint action" tests.  But their argument under both tests depends on an assumption for which they have neither pleaded nor offered proof—that the State Defendants were so directly involved in carrying out the relocation program alongside the Vertol Defendants that the two sets of Defendants are virtually indistinguishable.  *See id.*

---

[3] Alianza is also wrong that equitable relief against the Vertol Defendants satisfies the requirement of "redressability."  Even if the Vertol Defendants were restrained, the State of Florida could simply hire another transportation company to carry out any future contracts.  Any injunctive relief against the Vertol Defendants would therefore not be effective at redressing Alianza's alleged injury.

A.      Plaintiffs Still Have Not Satisfied the State Compulsion Test.

"Compulsion" requires far more than coordination.  Even when a State has enacted statutes or regulations, a private party does not become a state actor merely by virtue of "taking action against a backdrop" of those regulations or by acting "in accordance with the procedures outlined" in a statutory scheme.  *Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 5 (1st Cir. 2015).  It necessarily follows that the Vertol Defendants did not become state actors merely by performing a government contract awarded to them.  *See id.*  Plaintiffs offer no authority to the contrary.

B.      Plaintiffs Still Have Not Satisfied the Joint Action Test.

The joint action test requires Plaintiffs to show "a symbiotic relationship" between the Vertol Defendants and the State of Florida.  *Santiago v. Puerto Rico*, 655 F.3d 61, 71 (1st Cir. 2011).  Plaintiffs have not done so.  Even if the Vertol Defendants communicated or coordinated with certain State Defendants, that would not suffice.  *See Perkins v. Londonderry Basketball Club*, 196 F.3d 13, 23 (1st Cir. 1999) (joint action test not satisfied despite a showing of "coordination of efforts" between public and private defendants); *Sherkat v. New England Vill., Inc.*, No. 15-11074, 2015 WL 8215983, at *5 (D. Mass. Dec. 8, 2015), *aff'd*, 691 F. App'x 644 (1st Cir. 2016) ("Despite allegations that officials at DDS have regular contact with New England Village, grant funding to New England Village, and have 'nearly plenary power in deciding where DDS eligible people are placed,' the alleged facts do not support an inference that the day-to-day operations of New England Village are dependent on state actors.") (citation omitted).  Plaintiffs have neither alleged nor proffered facts that show more than this.

Cases such as *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263 (11th Cir. 2003), *see* Plaintiffs' Br. at 37, do not change this result.  The Eleventh Circuit in the

*Focus on the Family* case did not hold that that the joint action test was satisfied—only that there was a genuine issue of material fact regarding its applicability. *Id.* at 1278-79. In doing so, the Eleventh Circuit correctly held that "the mere fact that a private actor contracts with a governmental entity does not mean that every action taken by the private actor can be attributed to the government." *Id.* at 1278. The question only becomes a close one when "the state contractually *requires* the private actor to take particular actions—e.g., to reject proposed advertisements under certain specifically delineated circumstances." *Id.* (emphasis added). Plaintiffs have neither alleged nor shown any such requirement here. Indeed, the communications Plaintiffs emphasize prove otherwise. *See* Plaintiffs' Br. at 35-36.[4]

## V.  IF THE VERTOL DEFENDANTS ARE STATE ACTORS, THEY STILL HAVE QUALIFIED IMMUNITY.

Plaintiffs have not responded, *see* Plaintiffs' Br. at 50-52, to the argument of the Vertol Defendants that that they are entitled to qualified immunity to the extent that they are deemed state actors, *see* Vertol MTD at 21-22. While the Vertol Defendants are not state actors for the reasons they have already argued, if the Court were to conclude otherwise, they now would be entitled to qualified immunity.

## VI.  PLAINTIFFS STILL HAVE NOT SHOWN THAT THEY HAVE STATED ANY FEDERAL CLAIM AGAINST THE VERTOL DEFENDANTS.

All of Plaintiffs' constitutional claims against the Vertol Defendants fail for the reasons discussed above—namely that the Vertol Defendants are not state actors or are shielded from liability by the doctrine of qualified immunity. Even if that were not so, Plaintiffs' constitutional

---

[4] Plaintiffs also ignore entirely the two other elements necessary to meet the joint action test—use of public facilities and profit sharing. *See* Plaintiffs' Br. at 35-36. As to the other case they cite, *Wagenmann v. Adams*, it did not even involve a contractual relationship. *See* 829 F.2d 196, 210 (1st Cir. 1987).

claims against the Vertol Defendants still fail because they fail to state any plausible claim upon which relief can be granted.

      A.    <u>Plaintiffs Still Fail To State a Substantive Due Process Claim.</u>

Plaintiffs simply have not alleged that the Vertol Defendants undertook any actions which satisfy the "extremely demanding" requirements for a substantive due process claim, under which "challenges . . . rarely succeed." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 885 (1st Cir. 2010).  For such a claim, a defendant's behavior must be "'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Aguilar v. United States Immigration & Customs Enforcement Div. of the Dep't of Homeland Sec.*, 510 F.3d 1, 21 (1st Cir. 2007) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 (1998)).

The allegations in the Amended Complaint, however, assert nothing beyond ordinary misfeasance, malfeasance, or negligence, none of which come close to the heightened requirements for a substantive due process claim.  *See*, *e.g.*, *id*. at 22.  Plaintiffs' attempt to assert constitutional claims under such circumstances would demote the Constitution to "a font of tort law," an outcome forbidden by settled precedent.  *County of Sacramento*, 523 U.S. at 847 n. 8.

      B.    <u>Plaintiffs Still Fail To State an Equal Protection Claim.</u>

Plaintiffs have also failed to show that the Vertol Defendants acted "with discriminatory purpose," as is necessary to state an equal protection claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  They have not alleged any facts demonstrating that the Vertol Defendants harbored any discriminatory motive.  Plaintiffs' Br. at 41-42.  Instead, Plaintiffs simply speculate about the motives of the State Defendants, alleging without any factual support that "Latinx people" were used "as props" and postulating that "a photo-op showing 49 Ukrainian immigrants arriving on Martha's Vineyard would not have done the trick."  Plaintiffs' Br. at 42.

Such rhetoric does not change the law.  Plaintiffs must plead and prove a discriminatory purpose, which "requires more than intent as volition or intent as awareness of consequences." *Iqbal*, 556 U.S. at 676 (cleaned up).  Thus, as to the Vertol Defendants, Plaintiffs must allege that those Defendants undertook a particular course of action "*because of*, not merely in spite of, the action's adverse effects upon an identifiable group." *Id.* (emphasis added).  There are no facts in the Amended Complaint which support a plausible inference of such purpose on the part of either Vertol Defendant here.

Plaintiffs cite *Department of Homeland Security v. Regents of the Univ. of California*, in which a plurality of the Supreme Court held that a recission of DACA—Deferred Action for Childhood Arrivals—did not violate the Equal Protection Clause.  Plaintiffs' Br. at 42-43 (citing 140 S. Ct. 1891, 1915 (2020)).  They attempt to distinguish that decision on the grounds that, "even though its impact fell more heavily on Latinx individuals," such an impact would not create an inference of unconstitutional action "because they [the individuals affected] represented a large share of the covered population and thus would be expected to be impacted" in a disproportionate way.  Plaintiffs' Br. at 43.

The same logic applies here.  Plaintiffs concede, as they must, that the overwhelming majority of unauthorized aliens present in the United States (and covered by the challenged Relocation Program) are Hispanic.  Plaintiffs' Br. at 42.  Thus, by Plaintiffs' own logic, it is hardly surprising that this group was impacted by a policy covering unauthorized aliens, and such impact cannot substitute for missing allegations of facts showing discriminatory purpose.

C.     Plaintiffs Still Fail To State a Fourth Amendment Claim.

Plaintiffs cannot and have not credibly disputed that the Individual Plaintiffs were not "seized" by way of threat or force.  They therefore attempt to advance a "seizure by deception"

theory.  Plaintiffs' Br. at 45-46.  This theory, if accepted, would drastically expand the scope of

the Fourth Amendment.  But the precedent cited by Plaintiffs does not support such an outcome.

Plaintiffs rely on *Hoffa v. United States*, in which the Supreme Court actually concluded

that "no right protected by the Fourth Amendment was violated . . . ."  385 U.S. 293, 303 (1966).

There, a criminal defendant alleged that the government violated his Fourth Amendment rights

by having a secret informant listen to statements made by the defendant in a private hotel room.

*See id.* at 300.  "Where this argument fails," the Supreme Court reasoned, "is in its

misapprehension of the fundamental nature and scope of Fourth Amendment protection."  *Id.*, at

301.  "What the Fourth Amendment protects is the security a man relies upon when he places

himself or his property within a constitutionally protected area, be it his home or his office, his

hotel room or his automobile.  There he is protected from unwarranted governmental intrusion."

*Id.*  "In the present case," the Supreme Court added, "it is evident that no interest legitimately

protected by the Fourth Amendment is involved."  *Id.* at 302.  The informant "did not enter the

suite by force or by stealth."  *Id.*  He "was in the suite by invitation, and every conversation

which he heard was either directed to him or knowingly carried on in his presence."  *Id.*

Plaintiffs' argument misapprehends the nature of the Fourth Amendment in the same

way.  The Amended Complaint describes what Plaintiffs no doubt would argue is government

overreach.  But it does not allege any governmental *intrusion*, nor any sort of actionable *seizure*.[5]

It therefore fails to state a plausible Fourth Amendment Claim.

---

[5] Neither *Pagan-Gonzalez v. Moreno*, 919 F.3d 582 (1st Cir. 2019), nor *Davis v. Dawson*, 545 F. Supp. 3d 682 (S.D. Iowa 2021), support Plaintiffs' position, either.  In each of those cases, the party alleging a violation was literally seized by law enforcement and not free to leave.  The element of coercion was dispositive.  Here, Plaintiffs do not allege coercion, which means that their situation is analogous to *Hoffa*, where no Fourth Amendment violation was found.

D.     Plaintiffs Fail To State a Procedural Due Process Claim.

Immigration proceedings are "a discretionary form of relief" that "do[] not rise to the

level of" a protected interest for due process purposes.  *DaCosta v. Gonzales*, 449 F.3d 45, 50

(1st Cir. 2006); *see also Jupiter v. Ashcroft*, 396 F.3d 487, 492 (1st Cir. 2005) ("Adjustment of

status is not an entitlement, but, rather, a matter of administrative discretion.") (quotation marks

and citation omitted).  Plaintiffs therefore do not have a protectable interest in such proceedings

and their procedural due process claim based on supposed interference with such proceedings

fails for this reason alone.

Despite this settled law, Plaintiffs argue generally that "government-imposed

impediments to immigration proceedings" violate due process.  Plaintiffs' Br. at 48.  The

authority they cite does not support such a broad proposition.  The *Orantes-Hernandez v. Meese*

case, for example, involved a challenge to "INS procedures which result in Salvadorans

foregoing their rights to apply for political asylum and relief from deportation and to be free

from coercion in exercising their rights to raise these claims in deportation proceedings."  685 F.

Supp. 1488, 1503 (C.D. Cal. 1988).  In that context, the court held that "[t]he right to a

deportation hearing and the various rights associated therewith" prior to being deported was

subject to due process protection.  *Id.* at 1507.  But the court emphasized that "[t]hese claims do

not assert irregularities in individual deportation hearings, but rather a pattern and practice by

immigration officers to violate the constitutional and statutory rights of a class of aliens."  *Id.* at

1503.

Here Plaintiffs allege (at most) that Defendants "interfered" in a singular instance with

their immigration proceedings.  Plaintiffs' Br. at 49 (citing AC ¶¶ 13-15).  They do not allege

that they were, in fact, deprived of any procedural right—only that they *might* have been.  Thus,

even if Plaintiffs had a protectable interest (which they do not) their procedural due process claim would fail.

      E.     <u>Plaintiffs Fail To State a Civil Rights Conspiracy Claim.</u>

Plaintiffs' civil conspiracy claim under 42 U.S.C. § 1985(3) cannot stand on its own.  It requires Plaintiffs to establish, among other things, an underlying constitutional violation—the deprivation of a constitutionally protected right or privilege.  *See* Vertol MTD, at 28 (citing *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996)).  No such claim exists here for the reasons set forth above (and in the Vertol Defendants' original moving papers).

## VII.    PLAINTIFFS STILL HAVE NOT STATED ANY COMMON LAW CLAIM AGAINST THE VERTOL DEFENDANTS.

The Vertol Defendants maintain that Florida law applies to all of Plaintiffs' common law tort claims.  *See* Vertol MTD at 30-31.  Under Massachusetts' choice-of-law principles, Florida has the most significant relationship to these claims because of the locations where the material events allegedly causing Plaintiffs' injuries occurred and where the parties' relationship was centered.  *See generally* Restatement (Second) of Conflicts of Laws § 145; *see also*, *e.g.*, *Goebel v. Schmid Bros.*, 871 F. Supp. 68, 75 (D. Mass. 1994).  But even if Massachusetts law did govern these claims, however, they would still fail.

      A.     <u>Plaintiffs Still Fail To State a False Imprisonment Claim.</u>

Under Massachusetts law, if it applies here, false imprisonment "consists of '(1) intentional and (2) unjustified (3) confinement of a person, (4) directly or indirectly (5) of which the person confined is conscious or is harmed by such confinement.'"  *Dagi v. Delta Airlines, Inc.*, 961 F.3d 22, 29 (1st Cir. 2020) (quoting *Sietins v. Joseph*, 238 F. Supp. 2d 366, 381 (D. Mass. 2003)).  Plaintiffs fail to plead plausibly at least two of these elements (intent and confinement).

First, Plaintiffs fail plausibly to allege that the Vertol Defendants intended to confine Plaintiffs at any time.  They allege that the Vertol Defendants intended to transport them to Martha's Vineyard, but not that the Vertol Defendants intended to confine them to the island.  Plaintiffs have not alleged, for example, that the Vertol Defendants instructed them not to leave Martha's Vineyard or otherwise took steps to ensure that Plaintiffs did not or could not leave.

Second, the Individual Plaintiffs were not confined.  Confinement is not complete if "there is a reasonable means of escape" of which the plaintiff is aware.  Restatement (Second) of Torts § 36.  "[T]he key factor . . . is determining whether the person is free to leave." *Ball v. Wal-Mart, Inc.*, 102 F. Supp. 2d 44, 55 (D. Mass. 2000).  The Individual Plaintiffs were free to leave at any time and do not plausibly otherwise allege here.  They claim that they were "confined" on Martha's Vineyard because they lacked the immediate resources and means to arrange for transportation off the island.  But they admit that Martha's Vineyard is accessible by boat and plane, and do not deny that they were at liberty to leave by those or any other means of their choosing.  AC ¶¶ 143, 155, 220, 284.  They were therefore not "confined." *See*, *e.g.*, *Smith v. Comair, Inc.*, 134 F.3d 254, 259-60 (4th Cir. 1998).

B.      Plaintiffs Still Fail To State a Fraud Claim.

The elements of fraud are similar under Florida and Massachusetts law.  *See Shaulis v. Nordstrom Inc.*, 120 F. Supp. 3d 40, 54 (D. Mass. 2015), *aff'd*, 865 F.3d 1 (1st Cir. 2017).  Even if Massachusetts law applied, this claim would therefore fail for all the reasons stated in the Vertol Defendants' original moving papers.  Plaintiffs simply cannot establish that any alleged misrepresentation, to the extent they have adequately alleged that a particular misrepresentation was actually made by a Vertol Defendant, was material or that any Doe Plaintiff relied on any such misrepresentation to such Plaintiffs' detriment.  *See* Vertol MTD at 32-34.

In addition, if Massachusetts law applied, Plaintiffs' fraud claim would also fail because Plaintiffs have not alleged any pecuniary losses—the only injury actionable for a fraud claim in the Commonwealth.  *See*, *e.g.*, *Shaulis*, 120 F. Supp. 3d at 54 ("[h]aving not alleged a pecuniary loss, the fraud claim cannot survive."); *Mulder v. Kohl's Dep't Stores, Inc.*, No. 15-11377, 2016 WL 393215, at *7 (D. Mass. Feb. 1, 2016) (same), *aff'd*, 865 F.3d 17 (1st Cir. 2017).  Plaintiffs simply have not alleged any out-of-pocket damages or other pecuniary loss.

C.       Plaintiffs Still Fail to State a Claim for Intentional Infliction of Emotional Distress.

The elements of a claim of intentional infliction of emotional distress are materially the same under Florida and Massachusetts law.  Thus, even if Massachusetts law applied, this claim would fail for the reasons stated in the Vertol Defendants' original moving papers.  *See* Vertol MTD at 35-37.

In addition, the bar for establishing such a claim is a very, very high one.  It is not enough "that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Polay v. McMahon*, 468 Mass. 379, 385 (2014) (internal quotation marks and citations omitted). Plaintiffs have failed to allege facts that would satisfy this standard.  *Cf.*, *e.g.*, *Soni v. Wespiser*, 239 F. Supp. 3d 373, 390 (D. Mass. 2017) (defendants' actions in tracking down plaintiff's potential employers and telling them sexist and racist lies, which cost plaintiff two jobs, did not suffice as extreme or outrageous) (citations omitted).  In fact, several of Plaintiffs' allegations directly undercut any showing that the Vertol Defendants' conduct was outrageous.  *See e.g.,* AC ¶ 149 (alleging that Defendants arranged for Plaintiffs' immediate transportation to a local community center upon their arrival).

- 17 -

Nor have Plaintiffs sufficiently alleged that they suffered severe emotional distress. "[M]ere 'emotional responses including anger, sadness, anxiety, and distress,' which, though 'blameworthy,' are 'often not legally compensable.'" *Kennedy v. Town Of Billerica*, 617 F.3d 520, 530 (1st Cir. 2010) (quoting *Quinn v. Walsh*, 732 N.E.2d 330, 338 (Mass. 2000)).  The Individual Plaintiffs allege that they felt "scared and confused," AC ¶ 155, "terrified," AC ¶ 170, "helpless, defrauded, desperate, anxious," AC ¶¶ 156, 160, 164, 169, and distrustful, AC ¶ 157. Some of them allegedly experienced asthmatic symptoms, AC ¶ 169, lack of sleep, AC ¶¶ 161, 165, vertigo, AC ¶ 165, headaches, AC ¶ 165, and "harm to dignity and autonomy," AC ¶¶ 157, 161, 166.  Such allegations simply do not rise to the requisite level to be actionable.  *See Kennedy*, 617 F.3d at 530–31 (fear, nervousness, nightmares, sweating, and racing pulse following fourteen-year-old plaintiff's wrongful arrest "too transient, too vague, and insufficiently severe"); *Torosian v. Garabedian*, 206 F. Supp. 3d 679, 684 (D. Mass. 2016) (sleeplessness accompanied by conclusory descriptions of negative emotions failed to meet the standard).

D.    <u>Plaintiffs Still Fail to State a Claim for Negligent Infliction of Emotional Distress.</u>

As Plaintiffs recognize, *see* Plaintiffs' Br. at 60, they must at least plead "adequate symptomology to demonstrate" that their response to any supposed wrongdoing "was greater than 'mere upset, dismay, humiliation, grief and anger.'"  *Brooks v. Martha's Vineyard Transit Auth.*, 433 F. Supp. 3d 65, 77 (D. Mass. 2020) (quoting *Rodriguez v. Cambridge Housing Auth.*, 443 Mass. 697, 702 (2005)) (further citations omitted).  What they plead, *see* AC ¶¶ 155-57, 160-61, 164-66, 169, 170, does not rise to this level.  *See, e.g., Gutierrez v. Mass. Bay Transp. Auth.*, 437 Mass. 396, 413 (2002) ("Tears merely demonstrate upset, anger, or grief, and these feelings alone do not constitute sufficient physical manifestation"); Restatement (Second) of Torts § 436A cmt. c. ("transitory, non-recurring physical phenomena, harmless in themselves, such as

dizziness, vomiting, and the like, does not make the actor liable where such phenomena are in themselves inconsequential and do not amount to any substantial bodily harm.").

     E.     <u>Plaintiffs Still Fail to State a Civil Conspiracy Claim.</u>

Even if Massachusetts law applied here, the Commonwealth does not recognize an independent tort for civil conspiracy based on "concerted action."  *See Mass. Laborers' Health & Welfare Fund v. Philip Morris, Inc.*, 62 F. Supp. 2d 236, 244 (D. Mass. 1999) ("[T]he 'concerted action' version depends on proof of underlying tortious conduct for which liability can be assigned.") (citations omitted).[6]  So when a plaintiff fails to state a claim for an underlying tort, the civil conspiracy claim based on concerted action necessarily fails.  *Id*. at 245. Because Plaintiffs have, for the reasons previously discussed, failed to state a proper underlying federal or common law claim, their civil conspiracy claim must fail as well.  *Blake v. Pro. Coin Grading Serv.*, 898 F. Supp. 2d 365, 392 (D. Mass. 2012) (dismissing civil conspiracy claim based on conversion claim because conversion claim failed as a matter of law); *Mass. Laborers' Health & Welfare Fund*, 62 F. Supp. 2d at 245 (dismissing civil conspiracy claim where plaintiff failed to state a claim under the asserted tort theories).

     F.     <u>Plaintiffs Still Fail to State a Claim of Aiding and Abetting.</u>

Like their civil conspiracy claim, Plaintiffs have failed to allege an underlying tort supporting aiding and abetting liability even if Massachusetts law applies here.  A claim for aiding and abetting the commission of a tort requires stating a valid claim that a primary actor

---

[6] Massachusetts recognizes an extremely limited type of civil conspiracy for coercion as an independent tort.  *See McLaughlin v. J-PAC, LLC*, No. 10-2594, 2011 WL 1758945, at *2 (Mass. Super. Apr. 14, 2011) (citations omitted).  "To state a claim for civil conspiracy by coercion, a 'plaintiff must allege that defendants, acting in unison, had some peculiar power of coercion over plaintiff that they would not have had if they had been acting independently.'"  *Id*. (citations omitted).  Plaintiffs have not alleged that Defendants "held unique coercive power" over them, so they cannot succeed under this theory either.  *Id*. (citations omitted).

committed that tort.  *Traverse v. Gutierrez Co.*, No. 18-10175, 2018 WL 5619201, at \*5 (D.

Mass. Oct. 30, 2018) (citing *Go-Best Assets Ltd. v. Citizens Bank of Mass.*, 463 Mass. 50, 64

(2012)).  Because Plaintiffs have failed to state a valid underlying federal or common law tort

claim, their aiding an abetting claim must fail as well.  *Id.* ("Because the Traverses have failed to

state a claim for fraud, they similarly cannot state a claim for aiding and abetting fraud.").

Conclusion

For the reasons stated above, this Court should dismiss all claims against the Vertol

Defendants, with prejudice.

Dated: June 16, 2023

NIXON PEABODY LLP

*/s/ Brian T. Kelly*
Brian T. Kelly (BBO No. 549566)
Christopher J. Stevens (admitted *pro hac vice*)
Nixon Peabody LLP
Exchange Place
53 State Street
Boston, Massachusetts 02109-2835
Telephone: 617-345-1000
Facsimile: 855-714-9513
bkelly@nixonpeabody.com

*Attorneys for Defendants Vertol Systems*
*Company, Inc. and James Montgomerie*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the forgoing was filed electronically on June 16, 2023, and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing.

> */s/ Brian T. Kelly*
> Brian T. Kelly
> Nixon Peabody LLP
> Exchange Place
> 53 State Street
> Boston, Massachusetts 02109-2835
> Telephone: 617-345-1000
> Facsimile: 855-714-9513
> bkelly@nixonpeabody.com
>
> *Attorneys for Defendants Vertol Systems Company, Inc. and James Montgomerie*