UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALIANZA AMERICAS, YANET DOE, PABLO DOE, and JESUS DOE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RONALD D. DESANTIS, Governor of Florida, in his official and personal capacities; JARED W. PERDUE, Secretary of the Florida Department of Transportation, in his official and personal capacities; LAWRENCE A. KEEFE, Florida Public Safety Czar, in his official and personal capacities; JAMES UTHMEIER, Chief of Staff to Florida Governor, in his official and personal capacities; STATE OF FLORIDA; THE FLORIDA DEPARTMENT OF TRANSPORTATION; JAMES MONTGOMERIE; PERLA HUERTA; and VERTOL SYSTEMS COMPANY, INC.,<br><br>Defendants. | No. 1:22-cv-11550-ADB<br><br>**Leave to File**<br>**15-Page Reply Brief Granted**<br>**on May 24, 2023** |

**PERLA HUERTA'S REPLY BRIEF IN SUPPORT OF HER MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION, LACK OF SUBJECT-MATTER JURISDICTION, IMPROPER <u>VENUE, AND FAILURE TO STATE A CLAIM</u>**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ II

TABLE OF AUTHORITIES ......................................................................................................... III

ARGUMENT .................................................................................................................................. 2

I. PLAINTIFFS CANNOT SHOW THAT THIS COURT HAS JURISDICTION OVER MS. HUERTA ................................................................................................... 2

    A. The Massachusetts Law Arm Statute Does Not Provide Personal Jurisdiction Over Ms. Huerta ................................................................................... 2

        1. Ms. Huerta Did Not Transact Any Business in Massachusetts ................... 2

        2. Ms. Huerta Did Not Act or Omit to Act in Massachusetts .......................... 3

    B. Jurisdiction Is Improper Under the Due Process Clause ......................................... 6

        1. Plaintiffs Cannot Show that Ms. Huerta Had Any Contacts with Massachusetts or Purposefully Conducted Activities in Massachusetts ................................................................................................ 7

        2. Jurisdiction in Massachusetts Would Be Unreasonable ............................. 9

        3. This Court Cannot Establish Jurisdiction Under a Conspiracy Theory ....................................................................................................... 10

II. MS. HUERTA IS NOT A STATE ACTOR ................................................................... 11

    A. No Regulatory Scheme Compelled Ms. Huerta's Alleged Actions ....................... 11

    B. Ms. Huerta Did Not Act Jointly with Florida ....................................................... 12

III. PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED THEIR SUBSTANTIVE CLAIMS ........................................................................................................................ 12

    A. Plaintiffs Have Not Plausibly Alleged That Ms. Huerta Denied Individual Plaintiffs Equal Protection ................................................................... 13

    B. Plaintiffs Have Not Alleged Fraud ........................................................................ 14

CONCLUSION ............................................................................................................................. 15

**CERTIFICATE OF SERVICE** ................................................................................................. 16

# **TABLE OF AUTHORITIES**

| Cases | Pages |
|---|---|
| Adamcheck v. Costco Wholesale Corp., No. 1:08-cv-10182-PBS, 2008 U.S. Dist. LEXIS 112440 (D. Mass. May 29, 2008) | 4-6 |
| Azumi LLC v. Lott & Fischer, PL, No. 22-cv-22598-BLOOM/Otazo-Reyes, 2022 WL 3369197 (D. Mass. Aug. 16, 2022) | 3 |
| BGI Inc. v. Merrifield, No. 12–10658–RWZ, 2013 WL 297942 (D. Mass. Jan. 25, 2013) | 10 |
| Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cty., 582 U.S. 255 (2017) | 7 |
| Glaros v. Perse, 628 F.2d 679 (1st Cir. 1980) | 10 |
| Gorbey ex rel. Maddox v. Am. J. of Obstetrics & Gynecology, 849 F. Supp. 2d 162 (D. Mass. 2012) | 14 |
| Hannon v. Beard, 524 F.3d 275 (1st Cir. 2008) | 7-8 |
| In re New Motor Vehicles Can. Exp., 307 F. Supp. 2d 145 (D. Me. 2004) | 10 |
| In re TelexFree Sec. Litig., -- F.Supp.3d --, 2022 WL 3915989 (D. Mass. Aug. 31, 2022) | 10 |
| Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945) | 9 |
| Jarvis v. Village Gun Shop, Inc., 805 F.3d 1 (1st Cir. 2015) | 11-12 |
| Murphy v. Erwin-Wasey, Inc., 460 F.2d 661 (1st Cir. 1972) | 4-6 |
| Openrisk, LLC v. Roston, 90 Mass. App. Ct. 1107, 2016 WL 5596005 (2016) | 10 |
| Perkins v. Londonderry Basketball Club, 196 F.3d 13 (1st Cir. 1999) | 11 |
| Phillips Exeter Academy v. Howard Phillips Fund, 196 F.3d 284 (1st Cir. 1999) | 4 |
| Roberts v. Legendary Marine Sales, 447 Mass. 860 (2006) | 4 |
| Santiago v. Puerto Rico, 655 F.3d 61 (1st Cir. 2011) | 11-12 |
| Ticketmaster-N.Y., v. Alioto, 26 F.3d 201 (1st Cir. 1994) | 4-9 |

Statutes and Rules

Fed. R. Civ. P. 9 ..................................................................................................... 15

Mass. Gen. L. ch. 223A, § 3 .................................................................................. 2-6

Defendant Perla Huerta submits this reply memorandum in support of her motion to dismiss Plaintiffs' FAC.[1][2] Ms. Huerta addresses only certain issues raised by Plaintiffs' Consolidated Memorandum in Opposition to Defendants' Motions to Dismiss, ECF No. 98 (the "Opposition"), that are specific to the claims against her, and relies on her arguments in her Motion to Dismiss Brief and arguments raised in the Vertol Defendants' Motion to Dismiss Brief, the Vertol Defendants' Reply,[3] and the State Defendants' Reply.[4]

Some of the issues raised in Ms. Huerta's motion are identical to issues argued in the Vertol Defendants' Motion to Dismiss Reply, which will also be filed on June 16, 2023. To reduce the burden on the Court and the parties, Ms. Huerta will not repeat the same arguments. She instead incorporates, and will not repeat, Sections II, III, V, VI, VII.C, VII.D, VII.E, and VII.F of the Vertol Defendants' Reply. Ms. Huerta also incorporates, and will not repeat, the following Section II.A, III., V., and VI.A of the State Defendants' Reply.

---

[1] Unless otherwise noted, defined terms have the same meaning as those in Perla Huerta's Brief in Support of Her Motion to Dismiss Plaintiffs' First Amended Complaint for Lack of Personal Jurisdiction, Lack of Subject-Matter Jurisdiction, Improper Venue, and Failure to State a Claim, ECF No. 85 ("Huerta's Motion to Dismiss Brief").

[2] Many of the facts alleged in the FAC are inaccurate, misleadingly incomplete, or untrue. As she must on a motion to dismiss, however, Ms. Huerta treats alleged facts as true, while ignoring mere conclusory statements.

[3] Reply Memorandum in Further Support of Motion by Defendants Vertol Systems Company, Inc. and James Montgomerie to Dismiss Plaintiffs' Amended Complaint.

[4] State Defendants' Reply to Plaintiffs' Consolidated Memorandum in Opposition to Defendants' Motions to Dismiss.

**ARGUMENT**

I.  **PLAINTIFFS CANNOT SHOW THAT THIS COURT HAS JURISDICTION OVER MS. HUERTA**

Plaintiffs claim that they have adequately alleged that this Court has personal jurisdiction "[o]ver Defendants." (Opposition at 16-28.) But, whatever the merits of Plaintiffs' arguments with respect to other Defendants, the factual allegations that Plaintiffs point to have nothing to do with Ms. Huerta, and the cases on which they rely are either inapposite or support her dismissal.

  A.  **The Massachusetts Law Arm Statute Does Not Provide Personal Jurisdiction Over Ms. Huerta**

Plaintiffs rely on two sections of the Massachusetts long-arm statute: Section 3(a) and Section 3(c). (Opposition at 17, 19.) Section 3(a) allows personal jurisdiction in Massachusetts over claims "arising from" a defendant's "transacting any business in this commonwealth." M.G.L. ch. 223A § 3(a). Section 3(c) allows personal jurisdiction if the defendant caused "tortious injury by an act or omission in this commonwealth." M.G.L. ch. 223A § 3(c). Neither section grants personal jurisdiction over Ms. Huerta.

   1.  **Ms. Huerta Did Not Transact Any Business in Massachusetts**

Plaintiffs claim that "Defendants clearly transacted business in Massachusetts. They hired and arranged for two planes to fly to and land in Martha's Vineyard. AC ¶¶ 53-54. They hired video crews to film Class Plaintiffs disembarking from the planes . . . . AC ¶¶ 149-151. And they sought to and did benefit from media coverage of these actions in Massachusetts. AC ¶¶ 149-151." But Plaintiffs do not allege that Ms. Huerta took part in <u>any</u> of those alleged actions. They do not allege that she hired planes or camera crews or benefited from media coverage. To the contrary, Plaintiffs admit that "Perdue was in charge of soliciting quotes and selecting Vertol . . . Montgomerie and Vertol supplied the planes, and Montgomerie and Keefe

2

both flew on the planes. . . . Uthmeier and DeSantis . . . arrange[d] for media coverage and for DeSantis to capitalize on that coverage." (Opposition at 58-59.)[5]

Ms. Huerta, on the other hand was "on the ground in Texas" (Opposition at 59) and "encountered each of the Individual Plaintiffs in or around San Antonio, Texas" (Opposition at 7). "[H]er part . . . had already been completed once Class Plaintiffs boarded the planes" in Texas. She did not transact any business in Massachusetts.

Plaintiffs fail to distinguish Azumi LLC v. Lott & Fischer, PL, 621 F. Supp. 3d 219 (2022). Contrary to Plaintiffs' suggestion, that court did not rely on "who targeted Massachusetts" in finding that Section 3(a) did not apply. Rather, it clearly stated that the defendant had not "participated in the 'economic life' of the Commonwealth" because its alleged activities took place in other states. Id. at 224. Ms. Huerta likewise did not participate in any economic activity in Massachusetts.

2. Ms. Huerta Did Not Act or Omit to Act in Massachusetts

Section 3(c) allows for personal jurisdiction only if a defendant caused "tortious injury by an act or omission in this commonwealth." M.G.L. ch. 223A § 3(c) (emphasis added). Plaintiffs first demand that this Court "end the inquiry" because they claim to have alleged "that Defendants falsely imprisoned them in Massachusetts both shortly before and after the planes landed." (Opposition at 19.) But Ms. "Huerta did not board either of the planes." FAC ¶ 126.

---

[5] The FAC does not actually allege these facts as described (see State Defendants' Motion to Dismiss Reply at 3), but Plaintiffs' concession nevertheless makes clear that Plaintiffs did not and cannot allege any Massachusetts contacts by Huerta.

3

She could not have "imprisoned" the Individual Plaintiffs on those planes – certainly not while they were in Massachusetts airspace – or on Martha's Vineyard, where she has never been.[6]

In the alternative, Plaintiffs seek to defend jurisdiction "over Defendants because, while some of their actions occurred outside of this forum, they 'purposefully directed [their conduct] at [Massachusetts] and intended to cause injury there.'" (Opposition at 20 (quoting Ticketmaster-N.Y., v. Alioto, 26 F.3d 201, 205 (1st Cir. 1994)) (alterations original).) In fact, all of Ms. Huerta's alleged actions "occurred outside of this forum. And she did not direct any conduct at Massachusetts. To support their contention, Plaintiffs misleadingly quote Ticketmaster-NY, Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 664 (1st Cir. 1972), and Adamcheck v. Costco Wholesale Corp., No. 1:08-cv-10182-PBS, 2008 U.S. Dist. LEXIS 112440, at *19-21 (D. Mass. May 29, 2008). Each of those cases actually shows that Ms. Huerta did not have any contact with Massachusetts.

Of the three cases cited by Plaintiffs, only Murphy actually found jurisdiction. But in the sixty years since it was decided, Murphy's holding has been criticized by both the First Circuit and the Supreme Judicial Court as too expansive. Ticketmaster-NY, 26 F.3d at 205 ("Despite our profound reservations about extending the Murphy rationale . . . ."); Roberts v. Legendary Marine Sales, 447 Mass. 860, 864 (2006) ("Federal court decisions concerning jurisdiction under G.L. c. 223A, § 3(c), have not had the benefit of our determination of the reach of this provision of the long-arm statute in this context, see Murphy, 460 F.2d at 663, and have typically taken a 'more expansive view' than Massachusetts of personal jurisdiction . . . ."). More importantly,

---

[6] In addition, Plaintiffs must show personal jurisdiction for each of the claims asserted against Ms. Huerta. See Phillips Exeter Academy v. Howard Phillips Fund, 196 F.3d 284, 289 (1st Cir. 1999) ("We commend the lower court's decision to analyze the contract and tort claims discretely. Questions of specific jurisdiction are always tied to the particular claims asserted."). The false imprisonment count could not save Plaintiffs' other claims.

4

Murphy held that there was jurisdiction only "[w]here a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state." Murphy, 460 F.2d at 664 (emphasis added).  The First Circuit found personal jurisdiction over the defendant because the defendant "communicated by mail or telephone false statements to plaintiff in Massachusetts." Id. at 663.  Here, Ms. Huerta did not communicate any alleged misrepresentations into Massachusetts.  Rather, her alleged misrepresentations were all made in Texas, while the Individual Plaintiffs were in Texas, and the Individual Plaintiffs' alleged reliance occurred in Texas.

Ticketmaster-NY and Adamcheck, meanwhile, both found that Massachusetts courts lacked personal jurisdiction, even though those defendants had more substantial contacts with Massachusetts than Ms. Huerta.  In Ticketmaster-NY, a California resident took a call from a Boston Globe reporter and then gave an interview that allegedly included defamatory statements. 26 F.3d at 203.  The First Circuit held that Massachusetts courts did not have jurisdiction over the California resident, even though he "knew when speaking that his comments would inform a story slated for publication in a newspaper circulated chiefly in Massachusetts," and the alleged "resultant in-forum injury was foreseeable." Id. at 203-04, 208.  In Adamcheck, the court dismissed claims that "[t]he Defendants allegedly committed fraud in the formation of the contract in Florida aimed at the Plaintiffs in Florida," even though "[t]he Plaintiffs may have suffered a loss of consortium or emotional injury subsequent to their return to Massachusetts." 2008 U.S. Dist. LEXIS 112440, at *19.  In contrast, the court found jurisdiction over claims based on subsequent misrepresentations made "to [the plaintiffs] in Massachusetts," but it nevertheless ruled that venue in Massachusetts was improper. Id. at 21.

The holding of Ticketmaster-NY is therefore directly contrary to Plaintiffs' argument – even a foreseeable injury in Massachusetts is insufficient if the defendant did not reach into Massachusetts.  Here, Plaintiffs have alleged no representations by Ms. Huerta while the Individual Plaintiffs were in Massachusetts.  Ms. Huerta therefore did not take any "action or omission in this commonwealth." M.G.L. ch. 223A § 3(c).

Adamcheck, meanwhile, highlights an improper attempt to turn a Massachusetts injury into the required Massachusetts action.  Adamcheck dismissed all claims based on "various misrepresentations" made to the plaintiffs while they were "in Florida," 2008 U.S. Dist. LEXIS 112440, at *6, even though the plaintiffs' "suffered a loss of consortium or emotional injury subsequent to their return to Massachusetts." Id. at 19.  Only those claims based on the defendants' subsequent alleged outreach to the plaintiffs while they were in Massachusetts survived.  Id. at 21 (finding jurisdiction over allegations that defendants "made misrepresentations to [plaintiffs] in Massachusetts").  Here, while the Individual Plaintiffs claim that they "were injured in the Commonwealth," they do not allege any conduct by Ms. Huerta in Massachusetts or any representation that she made while either she or Individual Plaintiffs were in Massachusetts.  (See Plaintiffs' Opposition to Defendants' Joint Motion to Transfer, ECF No. 96, at 9 ("[T]his case concerns misrepresentations made to the Class Plaintiffs in Texas . . . .").)  Thus, under Murphy, Ticketmaster-NY, and Adamcheck, communications only even arguably give rise to jurisdiction if they were made to a person in Massachusetts at the time.  Because Plaintiffs allege only that Ms. Huerta made representations while both she and the Individual Plaintiffs were in Texas, a Massachusetts court cannot exercise jurisdiction under Section 3(c).

**B.     Jurisdiction Is Improper Under the Due Process Clause**

To establish Ms. Huerta's "minimum contacts" with Massachusetts necessary to satisfy due process, Plaintiffs must show:  (i) that their "cause[s] of action arise[] out of, or relate[] to

6

[Ms. Huerta's] contacts with" Massachusetts; (ii) that she "purposefully availed [her]self of the privilege of conducting activities within" Massachusetts; and (iii) that forcing her to defend in Massachusetts is "consistent with fair play and substantial justice." Ticketmaster-NY, 26 F.3d at 206 (cleaned up).  Plaintiffs improperly focus their attention on Plaintiffs' alleged injuries in Massachusetts.  "The primary focus of our personal jurisdiction inquiry is the defendant's relationship to the forum State." Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cty., 582 U.S. 255, 262 (2017).  Because Ms. Huerta lacks any relationship with Massachusetts, Massachusetts courts do not have personal jurisdiction here.

    1.  Plaintiffs Cannot Show that Ms. Huerta Had Any Contacts with Massachusetts or Purposefully Conducted Activities in Massachusetts

Plaintiffs cannot meet the relatedness and purposeful availment requirements because they have not alleged that Ms. Huerta had any contacts with the Commonwealth.  She did not board either of the planes to Massachusetts.  (FAC ¶ 126.)  She did not make any representations to Plaintiffs while they were in Massachusetts.  (Opposition at 60 ("[Ms. Huerta's] part . . . had already been completed once Class Plaintiffs boarded the planes [in Texas].")  She did not coordinate the flights to Massachusetts or the buses in Martha's Vineyard.  (Opposition at 59 ("Perdue was in charge of soliciting quotes and selecting Vertol . . . . Montgomerie and Vertol supplied the planes").)  And she did not arrange the media coverage.  (Opposition at 59 ("Uthmeier and DeSantis . . . arrange[d] for media coverage and for DeSantis to capitalize on that coverage.").)

Plaintiffs rely heavily on Hannon v. Beard, 524 F.3d 275 (1st Cir. 2008), but to the extent it is relevant, Beard shows that this Court lacks jurisdiction over Ms. Huerta.  In Hannon, a prisoner sued the Secretary of the Pennsylvania Department of Corrections and "a Pennsylvania DOC prison librarian." Id. at 278-79.  The prisoner alleged that the Secretary had him

7

transferred from Massachusetts as retaliation for filing complaints and that the librarian refused to provide him certain legal materials.  Massachusetts courts had jurisdiction over the Secretary because the transfer "necessarily involved at least some communication and interaction between [the Secretary] in Pennsylvania and his counterparts in Massachusetts." Id. at 281.  In addition, the Secretary utilized a prisoner transfer contract between Pennsylvania and Massachusetts and "benefitted from subjecting [the prisoner] to Massachusetts prisons and Massachusetts law by ridding himself of a troublemaker." Id. at 284.  The librarian, on the other hand, was not subject to Massachusetts jurisdiction, even though, at the prisoner's requests, she "twice sent requested materials to a Massachusetts prison librarian . . . about six times she denied [the prisoner's] requests . . . and three times she directly sent [the prisoner] the requested material." Id. at 281.  The librarian "did not initiate contact" or "purposefully direct any action toward Massachusetts," and "it was merely incidental that she sent replies to Massachusetts because that was where he happened to have been transferred. Id. at 281-82.

Here, Ms. Huerta's alleged actions did not "necessarily involve[] at least some communication and interaction between" Ms. Huerta and a person "in Massachusetts." Id. at 281.  In fact, Plaintiffs have alleged no such contacts and admit that her alleged role "had already been completed once Class Plaintiffs boarded the planes" in Texas.[7]  (Opposition at 60; see also FAC ¶ 98 ("All Class Plaintiffs were in Texas when they were duped into participating in

---

[7] Plaintiffs allege just one communication between Ms. Huerta and anyone in Massachusetts: "Plaintiff Yanet Doe sent a message to Defendant Huerta . . . but Defendant Huerta dismissed her concerns and said she would find help."  (FAC ¶ 156.)  But that occurred after Yanet Doe arrived in Martha's Vineyard, so it cannot form the basis of any of her claims, Plaintiffs do not allege that Yanet Doe relied on the communication or that it was false, and Ms. Huerta "did not initiate contact" with Yanet Doe while she was in Massachusetts.  Hannon, 524 F.3d at 281.

8

Defendants' scheme.").) Plaintiffs cannot identify any contacts with Massachusetts that relate to their claims, and Ms. Huerta has not availed herself of Massachusetts's laws.

### 2. Jurisdiction in Massachusetts Would Be Unreasonable

Plaintiffs cannot establish either relatedness or purposeful availment. But "[e]ven if a plaintiff succeeds in making these two showings, it is not home free. The defendant may nonetheless avoid having to defend in a strange place if it can establish that allowing the suit to go forward would be inconsistent with 'fair play and substantial justice.'" Ticketmaster-NY, 26 F.3d at 206 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

Ticketmaster-NY is again instructive. Although the defendant's only contact with Massachusetts was a single call with a reporter for the Boston Globe, that call constituted an "interview" and the defendant "knew when speaking that his comments would inform a story slated for publication in a newspaper circulated chiefly in Massachusetts." Id. at 203-04. Although the interview, which allegedly included defamatory statements, met the "bare minimum" necessary to satisfy reasonableness and purposeful availment, the "defendant's burden of appearance [wa]s so onerous that it render[ed] the exercise of in personam jurisdiction unreasonable." Id. at 212. The First Circuit held that "[t]he burden associated with forcing a California resident to appear in a Massachusetts court is onerous in terms of distance," and that burden was "entitled to substantial weight in calibrating the jurisdictional scales." Id. at 210. Here, Ms. Huerta is a Florida resident with no ties to Massachusetts, forced, like the defendant in Ticketmaster-NY, "to defend a tort suit in a court 3000 miles away." Id. at 212.

The Ticketmaster-NY panel also weighed certain facts that indicated forum shopping, including that the plaintiff had not named likely in-state defendants and had "selected a forum in which punitive damages are unavailable, bypassing other fora in which such damages might be awarded." Id. at 211. Similarly, here, Plaintiffs are engaged in blatant forum shopping,

9

representing to the Court that they will drop certain claims, but only if the Court keeps this case. (Opposition at 15 n.3.)

### 3. This Court Cannot Establish Jurisdiction Under a Conspiracy Theory

In a footnote, Plaintiffs claim that jurisdiction over Ms. Huerta is "permissible under the 'conspiracy theory' of personal jurisdiction." (Opposition at 21 n.6 (citing Glaros v. Perse, 628 F.2d 679, 682 (1st Cir. 1980)). Plaintiffs' citation to Glaros is misleading. There, the First Circuit acknowledged that "some courts have recognized a 'conspiracy theory of personal jurisdiction,'" but it made clear that it "d[id] not mean to imply that we would adopt [a] rather liberal approach to conspiracy pleading, or to decide that we would recognize a conspiracy theory of jurisdiction at all." Glaros, 628 F.2d at 682 n.4. Instead, it held that even assuming such a theory was valid, Massachusetts courts did not have jurisdiction because "[t]here were, for example, no claims that the out-of-state governmental defendants arranged to have information transmitted to Massachusetts or acted through Massachusetts agents in any way." Id. Since Glaros, multiple courts in Massachusetts and the First Circuit have rejected the conspiracy theory of jurisdiction. In re TelexFree Sec. Litig., -- F.Supp.3d --, 2022 WL 3915989, at *18 (D. Mass. Aug. 31, 2022) (The First Circuit has not adopted this [conspiracy] theory [of jurisdiction], and the Court declines to do so here." (Citations omitted.)); BGI Inc. v. Merrifield, No. 12–10658–RWZ, 2013 WL 297942, at *1 (D. Mass. Jan. 25, 2013) ("The conspiracy theory of personal jurisdiction has never been recognized in the First Circuit."); In re New Motor Vehicles Can. Exp., 307 F. Supp. 2d 145, 157–58 (D. Me. 2004) ("I do not believe that the First Circuit would recognize a conspiracy theory of personal jurisdiction."); Openrisk, LLC v. Roston, 90 Mass. App. Ct. 1107, 2016 WL 5596005, at *6 (2016) (unpublished) (rejecting conspiracy theory of personal jurisdiction where "no Massachusetts State court has recognized such a theory. Nor has any court in the First Circuit.").

10

Because Plaintiffs cannot establish jurisdiction under either the Massachusetts Long Arm Statute or due process, their claims against Ms. Huerta should be dismissed.

## II. MS. HUERTA IS NOT A STATE ACTOR

"State action may be found if . . . the private party's conduct is coerced or significantly encouraged by the state, or if the private party and the state have become so intertwined that they were effectively joint participants in the challenged conduct." Jarvis v. Village Gun Shop, Inc., 805 F.3d 1, 8 (1st Cir. 2015) (cleaned up). "It is only in rare circumstances that private parties can be viewed as state actors." Id. (cleaned up).

### A. No Regulatory Scheme Compelled Ms. Huerta's Alleged Actions

Plaintiffs cite only one case to support their claim that Ms. Huerta was a state actor under the state compulsion test. (Opposition at 34-35 (citing Perkins v. Londonderry Basketball Club, 196 F.3d 13, 19-20 (1st Cir. 1999).) Perkins does not support Plaintiffs' argument. Rather, Perkins held that a non-profit was not a state actor, even though it received benefits from the town in which it operated, and the town had made it a preferred user of public facilities. 196 F.3d at 20. As Perkins shows, "the focal point" of the state compulsion inquiry "is the connection between the State and the challenged conduct." Id. at 19-20. It is only implicated where an "elaborate financial or regulatory nexus ties the challenged conduct to the State." Id. at 18; see also Santiago v. Puerto Rico, 655 F.3d 61, 71 (1st Cir. 2011) ("Even the rights-depriving conduct of an extensively regulated private party does not amount to action under color of state law unless the conduct itself is compelled (or, at least, heavily influenced) by a state regulation."). Here, Plaintiffs challenge Ms. Huerta's alleged misrepresentations, but they nowhere allege any regulatory connection between the State of Florida and those alleged misrepresentations. Ms. Huerta was a subcontractor hired to perform a contract between Vertol and Florida. "A private party cannot be transformed into a state actor simply because it is paid

11

with government funds for providing a service." Santiago, 655 F.3d at 72.  Plaintiffs do not plausibly allege anything more than payment to a government contractor (once removed).

### B. Ms. Huerta Did Not Act Jointly with Florida

Plaintiffs next claim that "§ 1983 liability extends to private parties who are willful participants in joint action . . . to violate an individual's constitutional rights." (Opposition at 35.)  That is not accurate.  Rather, "a plaintiff must show that the state has so far insinuated itself into a position of interdependence with the private party that it was a joint participant in the challenged activity." Jarvis, 805 F.3d at 8-9 (cleaned up).  In making that analysis, the most salient factor is the extent to which the private entity is (or is not) independent in the conduct of its day-to-day affairs," while the "private party's use of public facilities" and "the state's sharing of profits generated from the private party's rights-depriving conduct" are also considered. Santiago, 655 F.3d at 71 (quotation marks omitted).

None of those three factors is present here.  Plaintiffs do not allege that Florida controlled Vertol's or Ms. Huerta's day-to-day affairs, and Ms. Huerta did not use public facilities or make any profits.  Plaintiffs point to allegations of "consistent communication" with Florida officials, but that is hardly uncommon for a government contractor, and there are few communications between Ms. Huerta and Florida officials.  Plaintiffs have alleged just six text messages between Ms. Huerta and Mr. Keefe, one of which occurred after the planes landed in Martha's Vineyard. (FAC ¶¶ 63-66, 111, 187.)  They do not allege any other contacts between Ms. Huerta and Florida officials.  That is hardly "day-to-day" control.  Santiago, 655 F.3d at 71.

### III. PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED THEIR SUBSTANTIVE CLAIMS

As explained more fully in Huerta's Motion to Dismiss Brief at 15-30, Plaintiffs have not plausibly alleged either federal constitutional claims or state-law claims against Ms. Huerta.  Ms.

12

Huerta relies primarily on those arguments, and she incorporates arguments from the Vertol Defendants' Reply and the State Defendants' Reply, as referenced above at page 1. A few issues raised in Plaintiffs' Opposition, however, deserve a brief response.

### A.  Plaintiffs Have Not Plausibly Alleged That Ms. Huerta Denied Individual Plaintiffs Equal Protection

While Alianza Americas may find it politically useful to allege a "discriminatory motive" against "Latinx people," Plaintiffs have not done so here. Plaintiffs claim that "2 million" of the "11 million undocumented immigrants" in the United States are "from Europe and Asia." Those facts are not in the FAC, but even if they were, they show that more than 80% of undocumented immigrants are Latinx.[8] More importantly, Plaintiffs allege that Ms. Huerta introduced herself to migrants only near a single shelter in San Antonio. Nationwide statistics are irrelevant to who Ms. Huerta was likely to meet near that shelter. Plaintiffs have made no effort to address the issues raised in Huerta's Motion to Dismiss Brief at 15-17, namely, that Plaintiffs "do not allege any discriminatory intent or motivation specific to Ms. Huerta," that there are "no allegations that there were any non-Latinx migrants living at, or on the streets near, the Center," and that Plaintiffs' most specific allegation of motive is that Individuals were targeted because they lacked resources – a permissible basis. Plaintiffs have not alleged any facts which would allow this Court to infer that Ms. Huerta, herself a Latinx immigrant, acted with racial animus.

---

[8] Plaintiffs also note that "20,000 Ukrainians presented themselves at the U.S. border in April 2022 alone." (Opposition at 42 n.16.) Again, Plaintiffs' source is an article, not the complaint, but that article also shows how Plaintiffs are grasping at straws. First, it states that "[a]rrivals from Ukraine averaged 700 per day during April . . . out of nearly a half of a million people who arrive daily" (cleaned up). Second, "over 90 percent" of Ukrainians "sought entry through ports of entry under the San Diego CBP port authority," not Texas. Third, April 2022 does not provide useful data for later that year because, after a "new streamlined process to welcome Ukrainians" was implemented on April 25, 2022, "[t]he number of Ukrainians who were classified as 'inadmissible' abruptly dropped sharply to a few dozen each day."

### B. Plaintiffs Have Not Alleged Fraud

Ms. Huerta briefly addresses three issues. First, to state a claim for fraud, Plaintiffs must allege that they did not receive the benefits they were allegedly promised. As explained in Huerta's Motion to Dismiss Brief at 23-24, Plaintiffs allege that Ms. Huerta misrepresented to Individual Plaintiffs that they would "would find jobs, housing, services, and resources" in Massachusetts, but they do not allege that "Individual Plaintiffs are now homeless, hungry, or bereft of services." Plaintiffs have made no effort to address this deficiency, and if they received those services, there was no misrepresentation.

Second, Plaintiffs rely on allegations that Ms. Huerta "told Class Plaintiffs that flights would take them 'to large cities like Boston, New York City, or Washington, D.C.'" (Opposition at 54 (quoting FAC ¶ 22 and citing FAC ¶¶ 73, 78, 82, 84, 92-93, 96).) The FAC alleges that Ms. Huerta "told <u>immigrants</u> that they would be flying to <u>large</u> cities." (FAC ¶ 22 (emphasis added); <u>see also</u> FAC ¶ 1 ("promised Class Plaintiffs . . . a large city"); FAC ¶ 73 ("supposedly to large cities").) Plaintiffs rely heavily on the use of the adjective "large," asserting that the "consent form, coupled with Huerta's representations that Class Plaintiffs would be taken to a large city, confirmed that the destination was Boston." (Opposition at 55.)

But Ms. Huerta did not make any such representations <u>to the named Plaintiffs</u>. She allegedly told Yanet Doe that "they would likely go to Washington, D.C., or another 'sanctuary state'" or "a city [not large] in the Northeast," told Pablo Doe about "flights to 'sanctuary cities' – not "large" (FAC ¶ 84), and told "Jesus Doe that she could get him on a plane to Washington, Oregon, or Massachusetts." (FAC ¶ 92.) Plaintiffs do not allege that they relied on, or were harmed by, statements made to others, nor could statements to others support a fraud claim. <u>See Gorbey ex rel. Maddox v. Am. J. of Obstetrics & Gynecology</u>, 849 F. Supp. 2d 162, 166 (D.

14

Mass. 2012) ("Plaintiffs point to no case, however, and the Court has found none, in support of a theory that third-party reliance on fraud is cognizable under Massachusetts law.").

Third, Plaintiffs contend that Ms. Huerta "misrepresented that the flights were sponsored by an anonymous benefactor or by churches and foundations." But, like Plaintiffs' "large city" allegations, Plaintiffs do not allege that Ms. Huerta told any named Plaintiff that "churches and foundations" were funding the flights. (FAC ¶ 80 ("Huerta never disclosed [who she was working with] to Yanet Doe"); FAC ¶ 84 ("Huerta told Plaintiff Pablo Doe that she worked for 'an anonymous benefactor'"); FAC ¶¶ 89-93 (no allegations that Ms. Huerta made any representations about funding sources to Jesus Doe).) Again, Individual Plaintiffs cannot have relied on alleged representations to others. And "anonymous benefactor" was an accurate description. Plaintiffs' unsupported conclusion that "'anonymous' does not mean 'withheld'" is simply wrong. See "[A]nonymous," Dictionary.com, https://www.dictionary.com/browse/anonymous, accessed 6/9/2023 ("of unknown name; whose name is withheld" (emphasis added)); "anonymous," Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/anonymous, accessed 6/9/2023 ("not named or identified"). As Plaintiffs admit, Rule 9(b) required them to allege the "time, place, and content of the alleged misrepresentation with specificity." (Opposition at 53.) They have not alleged specific representations made to the Individual Plaintiffs.

## CONCLUSION

For the foregoing reasons and the reasons stated in Huerta's Motion to Dismiss Brief, Ms. Huerta respectfully requests that this Court dismiss all claims against her.

15

PERLA HUERTA

By her attorneys,

 */s/ Nicholas Ramacher*
George W. Vien (BBO No. 547411)
Nicholas Ramacher (BBO No. 680258)
DONNELLY, CONROY & GELHAAR, LLP
260 Franklin Street, Suite 1600 Boston,
Massachusetts 02110
(617) 720-2880
gwv@dcglaw.com
njr@dcglaw.com

Dated:  June 16, 2023

### CERTIFICATE OF SERVICE

I hereby certify that I filed this document through the Court's ECF system on June 16, 2023, which will therefore automatically be sent electronically to all counsel of record via the CM/ECF system.

 */s/ Nicholas Ramacher*
Nicholas Ramacher