**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ALIANZA AMERICA, YANET DOE, PABLO DOE, and JESUS DOE, on behalf of themselves and all others similarly situated, <br><br><br> Plaintiffs, <br><br> v. <br><br><br> RONALD D. DESANTIS, Governor of Florida, in his personal capacity; LAWRENCE A. KEEFE, Florida Public Safety Czar, in his personal capacity; JAMES UTHMEIER, Chief of Staff to Florida Governor, in his personal capacity; JAMES MONTGOMERIE; PERLA HUERTA; and VERTOL SYSTEMS COMPANY, INC., <br><br><br> Defendants. | Leave to file excess pages granted on September 5, 2024, ECF No. 143 <br><br><br> Civil Action No. <br><br> 1:22-cv-11550-ADB |

**CONSOLIDATED MEMORANDUM OF LAW OF DEFENDANTS**
**VERTOL SYSTEMS COMPANY, INC. AND JAMES MONTGOMERIE**

**IN SUPPORT OF THEIR MOTION TO DISMISS**
**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

**AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE**
**TO CONDUCT JURISDICTIONAL DISCOVERY**

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................ 3

      A.      Plaintiffs File Suit and Amend Their Complaint. .................................. 3

      B.      The Court Dismisses Nearly Every
               Defendant for Lack of Personal
               Jurisdiction.............................................................................................. 4

      C.      Plaintiffs' Assert New Allegations Attempting
               To Cure Their Failure To Establish Personal
               Jurisdiction Over the Dismissed Defendants,
               Including Montgomerie. .......................................................................... 5

ARGUMENT ................................................................................................................ 7

I.      THE COURT SHOULD DISMISS THE SECOND
       AMENDED COMPLAINT AS TO MONTGOMERIE
       FOR LACK OF PERSONAL JURISDICTION. ............................................... 7

      A.      Plaintiffs Have Not Alleged Facts Sufficient
               To Cure the Deficiencies of the First Amended
               Complaint................................................................................................. 9

               1.      The Second Amended Complaint
                         Does Not Allege that Montgomerie
                         "Personally Participated" in a Transaction
                         for Use of the Martha's Vineyard Airport .................................. 9

               2.      The Second Amended Complaint
                           Still Does Not Allege that Montgomerie
                           Traveled to Massachusetts ...................................................... 10

               3.      The Second Amended Complaint
                           Fails to Sufficiently Allege that Montgomerie
                           Prepared the Brochures in the Red Folders and
                           Does Not Allege that He Distributed Them .............................. 11

                 4.      The Second Amended Complaint
                           Fails To Allege Facts Sufficient
                           To Show that Montgomerie Was
                         Personally Involved in Engaging
                         Video Crews, Van Services, or Media Coverage ...................... 12

Table of Contents (continued)

Page

B.      Plaintiffs Have Failed to Establish that
        Montgomerie Was a "Primary
        Participant" in Actions Directed
        to Massachusetts. ................................................................................................. 13

II.     THE COURT SHOULD REAFFIRM
        ITS PREVIOUS DISMISSAL OF
        COUNTS II AND V AS TO VERTOL
        AND MONTGOMERIE ON THE
        SAME GROUNDS. ................................................................................................. 17

III.    THE COURT SHOULD DENY PLAINTIFFS'
        MOTION FOR LEAVE TO CONDUCT
        JURISDICTIONAL DISCOVERY BECAUSE
        PLAINTIFFS HAVE NOT ASSERTED
        A COLORABLE CLAIM FOR JURISDICTION. .......................................................... 18

        A.      This Court Should Not Grant Leave
                To Conduct Jurisdictional Discovery
                Concerning Plaintiffs' Agency Theory
                of Jurisdiction Because Their Theory
                Does Not Assert a "Colorable Claim" of Jurisdiction. ......................................... 19

        B.      The Court Should Not Permit Jurisdictional
                Discovery as to Montgomerie's
                Forum-Based Contacts Because Plaintiffs
                Are Not Likely To Discover Information
                that Will Establish Personal Jurisdiction................................................................. 22

CONCLUSION................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ace Am. Ins. Co. v. Oyster Harbors Marine, Inc.*,
  310 F. Supp. 3d 295 (D. Mass. 2018) ......................................................................7

*Barthel v. One Community, Inc.*,
  233 F. Supp. 2d 125 (D. Mass. 2002) ....................................................................14

*Beck v. Bronstein*,
  2023 WL 5833116 (D. Mass. Sept. 8, 2023) ..........................................................24

*Bohnenberger v. MCBC Hydra Boats, LLC*,
  2017 WL 3976566, at \*4 (D. Mass. Sept. 7, 2017) ..................................................7

*Carp v. XL Ins.*,
  754 F. Supp. 2d 230 (D. Mass. 2010) ...........................................................8, 16, 17

*Canney v. City of Chelsea*,
  925 F. Supp. 58 (D. Mass. 1996) ...........................................................................20

*CNE Direct, Inc. v. Blackberry Corp.*,
  2015 WL 4750847 (D. Mass. Aug. 10, 2015) ........................................................19

*Cossart v. United Excel Corp.*,
  804 F.3d 13 (1st Cir. 2015).....................................................................................14

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*,
  290 F.3d 42 (1st Cir. 2002)......................................................................................19

*Driscoll v. McCann*,
  505 F. Supp. 3d 32 (D. Mass. 2020) .......................................................................19

*D.S. Brown Co. v. White-Schiavone, JV*,
  537 F.Supp. 3d 36 (D. Mass. 2021) ........................................................................18

*Escude Cruz v. Ortho Pharm. Corp.*,
  619 F.2d 902 (1st Cir. 1980)....................................................................................17

*Galletly v. Coventry Healthcare, Inc.*,
  956 F. Supp. 2d 310 (D. Mass. 2013) .....................................................................15

*Garvey v. Keller Williams Realty, Inc.*,
  2024 U.S. Dist. LEXIS 80814 (D. Nev. May 2, 2024).............................................22

*Get In Shape Franchise, Inc. v. TFL Fishers, LLC*,
    167 F. Supp. 3d 173 (D. Mass. 2016) ......................................................................7

*In re TelexFree Secs. Litig.*,
    626 F. Supp. 3d 253 (D. Mass. 2022) ....................................................................11

*Johnson v. Creative Arts, Inc. v. Wool Masters, Inc.*,
    573 F. Supp. 1106 (D. Mass. 1983) ................................................................14, 16

*Karlis v. Tradex Swiss AG*,
    2007 WL 2705572 (Mass. Super. Ct. Sept. 7, 2007) ..............................................14

*Kirkpatrick v. Bos. Mut. Life Ins. Co.*,
    393 Mass. 640 (1985)… ..........................................................................................19

*LaVallee v. Parrot-Ice Drink Prods. of Am., Inc.*,
    193 F. Supp. 3d 296 (D. Mass. 2002)… ..................................................................16

*M-R Logistics, LLC v. Riverside Rail, LLC*,
    537 F. Supp. 2d 269 (D. Mass. 2008) .....................................................................16

*Mullally v. Sunrise Senior Living Management, Inc.*,
    224 F. Supp. 3d 117 (D. Mass. 2016) .....................................................................21

*Platten v. HG Bermuda Exempted Ltd.*,
    437 F. 3d 118 (1st Cir. 2006)....................................................................................7

*Post v. Mark Edward Partners LLC*,
    2022 WL 5118214 (D. Mass. Oct. 3, 2022)..............................................6, 14, 15

*Sunview Condominium Ass'n v. Flexel Int'l, Ltd.*,
    *116 F*.3d 962 (1st Cir. 1997)...................................................................................18

*Sosa v. Flintco, LLC*,
    2020 U.S. Dist. LEXIS 102585 (D.N.M. June 9, 2020) .........................................22

*SV Athena, LLC v. B&G Mgmt. Servs., LLC*,
    671 F. Supp. 3d 77 (D. Mass. 2023) .................................................................18, 19

*Terracom v. Valley Nat'l Bank*,
    49 F.3d 555 (9th Cir. 1995) .....................................................................................24

*United States v. Swiss Am. Bank, Ltd.*,
    274 F.3d 610 (1st Cir. 2001).....................................................................................18

*Venmill Indus., Inc. v. ELM, Inc.*,
    100 F. Supp. 3d 59 (D. Mass. 2015) ........................................................................24

**Statutes**

Mass. Gen. Laws ch. 149, § 148 ......................................................................................14

Mass. Gen. Laws ch. 223A, § 3 ....................................................................3, 4, 8, 13, 19

**Rules**

Federal Rule Civil Procedure 9 .......................................................................................17

Federal Rule of Civil Procedure 12 .......................................................................8, 17, 25

**Other Authorities**

Restatement (Second) of Agency (Am. Law. Inst. 1958)…...................................... 19, 20

Ultimate Jet, https://flyuj.com/ (last visited Sept. 9, 2024) .........................................10

Defendants Vertol Systems Company, Inc. ("Vertol") and James Montgomerie ("Montgomerie") submit this consolidated memorandum of law in support of their Motion to Dismiss the Second Amended Class Complaint, ECF No. 137 (the "Second Amended Complaint" or "SAC"), filed by Plaintiffs Alianza Americas, Yanet Doe, Jesus Doe, and Pablo Doe ("Plaintiffs") and in opposition to Plaintiffs' Motion for Leave to Take Jurisdictional Discovery, ECF No. 130.

**INTRODUCTION**

Plaintiffs are three Venezuelan migrants who purport to represent a class of similarly situated individuals (the "Putative Class Members"), SAC ¶¶ 1, 13–15, and a migrant advocacy organization. They commenced this lawsuit days after the three migrants voluntarily boarded flights from San Antonio, Texas to Martha's Vineyard, Massachusetts.

According to Plaintiffs, the flights to Massachusetts were arranged at the direction of the State of Florida ("Florida") and its Governor, Defendant Ronald D. DeSantis, through the Defendant Florida Department of Transportation ("FDOT") and coordinated by Florida's Public Safety Czar, Defendant Lawrence A. Keefe ("Keefe") and the governor's chief of staff, Defendant James Uthmeier ("Uthmeier"), to transport recently arrived immigrants "north to so-called 'sanctuary' jurisdictions." *Id.* ¶ 3. Vertol, a Florida company, negotiated a government contract with FDOT to provide airplanes to fly the migrants and to plan on-the-ground logistics in Texas. Vertol and its personnel, according to Plaintiffs, understood that the contract was intended to be for "'the relocation of individuals to . . . Massachusetts or [an]other, proximate northeastern state designated by FDOT.'" *Id.* ¶ 48. In September 2022, approximately 50 immigrants agreed to board planes chartered by Vertol and traveled to Massachusetts.

In a March 29, 2024 decision, this Court dismissed nearly every Defendant, including Montgomerie, from this lawsuit on personal jurisdiction grounds. *See* Memorandum and Order

1

dated March 29, 2024, ECF No. 112 (the "Memorandum and Order" or "Mem. & Order").  The Court, however, found that Plaintiffs had established personal jurisdiction over Vertol, although it dismissed certain claims against Vertol.  Plaintiffs have now amended their complaint in an attempt to establish personal jurisdiction over the dismissed Defendants.  Recognizing the extreme weakness of the allegations they also move for leave to conduct jurisdictional discovery.

The Court should reaffirm its prior dismissal of Montgomerie for lack of personal jurisdiction.  After plenty of time for investigation—including nearly two years of litigation and an extensive review of public records produced to them by Florida—Plaintiffs still have not alleged facts indicating that Montgomerie had contacts with Massachusetts sufficient to justify personal jurisdiction over him.  Nor can they.  Montgomerie never set foot in Massachusetts with respect to these claims, never personally transacted business in Massachusetts with respect to these claims, and never committed tortious conduct in Massachusetts with respect to these claims.  Instead, Plaintiffs argue that this Court's personal jurisdiction over Vertol should be imputed to Montgomerie because he was the "primary participant" in Vertol's conduct, despite a dearth of allegations showing that he participated at all in the company's actions in Massachusetts or that he derived any personal benefit from those actions.

As for Plaintiffs' motion for jurisdictional discovery, they appear to seek two forms of discovery from Vertol and Montgomerie.  First, they appear to seek discovery to establish personal jurisdiction over Keefe and Uthmeier through an "agency" theory of jurisdiction because Vertol and Montgomerie were agents of Keefe and Uthmeier.  This theory ignores basic principles of agency law and does not support the requested impositions on Vertol and Montgomerie.  Second, Plaintiffs request discovery from Montgomerie to establish that Montgomerie engaged in specific conduct in Massachusetts necessary to support a finding of

personal jurisdiction.  But Plaintiffs have failed to articulate a colorable basis for believing that facts supporting such jurisdiction exist.  In addition, Montgomerie has denied any Massachusetts-related conduct in an accompanying affidavit.  *See* Affidavit of James Montgomerie (the "Montgomerie Aff.").

In short, the current amendments to the complaint do not cure the jurisdictional deficiencies that previously warranted dismissal for lack of personal jurisdiction as to Montgomerie.  And Plaintiffs have not demonstrated that they will fare any better at establishing jurisdiction if they are granted leave to conduct jurisdictional discovery.

**FACTUAL BACKGROUND**

**A.    Plaintiffs File Suit and Amend Their Complaint.**

Plaintiffs filed their original complaint on September 20, 2022.  ECF No. 1. Approximately two months later, they filed a First Amended Class Action Complaint, ECF No. 21 (the "First Amended Complaint" or "FAC").  The First Amended Complaint substantially revised Plaintiffs' allegations following a production of documents and information by Florida pursuant to its public records law. *See, e.g.*, FAC ¶ 117.  Alleging that the Court had personal jurisdiction under Massachusetts' long-arm statute, Mass. Gen. Laws ("M.G.L.") ch. 223A, § 3, that amended pleading asserted thirteen common law tort and federal constitutional claims against various Defendants.[1]

---

[1] Plaintiffs included Vertol and Montgomerie in eleven of these claims:  Count I (violation of substantive due process rights under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983); Count II (violation of the Equal Protection Clause of the Fourteenth Amendment pursuant to § 1983); Count V (violation of procedural due process rights under the Fourteenth Amendment pursuant to § 1983); Count VI (violation of the right against unlawful seizures pursuant to the Fourth Amendment); Count VII (violation of 42 U.S.C. § 1985(3)), Count VIII (false imprisonment); Count IX (fraud, deceit); Count X (intentional infliction of emotional

B.      **The Court Dismisses Nearly Every Defendant for Lack of Personal Jurisdiction.**

Each Defendant in the First Amended Complaint moved to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim.  ECF Nos. 80, 82–86.  The Court decided that the First Amended Complaint failed to establish personal jurisdiction under Massachusetts' long-arm statute as to all Defendants except Vertol.  *See* Mem. & Order, at 22–26.  The Court also dismissed Counts II, V, and IX as to Vertol on personal jurisdiction grounds, for failure to state a claim upon which relief could be granted, and for failure to plead fraud with particularity, respectively.  *See id.* at 32–33, 58–59, 68–69.

With respect to Montgomerie, the Court concluded that the First Amended Complaint failed to set forth factual allegations sufficient to support jurisdiction under Sections 3(a) and (c) of Massachusetts' long-arm statute, M.G.L. ch. 223A, § 3(a) & (c) ("A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth; . . . [or] (c) causing tortious injury by an act or omission in this commonwealth . . . .").  The First Amended Complaint failed to satisfy Section 3(a) because it did not "sufficiently connect" Montgomerie "to business transactions in Massachusetts."  Mem. & Order, at 22.  The Court suggested that the fact that the flights landed in Martha's Vineyard "likely means that someone paid to use the airport facilities in Massachusetts, but the Court cannot assume that . . . Montgomerie . . . personally participated in any such transaction."  *Id.*

---

distress); Count XI (negligent infliction of emotional distress); Count XII (civil conspiracy); and Count XIII (aiding and abetting).

The Court also concluded that the First Amended Complaint failed to satisfy Section 3(c) because it did not allege facts sufficient to show that Montgomerie committed a tort in Massachusetts.  *Id.* at 26.  Plaintiffs did not allege that "Montgomerie . . . travel[ed] with Plaintiffs to Massachusetts, there is no allegation that [he] created or provided Plaintiffs with the deceiving brochures, and there are no allegations connecting [him] to the Flights while they were in Massachusetts, hiring the video crews and van, or seeking media coverage." *Id.* at 26.  The Court then summarized its position: "on the present record, the Court cannot ascertain what actions were undertaken by whom and therefore cannot determine which, if any, of the individual Defendants [including Montgomerie] transacted business or caused injury here, leaving it no choice but to find that, at least on this record, personal jurisdiction has not been established." *Id.* at 33–34.

### C.   Plaintiffs' Assert New Allegations Attempting To Cure Their Failure To Establish Personal Jurisdiction Over the Dismissed Defendants, Including Montgomerie.

Faced with the Court's decision, Plaintiffs obtained leave to file an amended complaint. ECF Nos. 127, 134–36.  Plaintiffs' Second Amended Class Action Complaint, ECF No. 137 (the "Second Amended Complaint" or "SAC"), makes the following new allegations against Montgomerie:

- An allegation that "[t]he planes that Vertol procured for the flights were owned by Ultimate Jet[,] LLC, which was the direct payor of the Martha's Vineyard airport for fuel and other charges, including landing fees" and thus that "[t]hose fees were the ultimate responsibility of Vertol," *see* SAC ¶ 128;

- An allegation that "Defendants DeSantis, Keefe, Vertol, and/or their agents paid for" a van service to transport the Putative Class Members from the airport to Martha's Vineyard Community Services, *id.* ¶ 156;

- An allegation that Vertol's contract with FDOT directed it to pay for "'ground handling and logistics,'" without specifying whether such payments were intended for such costs and expenses that might be incurred in San Antonio, Texas or in Martha's Vineyard, *see id.*;

- An allegation that "[o]n information and belief," the brochures providing information concerning services available in Massachusetts "were prepared by one or more of Defendants Huerta, Keefe, Uthmeier, Vertol, Montgomerie, DeSantis, or their agents," *id.* ¶ 141;

- An allegation that, "[o]n information and belief, Defendants DeSantis, Uthmeier, Keefe and/or their agents paid a videographer to video record Class Plaintiffs deplaning and promptly sent that video to Fox News," *see id.* ¶ 155; and

- An allegation that all of the defendants *intended* that Massachusetts-based media companies provide coverage of the Flights, *see id.* ¶ 157 ("Defendant DeSantis, Keefe, Uthmeier, Huerta, Montgomerie, and Vertol intended for these videos to be broadcast by Massachusetts media companies, for the story to be reported on by Massachusetts media companies, and for Defendant DeSantis to benefit from this media coverage—all of which occurred.").

The Second Amended Complaint also includes several new allegations about correspondence between Keefe and Montgomerie concerning the language of Vertol's proposed contract with FDOT and other logistical considerations occurring before the flights reached Massachusetts. *See id.* ¶¶ 43–53, 109, 117–18. As in the First Amended Complaint, the Second Amended Complaint concedes that Montgomerie deplaned the flights in Destin, Florida, and did not travel to Massachusetts. *See id.* ¶ 138. Montgomerie is a resident of Florida. *See* Montgomerie Aff. ¶ 2.

In their brief in support of their motion for leave to amend the First Amended Complaint, Plaintiffs argued that the Court's decision to exercise personal jurisdiction over Vertol would allow it to exercise personal jurisdiction over Montgomerie because the Second Amended Complaint would show that he was a "'primary participant[] in corporate action.'" Pls.' Mem. in Support of Mot. for Leave to File Second Am. Compl. ("Amend. Br.") at 21, ECF No. 128 (quoting *Post v. Mark Edward Partners LLC*, 2022 WL 5118214, at *4–5 (D. Mass. Oct. 3, 2022)). Montgomerie was supposedly the primary participant in Vertol's conduct because he was the "president and sole officer" of the company and had frequent communication with Keefe while executing Vertol's contract with the State of Florida. *Id.* at 21–22.

Recognizing the weakness of these new allegations, Plaintiffs also move for leave to conduct jurisdictional discovery.  *See* ECF Nos. 130, 131.  Plaintiffs argue that they are entitled to jurisdictional discovery from Vertol and Montgomerie because they are supposedly "agents" of Keefe and Uthmeier and because (in a somewhat circular argument) discovery is necessary to determine whether Montgomerie had sufficient contacts with Massachusetts to support personal jurisdiction over him (despite Plaintiffs having argued that their existing allegations are sufficient).

## **ARGUMENT**

## I.   **THE COURT SHOULD DISMISS THE SECOND AMENDED COMPLAINT AS TO MONTGOMERIE FOR LACK OF PERSONAL JURISDICTION.**

"In Massachusetts, a court may exercise personal jurisdiction over a foreign defendant if such jurisdiction is authorized by state statute and its exercise does not offend the Due Process Clause of the Fourteenth Amendment."  *Ace Am. Ins. Co. v. Oyster Harbors Marine, Inc.*, 310 F. Supp. 3d 295, 302 (D. Mass. 2018) (quoting *Bohnenberger v. MCBC Hydra Boats, LLC*, 2017 WL 3976566, at *4 (D. Mass. Sept. 7, 2017)).  Plaintiffs bear the burden of establishing personal jurisdiction over each Defendant.  *Get In Shape Franchise, Inc. v. TFL Fishers, LLC*, 167 F. Supp. 3d 173, 191 (D. Mass. 2016) (citation omitted).  "[P]laintiffs may not rely on unsupported allegations in their pleadings," and are instead "obliged to adduce evidence of specific facts supporting jurisdiction."  *Platten v. HG Bermuda Exempted Ltd.*, 437 F. 3d 118, 134 (1st Cir. 2006) (citations and quotations omitted).

Plaintiffs argue that the Second Amended Complaint establishes personal jurisdiction over Montgomerie under Sections 3(a) and 3(c) of the Massachusetts long-arm statute.  To confer jurisdiction under Section 3(a) and 3(c) of the Massachusetts long-arm statute, Plaintiffs must allege facts showing that Montgomerie himself "transact[ed] . . . business in this commonwealth"

or "caus[ed] tortious injury by an act or omission in this commonwealth."  M.G.L. ch. 223A, § 3(a) & (c).  With respect to corporate officers, the general rule is that "'jurisdiction over the individual officers of a corporation may not be based merely on jurisdiction over the corporation'" and that there must be an "'independent basis for jurisdiction'" over Montgomerie. Mem & Order at 22 n.15 (quoting *Carp v. XL Ins.*, 754 F. Supp. 2d 230, 232 (D. Mass. 2010)).

The First Amended Complaint failed to include allegations sufficient to support the exercise of personal jurisdiction over Montgomerie.[2]  The claims against him in the Second Amended Complaint rest chiefly on the same allegations that this Court held were insufficient in the First Amended Complaint.  Montgomerie therefore incorporates by reference his prior arguments under Federal Rule of Civil Procedure 12(b)(2) against personal jurisdiction under the First Amended Complaint.  *See* ECF No. 82 (Vertol and Montgomerie's motion to dismiss), ECF No. 83 (supporting memorandum of law).

Plaintiffs' few new allegations against Montgomerie in the Second Amended Complaint do not cure this inadequacy.  Although this Court carefully detailed the conduct that Plaintiffs could allege—if a plausible basis for such facts existed—to establish personal jurisdiction over Montgomerie, *see* Mem. & Order at 22–26, the Second Amended Complaint does not actually allege such facts.  Nor does Plaintiffs' new argument—that personal jurisdiction over Vertol automatically creates personal jurisdiction over Montgomerie because he was allegedly the "primary participant" in Vertol's corporate action—work.  The Second Amended Complaint

---

[2] This Court previously held that it could exercise personal jurisdiction over Vertol based on allegations in the First Amended Complaint that were reasserted in the Second Amended Complaint.  Vertol expressly preserves its objection to this Court's exercise of personal jurisdiction but does not reassert its motion to dismiss for lack of jurisdiction in light of the Court's previous ruling.

alleges no facts establishing that Montgomerie was the primary participant of such conduct. Accordingly, this Court should again dismiss Montgomerie from this action for lack of personal jurisdiction over him.

### A.      *Plaintiffs Have Not Alleged Facts Sufficient To Cure the Deficiencies of the First Amended Complaint.*

In its Memorandum and Order, the Court set forth a detailed road map as to how Plaintiffs could allege facts sufficient to support personal jurisdiction against Montgomerie. *See* Mem. & Order at 22–26. These allegations could include: (1) whether Montgomerie "personally participated" in a transaction to pay for use of the Martha's Vineyard Airport, (2) traveled to Massachusetts, (3) prepared or distributed the allegedly deceptive red brochures contained in red folders, or (4) paid for the vans or video crews at the airport or contacted the media to appear at the airport. *See id.*

The Second Amended Complaint names Montgomerie as one of several parties who may have engaged in such conduct. Their allegations do not identify which Defendant actually did what conduct, and rest principally "on information and belief" without any indication as to any source or basis for such information or belief. Indeed, Plaintiffs effectively admit that they have no basis for such information and belief as to Montgomerie himself because they do not have information as to "*which defendants* are responsible for which actions." ECF No. 131 (emphasis in original).

### 1.      The Second Amended Complaint Does Not Allege that Montgomerie "Personally Participated" in a Transaction for Use of the Martha's Vineyard Airport.

The Court suggested that Plaintiffs could cure their failure to allege that Montgomerie transacted business in Massachusetts for purposes of Section 3(a) by alleging facts showing that he "personally participated" in a transaction to "pay someone to use the airport facilities in

Massachusetts."   Mem. & Order at 22.   The Second Amended Complaint contains new allegations that Vertol may have reimbursed an out-of-state company for paying the fees to use the Martha's Vineyard airport but contains no allegations that Montgomerie himself was involved in any transaction in Massachusetts.  *See* SAC ¶ 128 ("The planes that Vertol procured for the flights were owned by Ultimate Jet[,] LLC, which was the direct payor of the Martha's Vineyard airport for fuel and other charges, including landing fees . . . .  Those fees were the ultimate responsibility of Vertol.  Vertol made that payment as part of the agreement it had with the state of Florida."); *see also* Ultimate Jet, https://flyuj.com/ (last visited Sept. 9, 2024) (stating that "Ultimate Jet[, LLC] is a Private Jet Charters private aviation company based in Ohio"). Because there is no allegation of any fact that would support a finding that Montgomerie *himself* was responsible for the payment of these fees to the Martha's Vineyard airport, the Second Amended Complaint still fails to establish personal jurisdiction over Montgomerie pursuant to Section 3(a).

> 2.   The Second Amended Complaint Still Does Not Allege that Montgomerie Traveled to Massachusetts.

As to personal jurisdiction under Section 3(c), the Court suggested that Plaintiffs might be able to cure the deficiencies in the First Amended Complaint by alleging facts showing that Montgomerie "travel[ed] with Plaintiffs to Massachusetts."  Mem. & Order at 26.   But the Second Amended Complaint still concedes that Montgomerie did not travel to Massachusetts. Indeed, Plaintiffs admit that Montgomerie deplaned in Destin, Florida.  FAC ¶ 131 ("Second, the flights stopped in Crestview to drop Defendants Keefe and Montgomerie in the vicinity of their homes."); SAC ¶ 138 (same).  The lack of physical presence by Montgomerie in Massachusetts confirms that there is still no basis for exercising jurisdiction over him.

3.     <u>The Second Amended Complaint Fails to Sufficiently Allege that Montgomerie Prepared the Brochures in the Red Folders and Does Not Allege that He Distributed Them.</u>

The Court further suggested that Plaintiffs could establish personal jurisdiction over Montgomerie if they alleged facts showing that he "created or provided Plaintiffs with the deceiving brochures" contained in the red folders Plaintiffs allege were distributed on the flights. Mem. & Order at 26; SAC ¶¶ 141–49.  But the Second Amended Complaint still does not allege facts supporting a reasonable inference that Montgomerie provided Plaintiffs with those brochures.  Plaintiffs allege that the brochures were distributed "just minutes before" the migrants "land[ed] in Martha's Vineyard."  SAC ¶ 141.  Because Montgomerie had deplaned in Destin, Florida, hours before the migrants landed in Martha's Vineyard, *id.* ¶ 138, it is not possible that Montgomerie distributed the brochures to any of the migrants in Plaintiffs' putative class.

Plaintiffs fare no better in seeking to imply that Montgomerie prepared those brochures. They nakedly allege on information and belief that nearly every Defendant (or someone else acting as the agent or agents of one or more Defendants) prepared the brochures.  *See id.* ¶ 141 ("On information and belief, the red folder and the documents contained therein were prepared by one or more of Defendants Huerta, Keefe, Uthmeier, Vertol, Montgomerie, DeSantis or their agents.").  But the Court has already held that "the First Circuit has not adopted a conspiracy theory of jurisdiction, and the Court therefore declines to adopt one here."  Mem. & Order at 16 (citing *In re TelexFree Secs. Litig.*, 626 F. Supp. 3d 253, 285 (D. Mass. 2022)).  In so doing, the Court held that Plaintiffs' references in the First Amended Complaint to "'Defendants' generally, without identifying which specific Defendants took particular actions" was "not enough to establish jurisdiction over Defendants."  *Id.* (citing *TelexFree*, 626 F. Supp. 3d at 285).  Like the general allegations that the Court already has rejected, Plaintiffs' new allegations do not provide

any clarity as to "which specific Defendants took particular actions."  *See* Mem. & Order at 16.

They remain insufficient to establish personal jurisdiction over Montgomerie.

        4.      <u>The Second Amended Complaint Fails To Allege Facts Sufficient To Show</u>
                 <u>that Montgomerie Was Personally Involved in Engaging Video Crews, Van</u>
                 <u>Services, or Media Coverage.</u>

The Court suggested, as another option, that Plaintiffs could establish personal

jurisdiction over Montgomerie if they alleged facts showing that he was personally involved in

"hiring the video crews and van, or seeking media coverage."  Mem. & Order at 26.  But the

Second Amended Complaint *excludes* Montgomerie from involvement in hiring the video crews.

*See* SAC ¶ 155 ("On information and belief, Defendants DeSantis, Uthmeier, Keefe and/or their

agents paid a videographer to video record Class Plaintiffs deplaning and promptly sent that

video to Fox News.").  Indeed, the Second Amended Complaint alleges elsewhere that the

videographer was "*Defendant DeSantis'* videographer," not anyone else's.  *Id.* ¶ 159 (emphasis

added).

With respect to the van service that transported the migrants from the airport to Martha's

Vineyard Community Services, Plaintiffs, again solely on information and belief despite two

years in which to investigate, allege collectively that "Defendants DeSantis, Keefe, Vertol, and/or

their agents paid for" the van service because "Vertol's agreement with FDOT . . . included

'ground handling and logistics,' as a responsibility of Vertol's."  *Id.* ¶ 156.  This allegation

contains no mention of any personal involvement by Montgomerie in the transaction.

Finally, the Second Amended Complaint alleges that nearly every Defendant intended

that the flights bringing the migrants to Massachusetts receive news coverage—but does not

allege any fact indicating that Montgomerie, as opposed to anyone else, himself took any *action*

to ensure that this occurred.  *See id.* ¶ 157 ("Defendants DeSantis, Keefe, Uthmeier, Huerta,

Montgomerie, and Vertol intended for these videos to be broadcast by Massachusetts media

companies, for the story to be reported on by Massachusetts media companies, and for Defendant DeSantis to benefit from this media coverage—all of which occurred.").  Section 3(c) of Massachusetts' long arm statute requires a plaintiff to establish the occurrence of tortious conduct and tortious injury—not tortious intent—in Massachusetts.  Because Plaintiffs have failed to allege Montgomerie's involvement in tortious conduct in Massachusetts, these allegations do not serve as grounds to confer personal jurisdiction over Montgomerie.

As the four subsections above indicate, the few new allegations in the Second Amended Complaint fall far short of demonstrating that Montgomerie was personally involved in "transacting any business in this commonwealth" or "causing tortious injury by an act or omission in this commonwealth."  M.G.L. ch. 223A, § 3(a) & (c).  Instead, they reaffirm that Montgomerie did not travel to Massachusetts or distribute brochures on the airplane.  At most, Plaintiffs engage again in impermissible group pleading, principally on information and belief without any explanation of any basis for such information or belief, to allege that Montgomerie—or one or more of the other Defendants—engaged in forum-based conduct.  Such allegations are not sufficient to survive this motion to dismiss.

### B.      Plaintiffs Have Failed to Establish that Montgomerie Was a "Primary Participant" in Actions Directed to Massachusetts.

Having failed to allege sufficient facts about Montgomerie's own conduct, Plaintiffs advance a new argument seeking to extend personal jurisdiction over Vertol to include personal jurisdiction over Montgomerie.  In their memorandum in support of their motion for leave to file an amended complaint, Plaintiffs argued that Montgomerie was the "'primary participant'" in Vertol's conduct because he is Vertol's president and sole officer and was the "principal point of contact" between Vertol and Keefe.  Amend. Br. at 21–22.  Yet Plaintiffs cite no case from a Massachusetts court in support of this theory, and the cases they do cite are each distinguishable.

13

First, Plaintiffs' citations to *Cossart v. United Excel Corp.*, 804 F.3d 13 (1st Cir. 2015) and *Post v. Mark Edward Partners LLC*, 2022 WL 5118214 (D. Mass. Oct. 3, 2022), are distinguishable because those cases involve Massachusetts Wage Act claims that expressly provide for jurisdiction over specific corporate officers by defining them as a Massachusetts "employer."  In this way, the Wage Act "expressly subjects certain corporate officers—including 'the president and treasurer'—to individual liability" under that Act.  *Cossart*, 804 F.3d at 17 n.2; *see also* M.G.L. ch. 149, § 148 ("The president and treasurer of a corporation and any officers or agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation within the meaning of this section").  Only when an officer like Montgomerie is sued for a violation of the Wage Act is that role by itself sufficient to establish that he was the "primary participant" in the forbidden corporate action.  *Compare Barthel v. One Community, Inc.*, 233 F. Supp. 2d 125, 127–28 (D. Mass. 2002) (denying motion to dismiss for lack of personal jurisdiction where the plaintiff argued "[a]s further evidence that personal jurisdiction . . . exists" that the "Wage Act expressly provides that the President and Treasurer of an Employer party are liable" for Wage Act violations), *and Karlis v. Tradex Swiss AG*, 2007 WL 2705572, at *4, *5 (Mass. Super. Ct. Sept. 7, 2007) (denying motion to dismiss complaint, in relevant part, as to corporate officers because plaintiff established that the court "may well have such jurisdiction over" them "under the Wage Act claims at least" where the officers exercised "almost total control over" the corporate employer and "may well be deemed 'employers' and thereby subject to this Court's jurisdiction under the Longarm Statute"), *with Johnson v. Creative Arts, Inc. v. Wool Masters, Inc.*, 573 F. Supp. 1106, 1111 (D. Mass. 1983) (declining to find personal jurisdiction over an officer even though he was the "corporation's secretary and owns a substantial portion of the corporation's stock").

Second, the instances of "primary participation" alleged and established in *Cossart*, *Post*, and Plaintiffs' other non-precedential citations were far more intentional and substantial than those alleged against Montgomerie.  For example, in *Post* the District Court exercised personal jurisdiction over a corporate officer as the "primary participant" in a company's jurisdiction-conferring conduct because that officer "personally recruited Plaintiff to work for [the company] for the purpose of 'establish[ing] a presence' for the [c]ompany in Massachusetts, personally negotiated the terms of his employment at the Company, and directly supervised Plaintiff's work [for the company], all of which was conducted in the Commonwealth."  2022 WL 5118214, at *2.

Similarly, in *Galletly v. Coventry Healthcare, Inc.*, 956 F. Supp. 2d 310, 313–15 (D. Mass. 2013), the court held it could exercise personal jurisdiction over one corporate officer but not another corporate officer in an unlawful discrimination case.  It had jurisdiction over a company's chief operating officer because he supervised the plaintiff, but the "vague allegations" directed at the chief executive officer for "conspir[ing] to terminate" the defendant were insufficient to establish jurisdiction.  *Id.*

Plaintiffs' allegations here are, at best, like those against the chief executive officer in *Galletly*.  The Court has already exercised personal jurisdiction pursuant to Section 3(c) of the Massachusetts long-arm statute over Vertol because "its planes, with at least one of its employees on board, flew into and landed in Massachusetts, where the injuries described above occurred."  Mem. & Order at 26.  But Plaintiffs concede that Montgomerie was not the employee on board the flight when these purported injuries occurred.  *See* SAC ¶¶ 136, 141.  Nor do they allege that he directed that employee to distribute folders or brochures, or otherwise that he directed any of the specific conduct about which Plaintiffs complain.

15

So, the allegations against Montgomerie are distinguishable from *Cossart* and *Post* because these are not Wage Act claims. The allegations against Montgomerie are also distinguishable from *Cossart*, *Post*, and *Galletly* because Plaintiffs assert no facts that would establish that he engaged in the kind of specific or individual supervisory actions identified in those decisions, much less with respect to the actions of which Plaintiffs' complaint. In short, Plaintiffs have not plausibly alleged that Montgomerie was involved in *any* of Vertol's Massachusetts-based contacts this Court considered sufficient to support jurisdiction over Vertol in the First Amended Complaint. Instead, as in *Johnson*, this Court should reject Plaintiffs' attempt to establish jurisdiction over Montgomerie merely because he is a significant corporate officer of Vertol. *See* 573 F. Supp. at 1111.

Furthermore, even if Plaintiffs had alleged that Montgomerie was a primary participant in Vertol's jurisdiction-conferring conduct, Plaintiffs entirely have failed to allege that Montgomerie "derived personal benefits from [his] contacts in Massachusetts and/or acted beyond the scope of [his] employment." *M-R Logistics, LLC v. Riverside Rail, LLC*, 537 F. Supp. 2d 269, 280 (D. Mass. 2008) (quoting *LaVallee v. Parrot-Ice Drink Prods. of Am., Inc.*, 193 F. Supp. 3d 296, 302 (D. Mass. 2002)). A court cannot find that a corporate officer or employee was the primary participant in corporate actions where, as here, "'there is no allegation, much less evidence, that [the corporate officer] gained any personal benefit from the'" Massachusetts-based actions "'or acted outside the scope of his or her employment.'" *Id.* (denying personal jurisdiction); *accord, e.g. LaVallee*, 193 F. Supp. 2d at 302 (denying personal jurisdiction where defendant sent misleading emails to Massachusetts); *Carp*, 754 F. Supp. 2d at 232–33 (D. Mass. 2010) (denying personal jurisdiction for substantially similar reasons). Even if Plaintiffs had set forth allegations that Montgomerie had contact with Massachusetts (which they

haven't), Plaintiffs have not set forth any allegations explaining how Montgomerie derived a personal benefit or exceeded the scope of his employment with respect to these actions. Plaintiffs' theory is thus a thinly veiled attempt to establish jurisdiction "based merely on jurisdiction over the corporation," which is impermissible. *Carp*, 754 F. Supp. 2d at 232 (citing *Escude Cruz v. Ortho Pharm. Corp.*, 619 F.2d 902, 906 (1st Cir. 1980)).

## II.     THE COURT SHOULD REAFFIRM ITS PREVIOUS DISMISSAL OF COUNTS II AND V AS TO VERTOL AND MONTGOMERIE ON THE SAME GROUNDS.

The Court previously dismissed: (1) Count II as to Vertol because the Court declined to exercise "pendent personal jurisdiction" over Vertol, Mem. & Order at 32–33; (2) Count V as to Vertol for failure to state a claim upon which relief could be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), *id.* at 58–59; and (3) Count IX as to Vertol for failure to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b), *id.* at 68–69.  Plaintiffs have not reasserted Count IX in the Second Amended Complaint.  Plaintiffs have informed the Court that they have reasserted Counts II and V only "to preserve their appellate rights," not to pursue those claims again now.  Amend. Br., at 2 n.3.  Accordingly, Vertol requests that this Court reaffirm its previous dismissal of Counts II and V as to Vertol.

To the extent that this Court determines that it may exercise personal jurisdiction over Montgomerie, Montgomerie expressly incorporates by reference his arguments in his original motion to dismiss the First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.  *See* ECF Nos. 82 (motion to dismiss), 83 (supporting memorandum of law).  For the same reasons as before, the Second Amended Complaint fails to state any claim upon which relief may be granted.

III.    **THE COURT SHOULD DENY PLAINTIFFS' MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY BECAUSE PLAINTIFFS HAVE NOT ASSERTED A COLORABLE CLAIM FOR JURISDICTION.**

As for Plaintiffs' motion for jurisdictional discovery, any claimed "'entitlement'" to jurisdictional discovery "'is not absolute.'"  *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 626 (1st Cir. 2001) (quoting *Sunview Condominium Ass'n v. Flexel Int'l, Ltd.*, 116 F.3d 962, 964 (1st Cir. 1997)).  Such discovery is permitted where "a plaintiff has made a colorable claim of jurisdiction, which requires a plaintiff to 'present facts to the court which show why jurisdiction would be found if discovery were permitted' and has been diligent in preserving their rights."  *SV Athena, LLC v. B&G Mgmt. Servs., LLC*, 671 F. Supp. 3d 77, 84 (D. Mass. 2023) (quoting *D.S. Brown Co. v. White-Schiavone, JV*, 537 F. Supp. 3d 36, 44 (D. Mass. 2021)) (denying leave to conduct jurisdictional discovery because there was no ambiguity that personal jurisdiction did not exist over defendants).  "Even where these conditions are met, however, the court still has 'broad discretion to decide whether discovery is required.'"  *Id.* (quoting *Swiss Am. Bank*, 274 F.3d at 626).

Plaintiffs seek two types of jurisdictional discovery.  First, they seek discovery showing that Vertol and Montgomerie were agents of Keefe, and that Vertol was an agent of Uthmeier, so that Plaintiffs can impute Vertol's jurisdiction-conferring acts to Keefe and Uthmeier.  *See* Pls.' Mem. in Support of Mot. for Leave to Conduct Jurisdictional Discovery ("Discovery Br."), ECF No. 131, at 11–12.  Second, they seek jurisdictional discovery from Montgomerie about his Massachusetts-based activities to determine "which defendants are responsible for which" potentially jurisdiction-conferring actions.  *Id.* at 13–14.

Plaintiffs' motion should be denied.  As to their first discovery request, Plaintiffs have not asserted a "colorable claim" that any agency relationships existed between Vertol, Montgomerie, and the Florida officials.  As to their second request, Plaintiffs have not provided a sufficient

basis for the Court to conclude that "jurisdiction would be found if discovery were permitted" into Montgomerie's purported forum-based contacts.  *See SV Athena*, 671 F. Supp. 3d at 84.

A.      *This Court Should Not Grant Leave To Conduct Jurisdictional Discovery Concerning Plaintiffs' Agency Theory of Jurisdiction Because Their Theory Does Not Assert a "Colorable Claim" of Jurisdiction.*

The Court should not permit Plaintiffs to serve jurisdictional discovery on Vertol or Montgomerie to establish its agency theory of jurisdiction for Keefe and Uthmeier because Plaintiffs' agency theory fundamentally misconstrues agency law and fails to assert a "colorable claim" of personal jurisdiction necessitating further discovery.  The Massachusetts long-arm statute provides that a "court may exercise personal jurisdiction over a person, who acts directly or by an agent" to engage in any one of the jurisdiction-conferring actions enumerated in the statute.  M.G.L. ch. 223A, § 3.  Interpreting this provision, the First Circuit has held that "[f]or purposes of personal jurisdiction, the actions of an agent may be attributed to the principal." *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 55 (1st Cir. 2002).

"Under Massachusetts law, agency results from the manifestation of consent by one person to another that the other shall act on [the principal's] behalf and subject to [the principal's] control." *Driscoll v. McCann*, 505 F. Supp. 3d 32, 37 (D. Mass. 2020) (quoting *Kirkpatrick v. Bos. Mut. Life Ins. Co.*, 393 Mass. 640 (1985), itself quoting Restatement (Second) of Agency § 1 (Am. Law Inst. 1958)) (cleaned up).  An agency relationship has three essential characteristics: "(1) the power of an agent to alter the legal relationships between the principal and third parties and the principal and himself; (2) the existence of a fiduciary relationship of the agent toward the principal as to matters within the scope of the agency; and (3) the right of the principal to control the agent's conduct as to matters within the scope of the agency." *CNE Direct, Inc. v. Blackberry Corp.*, 2015 WL 4750847, at *6 (D. Mass. Aug. 10, 2015) (citing

19

*Canney v. City of Chelsea*, 925 F. Supp. 58, 64 (D. Mass. 1996), itself citing Restatement (Second) of Agency §§ 12–14.

Plaintiffs have not raised a colorable claim that they will be able to establish an agency relationship between Vertol or Montgomerie and Keefe because Plaintiffs have failed to raise any plausible suggestion that Vertol or Montgomerie could alter Keefe's legal relationships or bind him to legal agreements, that they owed a fiduciary obligation to Keefe, or that Keefe exercised control over them.   Plaintiffs argue that "Keefe worked with Montgomerie (Vertol's president) . . . to carry out the" flights to Massachusetts, as "reflected by text messages and other documents produced in response to public records requests."   Discovery Br. at 12 (citing SAC ¶¶ 67–72, 104–19, 134–35).   These messages and other communications cited throughout the Second Amended Complaint do not show that Vertol or Montgomerie were acting on behalf of Keefe or subject to his control.   Instead, Plaintiffs allege that these text messages show that Montgomerie and Keefe: (1) coordinated to accurately draft the bid proposal, *see* SAC ¶¶ 43–49, 53, 56–57; (2) communicated to arrange efforts to recruit immigrants to board the flights, *id.* ¶ 66; (3) discussed travel plans and shared travel arrangements, *id.* ¶¶ 71, 117; (4) discussed a planning session between Keefe and Ms. Huerta, *id.* ¶ 72; (5) shared a photo of the type of aircraft that Vertol would use to transport the Putative Class Members, *id.* ¶ 109; (6) discussed the number of migrants that agreed to board the flights, *id.* ¶ 114; and (7) boarded the planes together in San Antonio, Texas and deplaned in Destin, Florida, *id.* ¶¶ 134, 138.   There is no allegation or suggestion of a fiduciary relationship, or of any ability to bind Keefe to legal obligations, or that Keefe exercised control over Vertol or Montgomerie.

Plaintiffs' agency theory with respect to Uthmeier is even more far-fetched.   Cross-referencing their memorandum of law in support of their motion for leave to file the Second

Amended Complaint, Discovery Br. at 12 (citing Amend. Br. § I.A.2), Plaintiffs argue that Uthmeier exercised control over Vertol because: (1) Uthmeier called Keefe "at least four times" in the ten days before the flights and that a Vertol representative was present for at least two of those calls, Amend. Br. at 10 (citing SAC ¶ 115, Ex. 46 to Leonetti Decl., ECF No. 132); (2) Keefe "regularly contacted Uthmeier with updates and questions regarding the scheme," and that Uthmeier responded with guidance, *id.* (citing SAC ¶¶ 106, 108, 110, 113, 115); and (3) Uthmeier "facilitated Vertol's execution of the scheme by coordinating with Texas officials with whom he put Keefe in contact," *id.* at 11 (citing SAC ¶ 107).  Aside from Vertol's alleged presence on two of Uthmeier's phone calls with Keefe, there are no other allegations that Vertol was even in contact with Uthmeier, never mind acting under his control or on his behalf.  There is no suggestion that Vertol could alter Uthmeier's legal relationships, owed fiduciary obligations to Uthmeier, or that Uthmeier took any steps to exercise control over Vertol.

Plaintiffs cannot credibly argue that more information will cure this defective agency theory.  The Second Amended Complaint is already replete with information about Vertol's and Montgomerie's interactions with Keefe and Uthmeier.  *See* SAC ¶¶ 43, 44–49, 53, 55, 56, 66, 72, 109, 114 (allegations based on communications between Keefe and Montgomerie); *see id.* ¶¶ 105–08, 110, 113, 115, 119, 135 (allegations based on Uthmeier's communications with Keefe).  Plaintiffs are unable to establish a principal-agent relationship not because they lack information, but because no such relationship existed.

Seeming to acknowledge the weakness of its agency theory, Plaintiffs cite three decisions supposedly permitting "jurisdictional discovery into agency theories where the plaintiff possessed less evidence of the existence of an agency relationship" than Plaintiffs have advanced here.  *See* Discovery Br. at 5 n.4.  These cases do no such thing.  In *Mullally v. Sunrise Senior*

*Living Management, Inc.*, 224 F. Supp. 3d 117, 122–24, 126–27 (D. Mass. 2016), the court granted limited discovery to determine whether a parent company could "be deemed [the] agent or alter ego" of a subsidiary corporation where the defendant provided evidence that the parent company shared a website with the subsidiary, posted employment opportunities for the subsidiary on its website, enabled residents to pay bills due to the subsidiary through the parent's website, and shared a business code of conduct.  In *Garvey v. Keller Williams Realty, Inc.*, 2024 U.S. Dist. LEXIS 80814, at *3–4 (D. Nev. May 2, 2024), the court ordered jurisdictional discovery to resolve whether a realtor who worked as an independent contractor for an out-of-state realty company was an agent of that company where the plaintiff alleged that the company specifically instructed the realtor to make prerecorded calls in violation of the Telephone Consumer Protection Act.  And in *Sosa v. Flintco, LLC*, 2020 U.S. Dist. LEXIS 102585, at *7 (D.N.M. June 9, 2020), the court allowed jurisdictional discovery in an employment dispute to determine whether an office manager was an agent of his former company where it was undisputed both that the office manager attended a meeting with the plaintiff and a human resources representative concerning the plaintiff's job performance and that the office manager exercised supervisory control over the plaintiff.  In each of these cases the party seeking jurisdictional discovery presented far more information than have Plaintiffs here to substantiate the likelihood of jurisdiction and the need for the requested jurisdictional discovery.

> **B.    The Court Should Not Permit Jurisdictional Discovery as to Montgomerie's Forum-Based Contacts Because Plaintiffs Are Not Likely To Discover Information that Will Establish Personal Jurisdiction.**

The Court should also reject Plaintiffs' request for jurisdictional discovery on Montgomerie's forum-based activities.  Even after two years of litigation and numerous public records requests, Plaintiffs have not identified any forum-based contacts by Montgomerie himself.  While Plaintiffs move for leave to propound four categories of discovery requests—

described below—to determine "*which defendants* are responsible for which actions," Discovery Br. at 14 (emphasis in original), they do not and cannot show that Montgomerie is likely to be in possession of documents or information that would show that *he* engaged in forum-based activity.

**Discovery Concerning Red Folders**.  Plaintiffs seek discovery concerning "the creation and distribution of the red folders provided to Class Plaintiffs, including a brochure containing [allegedly] false representations regarding, *inter alia*, benefits available to them in Massachusetts."  Discovery Br. at 13.  Montgomerie did not distribute the folders to the Putative Class Members because he deplaned in Destin, Florida and the folders were distributed "just minutes before" the migrants "land[ed] in Martha's Vineyard."  SAC ¶¶ 138, 141.  And Montgomerie has stated under oath that he did not create the folders or its contents.  *See* Montgomerie Aff. ¶ 6.

**Discovery Concerning Flight-Related Transactions**.  Plaintiffs seek discovery concerning "transactions connected to the two flights, including but not limited to the ultimate responsibility for payment for use of the Martha's Vineyard airport facilities."  Discovery Br. at 13.  The Second Amended Complaint already contains a detailed allegation that non-party Ultimate Jet, LLC "was the direct payor of the Martha's Vineyard airport for fuel and other charges, including landing fees, in the amounts of $1,825.31 and $3,753.94" which "fees were the ultimate responsibility of Vertol."  SAC ¶ 128.  Plaintiffs do not explain what other information they would expect to receive through jurisdictional discovery and how that information would support their effort to establish personal jurisdiction over Montgomerie. Additionally, Montgomerie has stated under oath that he did not arrange for any transaction with the Martha's Vineyard airport or pay the fees out of his own money.  *See* Montgomerie Aff. ¶ 7.

***Discovery Related to Hiring Transport Vans***.  Plaintiffs seek discovery concerning the "hiring of the vans that transported Class Plaintiffs after their arrival at Martha's Vineyard." Discovery Br. at 13.  Relying entirely on information and belief, Plaintiffs allege only that "Defendants DeSantis, Keefe, Vertol and/or their agents paid for this van service," excluding all mention of Montgomerie.  SAC ¶ 156.  Montgomerie has also stated under oath that he was not involved in those transactions.  *See* Montgomerie Aff. ¶ 8.

***Discovery Related to Video Crew***.  Lastly, Plaintiffs seek discovery concerning the "hiring of the video crew that filmed Class Plaintiffs upon their arrival to Martha's Vineyard." Discovery Br. at 13.  Plaintiffs allege, entirely on information and belief, only that "Defendants DeSantis, Uthmeier, Keefe and/or their agents paid a videographer to video record Class Plaintiffs' deplaning and promptly sent that video to Fox News."  SAC ¶ 155.  There is no suggestion in the Second Amended Complaint or in Plaintiffs' prior briefing that Plaintiffs expect to find evidence showing that Montgomerie participated in any transaction to hire the video crew to film the migrants' arrival in Massachusetts.  Furthermore, Montgomerie has stated under oath that he did not pay for or otherwise arrange for the video crews to film the Putative Class Members upon their arrival in Martha's Vineyard.  *See* Montgomerie Aff. ¶ 9.

As these analyses demonstrate, Plaintiffs have failed to "present facts to the court which show why jurisdiction would be found if discovery were permitted."  *Beck v. Bronstein*, 2023 WL 5833116, at *14 (D. Mass. Sept. 8, 2023) (denying leave to conduct jurisdictional discovery) (citations and quotations omitted).  Because Plaintiffs' "claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery."  *Venmill Indus., Inc. v. ELM, Inc.*, 100 F. Supp. 3d 59, 74 (D. Mass. 2015) (quoting *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562

(9th Cir. 1995)).  This Court should deny Plaintiffs' motion for jurisdictional discovery from Vertol and Montgomerie for just such reasons.

## <u>CONCLUSION</u>

For the reasons above and in their prior briefing incorporated by reference, Vertol and Montgomerie respectfully request that the Court enter an order (1) again dismissing Montgomerie, pursuant to Federal Rule of Civil Procedure 12(b)(2), from this action for lack of personal jurisdiction over him; (2) again dismissing Counts II and V (this time of the Second Amended Complaint) pursuant to Federal Rule of Civil Procedure 12(b)(6) for the same reasons such counts were previously dismissed from the First Amended Complaint; and (3) denying, at a minimum as to Montgomerie and Vertol, Plaintiffs' motion for jurisdictional discovery.

Respectfully submitted,


*/s/ Brian T. Kelly*
Brian T. Kelly (BBO No. 549566)
Ross MacPherson (BBO No. 705598)
NIXON PEABODY LLP
Exchange Place
53 State Street
Boston, Massachusetts 02109-2835
Tel: (617) 345-1000
Fax: (855) 714-9513
bkelly@nixonpeabody.com
rmacpherson@nixonpeabody.com

Christopher M. Mason (admitted *pro hac vice*)
NIXON PEABODY LLP
Tower 46
55 West 46th Street
New York, New York 10036
Tel: (212) 940-3000
cmason@nixonpeaboosdy.com

*Counsel for Defendants James Montgomerie and
Vertol Systems Company, Inc.*

Dated: September 9, 2024

## LOCAL RULE 7.1(A)(2) CERTIFICATION

I hereby certify that counsel for Defendants James Montgomerie and Vertol Systems Company, Inc., conferred with counsel for Plaintiffs in an attempt to resolve or narrow the issues raised by this motion.

*/s/ Ross MacPherson*
Ross MacPherson

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically on September 9, 2024, and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing.

*/s/ Ross MacPherson*
Ross MacPherson