**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ALIANZA AMERICAS, YANET DOE, PABLO DOE, and JESUS DOE, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>  v.<br><br>RONALD D. DESANTIS, Governor of Florida, in his personal capacity; LAWRENCE A. KEEFE, Florida Public Safety Czar, in his personal capacity; JAMES UTHMEIER, Chief of Staff to Florida Governor, in his personal capacity; JAMES MONTGOMERIE; PERLA HUERTA; and VERTOL SYSTEMS COMPANY, INC.,<br><br>       Defendants. | Civil Action No.<br>22-11550-ADB<br><br>**LEAVE TO FILE GRANTED 8/5/2024, ECF 139** |

**CONSOLIDATED REPLY IN SUPPORT OF MOTION FOR LEAVE
TO TAKE JURISDICTIONAL DISCOVERY**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................................ ii

   I. Plaintiffs Have Been Diligent and Their Motion Is Timely ...................................................2

   II. Plaintiffs Seek Targeted Discovery that Would Support Personal Jurisdiction.....................5

   III. Speculative, Potential Claims of Privilege Are No Bar to Discovery ................................10

   IV. The Court Should Exercise Its Discretion to Grant Jurisdictional Discovery ...................12

   CONCLUSION....................................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alex & Ani, LLC. v. Elite Level Consulting LLC*,
    31 F. Supp. 3d 365 (D.R.I. 2014) ..........................................................................9

*Beck v. Bronstein*,
    No. 23-cv-10416, 2023 U.S. Dist. LEXIS 159099 (D. Mass. Sept. 8, 2023) ..........................6

*City of Moundridge v. Exxon Mobil Corp.*,
    244 F.R.D. 10 (D.D.C. 2007)..........................................................................4

*Cockrum v. Donald J. Trump for President, Inc.*,
    319 F. Supp. 3d 158 (D.D.C. 2018) ..........................................................................4, 5

*Comm. on Oversight & Gov't Reform v. Sessions*,
    344 F. Supp. 3d 1 (D.D.C. 2018)..........................................................................11

*Dearing v. Magellan Health Inc.*,
    No. CV-20-00747, 2020 U.S. Dist. LEXIS 226338 (D. Ariz. Sept. 28, 2020)..........................4

*Doane v. Benefytt Techs., Inc.*,
    No. 22-10510, 2023 U.S. Dist. LEXIS 40478 (D. Mass. Mar. 10, 2023)..........................7

*Doe v. JetBlue Airways Corp.*,
    No. 20-cv-11623, 2021 U.S. Dist. LEXIS 145125 (D. Mass. Aug. 3, 2021) ..........................7

*Ericson v. Conagra Foods, Inc.*,
    No. 20-cv-11022, 2020 U.S. Dist. LEXIS 219813 (D. Mass. Nov. 24, 2020) ..........................6

*FDIC v. Dosland*,
    No. C13-4046, 2015 U.S. Dist. LEXIS 16349 (N.D. Iowa Feb. 11, 2015) ..........................2

*Fla. House of Representatives v. Romo*,
    113 So. 3d 117 (Fla. Dist. Ct. App. 2013), ..........................................................................8

*In re Grand Jury Subpoena*,
    662 F.3d 65 (1st Cir. 2011)..........................................................................10

*Harness v. AngioDynamics, Inc.*,
    No. 21-cv-10233, 2021 U.S. Dist. LEXIS 185267 (D. Mass. Sept. 28, 2021) ..........................6

*InVision Architecture, Ltd. v. Anderzhon*,
    No. 11-CV-2001, 2011 U.S. Dist. LEXIS 84415 (N.D. Iowa Aug. 1, 2011) ..........................4

*Lane v. First Nat'l Bank of Bos.*,
    687 F. Supp. 11 (D. Mass. 1988) ..........................................................................11

*League of Women Voters of Fla. v. Fla. House of Representatives*,
132 So. 3d 135 (Fla. 2013)................................................................8

*Me. Med. Ctr. v. United States*,
675 F.3d 110 (1st Cir. 2012)............................................................7

*Mullaly v. Sunrise Senior Living Mgmt., Inc.*,
224 F. Supp. 3d 117 (D. Mass. 2016).......................................5, 6, 13

*Perkins v. Lincoln*,
No. 4:23-CV-3114, 2024 U.S. Dist. LEXIS 57430 (D. Neb. Mar. 29, 2024)........................12

*Platten v. HG Berm. Exempted Ltd.*,
437 F.3d 118 (1st Cir. 2006)............................................................4

*Post v. Mark Edward Partners LLC*,
No. 22-cv-10148-RWZ, 2022 U.S. Dist. LEXIS 181854 (D. Mass. Oct. 3, 2022)................................................................10

*Redondo-Borges v. United States HUD*,
421 F.3d 1 (1st Cir. 2005)..............................................................11

*State of Arizona v. Mayorkas*,
600 F. Supp. 3d 994 (D. Ariz. 2022).................................................4

*Stokinger v. Armslist, LLC*,
No. 23-cv-428, 2024 U.S. Dist. LEXIS 123609 (D.N.H. July 15, 2024)................13

*Szafarowicz v. Gotterup*,
68 F. Supp. 2d 38 (D. Mass. 1999)..................................................13

*Trump v. Thompson*,
20 F.4th 10 (D.C. Cir. 2021)...........................................................11

*United States v. Navarro*,
No. 22-cr-00200, 2024 U.S. Dist. LEXIS 87178 (D.D.C. Feb. 8, 2024)................................11

*United States v. Swiss Am. Bank, Ltd.*,
274 F.3d 610 (1st Cir. 2001) ............................................................6

*Walker v. United States*,
No. 20-CV-01392, 2021 U.S. Dist. LEXIS 50779 (N.D. Ohio Mar. 18, 2021).......................2

*Warren v. DeSantis*,
No. 22-cv-302 (N.D. Fla.)................................................................9

*Weimar v. Fla Dep't of Corr.*,
    No. 5:19-cv-548-Oc-CEMPRL, 2020 U.S. Dist. LEXIS 51619 (M.D. Fla.
    Mar. 25, 2020).....................................................................................................................8

**Rules**

Fed R. Civ. P. 59(e) ......................................................................................................4

Defendants engineered a scheme, cloaked in secrecy and working through agents, to deceive vulnerable immigrants to fly from Texas to Martha's Vineyard in September 2022. Plaintiffs sued six days later and amended two months later. Since then, Defendants have filed a total of 14 substantive motions to avoid accountability. By its decision and order in March 2024, the Court identified gaps in the Amended Complaint that needed to be filled to establish personal jurisdiction over each of the Defendants. Although Plaintiffs believed, and still believe, that they had adequately pled personal jurisdiction, with the filing of the Second Amended Complaint ("SAC") in July 2024, Plaintiffs have now filled those gaps and there is a further basis by which the Court can and should exercise personal jurisdiction over each of the Defendants. The SAC is replete with details—even without the benefit of discovery—that rip away the veil of secrecy and shows, almost in real-time, exactly what was happening and when. However, in an abundance of caution, Plaintiffs filed the instant motion for leave to take jurisdictional discovery (the "Motion") to get to the merits of this case once and for all. The solution is not, as Defendants suggest, to continue litigating these threshold issues ad infinitum; instead, Plaintiffs should be allowed a modicum of jurisdictional discovery to establish personal jurisdiction, should they need it, and have their day in court.

Defendants' oppositions to the Motion regurgitate their motions to dismiss, arguing in the first instance that the SAC fails to establish a colorable claim of personal jurisdiction. ECF 148 at 3-8; ECF 153 at 2-5; ECF 155 at 18-25. That argument fails, for all of the reasons set forth in Plaintiffs' Consolidated Opposition to Defendants' Motions to Dismiss, filed herewith, as well as in Plaintiffs' Motion for Leave to File Second Amended Complaint. *See* ECF 128 at 3-22. The Court has personal jurisdiction over each of the Defendants. To the extent the Court finds that more evidence is required to establish jurisdiction, Plaintiffs seek targeted jurisdictional discovery

into (i) the agency relationships between Defendants, and (ii) which of the Defendants took certain specific actions alleged in the SAC, which actions would support personal jurisdiction.

Plaintiffs submit this reply to correct the record on four specific points that Defendants misstate: (1) Plaintiffs have diligently prosecuted their case and this Motion is timely; (2) the jurisdictional discovery sought is reasonably targeted to obtain evidence that would establish personal jurisdiction over each of the Defendants; (3) the existence of a purported privilege, executive or otherwise, is not a bar to jurisdictional discovery; and (4) Defendants' speculation about inefficiencies are overblown and the Court should exercise its discretion to grant the Motion. Plaintiffs have more than satisfied the standard to obtain targeted jurisdictional discovery, and the Motion should be granted so that Plaintiffs can hold accountable the perpetrators of a scheme to use them as political pawns for Defendants' personal and political benefit.

## I.   <u>Plaintiffs Have Been Diligent and Their Motion Is Timely</u>

Plaintiffs have been diligent in seeking and obtaining, among other evidence, facts to support personal jurisdiction over Defendants. As the State Defendants recognize, the events that form the crux of this lawsuit have been the subject of intense public interest; there have been numerous public records requests from journalists and other interested members of the public, responses to which are all available online. The State Defendants concede, as they must, that the SAC "incorporated much of the public material" disclosed pursuant to public records requests. ECF 148 at 3; *see also id.* at 7-9. This case is thus nothing like the cases denying jurisdictional discovery cited by Defendants. *See Walker v. United States*, No. 20-CV-01392, 2021 U.S. Dist. LEXIS 50779, at *20-21 (N.D. Ohio Mar. 18, 2021) (denying request for jurisdictional discovery where plaintiff failed to amend the complaint based on new facts already available to plaintiff); *FDIC v. Dosland*, No. C13-4046, 2015 U.S. Dist. LEXIS 16349, at *2-5 (N.D. Iowa Feb. 11, 2015) (denying motion for *additional* jurisdictional discovery where jurisdictional discovery had already

been requested and taken, including two depositions). That Plaintiffs relied on the many other journalists and members of the public who sought and obtained disclosure of public records does not suggest they took a "passive stance," as Defendants contend. ECF 148 at 9. To the contrary, the SAC relies on an extensive amount of text messages, emails, social media posts, and other documents to paint a real-time picture of what each Defendant was doing in the weeks and days leading up to and immediately following the flights, and reflects an inordinate amount of effort by Plaintiffs to marshal those facts. Plaintiffs have had the requisite facts establishing Defendants' contacts with Massachusetts since the start, *see* ECF 112 at 19, and now seek targeted discovery on agency relationships and attribution of certain in-forum actions taken in furtherance of Defendants' scheme.

Plaintiffs' Motion is also timely, notwithstanding Defendants protestations and legerdemain. As noted above, Plaintiffs filed this case a mere six days after the events in question, although the statute of limitations had long to run. Within two months, after having secured additional pro bono counsel, they filed their First Amended Complaint on November 29, 2022, and served all Defendants within twenty days. What then ensued was a long period for briefing on ***Defendants'*** various motions to dismiss, with Defendants having sought and obtained numerous extensions of the time periods for filing their moving papers and replies.[1] Those motions were decided by the Court on March 29, 2024.

Following the Court's dismissal without prejudice of Defendants (except for Vertol), on July 4, 2024, Plaintiffs sought leave to file the Second Amended Complaint, three months later. In the intervening period after the decision, Plaintiffs were working to fill in the gaps identified by

---

[1] In fairness, Plaintiffs also sought and obtained extensions of time for their briefing. Plaintiffs point out Defendants' requests because what Plaintiffs believed was a courtesy extended to opposing counsel now appears to have been opportunistically abused by Defendants.

the Court in its Order. On the same day Plaintiffs filed the instant Motion for jurisdictional discovery. Defendants then consented to the filing of the SAC, ECF 134, and after the Court granted leave, Plaintiffs filed the SAC on July 19, 2024. After obtaining yet another extension of their time to respond, Defendants moved to dismiss the SAC on September 9, 2024, including on the basis that the Court still lacked personal jurisdiction over them. On the same day, Defendants filed oppositions to the instant Motion.

Contrary to Defendants' arguments, the Court has not yet ruled on the sufficiency of the SAC to establish personal jurisdiction over each of the Defendants, and Defendants' case citations are thus inapposite. *See Platten v. HG Berm. Exempted Ltd.*, 437 F.3d 118, 139-140 (1st Cir. 2006) (denying motion for jurisdictional discovery filed in conjunction with motion for reconsideration of adverse judgment). *State of Arizona v. Mayorkas*, 600 F. Supp. 3d 994, 1015 (D. Ariz. 2022) (denying motion for jurisdictional discovery filed after motion to dismiss was fully briefed and court held hearing on and decided preliminary injunction motion); *Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 187-88 (D.D.C. 2018) (jurisdictional discovery denied where plaintiffs, after amending the complaint, failed to raise the issue in opposition or surreply to defendants' motion to dismiss the amended complaint and made the request for the first time after the court's ruling); *Dearing v. Magellan Health Inc.*, No. CV-20-00747, 2020 U.S. Dist. LEXIS 226338, at *4-5 (D. Ariz. Sept. 28, 2020) (denying request for jurisdictional discovery made in context of motion for reconsideration of dismissal with prejudice of plaintiffs' claim); *InVision Architecture, Ltd. v. Anderzhon*, No. 11-CV-2001, 2011 U.S. Dist. LEXIS 84415, at *2, 14-16 (N.D. Iowa Aug. 1, 2011) (denying request for jurisdictional discovery first made in context of motion for reconsideration of dismissal with prejudice); *City of Moundridge v. Exxon Mobil Corp.*, 244 F.R.D. 10, 11, (D.D.C. 2007) (denying request for jurisdictional discovery made in alternative to motion to amend or alter a judgment pursuant to Rule 59(e)).

Here, by contrast, Plaintiffs' filed the Motion concurrently with their motion for leave to file the SAC. It was Defendants that agreed to stipulate to the filing of the SAC and the parties agreed to a briefing schedule on Defendants' anticipated motions to dismiss and opposition to the instant Motion. The Motion is thus timely. *E.g.*, *Mullaly v. Sunrise Senior Living Mgmt., Inc.*, 224 F. Supp. 3d 117, 121 (D. Mass. 2016) (granting jurisdictional discovery where request was made in the alternative to argument that then-current evidence was sufficient to defeat motion to dismiss); *cf. Cockrum*, 319 F. Supp. 3d at 187 ("[T]he appropriate time to request jurisdictional discovery is in opposition to the defendant's motion [to dismiss]….").

## II.    Plaintiffs Seek Targeted Discovery that Would Support Personal Jurisdiction

The SAC is packed full of allegations that are alone sufficient to establish personal jurisdiction. It showcases how DeSantis acted through his agents and sub-agents to raise his political profile on immigration using Plaintiffs—vulnerable immigrants themselves—as pawns in that scheme. If, however, the Court finds that more is needed to establish personal jurisdiction over each of the Defendants, Plaintiffs seek discovery into ten specific categories to further support the existence of personal jurisdiction:

- the agency relationship between DeSantis and Uthmeier;

- the agency relationship between DeSantis and Keefe;

- the agency relationship between DeSantis and Fenske;

- the agency relationship between Uthmeier and Vertol;

- the agency relationship between Keefe and Vertol, Montgomerie, and Huerta;

- the agency relationship between Uthmeier and Fenske;

- the creation and distribution of the false and deceptive red folders provided to Class Plaintiffs mid-flight;

- transactions connected to the two flights, such as who was responsible for payment to use the Martha's Vineyard airport facilities;

- hiring of the vans that transported Class Plaintiffs to the community center on Martha's Vineyard where they were abandoned; and

- hiring of the video crew that filmed Class Plaintiffs' arrival in Martha's Vineyard so that footage of the scheme could be disseminated to the national media.

No more specificity is required at this stage. *See, e.g.*, *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 626 (1st Cir. 2001) (categories such as "the origins and nature of SAB's relations and contacts with Fitzgerald" and "the origin and nature of any other business relations between SAB and American account holders or business partners" would qualify as "detailed description" for its requested jurisdictional discovery) (cleaned up); *Mullaly v. Sunrise Senior Living Mgmt., Inc.*, 224 F. Supp. 3d 117, 124-25 (granting jurisdictional discovery into "the contacts, if any, of SSL, LLC to Massachusetts" and "whether SSL, LLC exercises sufficient control over Sunrise Management so that Sunrise Management can be deemed its agent or alter ego").[2]

---

[2] Defendants cite to cases that are nothing like this one. *See Swiss Am. Bank,* 274 F.3d at 626 (until the appeal, plaintiff failed to identify the "additional pertinent avenues of inquiry" it hoped to pursue); *Ericson v. Conagra Foods, Inc.,* No. 20-cv-11022, 2020 U.S. Dist. LEXIS 219813, at *22 (D. Mass. Nov. 24, 2020) (discovery not warranted because plaintiff did not contest the lack of relevant contacts, plaintiff broadly asked for information that would "show[] the scope and extent of [defendants] contacts" with Massachusetts, and defendants' sworn statements demonstrated that jurisdictional discovery would be pointless); *Beck v. Bronstein,* No. 23-cv-10416, 2023 U.S. Dist. LEXIS 159099, at *39 (D. Mass. Sept. 8, 2023) (discovery sought was "totally irrelevant to the current dispute."); *Harness v. AngioDynamics, Inc.*, No. 21-cv-10233, 2021 U.S. Dist. LEXIS 185267, at *17 n.6 (D. Mass. Sept. 28, 2021) (denying request for jurisdictional discovery where plaintiff's "jurisdictional discovery argument consists of a single, conclusory sentence").

Plaintiffs' opening brief established that the additional discovery will establish personal jurisdiction over each of the Defendants by (1) "flesh[ing] out the record" regarding agency relationships by which certain Defendants' contacts with Massachusetts may be attributed to others, ECF 131 at 4-5, and (2) identifying which defendants are responsible for specific actions taken in Massachusetts that Plaintiffs know to have happened, ECF 131 at 13-14. In its prior motion to dismiss ruling, the Court explained that certain actions in Massachusetts—including drafting and disseminating the information in the red folders provided to Plaintiffs while on the plane, hiring and arranging two planes to fly to Martha's Vineyard, hiring video crews to film Plaintiffs at the Martha's Vineyard Airport, hiring vans to transport Plaintiffs from the Martha's Vinyard Airport, seeking and benefitting from media coverage of the events in Massachusetts— "may be sufficient to confer jurisdiction" under the long-arm statute if Plaintiffs were able to establish which of Defendants (and/or whose agents) performed such actions. *See* ECF 112 at 19. This case is thus nothing like Defendants' cases, where a plaintiff sought discovery that would have established jurisdiction over the IRS "only if the IRS actually came across [plaintiff's tax] return and outer envelope," *Me. Med. Ctr. v. United States*, 675 F.3d 110, 119 (1st Cir. 2012), and where requested discovery into JetBlue's "notices to employees about the state agencies that govern discrimination complaints" and "sexual harassment policies" could not possibly establish two individual defendants' contacts with Massachusetts sufficient to exercise personal jurisdiction over them, *Doe v. JetBlue Airways Corp.*, No. 20-cv-11623, 2021 U.S. Dist. LEXIS 145125, at *22 (D. Mass. Aug. 3, 2021).[3]

---

[3] This case is also nothing like *Doane v. Benefytt Techs., Inc.*, No. 22-10510, 2023 U.S. Dist. LEXIS 40478, at *35 (D. Mass. Mar. 10, 2023), where the court denied a request for jurisdictional discovery because the plaintiff had alleged "no specific facts of any kind in support of … an agency relationship" attributing telemarketing callers' forum contacts to the defendant. Here, by contrast, Plaintiffs have alleged a multitude of facts tying each Defendant to Massachusetts and establishing an agency relationship between DeSantis and Uthemeier, DeSantis and Keefe, DeSantis and

Contrary to Defendants' suggestion, public records requests are no substitute for party discovery in litigation. *See Fla. House of Representatives v. Romo*, 113 So. 3d 117, 127-28 (Fla. Dist. Ct. App. 2013) ("[T]he fact that a document is exempt from inspection and copying under the public records law does not mean that the document is not discoverable by a party-opponent in litigation....."), *reversed on other grounds sub nom.*, *League of Women Voters of Fla. v. Fla. House of Representatives*, 132 So. 3d 135 (Fla. 2013); *see also Weimar v. Fla Dep't of Corr.*, No. 5:19-cv-548-Oc-CEMPRL, 2020 U.S. Dist. LEXIS 51619, at *12-13 (M.D. Fla. Mar. 25, 2020) (granting motion to compel documents that may have been exempt from public records disclosure because "Plaintiff does not seek to obtain this information under Florida's public records laws, rather, she seeks it in the regular course of discovery as a party in this case").

And even where documents might not exist, jurisdictional discovery in the form of interrogatories or depositions could reveal, for example, (i) who designed and created the red folders or (ii) what was communicated orally to the news media about the flights to Martha's Vineyard before, during and after the flights' arrival.

That Defendants proceeded in stealth, purposefully trying to shield their actions from public disclosure, should not be rewarded by a denial of jurisdictional discovery. Take, for example, the red folders handed out to Plaintiffs mid-flight. Someone must have asked for the red folders to be created, someone must have designed or directed their creation, and someone must have created and assembled them. If, out of all of the texts, emails, documents and other communications that Plaintiffs have reviewed via responses to public records requests and incorporated into the SAC, there are still some gaps in identifying who did what, Defendants should not be rewarded for it. It is hardly "conclusory," and far more than "colorable," for Plaintiffs

---

Fenske, Uthmeier and Fenske, Uthmeier and Vertol, and Keefe and Vertol, Huerta and Montgomerie. *See* ECF 131 at 2-12; ECF 128 at 3-22.

to assert that the red folders must have been arranged for and created by someone. If the Court finds that the identity of that someone is necessary for establishing personal jurisdiction, then Plaintiffs should be allowed to uncover that person's identity through jurisdictional discovery.

The evidence from another federal case, *Warren v. DeSantis*, No. 22-cv-302 (N.D. Fla.), where a similar scheme unfolded, also demonstrates why, if the Court disagrees that personal jurisdiction is established, jurisdictional discovery is warranted here. *Warren* and this case have striking similarities: DeSantis used his agents to position DeSantis on the national stage about criminal justice and prosecutorial discretion, all in an effort to burnish his rising political star. The evidence from the *Warren* case suggests that, where DeSantis saw a potential benefit to his rising political star, he directed and was intimately involved in efforts by his agents (including Uthmeier, Keefe, and Fenske) to keep their machinations secret until a big media splash might capture national attention. And even if the agency relationships between Defendants were "complex" as Defendants argue, (Opp. at 2), that complexity was created by Defendants and should not bar discovery into those relationships. *See, e.g.*, *Alex & Ani, LLC. v. Elite Level Consulting LLC,* 31 F. Supp. 3d 365, 376 (D.R.I. 2014) (in the context of personal jurisdiction, "[a]n alleged tortfeasor cannot reasonably expect to escape liability merely because he engaged an agent to liaise with the victim on his behalf.").

Huerta and Montgomerie largely parrot the State Defendants' unpersuasive arguments in opposition to the Motion, and those arguments fail for the same reasons. Their specific arguments as to themselves also fail. Huerta argues that the jurisdictional discovery sought could not establish jurisdiction over her, since she is not alleged to have been a principal of any other agent. But Huerta misunderstands the discovery sought and misstates her own role in Defendants' scheme. The SAC alleges in detail all of the concrete actions and omissions Huerta took that were directed into Massachusetts. Opp. to MTD at Sections II.D; *see also* ECF 128 at 19-21. While the Court

did rule as to the Amended Complaint that, among other things, Huerta was not alleged to have created or provide Plaintiffs with the deceiving brochures, hired the video crews and van, sought media coverage, or taken other steps directed at or occurring in Massachusetts, ECF 153 at 4-5 (quoting ECF 112 at 12), the identity of the person or persons who took such actions is among the specific jurisdictional discovery sought in the Motion.

Montgomerie argues that jurisdictional discovery into who created or distributed the red folders, who transacted with the Martha's Vineyard Airport, who hired the vans and communicated with the news media would be futile because he has stated he did not participate in these four actions. ECF 155 at 23-25. But what is missing from Montgomerie's affidavit is telling: he does not state that he was <u>not</u> involved in the recruitment of Plaintiffs to send to Massachusetts, in making arrangements on Vertol's behalf to fly Plaintiffs into Massachusetts, or otherwise was not a "primary participant[] in corporate action" of Vertol sufficient to confer jurisdiction. *Post v. Mark Edward Partners LLC*, No. 22-cv-10148-RWZ, 2022 U.S. Dist. LEXIS 181854, at *4-5 (D. Mass. Oct. 3, 2022) (jurisdiction over corporation can subject corporation's individual, "primary participants in corporate action" to jurisdiction); *see* Opp. to MTD at Section II.E. Montgomerie's carefully tailored averments should not shield him from jurisdictional discovery.

### III.   <u>Speculative, Potential Claims of Privilege Are No Bar to Discovery</u>

That a privilege may exist as grounds to withhold certain documents or testimony in the future is not a basis to deny discovery outright. Defendants speculate that "executive or other privilege potentially throws up another roadblock to discovery depending on the nature of the communications between the Governor and his subordinates that Plaintiffs would seek." ECF 148 at 12. But the proper time to assert such privilege is if and when any particular document or portion of testimony is subject to production. That is precisely why privileges do not provide blanket protection, but rather are asserted on an item-by-item basis. *See In re Grand Jury Subpoena,* 662

F.3d 65, 71 (1st Cir. 2011); *Comm. On Oversight & Gov't Reform v. Sessions,* 344 F. Supp. 3d 1, 4-5 (D.D.C. 2018) (blanket assertion of executive privilege not sufficient).

The State Defendants seem to be most concerned with the executive privilege, which they argue acts as a wholesale shield for DeSantis's communications with his subordinates. ECF 148 at 12. Not so. DeSantis is only sued in his personal capacity, as the State Defendants recognize. ECF 148 at 12 n.4. Executive privilege, however, is only available to official acts made in furtherance of executive branch deliberations. *See Trump v. Thompson,* 20 F.4th 10, 27, 38, 48 (D.C. Cir. 2021) ("The executive privilege is just that – a privilege held by the Executive Branch, 'not for the benefit of the President as an individual' . . . the interests the privilege protects are those of the Presidency itself, not former President Trump individually"); *United States v. Navarro,* No. 22-cr-00200, 2024 U.S. Dist. LEXIS 87178, at *12 (D.D.C. Feb. 8, 2024) (executive privilege does not reach non-official acts). Executive privilege does not protect individuals who commit tortious acts in their personal capacity and outside the scope of their official duties.

Also misleading is the State Defendants' argument that the "various immunity defenses present even more problems." ECF 148 at 19. First, the State Defendants—individuals sued in their personal capacities who do not represent the State—are not entitled to sovereign immunity. *See* Opp. to MTD at Sections I, II.C.5, VII.F. "The Eleventh Amendment is no defense to a charge against an official in his personal capacity[.]" *Lane v. First Nat'l Bank of Bos.,* 687 F. Supp. 11, 15 (D. Mass. 1988). *See also Redondo-Borges v. United States HUD*, 421 F.3d 1, 7 (1st Cir. 2005) ("Nor does [Eleventh Amendment immunity] bar relief (whether in the form of money damages or an injunction) against the commonwealth defendants in their individual capacities.") *See also* Opp. to MTD at Section VII.F (public employees liable for torts, like those at issue here, committed outside the scope of employment). Second, this Court has already held that qualified immunity provides no protection here where injunctive relief is sought in addition to damages. ECF 112 at

52 ("qualified immunity is not available in cases, such as this one"). Regardless, it is premature to determine if qualified immunity applies, particularly in the context of a motion for jurisdictional discovery. *See* Opp. at MTD at Section VI.E.

## IV.     The Court Should Exercise Its Discretion to Grant Jurisdictional Discovery

Plaintiffs have more than established their entitlement to jurisdictional discovery if the Court finds that the SAC does not, on its own, establish personal jurisdiction over each of the Defendants. In their opposition, Defendants offer a parade of horribles to suggest jurisdictional discovery here would be unmanageable and inefficient. Their concerns are unfounded, and the Court should exercise its discretion to grant jurisdictional discovery.

It would not be inefficient to grant jurisdictional discovery. Defendants seem to suggest that it is Plaintiffs who seek a ruling regarding personal jurisdiction for the SAC's claims. But it is Defendants who, *after* Plaintiffs sought jurisdictional discovery, moved to dismiss the SAC for lack of personal jurisdiction. Defendants cannot now claim that, by both opposing the motion to dismiss and maintaining their request for jurisdictional discovery in the alternative, Plaintiffs have somehow created inefficiencies. What Defendants complain about is standard fare for any litigation. *See Perkins v. Lincoln,* No. 4:23-CV-3114, 2024 U.S. Dist. LEXIS 57430, at *5 (D. Neb. Mar. 29, 2024) ("Obviously, reopening discovery would cause Defendant to have to incur costs associated with any additional jurisdictional discovery and, further, will cause Defendant a delay in obtaining a ruling on its jurisdictional motion. . . . However, the prejudice Defendant will face is substantially the same type of prejudice any other party defending a lawsuit faces when forced to participate in discovery.") Judicial efficiency was served by Plaintiffs' earnest efforts to bolster their allegations, resulting in the filing of the SAC. To the extent that the Court finds the SAC still lacking, Plaintiffs have established that targeted jurisdictional discovery could fill any such gaps, so that Plaintiffs can have a chance to hold Defendants accountable for their despicable

scheme to thrust Plaintiffs into the national spotlight as part of a political ploy. *See, e.g., Szafarowicz v. Gotterup,* 68 F. Supp. 2d 38, 41-42 (D. Mass. 1999) (identifying gaps in evidence establishing personal jurisdiction and allowing targeted discovery to address such gaps).

Defendants' reliance on *Stokinger v. Armslist, LLC,* No. 23-cv-428, 2024 U.S. Dist. LEXIS 123609 (D.N.H. July 15, 2024) is also misplaced. There, the plaintiff sued the defendant in Massachusetts state court in 2018. The court granted the defendant's motion to dismiss for lack of personal jurisdiction on the then-current record but allowed plaintiff jurisdictional discovery into the defendant's contacts with Massachusetts and with New Hampshire. After the close of jurisdictional discovery, the Massachusetts state court concluded that it lacked jurisdiction and dismissed the case. Two years later, the plaintiff filed substantially the same complaint against the defendant in New Hampshire federal court. *Id.* at *4-7. Concluding that the plaintiff had again failed to establish personal jurisdiction, the *Stokinger* court also denied the plaintiff's request for jurisdictional discovery for a number of reasons that are not applicable here, including that it was procedurally improper, it failed to identify specific discovery sought or why the requested discovery would establish jurisdiction, especially in light of the prior opportunity for jurisdictional discovery. *Id.* at *22-26. The court's comment, in dicta, that a plaintiff should not oppose a motion to dismiss at the same time it requests jurisdictional discovery is not applicable here, where Plaintiffs moved for jurisdictional discovery on the same day they moved for leave to file the SAC, and *before* Defendants moved to dismiss the SAC.[4] Further, Plaintiffs have been diligent in their pursuit of evidence establishing personal jurisdiction over each of the Defendants and have more than established a colorable claim for personal jurisdiction over each of the Defendants. Plaintiffs

---

[4] In any event, courts in this district grant requests for jurisdictional discovery where they are made in the alternative to an argument that then-current evidence is sufficient to defeat a motion to dismiss. *See Mullaly*, 224 F. Supp. 3d at 121.

put forth 392 allegations chronicling, in real-time, Defendants' scheme from its start in Texas to its conclusion and aftereffects in Massachusetts. And Plaintiffs have explained how Defendants accomplished this scheme, through use of agents and sub-agents, all with the goal of raising DeSantis's political capital. If this Court, however, were to determine it still needs more, Plaintiffs have made specific requests for targeted discovery and explained why such discovery would establish personal jurisdiction over each of the Defendants. It is in the interest of justice to allow such discovery and Plaintiffs' case to proceed.

## **CONCLUSION**

For all of the reasons herein and in their opening brief, Plaintiffs respectfully request that the Court grant their motion for jurisdictional discovery.

Dated: Boston, MA
      October 18, 2024

Respectfully submitted,

*/s/ Kenneth S. Leonetti*

Kenneth S. Leonetti (BBO # 629515)
Madeleine K. Rodriguez (BBO #684394)
Matthew E. Miller (BBO #655544)
Rachel L. Kerner (BBO #703341)
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000
ksl@foleyhoag.com
mrodriguez@foleyhoag.com
mmiller@foleyhoag.com
rkerner@foleyhoag.com

Benjamin H. Weissman (*pro hac vice*)
Foley Hoag LLP
1301 Avenue of the Americas
New York, NY 10019
(212) 812-0400
bweissman@foleyhoag.com

Oren Sellstrom (BBO #569045)
Iván Espinoza-Madrigal (BBO #708080)
Jacob Love (BBO #699613)
Mirian Albert (BBO #710093)
Lawyers for Civil Rights
61 Batterymarch Street, 5th Floor
Boston, MA 02110
(617) 482-1145
osellstrom@lawyersforcivilrights.org

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that, on October 18, 2024, a copy of the foregoing document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those participants indicated as non-registered participants.


Dated: Boston, MA
October 18, 2024

*/s/ Rachel L. Kerner*