# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

ALIANZA AMERICAS, YANET DOE, PABLO DOE, and JESUS DOE, on behalf of themselves and all others similarly situated,

     *Plaintiffs*,

    v.

RONALD D. DESANTIS, Governor of Florida, in his personal capacity; LAWRENCE A. KEEFE, Florida Public Safety Czar, in his personal capacity; JAMES UTHMEIER, Chief of Staff to Florida Governor, in his personal capacity; JAMES MONTGOMERIE; PERLA HUERTA; and VERTOL SYSTEMS COMPANY, INC.,

     *Defendants*.

Civil Action No. 1:22-cv-11550-ADB

**Leave to file granted on November 5, 2024**

## STATE DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

Table of Authorities ........................................................................................................... iv

Introduction ....................................................................................................................... 1

Argument ............................................................................................................................ 3

**I. This Court lacks personal jurisdiction over State Defendants. ................................... 3**

    A. The Massachusetts long-arm statute does not confer jurisdiction over State
        Defendants. ............................................................................................................ 3

        1. State Defendants are not "persons" under the Massachusetts long-arm statute
            for purposes of Plaintiffs' claims for prospective relief. ................................ 3

        2. Plaintiffs' new agency theory of jurisdiction fails because Vertol was not State
            Defendants' agent. ........................................................................................... 3

        3. The long-arm statute does not confer jurisdiction over Keefe for his direct
            acts. .................................................................................................................. 7

    B. The exercise of personal jurisdiction would violate due process. ....................... 8

    C. Sovereign immunity prohibits one State from haling into its courts a sister State
        and its officials for their official acts. ................................................................ 10

**II. This venue is improper. ................................................................................................ 11**

**III. This Court should dismiss all claims for equitable relief. ........................................ 12**

    A. Plaintiffs' failure to plead any official-capacity claims means all federal claims for
        prospective relief must be dismissed. ................................................................ 12

    B. Alianza lacks Article III and prudential standing to obtain equitable relief. ................. 14

**IV. Plaintiffs fail to state a federal claim. ...................................................................... 17**

    A. Plaintiffs fail to state any fraud-based claims (Counts 1, 5 & 6). ................................. 17

        1. There are no plausible allegations of fraud by State Defendants. ................................. 17

        2. Qualified immunity bars Plaintiffs' claims under the Due Process Clause and
            Fourth Amendment. ...................................................................................... 17

            a. The Florida officials are entitled to qualified immunity from Plaintiffs'
                substantive-due-process claim (Count 1). ............................................. 18

            b. The Florida officials are entitled to qualified immunity from Plaintiffs'
                Fourth Amendment claim (Count 6) ..................................................... 18

    B. Plaintiffs fail to state any discrimination-based claims (Counts 2 & 7) ........................ 19

        1. There are no plausible allegations of discriminatory conduct by State
            Defendants. .................................................................................................... 19

        2. Qualified immunity bars Plaintiffs' claims under §1985(3). ................................ 20

    C. Plaintiffs fail to state a claim for preemption (Count 4) .......................................... 22

**V. Plaintiffs' state-law claims should be dismissed. ...................................................... 23**

A. This Court lacks jurisdiction over all state-law claims. ........................................23

B. This Court's prior decision does not foreclose State Defendants' arguments. .............24

C. Plaintiffs' claims are barred by absolute immunity and for failing to exhaust. ............24

D. Plaintiffs fail to plausibly allege a negligent infliction of emotional distress claim against all State Defendants (Count 11). ............................................................25

E. Plaintiffs fail to plausibly allege intentional torts against the Florida officers ...............25

   1. Plaintiffs have not adequately alleged that the officials acted outside the scope of their employment or with ill will or wantonly and willfully. ...............................25

   2. Plaintiffs failed to plausibly allege elements of each state-law tort claim................26

      a. Plaintiffs failed to plausibly allege intentional infliction of emotional distress (Count 10). ................................................................................26

      b. Plaintiffs failed to plausibly allege false imprisonment (Count 8). ....................27

      c. Plaintiffs failed to plausibly allege a civil conspiracy (Count 12)......................28

      d. Plaintiffs failed to plausibly allege aiding and abetting (Count 13). .................29

Conclusion ...........................................................................................................30

# TABLE OF AUTHORITIES

## Cases

*Adden v. Middlebrooks,*
688 F.2d 1147 (7th Cir. 1982) ......................................................................... 10, 23

*Albright v. Oliver,*
975 F.2d 343 (7th Cir. 1992) ................................................................................. 28

*Alexander v. NAACP,*
602 U.S. 1 (2024) ................................................................................................... 19

*Alianza Americas v. DeSantis,*
2024 WL 1381926 (D. Mass.) ........................................................................ passim

*Amadasu v. The Christ Hosp.,*
514 F.3d 504 (6th Cir. 2008) ................................................................................ 21

*Arizona v. Hicks,*
480 U.S. 321 (1987) ............................................................................................... 19

*Armstrong v. Exceptional Child Ctr.,*
575 U.S. 320 (2015) ............................................................................................... 22

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ......................................................................................... 17, 20

*Az. All. for Ret. Americans v. Mayes,*
117 F.4th 1165 (9th Cir. 2024) ............................................................................. 15

*Baskin-Robbins Franchising v. Alpenrose Dairy,*
825 F.3d 28 (1st Cir. 2016) ..................................................................................... 7

*Bray v. Alexandria Women's Health Clinic,*
506 U.S. 263 (1993) ............................................................................................... 19

*Brown v. Davenport,*
596 U.S. 118 (2022) ............................................................................................... 24

*Brown v. Montoya,*
662 F.3d 1152 (10th Cir. 2011) ............................................................................. 12

*Butler v. Gualtieri,*
41 F.4th 1329 (11th Cir. 2022) ............................................................................. 12

*C.W. Downer & Co. v. Bioriginal Food & Sci.,*
771 F.3d 59 (1st Cir. 2014) ..................................................................................... 9

*Cady v. Marcella,*
729 N.E.2d 1125 (Mass. App. Ct. 2000) .............................................................. 27

*Canney v. City of Chelsea,*
925 F. Supp. 58 (D. Mass. 1996) ......................................................................... 4, 7

*Centro de la Communidad Hispana de Locust Valley v. Oyster Bay,*
868 F.3d 104 (2d Cir. 2017) .................................................................................. 15

*City of Stuart v. Monds,*
 10 So. 3d 1134 (Fla. Dist. Ct. App. 2009) .............................................................. 24

*Commonwealth Aluminum Corp. v. Baldwin Corp.,*
 980 F. Supp. 598 (D. Mass 1997) ............................................................................ 3

*Cossart v. United Excel Corp.,*
 804 F.3d 13 (1st Cir. 2015) ...................................................................................... 7

*Cummings v. McIntire,*
 271 F.3d 341 (1st Cir. 2001) .................................................................................. 18

*Davis v. Dawson,*
 545 F. Supp. 3d 682 (S.D. Iowa 2021) ................................................................... 19

*Daynard v. Ness,*
 290 F.3d 42 (1st Cir. 2002) ...................................................................................... 4

*DHS v. Regents of the Univ. of California,*
 591 U.S. 1 (2020) .................................................................................................... 20

*Doe v. Samford Univ.,*
 29 F.4th 675 (11th Cir. 2022) ................................................................................ 20

*Driscoll v. McCann,*
 505 F. Supp. 3d 32 (D. Mass. 2020) ........................................................................ 4

*Eves v. LePage,*
 927 F.3d 575 (1st Cir. 2019) (en banc) (*LePage II*) ....................................... 1, 17, 18

*Ex parte Young,*
 209 U.S. 123 (1908) ................................................................................................ 22

*FDA v. Alliance for Hippocratic Med.,*
 602 U.S. 367 (2024) ..................................................................................... 14, 15, 16

*Feit v. Ward,*
 886 F.2d 848 (7th Cir. 1989) ............................................................................. 1, 14

*George v. Jordan Marsh Co.,*
 268 N.E.2d 915 (Mass. 1971) ................................................................................ 27

*Green v. Mansour,*
 474 U.S. 64 (1985) .................................................................................................. 11

*Green v. McCall,*
 710 F.2d 29 (2d Cir. 1983) ....................................................................................... 4

*Hannon v. Beard,*
 524 F.3d 275 (1st Cir. 2008) .................................................................................... 3

*Harris v. Harvin,*
 2005 WL 2461876 (Mass. Super.) .......................................................................... 27

*Helstrom v. North Slope Borough,*
 797 P.2d 1192 (Alaska 1990) ................................................................................. 28

*Hoffa v. United States,*

    385 U.S. 293 (1966) ...................................................................................................... 18

*Howe v. Bank for Int'l Settlements,*
    194 F. Supp. 2d 6 (D. Mass. 2002) .................................................... 3, 11, 13, 14

*In re TelexFree Sec. Litig.,*
    357 F. Supp. 3d 122 (D. Mass. 2019) ...................................................................... 30

*In re TelexFree Sec. Litig.,*
    626 F. Supp. 3d 253 (D. Mass. 2022) ...................................................................... 29

*Integrated Facilities Constr. Corp. v. Div. of Cap. Asset Mgmt. & Maint.,*
    615 F. Supp. 3d 28 (D. Mass. 2022) ........................................................................ 23

*Jacobson v. Fla. Sec'y of State,*
    974 F.3d 1236 (11th Cir. 2020) ................................................................................ 15

*Jeneski v. Worchester,*
    476 F.3d 14 (1st Cir. 2007) ...................................................................................... 20

*Katz v. Belveron Real Est. Partners, LLC,*
    28 F.4th 300 (1st Cir. 2022) .................................................................................... 17

*Kentucky v. Graham,*
    473 U.S. 159 (1985) .................................................................................................. 11

*Kowalski v. Tesmer,*
    543 U.S. 125 (2004) .................................................................................................. 16

*Libby v. Marshall,*
    833 F.2d 402 (1st Cir. 1987) ............................................................................... 3, 14

*Lindke v. Freed,*
    601 U.S. 187 (2024) ........................................................................................ 2, 11, 13

*Loughren v. Unumprovident Corp.,*
    2008 WL 4280133 (D. Mass.) .................................................................................. 28

*Martineau v. DV-8 Productions,*
    2009 WL 5698098 (Mass. Super.) ............................................................................ 25

*Martino-Fleming v. S. Bay Mental Health Ctr.,*
    334 F. Supp. 3d 394 (D. Mass. 2018) ...................................................................... 28

*Moody v. Mich. Gaming Control Bd.,*
    847 F.3d 399 (6th Cir. 2017) ................................................................................... 16

*Najas Realty v. Seekonk Water Dist.,*
    821 F.3d 134 (1st Cir. 2016) .................................................................................... 26

*Nazareth v. Herndon Ambulance Serv.,*
    467 So. 2d 1076 (Fla. Dist. Ct. App. 1985) ............................................................ 26

*O'Brien v. Mass. Bay Transp. Auth.,*
    162 F.3d 40 (1st Cir. 1998) ...................................................................................... 13

*O'Grady v. Safety-Kleen Sys.,*
    2020 WL 1514604 (D. Mass.) .................................................................................. 10

*Palmieri v. U.S.,*
    896 F.3d 579 (D.C. Cir. 2018) ................................................................... 4

*Pan v. Gonzales,*
    489 F.3d 80 (1st Cir. 2007) .......................................................................22

*Parker v. Landry,*
    935 F.3d 9 (1st Cir. 2019) .........................................................................21

*Pennhurst v. Halderman,*
    465 U.S. 89 (1984) ............................................................................... 1, 13

*Porter v. Duval County School Board,*
    2010 WL 1252177 (M.D. Fla.) ...................................................................25

*PTI v. Philip Morris,*
    100 F. Supp. 2d 1179 (C.D. Cal. 2000) ....................................................... 9

*Ray v. McCullough Payne & Haan,*
    838 F.3d 1107 (11th Cir. 2016) .................................................................26

*Redondo-Borges v. Dep't of Hous. & Urb. Dev.,*
    421 F.3d 1 (1st Cir. 2005) .........................................................................23

*Ruhrgas AG v. Marathon Oil Co.,*
    526 U.S. 574 (1999) ..................................................................................24

*S. Bos. Betterment Tr. Corp. v. Bos. Redevelopment Auth.,*
    777 N.E.2d 812 (Mass. 2002) ...................................................................27

*Simmons v. Poe,*
    47 F.3d 1370 (4th Cir. 1995) .....................................................................20

*Sossamon v. Texas,*
    563 U.S. 277 (2011) ..................................................................................12

*Strahan v. Coxe,*
    127 F.3d 155 (1st Cir. 1997) .....................................................................23

*Stroman Realty v. Wercinski,*
    513 F.3d 476 (5th Cir. 2008) ................................................................ 9, 10

*Tatro v. Manor Care, Inc.,*
    625 N.E.2d 549 (Mass. 1994) ..................................................................... 8

*Taylor v. Am. Chemistry Council,*
    576 F.3d 16 (1st Cir. 2009) .......................................................................28

*Theos & Sons v. Mack Trucks,*
    729 N.E. 2d 1113 (Mass. 2000) .................................................................. 4

*Thomas v. Harrington,*
    909 F.3d 483, 491 (1st Cir. 2018) .............................................................29

*Torres v. Madrid,*
    592 U.S. 306 (2021) ..................................................................................19

*Trump v. United States,*

603 U.S. 593 (2024) ..................................................................................................................... 6

*Vapotherm v. Santiago*,
   38 F.4th 252 (1st Cir. 2022) ................................................................................................. 9

*Warth v. Seldin*,
   422 U.S. 490 (1975) ............................................................................................................... 16

*Wendt-West v. Dep't of Educ.*,
   2021 WL 6551384 (C.D. Cal.) ...................................................................................... 10, 11

*Whole Woman's Health v. Jackson*,
   595 U.S. 30 (2021) ........................................................................................................... 22, 23

*Ziglar v. Abbasi*,
   582 U.S. 120 (2017) ............................................................................................................... 21

**Statutes**

42 U.S.C. §1983 ........................................................................................................ 2, 11, 13, 14

Mass. Gen. Laws Ann. ch. 223A, §3 (West) ......................................................................... 4

**Regulations**

88 Fed. Reg. 11,705 ................................................................................................................ 20

Circumvention NPRM, 88 Fed. Reg. 11,715 ....................................................................... 23

# INTRODUCTION

The Court held that it lacks personal jurisdiction over State Defendants. On their first try, Plaintiffs couldn't identify any "acts in Massachusetts sufficient to confer jurisdiction." *Alianza Americas v. DeSantis*, 2024 WL 1381926, at *12 (D. Mass.). In an attempt to get around that holding, Plaintiffs contrived a new and complicated theory on which Vertol was somehow the agent of Keefe and Uthmeier *in their personal capacities*. But Plaintiffs have not plausibly alleged that Keefe and Uthmeier controlled Vertol or that Vertol had any legal obligation to obey them in their *personal* capacities. Because they can't impute Vertol's contacts to State Defendants, Plaintiffs' second try doesn't overcome the Court's original holding.

Beyond personal jurisdiction, Plaintiffs continue to tie their own case into knots. Their convoluted claims for equitable relief and damages are prime examples. The controlling rules are simple: If a plaintiff wants to obtain damages from state officials, that plaintiff must sue them in their "individual capacities" and surmount "qualified immunity." *Eves v. LePage*, 927 F.3d 575, 582-83 (1st Cir. 2019) (en banc) (*LePage II*). If the plaintiff also wants injunctive relief, the plaintiff must sue officials in their official capacities. *See Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989). The Plaintiffs here want damages, so they must show that the "unlawfulness of [the State Defendants'] conduct was 'clearly established.'" *LePage II*, 927 F.3d at 582-83. Plaintiffs know that's a difficult path to traverse because even they must acknowledge (at 64) "that there are no reported cases" like this one (nor have State Defendants found any). So, Plaintiffs want injunctive relief as well to avoid their burden of qualified immunity, unlock discovery, and keep their case alive. The problem with that? Suing State Defendants in their official capacities is no different from suing Florida itself, *Pennhurst v. Halderman*, 465 U.S. 89, 100-03 (1984), and there is no personal jurisdiction over Florida in a Massachusetts courtroom, MTD.14-15, 33-34.

That leaves Plaintiffs in a tough spot: (1) they want to avoid qualified immunity ending their case but (2) they also can't sue State Defendants in their official capacities. Their solution urges the Court to adopt an incoherent legal theory. Plaintiffs say they are not suing State Defendants in their official capacities *and* they're no longer challenging the Florida laws that authorize transportation of migrants. *See* Opp.6-7 & n.3 ("Nothing in Plaintiffs' requested relief would prohibit Defendants from carrying out Florida's laws."); *see also id.* at 37, 43 n.13. Yet they are still claiming to seek injunctive relief against State Defendants in their personal capacities. *Id.* at 5-6. This is a blatant manipulation of §1983 doctrines and it leads Plaintiffs to bizarre places. Most notably, it forces Plaintiffs to argue that "Plaintiffs challenge the tortious conduct of individuals, some of whom also have jobs with the State of Florida." *Id.* at 6. But §1983 applies only where a defendant acts "under color of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. §1983. "As its text makes clear, this provision protects against acts attributable to a State, not those of a private person." *Lindke v. Freed*, 601 U.S. 187, 194 (2024). That means there are two possible outcomes: (1) the Court can dismiss Plaintiffs' claim for equitable relief and apply qualified immunity; or (2) if the Court concludes equitable relief is available, it must dismiss the case for lack of jurisdiction.

But Plaintiffs' dance on equitable relief is just a symptom of the larger problem. Plaintiffs have sued Florida state officials in a Massachusetts federal court for their official state conduct that implemented Florida laws. That choice put this case on a crash course with immunity and jurisdictional doctrines that go all the way back to the Eleventh Amendment. And Plaintiffs' strained attempts to get around those roadblocks—which have forced Plaintiffs to continually change their theories and contradict themselves—only reveal this is not the right venue for this lawsuit. For the reasons outlined here and in State Defendants' opening brief, the Court should dismiss the case.

# ARGUMENT

## I. This Court lacks personal jurisdiction over State Defendants.

### A. The Massachusetts long-arm statute does not confer jurisdiction over State Defendants.

#### 1. State Defendants are not "persons" under the Massachusetts long-arm statute for purposes of Plaintiffs' claims for prospective relief.

The Court should dismiss all aspects of Plaintiffs' claims seeking equitable relief. *See* MTD.36-42; *infra* Part III. But if the Court concludes that Plaintiffs can obtain injunctive relief, then the State "is the real party in interest," *Libby v. Marshall*, 833 F.2d 402, 405 & n.3 (1st Cir. 1987), and other states are not "person[s]" under Massachusetts's long-arm statute, MTD.14-15; *Howe v. Bank for Int'l Settlements*, 194 F. Supp. 2d 6, 19 (D. Mass. 2002) ("Regardless of the manner by which a plaintiff designates the action," a claim is still really against the State if the judgment would "'interfere with the public administration'" or "'restrain the Government from acting.'"). Without addressing any of the Massachusetts cases that State Defendants cited, Plaintiffs instead rely on a case that didn't even address this statutory argument. Opp.27-28 (citing *Hannon v. Beard*, 524 F.3d 275, 281 (1st Cir. 2008)). All the Court said there was that the state official "cite[d] no case that suggest[ed] that prison officials cannot be subject to personal jurisdiction," and in that "circumstanc[e]" the court affirmed jurisdiction. *Hannon*, 524 F.3d at 281. But when courts actually *do* consider the meaning of "person" in long-arm statutes, they regularly find that foreign officials sued for official conduct are not "persons." *See* MTD.14-15 (collecting cases).

#### 2. Plaintiffs' new agency theory of jurisdiction fails because Vertol was not State Defendants' agent.

**a.** The parties agree that "[t]he essence of the principal-agent relationship is the right of power or *control* by the alleged principal over the conduct of the alleged agent." *Commonwealth Aluminum Corp. v. Baldwin Corp.*, 980 F. Supp. 598, 611 (D. Mass 1997) (emphasis added); MTD.16-17; Opp.17-19. Plaintiffs add one gloss to that inquiry that is legally incorrect. Opp.17-18. They assert that they can establish "***any*** agency relationship to impute contacts from one defendant to another." Opp.17-18. In

this context, the Court is interpreting the word "agent" in the Massachusetts long-arm statute, Mass. Gen. Laws Ann. ch. 223A, §3 (West), not agency theories under the "Due Process" analysis, *see Daynard v. Ness*, 290 F.3d 42, 56 (1st Cir. 2002). "Massachusetts [agency] law," which generally tracks the common law, therefore applies. *Driscoll v. McCann*, 505 F. Supp. 3d 32, 37 (D. Mass. 2020) (Burroughs, J.). And contrary to Plaintiffs' assertion (at 18), Massachusetts law requires an agreement between the purported principal and agent: "*mutual consent*, express or implied, that the agent is to act on behalf and for the benefit of the principal, *and subject to the principal's control.*" *Theos & Sons v. Mack Trucks*, 729 N.E. 2d 1113, 1119 (Mass. 2000) (emphasis added). Even setting that aside, however, Plaintiffs don't dispute that there is no jurisdiction "over defendants in their *individual* capacities on the basis of tortious acts of agents within [the forum state] unless the agents represented the defendants in their *individual*, as contrasted with their official, capacities." *Green v. McCall*, 710 F.2d 29, 33 (2d Cir. 1983) (emphasis added); *Palmieri v. U.S.*, 896 F.3d 579, 589-90 (D.C. Cir. 2018) (similar). MTD.20-21.

With the standard set, the parties also agree that the only way there could be personal jurisdiction over Keefe, Uthmeier, and the Governor under this theory is if Vertol acted as their agent. But the allegations suggest, at best, that Vertol consented via contract to be controlled by *FDOT*, which is no longer a defendant in this case. MTD.7-8, 17-19. For example, Plaintiffs don't deny that FDOT and not any State Defendant paid Vertol. Opp.19. Their only response is that payments for services "'are not decisive.'" Opp.19. But lack of payment is *evidence* that Vertol didn't agree to be controlled by any State Defendant as a gratuity, let alone in their personal capacities. MTD.17. Even if Vertol "could," in theory, consent to be controlled by more than one principal, Opp.20, Plaintiffs didn't show that they did so, MTD.17-19. Based on the "Act" and FDOT's contract with Vertol, this Court should conclude that "control"—at most—was "in the hands of the [State]," "not in the hands of" State Defendants as individuals. *See Canney v. City of Chelsea*, 925 F. Supp. 58, 64-65 (D. Mass. 1996). It follows that Vertol owed no duty to any State Defendant in *any* capacity, let alone their personal ones.

To be sure, Plaintiffs respond that Vertol, Montgomerie, and Huerta "acted on behalf of State Defendants in their individual capacity." Opp.21. But there are no non-conclusory allegations to support that assertion. Neither Keefe, Uthmeier, nor the Governor had the authority as *private citizens* to revoke Vertol's authority—a point that State Defendants raise but to which Plaintiffs never respond. MTD.17-18, 21. Nor do they plausibly allege that Keefe or Uthmeier were the Governor's agent in his personal capacity. *Infra* 6. So again, Vertol's contacts can't be imputed to any State Defendant.

**b.** The alleged individual acts by Keefe, Uthmeier, and the Governor further confirm that no agency relationship was developed, much less one in their individual capacities. The only non-conclusory allegations Plaintiffs rely on support a mutual-assistance relationship between Keefe and Vertol—not one of control. The alleged relationship between Vertol and the Governor and Uthmeier is even more remote. And *none* of the allegations even mildly suggest that Vertol had a legal duty to any State Defendant in their personal capacities, as private citizens.

*Keefe.* The allegations against Keefe establish, at best, that Keefe and Vertol worked together to fulfill Vertol's contract with FDOT. Those allegations say that Keefe helped Vertol through the "bidding process" and "communicat[ed]" with Vertol. Opp.13-14. That help "included language" in draft proposals "as *suggested* by Defendant Keefe." SAC ¶54 (emphasis added). Plaintiffs also say that "Keefe coordinated in San Antonio with Vertol" and expressed support for Vertol's actions. Opp.14. Allegations of "'advice and assistance'" don't support that Keefe *controlled* Vertol or that Vertol had any obligation or fiduciary duty to obey Keefe, let alone in his personal capacity. MTD.18.

*Uthmeier.* Plaintiffs' allegations about Uthmeier are even further afield. Plaintiffs point to allegations that Keefe and Uthmeier exchanged "multiple phone calls and text messages." Opp.14. Those communications allegedly involved Keefe sending "update[s]" to Uthmeier about the transport and Uthmeier expressing his "support." SAC ¶¶105, 115-16. Plaintiffs also allege that Uthmeier "shar[ed] Keefe's contact details" with the Texas government. Opp.14. These allegations don't

support that Uthmeier controlled Vertol or Keefe, or that Vertol or Keefe had an obligation or fiduciary duty to obey Uthmeier in his personal capacity. MTD.17-21.

*DeSantis.* The Governor's alleged role is the most remote. Because neither Keefe nor Uthmeier controlled Vertol, Vertol can't be the Governor's subagent even if Keefe and Uthmeier were his *official* subordinates. *Cf.* Opp.15. To fix that problem, Plaintiffs assert that Uthmeier was "also in a personal capacity his closest adviser." Opp.15-16. But the allegation says that Uthmeier was "DeSantis's closest *employee* adviser." SAC ¶254 (emphasis added). If this refers to his status as Chief of Staff, then any control was official. If it refers to his status "as campaign manager," then any control existed *after* the transport. *Id.* ¶¶20, 230. As relevant here, Plaintiffs then allege that the Governor had the "right" to "control" Uthmeier as "his Chief of Staff," *id.* ¶255, which is not control in his personal capacity. As for Keefe, all Plaintiffs have is that the Governor "appointed" Keefe to his official role, which does not establish that Keefe had any duty to him in his personal capacity. Opp.16.

 Plaintiffs all but admit that the alleged "scheme" to transport the migrants was an *official* implementation of a Florida state program. Opp.16-17. They assert that the transport "operated in the same manner" as the Governor's investigation and removal of a state attorney that he determined was refusing to enforce state law. *Id.* The supervision and removal of a subordinate official is the paradigmatic official act. *See, e.g.*, *Trump v. United States*, 603 U.S. 593, 608-09 (2024); *id.* at 651 n.1 (Barrett, J., concurring in part); *id.* at 678 (Sotomayor, J., dissenting). Both the removal episode and the transport show that nobody in this case had any legal duty to DeSantis-the-private-citizen. If anyone owed any duty, it was to the Governor *as Governor.*

**c.** Plaintiffs' defense of their ratification theory fares no better. They just repeat that defendants generally were motivated by "political" reasons. Opp.21-22 (citing SAC ¶3). But conclusory allegations about a scheme's "object" don't show that *Vertol* principally acted for the Governor's personal benefit versus to fulfill its contract with FDOT. MTD.21. Regardless, Plaintiffs failed to respond to

State Defendants' other arguments. First, State Defendants could not ratify the other defendants' conduct because they "'describe[d]'" the "'purported principal'" as the "'benefactor,'" which is the State. MTD.21. Second, "[i]t is impossible to argue that" Keefe or Uthmeier (or the Governor)—"acting as … purported principal[s] where [they] had neither the statutory nor administrative authority to do so—could have … ratified" the other defendants' "conduct." *Canney*, 925 F. Supp. at 66 n.8.

### 3. The long-arm statute does not confer jurisdiction over Keefe for his direct acts.

Plaintiffs can't establish personal jurisdiction over State Defendants for their direct acts either. MTD.22-27. Indeed, they don't even try to rely on the direct acts of Uthmeier or the Governor to establish personal jurisdiction, thus implicitly conceding the point. Opp.22-23. That leaves only Keefe. And as to him they no longer rely on allegations about the red folder, the videographer, or the van to support personal jurisdiction. MTD.24; Opp.22-23. They instead rely entirely on the direct acts of Keefe in "[n]egotiating a contract." Opp.22-23. But this Court already held that "none of th[ose] allegations" showed that Keefe transacted business in Massachusetts. MTD.23 (quoting *Alianza*, 2024 WL 1381926, at *9-10). And facilitating negotiations in another State between the ultimate parties to the contract are at best "'isolated' contacts." MTD 23-24.

The decisions Plaintiffs cite (at 22-23) are way off the mark. One involved an action by a Massachusetts-based employee against his foreign employer with a "registered … sales office" in Massachusetts for a breach of their employment contract, *Cossart v. United Excel Corp.*, 804 F.3d 13, 16-18 (1st Cir. 2015)—nothing like Keefe making "suggest[ions]" to Vertol in Florida about a contract to which he wasn't a party, SAC ¶54. The other case also involved a contract dispute in which the foreign defendant sent "payments" to and received "payments" from the Massachusetts plaintiff; sent agreement and revocation letters to the plaintiff "in Massachusetts"; and "journeyed to Massachusetts" to visit the plaintiff. *Baskin-Robbins Franchising v. Alpenrose Dairy*, 825 F.3d 28, 38 (1st Cir. 2016). Notably, Plaintiffs don't allege that Keefe stepped foot in Massachusetts or was a party to a contract there.

Plaintiffs also failed to allege facts showing causation. It isn't relevant that there is "a causal relationship between the Vertol contract being performed in Massachusetts and the harms experienced by the Plaintiffs." Opp.23. What matters is whether *Keefe's* assistance in the bidding process caused those harms. MTD.26. And, as State Defendants explained (with no response), Plaintiffs never alleged or argued that Plaintiffs "would not have been injured" "[b]ut for" Keefe's alleged communications with Vertol in Florida. MTD.26 (quoting *Tatro v. Manor Care, Inc.*, 625 N.E.2d 549, 554 (Mass. 1994)).

All that's left is Plaintiffs' farfetched theory that non-party Taryn Fenske had the requisite contacts with Massachusetts. Opp.14-15, 16 n.6. To start, Fenske acted in her *official* capacity, so her contacts can't be imputed to the Governor or Uthmeier in their *personal* capacities. Even setting aside that obstacle, State Defendants explained that Fenske *responded* to Massachusetts media and did not "initiate or solicit" those communications. MTD.24-26 (cleaned up). Those communications therefore aren't business transactions in Massachusetts. *Id.* On causation, State Defendants explained that Fenske's communications occurred *after* Plaintiffs were allegedly injured and that Plaintiffs nowhere alleged that they were even aware of Fenske's statements. MTD.26. The one allegation Plaintiffs cite for their assertion that "Plaintiffs were harmed by the publicity that they received" does not support it and does not tie the feeling of being "scared" to Fenske's statements. Opp.15; SAC ¶182. Even if it did, Plaintiffs didn't respond to State Defendants' First Amendment defense against holding them liable for injuries allegedly caused by protected speech; so no claims in the case arise from press communications allegedly made for the Governor. MTD.26 n.5.

## B. The exercise of personal jurisdiction would violate due process.

Plaintiffs argue that exercising personal jurisdiction over the Governor, Uthmeier, and Keefe satisfies due process for the same reason it satisfies the long-arm statute: the new agency theory. That

theory fails for the same reasons already outlined. *See* Opp.23 (confirming that Plaintiffs are relying on the agency theory at the due process stage too).

That leaves only the question of whether Keefe's direct acts satisfy due process for Keefe. As for those, Plaintiffs rely entirely on Keefe "negotiating a contract that resulted in Vertol sending … planes into Massachusetts." Opp.24. But this Court already found that "none of th[ose] allegations" tied Keefe to that Massachusetts contact. *Alianza*, 2024 WL 1381926, at *9-10. Even if it hadn't, Plaintiffs still didn't show relatedness. Keefe's communications with and assistance to Vertol occurred entirely in Florida and are not "[t]he actions which form the basis of the tort claim." *Vapotherm v. Santiago*, 38 F.4th 252, 261 (1st Cir. 2022). And on purposeful availment, Plaintiffs again cite cases in which the defendant was party to a contract with a Massachusetts resident. Opp.24; *see C.W. Downer & Co. v. Bioriginal Food & Sci.*, 771 F.3d 59, 62-63, 66-67 (1st Cir. 2014); *Cossart*, 804 F.3d at 16-18. If "facilitating a contractual relationship" in Florida that might later result in a tort elsewhere were enough, then this Court would have personal jurisdiction over low-level FDOT employees who did the same. Opp.24. But they didn't purposefully avail themselves of the privilege of doing business in Massachusetts just by helping in the Florida contracting process. MTD.29.

Finally, jurisdiction here would be unreasonable. ***First,*** the burden to State Defendants is substantial. All Plaintiffs say is that State Defendants are sued as individuals, Opp.25, but they continue to seek relief obtainable from them only in their official capacities. Plaintiffs have otherwise failed to respond to Florida's "substantial" interest of having "local state or federal courts" examine its laws and policies. *PTI v. Philip Morris*, 100 F. Supp. 2d 1179, 1189 n.8 (C.D. Cal. 2000); *Stroman Realty v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008).

***Second,*** Massachusetts's interest is minimal. Though Plaintiffs assert that torts were committed in Massachusetts, Opp.25, they don't respond to the argument that no Plaintiff is a citizen of Massachusetts, MTD.30. Massachusetts has little interest in "adjudicating" disputes in a "case where

Plaintiff[s]" are not Massachusetts "citizen[s]." *O'Grady v. Safety-Kleen Sys.*, 2020 WL 1514604, at *8 (D. Mass.) (Burroughs, J.). They also don't dispute that Massachusetts lacks an "interest in adjudicating disputes over other states' [laws]." *Wercinski*, 513 F.3d at 487 (internal quotation marks omitted).

**Third,** Plaintiffs can't get convenient and effective relief here. They don't deny that most class Plaintiffs reside elsewhere, which cuts against their convenience. *O'Grady*, 2020 WL 1514604, at *8; MTD.31. And Plaintiffs can't get effective relief for all their claims in this forum because this Court held that Plaintiffs can't get relief for their equal-protection claim here. *Alianza*, 2024 WL 1381926, at *15; SAC ¶¶303-10. They also continue to seek equitable relief even though that would bring the State into a foreign court and implicate sovereign immunity. *Infra* 10-11, 12-14.

**Fourth,** this Court can't effectively resolve the controversy. Plaintiffs don't dispute that most witnesses and evidence are outside Massachusetts. MTD.31-32; Opp.26-27. Moreover, Plaintiffs "ha[ve] raised [jurisdictional] bar[s]" that "would not have been issues in the case had the suit been brought in" Florida. *Adden v. Middlebrooks*, 688 F.2d 1147, 1156 (7th Cir. 1982). Any doubts about those bars counsel in favor of another forum. And though Plaintiffs continue to insist that they aren't challenging any state law, Opp.26-27, they still press a preemption claim and seek relief that require otherwise, SAC ¶¶311-20. So Plaintiffs have no response to the prospect of inconsistent verdicts and judgments on the transport program, MTD.31-32, or the fact that this Court has already held that Plaintiffs can't bring all their claims here, *Alianza*, 2024 WL 1381926, at *15.

**Fifth,** on sovereignty and federalism, MTD.32-33, Plaintiffs again rely entirely on their erroneous view that slapping an individual-capacity label on the complaint means the State is out of the case, Opp.27. Because that argument doesn't work, Plaintiffs have no real response.

### C. Sovereign immunity prohibits one State from haling into its courts a sister State and its officials for their official acts.

Plaintiffs never contest that Massachusetts's long-arm statute "cannot authorize jurisdiction over a sister-state." *Wendt-West v. Dep't of Educ.*, 2021 WL 6551384, at *3 (C.D. Cal.). MTD.33. Their

sole response is that this rule doesn't apply to an official "sued in his official capacity." Opp.28. But "[o]fficial-capacity suits … 'generally represent only another way of pleading an action against [the State].'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Sometimes plaintiffs can secure injunctions in official-capacity suits as an "exception" to the immunity bar. *Green v. Mansour*, 474 U.S. 64, 68 (1985). But they are still lawsuits against the State. In other words, because the judgment for Plaintiffs' equitable claims would "'interfere with the public administration'" of a State program and can be entered against State Defendants only "by virtue of [their] official position[s]," the State is still in the case. *See Howe*, 194 F. Supp. at 19. Accordingly, Alianza's equitable claims should be dismissed because (1) those claims are against the State itself and (2) the long-arm statute "cannot authorize jurisdiction over a sister-state without that state's consent." *Wendt-West*, 2021 WL 6551384, at *3; *see also* MTD.33-34.

The damages claims must be dismissed too. MTD.33-34. Plaintiffs also don't contest that Florida's sovereign immunity extends to its officials in their personal capacities. Their only response is that State Defendants' acts were "taken outside the scope of" their employment. Opp.28. But that assertion contradicts the complaint. SAC ¶318. And it would be wrong even if it didn't. *Infra* 25-26.

## II. This venue is improper.

Venue is improper for all claims. Plaintiffs still have not given an example of a court finding proper venue in a foreign State for a suit involving a state official's implementation of state law. For good reason: Courts "'typically'" find the opposite. MTD.34. Plaintiffs respond that they "are not challenging both the prior and future implementation of a Florida program … and they are not suing the State's top executive-branch official in that capacity." Opp.37 (cleaned up). It's hard to fathom what this dispute is about if it's not about Florida's program. And again, §1983 "protects against acts attributable to a State, not those of a private person." *Lindke*, 601 U.S. at 194. No matter how Plaintiffs try to frame their theory, this case is about Florida officials' implementation of Florida law. Venue for that sort of case is in Florida.

Venue is also improper for the state-law claims because Florida waived sovereign immunity on the condition that those claims be filed in Florida. MTD.35-36, 63. Plaintiffs contend that Florida Statute §768.28 "has no bearing on this case." Opp.38. That is both a change of position and incorrect. It is a change of position because Plaintiffs relied on that statute in the first amended complaint, revealing its application here. *See* Doc. 21 ¶314. But when Plaintiffs realized that sovereign immunity barred their claims, they shifted legal theories and then later removed the statute from their second amended complaint. The argument is also incorrect. The statute is relevant because it shows that the State of Florida has extended sovereign immunity to Florida state officials in their personal capacity when they are acting within the scope of their employment. MTD.35-36. Plaintiffs have not identified any clear and unequivocal waiver of this immunity for the personal-capacity claims in federal court, let alone federal court outside Florida. *Sossamon v. Texas*, 563 U.S. 277, 284 (2011). Nor have Plaintiffs disputed that this Court is "'*Erie*-bound by Florida's substantive law on sovereign immunity.'" MTD.35 (quoting *Butler v. Gualtieri*, 41 F.4th 1329, 1336 (11th Cir. 2022)). Sovereign immunity thus bars Plaintiffs' state-law claims against State Defendants in their personal capacity.

Plaintiffs also argue that §768.28 is not met, so that immunity does not apply. Opp.37-38. That, too, is incorrect. *Infra* 25-26. Regardless, this Court cannot adjudicate whether the statute's bad-faith exception applies because that question is reserved for Florida state courts. MTD.36 & n.7.

## III. This Court should dismiss all claims for equitable relief.

### A. Plaintiffs' failure to plead any official-capacity claims means all federal claims for prospective relief must be dismissed.

As the State Defendants explained, Plaintiffs "may sue individual-capacity defendants *only* for monetary damages and official-capacity defendants *only* for injunctive relief." *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011). And Courts in every circuit have recognized this rule. *See* MTD.37 n.8 (collecting cases). Alianza is the only Plaintiff that can obtain injunctive relief, and it responds that this rule doesn't apply because:

> Plaintiffs challenge the tortious conduct of individuals, some of whom also have jobs
> with the State of Florida. Plaintiffs seek an injunction that would enjoin Defendants
> from continuing to commit … tortious conduct.

Opp.6. In other words, Alianza now believes it is suing private parties that are completely disconnected

from the State. This theory clashes with §1983. A cause of action under §1983 arises only if a defendant

acts "under color of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C.

§1983. "As its text makes clear, this provision protects against acts attributable to a State, not those of

a private person." *Lindke*, 601 U.S. at 194. Alianza cannot ignore the statute's text and decades of

precedent applying §1983 merely because it doesn't like the consequences that come with seeking

injunctive relief against a state officer (*i.e.*, the many jurisdictional problems it causes Plaintiffs).

Alianza next claims that the equitable relief it requests would not "require [State Defendants]

to exercise their official powers in certain ways" because "[n]o Florida law or policy" permits "lies and

deceit." Opp. 6-7. To start, that assertion contradicts the theory Plaintiffs offer in their operative

Complaint. *See* SAC ¶318 ("SB 6-B permits" "paying for, coordinating, and executing the travel of

immigrants … through false representations."). But it makes no difference anyway; the Supreme Court

has expressly rejected that an action "should not be considered to be against the state" when officials

"were acting *ultra vires* their authority" under state law. *Pennhurst*, 465 U.S. at 101-02 & n.11; *O'Brien v.

Mass. Bay Transp. Auth.*, 162 F.3d 40, 44 (1st Cir. 1998) ("It is not the proper purview of a federal court

to supervise state officials' compliance with state law."). State Defendants "could not have participated

in the alleged conspiracy as individuals" because they allegedly participated "through their control"

over the transport program "by virtue of [their] official position[s]." *Howe*, 194 F. Supp. 2d at 19. So

the equitable claims "would necessarily run against the defendants in their official capacities." *Id.*

Alianza's decision to waive official-capacity claims therefore dooms its request for prospective

relief. MTD.37-38. "[A] declaration that the policy" State Defendants allegedly implemented "is un-

constitutional and an injunction barring the defendants from implementing the policy" again "can be

obtained only from the defendants in their official capacities, not as private individuals." *Feit*, 886 F.2d at 858. Though Alianza tries to distinguish cases involving affirmative injunctions or challenges to policies, Opp.6 n.3, it has no response to *why* those judgments run against States: they "would require [state defendants] to exercise their official powers in certain ways" even if "state defendants are denominated by their individual names." *Libby*, 833 F.2d at 405. The same is true here. If the Governor or Uthmeier were involved in any future transports, they'd be involved as officials implementing a state program and giving other officials orders or advice as officers of the State. MTD.37-38. An injunction against them as private civilians would *not* prevent them from acting *as officials implementing the program. Howe*, 194 F. Supp. at 18-19.

Remarkably, Alianza continues to press prospective relief against Keefe even though he is not "in office" and even though Alianza failed to allege that he would be part of any future implementation of SB 6-B as a private citizen. Opp.44. It does so with no explanation how it can assert a forward-looking §1983 claim against a private citizen who is no longer part of implementing the State's transport program. These absurdities highlight the unprecedented nature of Alianza's flawed §1983 theories. Alianza therefore cannot evade the strictures of the Eleventh Amendment. MTD.38-39. Its equitable claims should be dismissed (or, if not, the case dismissed for lack of jurisdiction, *see supra* 3, 10-11, 12-14).

### B. Alianza lacks Article III and prudential standing to obtain equitable relief.

**1.** The Supreme Court's recent decision *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367 (2024), forecloses Article III standing for Alianza. MTD 39-41. *Alliance* held that it isn't enough that "an organization diverts its resources in response to a defendant's actions." 602 U.S. at 394-95. But the only injury Alianza alleges is that it "has been forced to divert programmatic and media resources from its usual activities … in a manner that undermines its mission" to "assist" and "educate member[s]," and to "create programming … to educate newly arrived immigrants." SAC ¶17; *id.* ¶¶187-91.

That was the injury the Court relied on to find standing before *Alliance*. *Alianza*, 2024 WL 1381926, at *21.

Alianza belatedly manufactures another injury: The transports interfere with its ability to "'provid[e] resources and assistance to recently arrived immigrants'" by "cut[ting] off Alianza's access to them." Opp.41. For starters, Alianza nowhere alleged that its core "activities" involve "traveling to" the border "to speak with" or assist immigrants there, *Centro de la Communidad Hispana de Locust Valley v. Oyster Bay*, 868 F.3d 104, 110 (2d Cir. 2017), or that it couldn't reach them elsewhere, *cf.* SAC ¶187 (Alianza in fact helped "Class Plaintiffs"). Even if it had, *Alliance* would still foreclose that un-pleaded theory. "With or without the" transports, Alianza "can still" help thousands of newly arrived immigrants. *See Az. All. for Ret. Americans v. Mayes*, 117 F.4th 1165, 1178 (9th Cir. 2024). "The only harm here is the potential diversion of resource to remind people of the far-fetched possibility that" they "may somehow mistakenly or maliciously" be tricked in a future transport. *Id.* at 1180. But, con-trary to Alianza's assertion (at 42), *Alliance* requires that State Defendants "*directly* affected and inter-fered with" Alianza's "core business activities." 602 U.S. at 395 (emphasis added). Alianza's "alleged harm simply is not akin to a 'retailer who sues a manufacturer for selling defective goods to the re-tailer.'" *Mayes*, 117 F.4th at 1181. So Alianza has (at best) alleged only *indirect* interference.

As for "Defendants' remaining arguments on standing," Alianza fails to address them. Opp.42-43. To secure the relief Alianza seeks, Alianza had to plausibly allege that any future transport would be "by fraud and misrepresentation" of *State Defendants*. SAC at 101. It failed to do so. MTD 41. Nor can Alianza's requested relief redress that speculative future injury because an injunction or declaratory judgment would "not bind" the entity or officials that would have to be involved in any alleged scheme to tortiously transport migrants. *See Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1254 (11th Cir. 2020); MTD.41. More, Alianza's new theory that it's asking for relief from State Defendants only as private individuals would secure no effective relief because that injunction would not stop

them from implementing the program again *as officials*. Because the individual Plaintiffs concede (at 43 n.14) that they lack standing to obtain prospective relief, no Plaintiff has standing for such relief.

**2.** Even if Alianza had Article III standing, it would lack prudential standing to challenge a future transport because that challenge would be based on migrants' legal rights, not Alianza's. A party who has "satisfied Article III" still "'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004). "[T]he standing question … is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth v. Seldin*, 422 U.S. 490, 500-01 (1975). An organization cannot "raise the putative rights of third parties," including "under [section] 1983," *see id.* at 514, unless it is within the "narrow class of litigants" that can "assert the legal rights of others," *Alliance*, 602 U.S. at 393 n.5.

Plaintiffs never responded to State Defendants' argument that it lacks "third-party standing to raise claims on behalf of migrants." MTD.39-40 (citing *Kowalski*, 543 U.S. at 129). For good reason: Alianza could not plausibly allege either a "close relationship" with the migrants or that there is "a hindrance preventing the third party from raising his own claim." *Moody v. Mich. Gaming Control Bd.*, 847 F.3d 399, 402 (6th Cir. 2017). The problem for Alianza is that, other than preemption (Count IV), *all* its claims depend on alleged violations of the *migrants'* federal or state-law rights. Alianza therefore lacks any claim for "declaratory and injunctive relief" under "§ 1983," §1985, and tort law based on "third-party … rights" of migrants. *Kowalski*, 543 U.S. at 128, 134. "In these circumstances, … it is inappropriate to allow [Alianza] to invoke the judicial process." *Warth*, 422 U.S. at 514.

That result dooms Alianza's quest for equitable relief. The only remaining claim is preemption (Count IV). But Alianza has abandoned any challenge to a state law or policy, Opp.6 & n.3, 43 & n.13, 64-65 & n.35—a requirement for a preemption claim. *Infra* 22-23. So Alianza can't get equitable relief.

## IV. Plaintiffs fail to state a federal claim.

### A. Plaintiffs fail to state any fraud-based claims (Counts 1, 5 & 6).

#### 1. There are no plausible allegations of fraud by State Defendants.

State Defendants explained at length that Plaintiffs have not plausibly plead fraud-based allegations that satisfy *Iqbal* and *Twombly*, much less the heightened standard for fraud claims. MTD.42-48. That heightened standard applies "'not only to claims of fraud simpliciter but also to related claims as long as the central allegations of those claims effectively charge fraud.'" *Katz v. Belveron Real Est. Partners, LLC*, 28 F.4th 300, 308 (1st Cir. 2022). For their part, Plaintiffs flatly ignore the heightened standard for fraud-based claims and act as if the regular standard applies.

To reiterate, under any standard Plaintiffs cannot rely on "conclusory" and "bare" allegations that State Defendants conspired or intended to deceive or knew of fraud on the ground. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Though there are *some* allegations that *some* State Defendants assisted in the transport, there are no allegations that any State Defendant made misrepresentations or ordered others to do so. MTD.45-46. Because the allegations of fraudulent intent are conclusory and cannot, in any event, be plausibly imputed to State Defendants, Plaintiffs' fraud-based claims must be dismissed.

#### 2. Qualified immunity bars Plaintiffs' claims under the Due Process Clause and Fourth Amendment.

To block qualified immunity, Plaintiffs had the burden to "demonstrate" that precedent clearly established each violation alleged. *LePage II*, 927 F.3d at 583 & n.5. But they now admit that there probably "are no reported cases" like this one. Opp.64. Instead of taking their burden head on, Plaintiffs rest their qualified-immunity analysis on the erroneous assertion that qualified immunity is unavailable in cases in which injunctive relief is sought. *Id.* at 61-64. But they ignore binding precedent that "[a] decision on qualified immunity on a motion to dismiss is appropriate" even when equitable relief is also sought. *LePage II*, 927 F.3d at 583 & n.5, 589-90 (cleaned up). Because Alianza has no

claim for equitable relief anyway, *supra* Part III, this isn't a case in which equitable claims would remain even if the Court decided qualified immunity, *cf. Alianza*, 2024 1381926, at *26. Plaintiffs also suggest that it's inappropriate to resolve "qualified immunity on motions to dismiss." Opp.63. But binding precedent holds that courts *must* "resolv[e] immunity questions … on a motion to dismiss." *LePage II*, 927 F.3d at 583 & n.5. State Defendants are entitled to qualified immunity. MTD.49-54, 56-59.

### a. The Florida officials are entitled to qualified immunity from Plaintiffs' substantive-due-process claim (Count 1).

Plaintiffs can't show that the conduct alleged shocks the conscience under binding precedent. Opp.51-53. They don't even try to "equate" Plaintiffs' tort claim "with such brutal conduct as a rape, a nearly two-month unlawful imprisonment, a shooting, or repeated physical assaults." *Cummings v. McIntire*, 271 F.3d 341, 347 (1st Cir. 2001). Instead, they say that the conduct alleged involved "deliberation" and "vulnerable" victims. Opp.52-53. But they ignore that "courts have rejected due process claims" in cases where those circumstances obtained too, like where "police officers allegedly engaged in months of harassment and intimidation and pushed one plaintiff, who suffered a miscarriage two days later" and where "officers allegedly threatened more than once to kill the plaintiff and told her young children that if the police caught their father they would never see him again." *Cummings*, 271 F.3d at 346-47. Plaintiffs don't even try to say that their allegations are more conscience-shocking than those circumstances. Instead, they say the officers in those cases somehow started with a "legitimate governmental interest" in monthslong harassment or threatening to kill a mother. Opp.53 & n.22. But even if that were true, State Defendants "were operating from" the same governmental interest: enforcement of state law. *Cf. id.* In short, Plaintiffs failed to show that this case is more conscience-shocking than those in which the First Circuit suggested there would be no claim.

### b. The Florida officials are entitled to qualified immunity from Plaintiffs' Fourth Amendment claim (Count 6).

Plaintiffs' seizure claim must be dismissed. Their principal case for their seizure-by-fraud theory is *Hoffa v. United States*, 385 U.S. 293 (1966). Yet Plaintiffs concede that *Hoffa* involved an allegedly

illegal *search*, not *seizure*. Opp.56. Though they assert that State Defendants did "not even attempt to explain why this matters," *id.*, State Defendants explained that the Supreme Court has defined *seizures* to unambiguously require "'physical force' or a 'show of authority,'" *Torres v. Madrid*, 592 U.S. 306, 311 (2021); MTD.53. Plaintiffs respond (at 56) that treating searches and seizures as distinct concepts is inconsistent with "the Supreme Court's repeated rejections of such artificial distinctions" between the two. That would be a surprise to the Supreme Court, however, which has repeatedly said that "the interest protected by the Fourth Amendment injunction against unreasonable searches is *quite different* from that protected by its injunction against unreasonable seizures." *Arizona v. Hicks*, 480 U.S. 321, 328 (1987) (emphasis added); *see also Segura v. United States*, 468 U.S. 796, 806 (1984) ("Different interests are implicated by a seizure than by a search."). Other than that, Plaintiffs point to one out-of-circuit district court case. But that decision found seizure where "armed, uniformed officers" told the plaintiffs they were not free to leave. *See Davis v. Dawson*, 545 F. Supp. 3d 682, 701 (S.D. Iowa 2021). That show of authority is exactly what Plaintiffs failed to allege here.

### B. Plaintiffs fail to state any discrimination-based claims (Counts 2 & 7).

#### 1. There are no plausible allegations of discriminatory conduct by State Defendants.

Plaintiffs' discrimination claim still rests on disparate impact. For example, they concede that they didn't allege that Huerta encountered "non-Latino illegal aliens" that she could have selected instead of Plaintiffs. Opp.57-58. Plaintiffs try to downplay that omission by saying "she was specifically sent to San Antonio." *Id.* at 58. But that allegation shows only that State Defendants wanted to address the "extraordinary circumstances *at the border.*" MTD.56. They insist that the plan was "to lure unwitting individuals into DeSantis's photo op." Opp.58. But even if true, that "political motivatio[n]" and opposition to illegal immigration would not establish class-based animus. *Alexander v. NAACP*, 602 U.S. 1, 34 (2024); *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 270 (1993); *see* MTD.56.

All that's left is Plaintiffs' allegation that the migrants were Venezuelan or Peruvian. SAC ¶79. Yet there's an obvious explanation that doesn't involve animus: there was an "unprecedented exodus of migrants from countries such as … Per[u] and Venezuela." 88 Fed. Reg. at 11,705, 11,708-09. Plaintiffs ignore that fact but it's clearly relevant. The Supreme Court has repeatedly held that a disparate impact—even a racially *exclusive* one—isn't enough to infer racial animus at the pleading stage when there are obvious alternative explanations. *Iqbal*, 556 U.S. at 680-82 ("Arab Muslim men"); *DHS v. Regents of the Univ. of California*, 591 U.S. 1, 34 (2020) (plurality) ("outsized share" of "Latinos"). Plaintiffs respond that Defendants "did not impact the entire population 'eligible'" for transfer. Opp.59. But that point again ignores that the transfer program was partly motivated by the "border crisis," SB 6-B, §1(2), which explains why the border was targeted, SAC ¶¶30-33.

Plaintiffs next assert that they don't have to "rule out all possible non-discriminatory reasons for the defendants' conduct." Opp.59 n.28. But *Iqbal* says "'courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.'" *Doe v. Samford Univ.*, 29 F.4th 675, 686 (11th Cir. 2022). Because there are "more likely," "'obvious alternative explanation[s]' for" defendants' conduct that don't involve racial animus, Plaintiffs failed to state a claim. *Iqbal*, 556 U.S. at 681-82.

### 2. Qualified immunity bars Plaintiffs' claims under §1985(3).

State Defendants raised six roadblocks to the conspiracy claim. MTD.57-59. Plaintiffs overcame none. Opp.56-61. **First,** because "no colorable violation of equal protection has been alleged, the conspiracy claim has no purchase." *Jeneski v. Worchester*, 476 F.3d 14, 18 (1st Cir. 2007); *supra* 19-20.

**Second,** Plaintiffs failed to show that State Defendants "'share[d] the general conspiratorial objective.'" *Simmons v. Poe*, 47 F.3d 1370, 1378 (4th Cir. 1995). They allege that some State Defendants "coordinated" with other defendants. Opp.60. But those allegations don't show that they shared in

any objective to *racially* discriminate. There are no plausible allegations that any State Defendant agreed to a plan to target only Latinos because they are Latino. MTD.57-58.

**Third,** Plaintiffs failed to "plausibly allege … an agreement among the conspirators to deprive the plaintiff[s] of [their] *civil rights*." *Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019) (emphasis added). Plaintiffs had to plausibly allege, for example, that Governor DeSantis agreed to target Latinos because they are Latinos *and* to defraud the individuals targeted. MTD.57-58. Plaintiffs misunderstood the point by responding that the migrants were not transported "willingly." Opp.58 n.27. The point is instead that State Defendants had to agree to send *unwilling* migrants induced by fraud; a conspiracy to transport *willing* migrants, even if motivated by race, is not an agreement to deprive them "of [their] civil rights." *Parker*, 935 F.3d at 18. But there are no plausible allegations that State Defendants secretly ordered anyone to fraudulently induce migrants. MTD.57-58.

**Fourth,** Plaintiffs' claim runs into the intra-corporate doctrine. Plaintiffs respond that not all Defendants are part of "'the same legal entity'" because Huerta, Montgomerie, and Vertol aren't "employees" of the State. Opp.60-61. But Plaintiffs ignore that the doctrine covers "agents of the same legal entity," *Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017), not just "employee[s]," *Amadasu v. The Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008). And the whole theory Plaintiffs rely on to establish personal jurisdiction depends on that kind of "agency relationship." Opp.12-17.

**Fifth,** no Court has clearly rejected application of the intra-corporate doctrine to the civil-rights context. The best Plaintiffs could do is point to the First Circuit's "question[s]" about the doctrine. Opp.61 n.30. But those doubts prove the law isn't clearly established. *Ziglar*, 582 U.S. at 153-54.

**Finally,** Plaintiffs did not respond to the "other sound reasons to conclude that conversations and agreements between and among … officials in the same Department should not be the subject of a private cause of action for damages under §1985(3)." *Id.*; Opp.56-61; MTD.59.

### C. Plaintiffs fail to state a claim for preemption (Count 4).

Plaintiffs have again effectively conceded that a plaintiff cannot seek damages through a preemption claim. MTD.59; Doc. 105 at 22 (noting the concession first time around). They have thus "abandoned" any claim for damages under that claim. *E.g.*, *Pan v. Gonzales*, 489 F.3d 80, 87 (1st Cir. 2007).

On their preemption claim for injunctive relief, Plaintiffs are totally incoherent. Though the operative complaint alleges that "SB 6-B … conflicts with … federal laws," SAC ¶¶312, 317-18, Plaintiffs now disclaim challenging any "state law" or policy, *see* Opp.6-7 & n.3. They even say that "Plaintiffs have *never* sought the invalidation of any state law." Opp.64 n.35 (emphasis added). But that is exactly what a preemption claim does because the Supremacy Clause "instructs courts what to do when state and federal law clash." *Armstrong v. Exceptional Child Ctr.*, 575 U.S. 320, 325 (2015). If Plaintiffs aren't challenging a state law or policy, then they have no preemption claim.

Plaintiffs also apparently believe they can assert a preemption claim against private individuals—here, State Defendants in their individual capacities. Opp.65 & n.36. This again mangles how challenges to state action work so that Plaintiffs can avoid the consequences of suing state officials in their official capacity. *See supra* 1-2. Plaintiffs' own cases involve claims where the State is the defendant (whether by naming the State, its agency, or the relevant official in their official capacity)—not claims by a private party against state defendants in their *individual* capacities. Opp.65. Nor do Plaintiffs cite a case or "historical practice" supporting the proposition that equity gives a private entity the ability to sue a private individual in their personal capacity for injunctive relief based on preemption. *See Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021). *Ex parte Young* does not hold otherwise. 209 U.S. 123, 155-56 (1908). That case "allows certain private parties to seek judicial orders in federal court preventing state executive officials from *enforcing state laws* that are contrary to federal law." *Jackson*, 595

U.S. at 39 (emphasis added).[1] Under Plaintiffs' theory, anyone can bring a preemption claim for injunctive relief via equity against a private individual for private conduct. That cannot be right.

In any event, Plaintiffs do not state a preemption claim. Plaintiffs previously conceded that, generally speaking, transportation programs like Florida's are entirely lawful. *See* Doc. 98 at 75-76. That concession was necessary because the federal government itself has lauded such programs. *See* Circumvention NPRM, 88 Fed. Reg. at 11,715. What makes Florida's program preempted, they contend, is fraudulently inducing migrants to travel. Opp.66-71 (focusing on the alleged fraud being preempted). But Plaintiffs provide no support for the idea that Congress preempted only a program that involves fraud versus a general migrant transportation program. There is none. State Defendants otherwise rest on their prior arguments.

## V. Plaintiffs' state-law claims should be dismissed.

### A. This Court lacks jurisdiction over all state-law claims.

This Court lacks jurisdiction under the diversity statute and the Eleventh Amendment for the state-law claims. MTD.62-63. Plaintiffs misunderstood the argument in their footnoted response. Opp.73 n.42. It doesn't matter that they purport to sue State Defendants only in their individual capacities. *Id.* Because these claims aren't federal claims and because the official conduct alleged was "discretionary," State Defendants aren't "stripped of their official or representative character." *Adden*, 688 F.2d at 1151-52. Their official conduct is the conduct of the State, which is not a "citizen" for purposes of diversity and which cannot be sued in a foreign state under the Eleventh Amendment. *Id.* at 1150. "[T]herefore, the defendants are not subject to individual liability." *Id.* at 1152.

---

[1] Plaintiffs cite various cases claiming they raise preemption claims against officials in their personal capacities. Opp.65 n.36. But in those cases, the difference between official and individual capacity made no difference because the relevant officials were named in their official capacities. *See Strahan v. Coxe*, 127 F.3d 155, 166 (1st Cir. 1997); *Redondo-Borges v. Dep't of Hous. & Urb. Dev.*, 421 F.3d 1, 5 (1st Cir. 2005) ("claims for prospective injunctive relief against the commonwealth defendants in their official capacities"); *Integrated Facilities Constr. Corp. v. Div. of Cap. Asset Mgmt. & Maint.*, 615 F. Supp. 3d 28, 31 (D. Mass. 2022).

### B. This Court's prior decision does not foreclose State Defendants' arguments.

Plaintiffs repeatedly argue that this Court already decided the arguments that State Defendants raise on the state-law claims. Opp.72-82. This Court, however, did not resolve issues or specific arguments that State Defendants raised because the Court dismissed them for lack of jurisdiction. Jurisdiction is always first. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999). And State Defendants raised particular issues of immunity, 12(b)(6) plausibility, and so on that required separate briefing and analysis from Vertol's arguments. For example, Plaintiffs argue that this Court already decided that Massachusetts law applies for all defendants. Opp.72. But "the language of an opinion is not always to be parsed as though we were dealing with the language of a statute." *Brown v. Davenport*, 596 U.S. 118, 141 (2022) (cleaned up). That is especially true here when this Court did not address the sovereign interests implicated if State Defendants remained in the case. MTD.63-64.

### C. Plaintiffs' claims are barred by absolute immunity and for failing to exhaust.

Florida's public officials have absolute immunity from torts arising from conduct within the scope of their duties. Plaintiffs barely respond to that point. Opp.79-80. Nor do they meaningfully explain why Florida's immunities would still not apply, even if Massachusetts's law supplies the cause of action. Plaintiffs instead argue that Florida's absolute immunity applies only to defamation or "speech" claims. Opp.79-80. Not so. The immunity applies regardless of the cause of action, which is why State Defendants rely on cases finding absolute immunity for non-defamation claims. *See* MTD.65; *City of Stuart v. Monds*, 10 So. 3d 1134 (Fla. Dist. Ct. App. 2009) ("We reject respondents' argument that the doctrine of absolute immunity is inapplicable because of the absence of a defamation claim."). Regardless, Plaintiffs do rely on State Defendants' verbal or written communication, including protected speech. *E.g.*, Opp.2 ("press releases and speeches"); Opp.16 ("DeSantis's statements"); Opp.78 ("constant contact"); MTD.72-73 (Plaintiffs claims rely on protected speech).

Even if absolute immunity did not apply, Plaintiffs failed to exhaust their claims under either Florida or Massachusetts law. Plaintiffs do not dispute that they failed to exhaust their claims; they

instead contend that they never had to because their claims are against State Defendants in their personal capacity. Opp.79, 82. But neither case Plaintiffs cite supports the proposition. *Porter v. Duval County School Board* merely concludes that Plaintiffs need not exhaust federal claims under §1983. 2010 WL 1252177, at *8 n.14 (M.D. Fla.). And the court's conclusion in *Martineau v. DV-8 Productions* turned on the fact that the defendant was not "acting within the scope of this public employment at the time of the incident." 2009 WL 5698098, at *2 (Mass. Super.).

### D. Plaintiffs fail to plausibly allege a negligent infliction of emotional distress claim against all State Defendants (Count 11).

Plaintiffs ignore State Defendants' argument that their negligence claim is necessarily barred by Florida and Massachusetts law because of immunities that apply in their individual capacities. MTD.66-67; *see* Opp.77. Under either Florida or Massachusetts law, Plaintiffs' NIED claim is barred.

### E. Plaintiffs fail to plausibly allege intentional torts against the Florida officers.

#### 1. Plaintiffs have not adequately alleged that the officials acted outside the scope of their employment or with ill will or wantonly and willfully.

State Defendants outlined how Florida's waiver of sovereign immunity provides that intentional torts can proceed against state officials only if (1) the official acted outside "the scope of her or his employment or function" or (2) the Plaintiffs plausibly allege that the officials acted "in bad faith" or "with malicious purpose." MTD.67-68; *see id.* at 69-70 (explaining how Massachusetts immunity is even stronger than Florida's). On the first, Plaintiffs argue that State Defendants acted outside their scope of authority because Section 185 did not allow transports originating outside Florida. Opp.80. But Plaintiffs abandoned their *ultra vires* claim. *See* SAC at p.101; Doc. 105 at 30 (noting that Plaintiffs dropped the claim). Regardless, State Defendants did not exceed their authority under Section 185, as Plaintiffs admit in their complaint. SAC ¶318 ("Section 185 … permit[ted]" "Defendants' enforcement"). The statute authorized FDOT to "implement[] a program to facilitate the transport of unauthorized aliens from this state consistent with federal law." The phrase "from this state" modifies "transport," and that is what FDOT did. *See Ray v. McCullough Payne & Haan*, 838 F.3d 1107, 1111-12

(11th Cir. 2016) (applying "nearest-reasonable-referent canon"). After taking off from San Antonio, the plane landed in Crestview, Florida, where some passengers departed the plane. SAC ¶136. The plane then flew from Florida to a location outside the State. But any doubt on that issue was erased because SB 6-B repealed Section 185 and "approved" "[a]ll payments made" under Section 185. Ch. 2023-3, Laws of Florida (2023). Thus, the State has ratified the prior transportation and SB 6-B clearly authorizes transportation from outside Florida. At the very least, however, the alleged torts "were committed during the course of the employment and to further a purpose or interest … of the[ir] employer," even if Plaintiffs think the way they did so was "excessive or misguided." *Nazareth v. Herndon Ambulance Serv.*, 467 So. 2d 1076, 1078 (Fla. Dist. Ct. App. 1985).

On the second exception to immunity, Plaintiffs argue that State Defendants acted in bad faith because the transportation program was "'part of a political stunt to boost … DeSantis's national profile.'" Opp. 81. An alleged political motive, however, does not equate to bad faith. That would mean every politician who campaigns on certain policies and then works to achieve them would meet this narrow exception for personal liability. Plaintiffs "failed to state a plausible claim that bad faith or malice, as opposed to a concern for the [the State of Florida's] residents' general welfare, motivated [the Florida officials'] behavior." *Najas Realty v. Seekonk Water Dist.*, 821 F.3d 134, 146 (1st Cir. 2016).

### 2. Plaintiffs failed to plausibly allege elements of each state-law tort claim.

#### a. Plaintiffs failed to plausibly allege intentional infliction of emotional distress (Count 10).

Plaintiffs entirely ignore State Defendants' argument that IIED's requirements of "'deliberate infliction'" and "'outrageous conduct'" must "turn on each Defendant's own actions." MTD.70 & n.12. Instead, Plaintiffs treat Defendants collectively at every turn. Opp.75-77. When performing the appropriate individualized analysis, Plaintiffs fail to plausibly allege IIED under either Florida or Massachusetts law. *See* MTD.70-73.

Plaintiffs' cases don't help them. True, outrageousness was met in those cases, but the conduct is worse than what Plaintiffs implausibly allege here. Opp.75 (citing *George v. Jordan Marsh Co.*, 268 N.E.2d 915, 916 (Mass. 1971); *Cady v. Marcella*, 729 N.E.2d 1125, 1128 (Mass. App. Ct. 2000); *Harris v. Harvin*, 2005 WL 2461876, at *2 (Mass. Super.)). *Harris* involved a defendant who "maliciously initiated false criminal charges against" the plaintiff, causing him to "spend almost four full days in jail." 2005 WL 2461876, at *2. *George* involved debt-collection tactics that not only caused the plaintiff a heart attack but continued after the plaintiff's lawyer explained that the debt was not the plaintiff's, resulting in another heart attack. 268 N.E.2d at 916, 921. *Cady* involved debt collectors who took a family's home "for twelve days in the middle of winter" and the collectors knew this would harm the plaintiffs. 729 N.E.2d at 1132. And none of these cases involved Massachusetts's rule that "'[t]here is every presumption in favor of the honesty and sufficiency of the motives actuating public officers in actions ostensibly taken for the general welfare.'" *S. Bos. Betterment Tr. Corp. v. Bos. Redevelopment Auth.*, 777 N.E.2d 812, 820 (Mass. 2002). Contra Plaintiffs, State Defendants don't argue that "they should be le[f]t off the hook" because of that presumption. Opp.76-77. State Defendants argue that Plaintiffs fail to plausibly allege any State Defendant personally acted extremely outrageously.

### b. Plaintiffs failed to plausibly allege false imprisonment (Count 8).

Plaintiffs concede that a person can be liable for "false imprisonment carried out by third parties" only if "they engage in conduct that sets in motion a false imprisonment knowing there is no lawful basis for it." Opp.74. In other words, the defendant must know the conduct will be unlawful. That dooms Plaintiffs' claim here because they did not plausibly allege knowledge of fraud or deception for any of the State Defendants. MTD.75; *supra* 17. Plaintiffs also assert that State Defendants confined Plaintiffs to an island. Opp.74 & n.44. In the Alaska case they cited last time, the court speculated that the plaintiff "might have a claim sounding in false imprisonment" if the defendants had "prevented [the plaintiff's] only reasonable means of departure." *Helstrom v. North Slope Borough*,

797 P.2d 1192, 1199 (Alaska 1990). There are no plausible allegations that State Defendants stopped Plaintiffs from leaving Martha's Vineyard; indeed, Plaintiffs don't allege that State Defendant set foot in Massachusetts during the implementation of the transport. The island was not a "'prison'"; Plaintiffs "could leave" whenever they wanted. *Albright v. Oliver*, 975 F.2d 343, 346 (7th Cir. 1992).

### c. Plaintiffs failed to plausibly allege a civil conspiracy (Count 12).

Plaintiffs do not deny that to state a civil-conspiracy claim, they must plausibly allege the defendant knew of the plan's illegality. *Compare* Opp.77-78, *with* MTD.76. Nor do they deny that if Plaintiffs do not plausibly allege the specific defendant's own conduct was tortious, then the conspiracy claim fails. *Compare* Opp.77-78, *with* MTD.76. Plaintiffs did neither.

Plaintiffs also don't deny that if the doctrine of intra-corporate conspiracy applies, then they would not state their claim. Instead, relying on *Loughren v. Unumprovident Corp.*, 2008 WL 4280133, at *3 (D. Mass.), Plaintiffs dismiss the doctrine of "intracorporate conspiracy" by saying it applies only "in the context of corporations." Opp.78 n.45. *Loughren* did not involve Massachusetts state law but federal law, and regardless, does not hold that the doctrine applies to corporations only. 2008 WL 4280133, at *3 (False Claims Act case). Plaintiffs provide no sound reason why the logic of the intra-corporate-conspiracy doctrine should not apply to a state government, which is an employer much like a corporation. *Supra* 21; *see Martino-Fleming v. S. Bay Mental Health Ctr.*, 334 F. Supp. 3d 394, 402 (D. Mass. 2018) ("'substance, not form,'" should govern intra-corporate-conspiracy doctrine).

Plaintiffs also argue that the Governor provided "substantial assistance to" the conspiracy because he allegedly "devis[ed] the scheme for maximum political and press impact" and arranged "for videos … to be sent to the press." Opp.78. Plaintiffs do not plausibly allege any of that. The Governor's conduct is consistent with lawful transport without any fraud or deception. In any event, "[o]nly assistance or encouragement that is a 'substantial factor in causing the resulting tort' exposes the actor to liability." *Taylor v. Am. Chemistry Council*, 576 F.3d 16, 35 (1st Cir. 2009). The Governor

never stepped foot in Texas or Massachusetts, and he didn't help recruit migrants. *See id.* ("courts should consider 'the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the other and his state of mind'"). Devising a plan to have larger political or press impact is not a substantial factor for an alleged fraud and discriminatory scheme.

Similarly, Plaintiffs assert Uthmeier substantially assisted the conspiracy because he allegedly provided "constant contact and support" to the other Defendants and helped coordinate with the press. Opp.78. But they never plausibly allege that he knew of an illegal scheme or explain how contact and media coordination are substantial factors for the alleged fraud and discrimination.

So too for Keefe. Plaintiffs argue he substantially assisted the underlying tort because he was "on the ground logistical support," "coordinat[ed] financial support for the" program, and flew on the planes from Texas to Florida (but not to Massachusetts). Opp.78. But Plaintiffs do not plausibly allege that Keefe had knowledge of the deception or any unlawful intent; nor do they plausibly allege that Keefe directly participated in any deceit at all, let alone with the migrants.

### d. Plaintiffs failed to plausibly allege aiding and abetting (Count 13).

Similar to the conspiracy claim, Plaintiffs do not dispute aiding and abetting requires that the particular defendant "knew that the [other] party was committing the tort." Opp.79. Instead, Plaintiffs argue that they plausibly alleged knowledge because State Defendants "were in direct communication and had reason to know of" the fraud. Opp.79. But that is not the standard. "[A] plaintiff must allege facts which give rise to a 'strong inference' that the defendant 'actually knew' that the underlying tort was being committed." *In re TelexFree Sec. Litig.*, 626 F. Supp. 3d 253, 272 (D. Mass. 2022). "Merely showing the defendant's 'general awareness' that their ostensible co-conspirator is engaged in tortious acts is insufficient." *Thomas v. Harrington*, 909 F.3d 483, 491 (1st Cir. 2018). In Plaintiffs' sole authority, there were specific allegations that the defendant was concerned the company whose scheme it was

abetting was bogus. *See In re TelexFree Sec. Litig.*, 357 F. Supp. 3d 122, 128 (D. Mass. 2019). There are no such specific allegations for any State Defendant. *Supra* 17.

## CONCLUSION

For all these reasons, this Court should grant the motion to dismiss.

Dated: November 8, 2024

Respectfully submitted,

Thomas C. Frongillo
  (BBO# 180690)
CAMPBELL CONROY & O'NEIL, P.C.
20 City Square, Suite 300
Boston, MA 02129
Tel: 617-241-3092
TFrongillo@campbell-trial-lawyers.com

*Counsel for Governor DeSantis*

/s/ *Jesse Panuccio*
Jesse Panuccio (admitted *pro hac vice*)
BOIES SCHILLER FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Tel: (954) 356-0011
jpanuccio@bsfllp.com

*Counsel for James Uthmeier*

/s/ *Bryan Weir*
Jeffrey M. Harris (admitted *pro hac vice*)
Bryan Weir (admitted *pro hac vice*)
C'Zar Bernstein (admitted *pro hac vice*)
Thomas S. Vaseliou (admitted *pro hac vice*)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
Tel: (703) 243-9423
bryan@consovoymccarthy.com
jeff@consovoymccarthy.com
czar@consovoymccarthy.com
tvaseliou@consovoymccarthy.com

*Counsel for Governor DeSantis*

/s/ *Jeff Aaron*
Jeff Aaron (admitted *pro hac vice*)
DOWNS AARON
200 S. Orange Ave., Suite 2250
Orlando, FL 32801
Tel: 407-349-3949
jeff.aaron@downsaaron.com

Ashley Lukis (admitted *pro hac vice*)
GRAYROBINSON, P.A.
301 S Bronough Street, Suite 600
Tallahassee, FL 3230
Tel: 850-507-9090
ashley.lukis@gray-robinson.com

*Counsel for Lawrence A. Keefe*

**CERTIFICATE OF SERVICE**

I hereby certify that I filed this document through the Court's ECF system on November 8, 2024, which will therefore automatically be sent electronically to all counsel of record via the CM/ECF system.

Dated: November 8, 2024                                   *s/ Bryan Weir*