**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF MASSACHUSETTS**

ALIANZA AMERICAS, YANET DOE, PABLO DOE, and JESUS DOE, on behalf of themselves and all others similarly situated,

*Plaintiffs*,

v.

RONALD D. DESANTIS, Governor of Florida, in his personal capacity; LAWRENCE A. KEEFE, Florida Public Safety Czar, in his personal capacity; JAMES UTHMEIER, Chief of Staff to Florida Governor, in his personal capacity; JAMES MONTGOMERIE; PERLA HUERTA; and VERTOL SYSTEMS COMPANY, INC.,

*Defendants*.

Civil Action No. 1:22-cv-11550-ADB

**Leave to file granted on August 5, 2024**

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF JOINT MOTION TO TRANSFER**

The claims against Defendants should be dismissed. But even if the Court disagrees, this case should be transferred to the Northern District of Florida. Plaintiffs do not dispute that this case *could* have been brought there. Opposition ("Opp.") 2. And despite their urgings to the contrary, "the convenience of parties and witnesses" and "the interest[s] of justice" strongly indicate that this case *should* have brought there. 28 U.S.C. § 1404(a). Ultimately, Plaintiffs seek to have their cake and eat it too: they aggressively seek to constrain the official conduct of Florida's chief executive and other high-ranking officials, yet shrink from that reality when the consequences of their pleading decisions—here, transfer—are exposed. This Court should not permit claims against government officials enforcing their state's law to be litigated in another state—particularly when the Court has already decided that the entirety of Plaintiffs' claims cannot be adjudicated in this District. The Court should instead grant the motion to transfer ("Motion" or "Mot.").

## ARGUMENT

Plaintiffs do not (and cannot) dispute that their claims could have been brought in the Northern District of Florida. Opp. 2. The only question is whether "the convenience of parties and witnesses" and the "the interest[s] of justice" also favor transfer. 28 U.S.C. § 1404(a). Despite Plaintiffs' arguments to the contrary, those factors weigh decidedly in favor of transfer.

At the outset, Plaintiffs assert that the Motion is wasteful because the Court already rejected *Vertol's* motion to transfer. Opp. 1. But Plaintiffs concede that "the State Defendants had already been dismissed from the case" when the Court addressed Vertol's motion. *Id.* While the Court did briefly mention the "other defendants" in its ruling on Vertol's motion, Opp. 2, the Court's analysis focused on Vertol and did not address the sovereignty-related concerns that will exist if the State Defendants remain in the case, *Alianza Americas v. DeSantis*, 2024 WL 1374969, at *3 (D. Mass.) (evaluating arguments "with the state officials dismissed at this stage"). The real "waste of time" here—indeed, the jurisdictional gamesmanship—was Plaintiffs' filing in this District and not the Northern District of Florida.

***(1) Plaintiff's choice of forum.*** As Defendants explained in their Motion, Plaintiffs' choice of this "forum deserves considerably less weight" given their class claims. Mot. 3 (quoting *Dress v. Capital One Bank (USA), N.A.*, 368 F. Supp. 3d 178, 181 (D. Mass 2019) (transferring class action to Virginia federal court)); 15 Wright & Miller, Fed. Prac. & Proc. §3848 (4th ed. Apr. 2022) ("[C]ourts have held that the [plaintiff's choice of forum] is entitled to little weight … in class actions."). Plaintiffs counter that this principle "only applies when the class members are 'across the country.'" Opp. 3 (quoting *Dress*, 368 F. Supp. 3d at 182). Yet beyond the three named individuals, Plaintiffs "seek to certify a class comprising all immigrants who have been, or will in the future be, transported across state lines by Defendants by means of fraud and misrepresentation." SAC ¶276. That class includes the "46 other immigrants that Defendants transported." *Id.* ¶279. Plaintiffs nowhere restrict the class

to individuals in Massachusetts. Nor do Plaintiffs plead the residencies of the absent 46 class members—they could be anywhere "across the country" by now. Thus, just as in *Dress*, where there was a "Massachusetts subclass," Plaintiffs here "filed this suit on behalf of [themselves] and all others similarly situated throughout the United States," which entitles their choice of this forum to "considerably less weight." *Dress*, 368 F. Supp. 3d at 182; SAC at 1.

***(2) The relative convenience of the parties.*** This case's center of gravity is in Florida. Plaintiffs do not contest that 5 of the 6 defendants reside there, while only 3 of 50 putative plaintiffs are alleged to reside in Massachusetts. This Court has compared the residency of parties to determine which forum is most appropriate. *See Fed. Ins. Co. v. XTRA Intermodal, Inc.*, 2015 WL 4275181, at *5 (D. Mass.) (Burroughs, J.); *see Weakley v. Cargo Network Leasing Inc.*, 2019 WL 11268924, at *4 (E.D. Tenn.) (transferring case where "most of the parties reside in" the transferee's venue's state); *Plaisance v. Schiller*, 2017 WL 11296870, at *2 (S.D.N.Y.) (same). Nor do Plaintiffs contest that the Court has already held that it lacks jurisdiction over *all* defendants for the substantive equal-protection claim. Mot. 5-6. Yet Plaintiffs still pursue it. SAC at 86 (Count II); Doc. 128 at 2 n.3. Transferring to the Northern District of Florida could therefore allow "the entire case to be adjudicated in one proceeding in a single forum." *TargetSmart Holdings, LLC v. GHP Advisors, LLC*, 366 F. Supp. 3d 195, 219 (D. Mass. 2019); *see Meridian PO Fin. LLC v. OTR Tire Grp. Inc.*, 507 F. Supp. 3d 1148, 1162 (D. Ariz. 2020) ("it is highly desirable that all of a plaintiff's claims be tried in a single forum"); *CVS Pharmacy v. AstraZeneca*, 2020 WL 4671659, at *8 (S.D.N.Y.) ("trying all claims in a common forum is far more efficient than bifurcating them" and "enhance[s] convenience"). Resisting that more efficient option, Plaintiffs counter that even if the Court decides that it lacks jurisdiction over some claims or defendants, it would still be their "choice" to proceed "in this Court or consent to a transfer." Opp. 5. Plaintiffs' desire to litigate in a particular forum does not and should not overcome "[f]undamental[]

concern[s] about judicial efficiency" that counsel in favor of a single forum. *TargetSmart Holdings*, 366 F. Supp. 3d at 219.

Further, it would "constitute[] an extreme impingement on state sovereignty" to require the chief executive and other high-ranking officials of one state to submit to jurisdiction in another state. Mot. 4 (quoting *PTI, Inc. v. Philip Morris Inc.*, 100 F. Supp. 2d 1179, 1189 n.8 (C.D. Cal. 2000)); *see Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008) (a sovereign state "has a strong interest in not having an out-of-state court evaluate the validity of its laws"). Though Plaintiffs acknowledge that "the burden on states litigating in other states is substantial," they assert that they are suing State Defendants only "in their individual capacities," individuals who "also happen to work for the State of Florida." Opp. 4. But that tack runs into two problems. First, those "individuals" include the sitting governor of Florida and his chief of staff. Hailing them into an out-of-state court for their official acts implementing a State program burdens State sovereignty, whatever self-serving label Plaintiffs slap on their complaint. State Def. Reply (MTD.Reply) 3, 8-11, 12-14. Second, Plaintiffs' new theory contradicts their own complaint. It *does* "challenge … *Florida's laws*" and "relocation program" as "violat[ing] the U.S. Constitution" and "federal anti-discrimination laws" and as "preempted by federal law and the U.S. Constitution." SAC ¶¶282, 311-20. And the injunctive relief Plaintiffs seek can only be obtained from the State Defendants in their *official* capacities, which implicates Florida's sovereign interests. Mot. 4-5; MTD.I.A.1, III.A; MTD.Reply 12-14. So, despite Plaintiffs' incoherent attempt to sidestep sovereignty issues, they remain in the case and cut in favor of transfer to Florida.

Finally, the parties' relative finances are irrelevant. True, some district courts have assessed them in considering the convenience factor. Opp. 4. But they have done so "[b]ecause there is a presumption in favor of plaintiff's choice" of forum. *Kleinerman v. Luxtron Corp.*, 107 F. Supp. 2d 122, 125 (D. Mass. 2000) (cited at Opp. 4). As explained above, that presumption does not apply when a plaintiff brings a putative class action. In that circumstance, the plaintiff's choice of forum "deserves

considerably less weight." *Dress*, 368 F. Supp. 3d at 181. In any event, Plaintiffs nowhere "argued that [they] lack[] the financial means to litigate in [another] forum" or that this litigation is costing them anything. *See XTRA Intermodal*, 2015 WL 4275181 at *5. And Alianza seems to have the financial wherewithal to litigate in Florida if it can in Massachusetts, forums that are both far away from its home.[1]

***(3) The convenience of the witnesses and location of documents.*** The SAC makes clear, and Plaintiffs do not dispute, that the bulk of the relevant witnesses and documents in this case are located outside of Massachusetts and primarily in Florida. Of the ten named parties, all of whom are potential witnesses, seven are outside Massachusetts and five are in Florida. Doc. 150-1 at 1. Further, five potential third-party witnesses mentioned in the SAC all reside in Florida. *Id.* at 1-2. Thus, the "number of potential witnesses located in either" this District or the Northern District of Florida favors the latter. *Dress*, 368 F. Supp. 3d at 182 (transferring case where "[m]ost, or all, of Defendant's relevant witnesses are … located in the [transferee forum]"); *see W. Marine Prod., Inc. v. Dolphinite, Inc.*, 2005 WL 1000259, at *10 (D. Mass.) (transferring case to Florida federal court where "many if not most of those parties' … witnesses are likely to be found in Florida"); *Genetic Veterinary Scis., Inc. v. Canine EIC Genetics, LLC*, 2014 WL 11516297, at *9 (E.D. Wash.) (transferring action where "more of the witnesses related to the" core legal issues "will be located in" the transferee forum's state); *Rogan v. United States*, 2008 WL 282351, at *11 (N.D. Ind.) (similar). Plaintiffs baldly assert that "there are potential documents in Massachusetts," but neither their Opposition nor the SAC explain what those documents are. Opp. 6. Nor is it "too early" to assess the location of relevant witnesses and documents, Opp. 6; indeed, "a motion to transfer *should* be made early in the proceeding … as

[1] Alianza Americas IRS Form 990 (reporting net assets of $1.45 million as of December 31, 2022), *available at* https://perma.cc/KY2M-5S55.

familiarity with both the procedural and substantive aspects of the case is lost with a transfer to another court," *Hirst v. SkyWest, Inc.*, 405 F. Supp. 3d 771, 779 (N.D. Ill. 2019) (emphasis added). Technology doesn't somehow make the location of witnesses and documents "of little import." Opp. 5. Even though technology has changed, "courts generally conclude that the physical location of records and documents is still relevant." Wright & Miller §3853 (4th ed. Apr. 2022). Indeed, *this* Court has a "preference of live testimony over testimony by deposition." *Alianza*, 2024 WL 1374969, at *3. In any event, for all its conveniences, technology has not altered the scope of Rule 45. For Rule 45 discovery purposes, "[c]ontrol is defined not only as possession, but as the legal right to obtain the documents requested upon demand." *Katz v. Liberty Power Corp., LLC*, 2018 WL 4398256, at *1 (D. Mass.) (Burroughs, J.). And state employees sued in their individual capacities—which is how Plaintiffs styled their suit—lack the "legal right" to obtain documents possessed by state entities. *See Tyler v. Butler*, 2008 WL 4370062, at *3 (E.D. Cal.) ("It would neither be likely nor appropriate that" a state employee sued in his individual capacity "would have within his personal possession documents responsive to the [discovery] requests, nor is it likely, in his individual capacity, that he would have access to documentation that is within the possession, custody or control of [a state entity]."); *Brassell v. Turner*, 2006 WL 1806465, at *1 (S.D. Miss.) (similar).[2] Thus, to obtain documents located in Florida, as well as to compel the testimony of the numerous non-parties residing there, Plaintiffs would be forced to issue Rule 45 subpoenas to third parties. But Florida lies well beyond the Court's 100-mile authority, further militating in favor of transfer. *See* Fed. R. Civ. P. 45(c); *Tan v. Shein Distribution Corp.*, 2024 WL 165196, at *2 (S.D.N.Y.) (transferring to Florida because "the district court there has subpoena power over more of the witnesses than this Court does"); *ViaTech*, 2020 WL 1235470, at

[2] *See also Garcia v. Quevedo*, 2022 WL 1037090, *3 (D.S.C.) (court found that subpoena was facially directed at individual in her individual capacity instead of in her role as corporate business manager thereby making corporate documents outside of her possession, custody, or control); *Learning Connections, Inc. v. Kaufman*, 280 F.R.D. 639, 640 (M.D. Fla. 2012) (similar).

*3 ("Court must consider … whether [potential witnesses] can be compelled to testify."); Wright & Miller §3853 (4th ed. Apr. 2022) (courts transfer cases so "that documents and things will be within the subpoena power"); Doc. 150-1 at 1-2.

No problem, Plaintiffs say, because DeSantis, Florida's "chief executive officer," can simply "secure the appearance … of Florida employees." Opp. 6. But this argument only serves to underscore the sovereign interests embedded in this case: Plaintiffs simultaneously seek to avoid the consequences of suing a sitting governor in his official capacity (e.g., sovereign immunity) while demanding that he use his official powers to avoid the consequences of suing him in his personal capacity.

Finally, Plaintiffs' assertion that State Defendants "target[ed]" Massachusetts is irrelevant under this factor. Opp. 6. This Court has acknowledged that it is "the convenience of the witnesses," not the convenience or prior actions of the parties, "that is the most important factor in considering a motion to transfer venue." *ViaTech Techs., Inc. v. Adobe Inc.*, 2020 WL 1235470, at *3 (D. Mass.) (Burroughs, J.). Given that most of those witnesses are in Florida, *see* Doc. 150-1 at 1-2, this factor favors transfer.

***(4) Any connection between the forum and the issues.*** The issues are mostly connected to Florida. The SAC is focused on alleged actions taken by *Florida's* chief executive, *see* Fla. Const. art. IV §1, through *Florida* state executive officials (Uthmeier and Keefe), *see* § 14.01, Fla. Stat., and their alleged agents, SAC ¶¶233-75, in *Florida* and Texas under a *Florida* statute and associated *Florida* policies (the transport program), all of which was funded and authorized by a *Florida* legislative appropriation and the *Florida* Department of Transportation, Ch. 22-156, §185, para. 1, Laws of Fla.; Ch. 23-3, §§2-3, Laws of Fla. At best, Plaintiffs have the landing of a plane in Massachusetts by one of six defendants (Vertol). But even if there is "some connection" between this forum and the issues to be decided in this case, "[t]he relationship of [Florida] is … more significant," favoring transfer. *First State Ins. Co. v. XTRA Corp.*, 583 F. Supp. 3d 313, 320 (D. Mass. 2022); *see ViaTech*, 2020 WL 1235470, at *4–5

(transferring case where "the bulk of the alleged [unlawful] activity … happened in California, not Massachusetts"). And even if the Court is convinced that "[t]he connection between Massachusetts and the issues presented in this case is substantial"—and it is not—the fact that there is also a substantial connection to Florida renders this factor "essentially neutral," and certainly not against transfer. *Transcanada Power Mktg., Ltd. v. Narragansett Elec. Co.*, 402 F. Supp. 2d 343, 352 (D. Mass. 2005).

Further, this case is about a program under a Florida statute. As such, transfer is particularly warranted because Florida "possesses an *atypically strong* interest in having [Florida]-based courts hear and resolve controversies involving its litigated … statute." Mot. 7 (quoting *Pritzker v. Yari*, 42 F.3d 53, 64 n.9 (1st Cir. 1994)). Plaintiffs once again run from their own pleading and assert that their claims do not "address[] the legality of a Florida state statute." Opp. 7. Yet Count IV does exactly that, alleging that the State Defendants' "enforcement and application" of Section 185 of Florida's General Appropriations Act and its successor statute, SB 6-B, is unlawful under the Constitution's Supremacy Clause. SAC ¶¶317-18. Plaintiffs also disclaim any challenge to "a state's cross-border enforcement actions." Opp. 8. Their own complaint proves them wrong. *See* SAC ¶318 (alleging that "Defendants' *enforcement* and application of Section 185 of Florida's General Appropriations Act … directly conflicts with and attempts to supplant federal immigration law.") (emphasis added)). And elsewhere, Plaintiffs identify the "questions of law" that the SAC presents, including whether the "relocation program violates the U.S. Constitution" and "federal anti-discrimination laws," and whether it "is preempted by federal law and the U.S. Constitution." SAC ¶282(f)(a)-(c). In such situations, subsequent litigation "'has taken place in the governmental official's state' almost invariably," and there is no reason to go against the grain here. Mot. 8 (quoting *Def. Distributed v. Grewal*, 971 F.3d 485, 499 n.3 (5th Cir. 2020) (Higginson, J., concurring)). Finally, as noted above, Plaintiffs now claim that discovery in this case will require the Governor to exercise his official powers (or perhaps they will seek a court order

directing him to do so), further underscoring the need for a Florida-based court to hear this case if it is to proceed against Florida officials.

***(5) The law to be applied.*** The SAC makes plain that Florida law is inextricably bound up in Plaintiffs' claims. *See, e.g.*, SAC ¶¶282(f)(a)-(c), 311-20. To adjudicate Plaintiffs' claim in Count IV that Section 185 of Florida's General Appropriations Act and SB 6-B are preempted, this Court will necessarily decide the legality of those statutes. So, because "this action is one that really challenges the constitutionality of [a Florida] state statute[]" and "go[es] to construction of state and federal law," this case belongs in a Florida federal court. Mot. 8 (quoting *Omaha Tribe of Nebraska v. Barnett*, 245 F. Supp. 2d 1049, 1055 (D. Neb. 2003)); *Dress*, 368 F. Supp. 3d at 183 ("the courts in Virginia are better equipped to" adjudicate issues involving Virginia law). That is especially important here, where there are "unsettled" issues of state law. *First State Ins. Co.*, 583 F. Supp. 3d at 320 (quoting Wright & Miller §3854 (4th ed. Apr. 2022)). This Court has acknowledged that it should account for "a district's familiarity with the governing law." *Riemer & Braunstein LLP v. Monroe Cap. Mgmt. Advisors LLC*, 2019 WL 2141821, at *6 (D. Mass.) (Burroughs, J.). To do otherwise would "impinge[]" Florida's sovereignty interests. Mot. 8.

In response, Plaintiffs have to run away from their complaint. They say (again) that the complaint doesn't "challenge state law," Opp. 8, even though Count IV does so expressly, SAC ¶¶311-20. Plaintiffs claim again that the State Defendants "are not the state," Opp. 8, even though the injunctive relief they seek can only be obtained from the State Defendants in their official capacities, implicating Florida's sovereignty interests. MTD.I.A.1, III.A; MTD.Reply 3, 8-11, 12-14. Further, that "courts regularly interpret and decide cases on other state's substantive laws" is not relevant here because it does not account for those sovereignty interests. Opp. 8; *see Stroman Realty*, 513 F.3d at 487 (a sovereign state "has a strong interest in not having an out-of-state court evaluate the validity of its laws").

Finally, Plaintiffs assert that the Court "has already decided Massachusetts law applies to this case." Opp. 8. That assertion is misleading. In its prior ruling dismissing the claims against the State Defendants, the Court applied Massachusetts law to the claims against *Vertol*. *See Alianza Americas v. DeSantis*, 2024 WL 1381926, at *32 (D. Mass.). But that conclusion was heavily influenced by the fact that the claims against the State Defendants had been dismissed. The Court explained that "several of Vertol's arguments [were] moot in light of the Court's finding that, for example, the Florida officials and government agencies [were] dismissed" and highlighted the lack of "interest that Florida *now* ha[d] in this action." *Id.* (emphasis added). Now that Plaintiffs seek to lasso State Defendants back into the fold, the Court's prior ruling hardly "ends the inquiry." Opp. 8.

***(6) The state or public interests at stake.*** Public interest factors considered in the Section 1404 analysis include "administrative difficulties flowing from court congestion," "local interest in having localized controversies decided at home," and "the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 63 n.6 (2013). Here, the latter two factors weigh in favor of transfer because, as explained above and in the Motion, the locus of this case is in Florida (and certainly not in Massachusetts), and Florida law is implicated by Plaintiffs' claims. *See* Mot. 9; *supra* pp.7-9. Plaintiffs do not and cannot dispute that Florida has "a local interest in a case that contains allegations of improper conduct by [its] state officials." *Link v. Pa. State Police*, 2015 WL 3822832, at *2 (W.D.N.C.). Notably, Plaintiffs make no effort to confront State Defendants' arguments on Florida's home-venue privilege, thereby conceding the issue. Nor do they grapple with the fact that transferring this case to the Northern District of Florida would undoubtedly "conserve[] judicial resources, and further[] the interests of the parties" by eliminating many "difficult question[s] of personal jurisdiction." Mot. 9 (quoting Wright & Miller §3854 & n.35 (4th ed. Apr. 2022)).

Instead, Plaintiffs claim that purported public interests are sufficient to keep this case in Massachusetts. Opp. 8. Those arguments are unpersuasive. For starters, *Hannon v. Beard*, 524 F.3d 275 (1st Cir. 2008) (cited at Opp. 8), did *not* say that Massachusetts "has a significant interest in ensuring that out-of-state defendants do not retaliate against unwanted prisoners by casting them into Massachusetts." The court said only that that "may be true," and so the state had only "*some* interest in adjudicating the dispute"—not the "significant interest" Plaintiffs claim. *Id.* at 285 (emphasis added); Opp. 8. In any event, the purported public interest in *Hannon* has no relevance here. Plaintiffs then say that the actions of third parties following their arrival in Massachusetts means that the state "has a direct and significant relationship to the cause of action." Opp. 8-9. But those actions of third parties have no relationship to the "cause of action," as reflected by their absence from the SAC. More, it simply cannot be that the actions of third parties can militate against transfer if the focus of the transfer inquiry is to remain on the convenience of the witnesses, where it belongs. *ViaTech*, 2020 WL 1235470, at *3. And even if Plaintiffs are right that certain public interests point toward a Massachusetts venue, Florida has countervailing sovereignty interests, rendering this factor neutral at worst. *See Dress*, 368 F. Supp. 3d at 183 ("Public interest factors, however, will rarely defeat a motion to transfer.").

Plaintiffs' other arguments are easily dispatched. They once again mischaracterize their own complaint to duck the consequences of seeking injunctive relief against Florida officials carrying out a Florida state program authorized and funded by Florida law. Plaintiffs invoke their self-serving "personal capacities" labeling, Opp. 9, but the injunction they demand will constrain the State Defendants' *official* conduct and therefore implicate Florida's sovereign interests, MTD.I.A.1, III.A; MTD.Reply 12-14. More, the fact that the Court previously held that venue was proper as to Vertol is not controlling here, especially where that analysis proceeded *after* the Court dismissed the claims against the State Defendants. *See Alianza*, 2024 WL 1381926, at *18. And simply because this District

is a "proper" venue does not mean that it is the venue most convenient for the witnesses, which is the focal point here. Between named parties and third parties identified in the SAC, 10 of 14 potential witnesses reside in Florida. Doc. 150-1 at 1-2.

## CONCLUSION

For all these reasons, this Court should grant the motion to transfer.

Dated: November 8, 2024

Respectfully submitted,

Thomas C. Frongillo
(BBO# 180690)
CAMPBELL CONROY & O'NEIL, P.C.
20 City Square, Suite 300
Boston, MA 02129
Tel: 617-241-3092
TFrongillo@campbell-trial-lawyers.com

*Counsel for Governor DeSantis*

*/s/ Bryan Weir*
Jeffrey M. Harris (admitted *pro hac vice*)
Bryan Weir (admitted *pro hac vice*)
C'Zar Bernstein (admitted *pro hac vice*)
Thomas S. Vaseliou (admitted *pro hac vice*)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
Tel: (703) 243-9423
bryan@consovoymccarthy.com
jeff@consovoymccarthy.com
czar@consovoymccarthy.com
tvaseliou@consovoymccarthy.com

*Counsel for Governor DeSantis*

*/s/ Jesse Panuccio*
Jesse Panuccio (admitted *pro hac vice*)
BOIES SCHILLER FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Tel: (954) 356-0011
jpanuccio@bsfllp.com

*Counsel for James Uthmeier*

*/s/ Brian T. Kelly*
Brian T. Kelly (BBO No. 549566)
Ross MacPherson (BBO No. 705598)
NIXON PEABODY LLP
Exchange Place
53 State Street
Boston, MA 02109-2835
Tel: (617) 345-1000
Fax: (855) 714-9513
bkelly@nixonpeabody.com
rmacpherson@nixonpeabody.com

Christopher M. Mason (admitted *pro hac vice*)
NIXON PEABODY LLP
Tower 46
55 West 46th Street
New York, NY 10036
Tel: (212) 940-3000
cmason@nixonpeabody.com

*Counsel for James Montgomerie & Vertol Systems, Inc.*

*/s/ Jeff Aaron*
Jeff Aaron (admitted *pro hac vice*)
DOWNS AARON
200 S. Orange Ave., Suite 2250
Orlando, FL 32801
Tel: 407-349-3949
jeff.aaron@downsaaron.com

Ashley Lukis (admitted *pro hac vice*)
GRAYROBINSON, P.A.
301 S Bronough Street, Suite 600
Tallahassee, FL 3230
Tel: 850-507-9090
ashley.lukis@gray-robinson.com
vanessa.reichel@gray-robinson.com

*Counsel for Lawrence A. Keefe*

*/s/ Nicholas Ramacher*

George W. Vien (BBO No. 547411)
Nicholas Ramacher (BBO No. 680258)
DONNELLY, CONROY & GELHAAR, LLP
260 Franklin Street, Suite 1600
Boston, MA 02110
Tel: (617) 720-2880
gwv@dcglaw.com
njr@dcglaw.com

*Counsel for Perla Huerta*

**CERTIFICATE OF SERVICE**

I hereby certify that I filed this document through the Court's ECF system on November 8, 2024, which will therefore automatically be sent electronically to all counsel of record via the CM/ECF system.

Dated: November 8, 2024

/s/ *Bryan Weir*