<div align="center">

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

</div>

| | |
|---|---|
| ALIANZA AMERICAS, YANET DOE, PABLO DOE, and JESUS DOE, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>      v.<br><br>RONALD D. DESANTIS, Governor of Florida, in his personal capacity; LAWRENCE A. KEEFE, Florida Public Safety Czar, in his personal capacity; JAMES UTHMEIER, Chief of Staff to Florida Governor, in his personal capacity; JAMES MONTGOMERIE; PERLA HUERTA; and VERTOL SYSTEMS COMPANY, INC.,<br><br>      Defendants. | Civil Action No.<br>1:22-cv-11550-ADB<br><br>Leave to file reply brief granted on August 5, 2024 |

<div align="center">

**REPLY IN FURTHER SUPPORT OF DEFENDANTS JAMES MONTGOMERIE AND
VERTOL SYSTEMS COMPANY, INC.'S MOTION TO DISMISS**

</div>

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 2

I.   **The Court Should Dismiss Mr. Montgomerie Because the Factual Allegations Upon Which Plaintiffs Rely to Establish Jurisdiction Under Section 3(a) of the Long-Arm Statute Are Either Flawed or Have Been Raised Previously** ............... 2

    A.   The Court Should Disregard Four Factual Allegations Upon Which Plaintiffs' Jurisdictional Case Rests Because They Are Entirely Unsupported by the Record ................................................................................ 2

    B.   Plaintiffs' Jurisdictional Argument Under Section 3(a) of the Long-Arm Statute Solely Relies on Factual Allegations that Were Previously Set Forth in the First Amended Complaint and Previously Acknowledged by the Court ...................................................................................................... 5

II.   **Plaintiffs Have Not Established that the "Primary Participant" Doctrine Would Allow the Court to Impute Conduct by Vertol to Mr. Montgomerie for Purposes of Jurisdiction under Section 3(c) of the Long-Arm Statute** ...................... 7

    A.   Plaintiffs Advance Flawed and Incorrect Factual Allegations That Fail to Allege that Mr. Montgomerie Participated in Vertol's Jurisdiction-Conferring Conduct in Massachusetts ................................................... 8

    B.   Plaintiffs Do Not Allege That Mr. Montgomerie Derived a Personal Benefit or Acted Outside the Scope of His Employment in Support of Vertol's Jurisdiction-Conferring Conduct ............................................. 13

III.   **Plaintiffs Incorrectly Argue that Mr. Montgomerie Does Not Dispute that the Exercise of Personal Jurisdiction Does Not Comport with Due Process** ................... 14

IV.   **Plaintiffs Incorrectly Argue that Mr. Montgomerie Does Not Dispute that Plaintiffs Have Adequately Pleaded a Claim for a Violation of Substantive Due Process** ............................................................................................................. 16

CONCLUSION .................................................................................................................... 17

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Calder v. Jones*,
465 U.S. 783 (1984)...................................................................................8, 14

*Cossart v. United Excel Corp.*,
804 F.3d 13 (1st Cir. 2015).................................................................................12

*Galletly v. Coventry Healthcare, Inc.*,
956 F. Supp. 2d 310 (D. Mass. 2013) .................................................................12

*Johnson v. Creative Arts, Inc.*,
573 F. Supp. 1106 (D. Mass. 1983) .........................................................12, 13, 14

*Karlis v. Tradex Swiss AG*,
2007 WL 2705572 (Mass. Super. Ct. Sept. 7, 2007) ............................................12

*LaVallee v. Parrot-Ice Drink Prods. of Am., Inc.*,
193 F. Supp. 2d 296 (D. Mass. 2002) ..............................................................8, 14

*M-R Logistics, LLC v. Riverside Rail, LLC*,
537 F. Supp. 2d 269 (D. Mass. 2008) .........................................................8, 11, 13

*Peterson v. Burke*,
433 F. Supp. 3d 212 (D. Mass. 2020) ..................................................................11

*Post v. Mark Edward Partners LLC*,
2022 WL 5118214 (D. Mass. Oct. 3, 2022)..........................................................12

*Sensitech Inc. v. Limestone FZE*,
548 F. Supp. 3d 244 (D. Mass. 2021) ..................................................................11

*Wang v. Schroeter*,
2011 WL 6148579 (D. Mass. 2011) .....................................................................13

**Rules**

Federal Rule of Civil Procedure 12(b)(2) .....................................................................15

Federal Rule of Civil Procedure 12(b)(6) .....................................................................16

Defendants James Montgomerie and Vertol Systems Company, Inc. ("Vertol") submit this reply in further support of their motion to dismiss the Second Amended Class Action Complaint, ECF No. 137 (the "Second Amended Complaint" or "SAC").

## INTRODUCTION

Plaintiffs Alianza Americas, Yanet Doe, Pablo Doe, and Jesus Doe sued Vertol and Mr. Montgomerie, Vertol's chief executive officer, for various constitutional and tort claims arising out of a contract entered into by Vertol in Florida with the Florida Department of Transportation ("FDOT"). Under that contract, for which it was paid in Florida by the State of Florida, Vertol transported certain Latin American migrants from Texas to Massachusetts.

After Plaintiffs filed a First Amended Class Action Complaint, ECF No. 21 (the "First Amended Complaint" or "FAC"), Mr. Montgomerie moved to dismiss for, among other things, lack of personal jurisdiction. The Court dismissed him on that basis in a March 29, 2024 decision. *See* ECF No. 112 (the "Memorandum and Order" or "Mem. & Order").

Plaintiffs then filed the Second Amended Complaint. In it, they made new allegations intended to establish personal jurisdiction over all dismissed defendants, including Mr. Montgomerie.

As Mr. Montgomerie argued in his opening memorandum of law in support of his motion to dismiss this new pleading (the "Opening Brief" or "Opening Br.," ECF No. 155), Plaintiffs have still failed to establish personal jurisdiction over him. In their response to those arguments, Plaintiffs now focus on seven purported factual allegations to support personal jurisdiction under Section 3(a) of Massachusetts' long-arm statute, and five purported factual allegations to support, on a "primary participant" theory of personal jurisdiction under Section 3(c) of that statute.

As for Plaintiffs' arguments under Section 3(a), four of the seven allegations supposedly supporting jurisdiction lack support in, or misrepresent, the record. The remaining three

allegations are not even new.  They were before the Court—and acknowledged by the Court—as part of its original decision that it lacked personal jurisdiction over Mr. Montgomerie under the First Amended Complaint.

As for Section 3(c), Plaintiffs argue that Mr. Montgomerie was the "primary participant" in Vertol's conduct that the Court considered sufficient for personal jurisdiction over that corporation.  But, as with their arguments under Section 3(a), three of the five factual allegations offered for this purpose lack support in, or misrepresent, the record.  The remaining two allegations are (as with three of the allegations offered in Plaintiffs' arguments about Section 3(a)) allegations from the First Amended Complaint that were insufficient for jurisdiction then and that still fail to indicate how Mr. Montgomerie took any Massachusetts-specific action that made him the primary participant in the conduct of Vertol that the Court found supported jurisdiction in Massachusetts.  In short, Plaintiffs have not cured the jurisdictional defects of their First Amended Complaint and Mr. Montgomerie should remain dismissed from this action.

## ARGUMENT

I.     **The Court Should Dismiss Mr. Montgomerie Because the Factual Allegations Upon Which Plaintiffs Rely to Establish Jurisdiction Under Section 3(a) of the Long-Arm Statute Are Either Flawed or Have Been Raised Previously.**

Four of the allegations to which Plaintiffs point as support for jurisdiction over Mr. Montgomerie under Section 3(a) of the Massachusetts long-arm statute lack support in, or contradict, the record.  The other three allegations are not new, were not sufficient for jurisdiction over Mr. Montgomerie before, and are not sufficient now.

A.     <u>The Court Should Disregard Four Factual Allegations Upon Which Plaintiffs' Jurisdictional Case Rests Because They Are Entirely Unsupported by the Record.</u>

Plaintiffs argue that the Court has personal jurisdiction over Mr. Montgomerie because: (1) he "signed the memorandum responding to [Florida Department of Transportation's

("FDOT's")] request for quote," Consolidated Opposition to Defendants' Motion To Dismiss the Second Amended Complaint ("Opp. Br."), ECF No. 161, at 33 (citation omitted); (2) he "personally signed and submitted the final bid which contemplated" the transportation of migrants to Massachusetts, *id.* at 33–34 (citation omitted); (3) that he "inserted language listing Massachusetts as the destination" for Vertol's flights from Texas, *id.* at 33 (citation omitted); and (4) he "directly negotiated the FDOT contract that contemplated performance in Massachusetts," *id.* But the exhibits and other allegations on which Plaintiffs rely for these assertions either conflict with, or do not support, them.

*First*, Plaintiffs claim that their Exhibit 19 shows that Mr. Montgomerie "signed the memorandum responding to FDOT's request for quote." *Id.* (citing Decl. of Kenneth S. Leonetti ("Leonetti Decl."), ECF No. 129, Ex. 19). Exhibit 19 is a copy of Florida's "Freedom First Budget." *See* Leonetti Decl., Ex. 19. Obviously, it is not signed by Mr. Montgomerie. Nor does it mention Vertol or Mr. Montgomerie. In addition, Plaintiffs had previously made (and continue to make) an allegation that is, in substance, essentially identical to this supposedly new assertion. *See* FAC ¶ 45 (Mr. Montgomerie "sent a 'response to [a] request for quote dated 1 August 2022.'") (alteration in original); *accord* SAC ¶ 42 (same). The Court did not find this prior allegation relevant to its jurisdictional analysis because a contract between a Florida company and the Florida government does not constitute the transaction of any business in Massachusetts sufficient to establish jurisdiction under Section 3(a) of the long-arm statute. *See* Mem. & Order at 20. Plaintiffs' recharacterization of this prior allegation in different words does not change the Court's previous, correct conclusion that this allegation could not establish jurisdiction under Section 3(a).

*Second*, Plaintiffs claim that their Exhibit 27 shows that Mr. Montgomerie "personally signed and submitted the final bid which contemplated" the transportation of migrants to Massachusetts.  Opp. Br. at 33–34 (citing Leonetti Decl., Ex. 27).  Exhibit 27 purportedly shows a text message in which Mr. Keefe asks "[d]id you register with the state as discussed with FDOT," to which Mr. Montgomerie replies "[y]es."  Leonetti Decl., Ex. 27.  But this does not demonstrate that Mr. Montgomerie personally signed the final bid or submitted it to FDOT.  Even if it did, it still does not demonstrate the transaction of business *in Massachusetts* required for jurisdiction under Section 3(a) of the long-arm statute.

*Third*, Plaintiffs argue that they have now alleged that Mr. Montgomerie "inserted language listing Massachusetts as the destination for flights at Keefe's behest."  Opp. Br. at 33 (citing SAC ¶¶ 42–49).  What they actually say in the Second Amended Complaint is that *Mr. Keefe* inserted language listing Massachusetts as a possible destination.  Referring to a screenshot of an e-mail sent by Mr. Keefe to Mr. Montgomerie, Plaintiffs allege that:

> The new draft language *that Defendant Keefe provided* for the first time listed Massachusetts as a destination for the flights.  Specifically, the draft language *that Defendant Keefe provided* outlined a "Project" involving the "relocation of individuals to the State of Massachusetts or other, proximate northeastern state designated by FDOT."

SAC ¶ 48 (emphasis added).  Plaintiffs similarly allege that a proposal sent to FDOT "included language, *as suggested by Defendant Keefe*, designating Massachusetts as a destination where individuals would be flown."  *Id.* ¶ 54 (emphasis added).  There is actually *no* allegation that Mr. Montgomerie inserted such language into any proposal.

*Fourth*, without any citation to the Second Amended Complaint itself, Plaintiffs argue that "Montgomerie directly negotiated the FDOT contract that contemplated performance in Massachusetts."  Opp. Br. at 33.  The Second Amended Complaint contains no such allegation.  Instead, it alleges that *Vertol* communicated with FDOT officials.  *See* SAC ¶¶ 50 (referring to

"*Defendant Vertol's* initial August 2, 2022 response to FDOT" and that "*Defendant Vertol* represented" that it could fulfill FDOT's requests), ¶ 51 ("*Defendant Vertol* further stated that it could provide specific pricing once FDOT confirmed the number of seats required and the destination."), ¶ 52 ("On September 2, 2022, *Defendant Vertol* submitted an updated proposal . . . ."), ¶ 55 (referring to "[e]mails exchanged between officials at FDOT and *Defendant Vertol*"), ¶ 57 ("On September 6, 2022, *Defendant Vertol* submitted a follow-up proposal to . . . FDOT."). Thus, just like the other three arguments above, the record here—the actual allegations of the Second Amended Complaint and the various exhibits offered by Plaintiffs—do not support Plaintiffs' theory of personal jurisdiction based on supposedly new allegations against Mr. Montgomerie.

      B.     <u>Plaintiffs' Jurisdictional Argument Under Section 3(a) of the Long-Arm Statute Solely Relies on Factual Allegations that Were Previously Set Forth in the First Amended Complaint and Previously Acknowledged by the Court</u>**.**

The remaining three factual allegations to which Plaintiffs point as supporting jurisdiction under Section 3(a) of the Massachusetts long-arm statute are not actually new. Each of them was set forth in the First Amended Complaint and was acknowledged by this Court in its prior Memorandum and Order. In effect, Plaintiffs are simply making an improper motion to reargue that decision.

Plaintiffs first assert that Mr. Montgomerie "submitted the initial bid" to FDOT. Opp. Br. at 33 (citing SAC ¶ 42). This allegation is nearly identical to the allegation in Paragraph 45 of the First Amended Complaint. *See* FAC ¶ 45; *see also* ECF No. 127, Ex. B at p.16 (the "SAC Redline") (comparing the First Amended Complaint to the Second Amended Complaint).[1] Had the submission of a bid to FDOT been a sufficient basis for jurisdiction over Mr. Montgomerie,

---

[1] In the Second Amended Complaint, Plaintiffs deleted the word "Defendant" before "FDOT" because Plaintiffs did not include FDOT as a defendant in their new pleading.

the Court would not have dismissed him before.  As its prior decision indicates, it understood full well the fact of the bid submission.  *See* Mem. & Order at 6; *cf.* Mem. & Order at 22, 25 (bases for jurisdiction over Mr. Montgomerie).  This allegation is no more relevant now than it was before.

Plaintiffs next argue that Mr. Montgomerie "communicated with Keefe regarding the proposal submitted to FDOT."  Opp. Br. at 33 (citing SAC ¶¶ 42–49).  The First Amended Complaint also alleged that these two communicated about the proposal submitted to FDOT.  *See* FAC ¶ 46 ("Defendant Keefe was in regular correspondence with Defendant Montgomerie to make sure that the contract went through.").  Plaintiffs have added new allegations of additional instances of communication about the FDOT proposal.  *See* SAC ¶¶ 44–49; SAC Redline at pp.17–18.  But the Court has already recognized that "Keefe and Montgomerie had 'regular correspondence' regarding the bid, including texts and phone calls, in August and September of 2022."  Mem. & Order at 6 (citing FAC ¶¶ 46–47).  Including new examples of what the Court had already determined generally should not change the Court's previous conclusion.  None of these new examples do anything to change the fact that any such correspondence was between Florida residents to negotiate a contract between a Florida company and the Florida government.  The Court did not conclude before that such facts would show that Mr. Montgomerie had engaged in "business transactions in Massachusetts" sufficient to confer jurisdiction under Section 3(a) of the long-arm statute.  Mem. & Order at 22.  It should not conclude differently now.

Similarly, Plaintiffs argue that Mr. Montgomerie "amended the [FDOT] proposal in coordination with Keefe."  Opp. Br. at 33 (citing SAC ¶¶ 52–54).  Plaintiffs have added allegations that "Keefe called at least six times the day the [amended] proposal was submitted,"

that Mr. Montgomerie and Mr. Keefe texted each other after the amended proposal was submitted, and that the amended proposal included Mr. Keefe's proposed insertion of "Massachusetts" as a potential destination. *See* SAC ¶¶ 53–54; *see also* SAC Redline at p.21. But Plaintiffs had already alleged that Vertol amended its FDOT proposal on September 2, 2022, *see* FAC ¶ 50, that Mr. Keefe was "in regular correspondence with Defendant Montgomerie" during the entire bid process, *see id.* ¶ 46, and that Massachusetts was a potential destination for the flights, *see, e.g.*, *id.* ¶ 53. Indeed, the Court acknowledged in its prior decision dismissing Mr. Montgomerie from the action that Plaintiffs had alleged that Mr. Keefe and Mr. Montgomerie were cooperating to submit the proposal and that Massachusetts was named as a potential destination for the flights in the amended proposal. Mem. & Order at 6 (citing FAC ¶¶ 46–47), 7 (citing FAC ¶ 53). Simply listing more specifically some of Mr. Keefe's communications with Mr. Montgomerie, none of which occurred in Massachusetts, does not change the conclusion that Mr. Montgomerie has not transacted any business in Massachusetts.

As the discussion above makes clear, Plaintiffs actually have not pointed the Court to any new facts (by allegation or otherwise) that would be sufficient for personal jurisdiction over Mr. Montgomerie. The Court therefore should not change its prior conclusion that no such jurisdiction exists under Section 3(a) of the Massachusetts long-arm statute.

II.     **Plaintiffs Have Not Established that the "Primary Participant" Doctrine Would Allow the Court to Impute Conduct by Vertol to Mr. Montgomerie for Purposes of Jurisdiction under Section 3(c) of the Long-Arm Statute.**

Plaintiffs argue that this Court has personal jurisdiction over Mr. Montgomerie pursuant to Section 3(c) of Massachusetts' long-arm statute because he was the "primary participant" in conduct by Vertol that the Court considered sufficient for personal jurisdiction over Vertol under that Section. *See* Opp. Br. at 34–36. The Court exercised such personal jurisdiction because

7

Vertol's "planes, with at least one of its employees on board, flew into and landed in Massachusetts, where the injuries . . . occurred."  Mem. & Order at 26.

Plaintiffs now argue that this Court should impute those actions to Mr. Montgomerie and exercise personal jurisdiction over him as well.  Opp. Br. at 34–36.  As Mr. Montgomerie established in his Opening Brief, however, a defendant may be deemed a "'primary participant'" in a corporation's Massachusetts-based conduct only if that defendant participated in the Massachusetts-based conduct *and* "'derived personal benefit'" from that conduct, "'or acted beyond the scope of [his] employment.'"  Opening Br. at 16 (quoting *M-R Logistics, LLC v. Riverside Rail, LLC*, 537 F. Supp. 2d 269, 280 (D. Mass. 2008) (denying personal jurisdiction)).  Plaintiffs have not alleged facts sufficient to prove either of these two required elements.

A. <u>Plaintiffs Advance Flawed and Incorrect Factual Allegations That Fail to Allege that Mr. Montgomerie Participated in Vertol's Jurisdiction-Conferring Conduct in Massachusetts.</u>

Without an analysis of the relevant case law, Plaintiffs argue that several of the allegations in the Second Amended Complaint could establish that Mr. Montgomerie was the primary participant in the conduct the Court concluded was sufficient for personal jurisdiction over Vertol.  In each instance, however, Plaintiffs are arguing that Mr. Montgomerie participated in Vertol's conduct *generally*, rather than demonstrating (as they must) that he was the "'primary participant[] in [Vertol's] alleged wrongdoing' *intentionally directed at the forum*."  *LaVallee v. Parrot-Ice Drink Prods. of Am., Inc.*, 193 F. Supp. 2d 296, 301 (D. Mass. 2002) (quoting *Calder v. Jones*, 465 U.S. 783, 790 (1984)) (denying exercise of personal jurisdiction over corporate defendant) (emphasis added).

*First*, Plaintiffs allege that Mr. Montgomerie "negotiated the contract with FDOT, in coordination with Keefe."  Opp. Br. at 35 (citing SAC ¶¶ 42–61).  But this is inconsistent with Plaintiffs' other factual allegations on that issue.  Plaintiffs allege that Mr. Montgomerie emailed

8

the initial proposal to FDOT, *see* SAC ¶ 42, and corresponded with Mr. Keefe about the proposal, *id.* ¶¶ 43–49, 53, 56.  But, as explained above, *see supra* at 4–5, they allege that it was "Defendant Vertol," not Mr. Montgomerie, which participated in the negotiation process, received payments for the flights, and engaged Defendant Huerta to assist with on-the-ground recruitment efforts.  *See* SAC ¶¶ 50–52, 54, 55, 57, 59–61.  Even if Plaintiffs had alleged that Mr. Montgomerie had negotiated the contract with FDOT, they could not show that the negotiation of a contract between a Florida resident, on behalf of a Florida company, to procure business with the Florida government represents primary participation in tortious conduct that allegedly occurred in Massachusetts.

*Second*, Plaintiffs allege that Mr. Montgomerie "also planned and executed the flight to Massachusetts."  Opp. Br. at 35 (citing SAC ¶¶ 66, 72, 109, 114, 117, 134).  But the allegations Plaintiffs cite would establish only that Mr. Montgomerie was knowledgeable about efforts to recruit migrants to board the planes arranged by Vertol.  Those allegations do not assert the planning and execution of the flights *to Massachusetts*.  *See* SAC ¶ 66 (text messages purportedly show that "Defendant Keefe was in close contact with Defendants Huerta and Montgomerie *to coordinate efforts to recruit immigrants*"), ¶ 72 ("Defendant Montgomerie kept Defendant Keefe apprised of how *efforts on the ground* [in Texas] were proceeding."), ¶ 109 (Mr. Montgomerie texted Mr. Keefe a photograph of "the type of aircraft that Defendants would use to transport the migrants . . . as planned by Defendant Keefe and *Defendant Vertol*"), ¶ 114 (Mr. Montgomerie texted Mr. Keefe that there were 50 migrants prepared to board the flights), ¶ 117 (Mr. Montgomerie reserved a hotel room for Mr. Keefe in Texas), ¶ 134 (Mr. Montgomerie boarded a flight in Texas) (emphases added).  None of these allegations show that Mr. Montgomerie was the primary participant in any "planning" by anyone (much less Vertol) to

send a flight to Massachusetts, or that he was the primary participant in the "execution" of a flight to Massachusetts.

*Third*, Plaintiffs allege that Mr. Montgomerie was a "point of contact with Keefe in providing updates on the progress of the scheme."  Opp. Br. at 35 (citing SAC ¶¶ 71–72).  These alleged communications occurred in Florida and Texas between a Florida resident and a Florida government official to discuss Mr. Keefe's "travel plans to San Antonio . . . including sharing rides and staying at the same hotels" as Mr. Montgomerie and providing updates about "efforts on the ground" in San Antonio to recruit immigrants to board the flights.  SAC ¶¶ 71–72.  This has no nexus with Massachusetts.  Nowhere do Plaintiffs allege that these communications directed or influenced Vertol's conduct in Massachusetts.  As a result, they cannot serve as a basis for jurisdiction in Massachusetts.

*Fourth*, Plaintiffs allege that Mr. Montgomerie was "involved in selecting the aircraft used to transport the Plaintiffs."  Opp. Br. at 35 (citing SAC ¶ 109).  Referring to a screenshot of a text message, Plaintiffs claim that:

> On September 7, 2022 . . .  Defendant Montgomerie texted Keefe a photo of an aircraft and wrote 'Wednesday[']s ride x 2[.]'  On information and belief, this was a photo of the type of aircraft that Defendants would use to transport the migrants to Massachusetts the following week, as planned by Defendant Keefe and *Defendant Vertol*.

SAC ¶ 109 (emphasis added).  This would not prove that Mr. Montgomerie selected the plane; it only shows that he knew which plane had been selected.  Even if Plaintiffs had established that Mr. Montgomerie selected the plane himself, they do not explain why selecting a plane owned by an Ohio limited liability company, *see* SAC ¶ 128 & n.32, would confer jurisdiction over Mr. Montgomerie in Massachusetts.

*Fifth*, Plaintiffs allege, as they did in the First Amended Complaint, that Mr. Montgomerie "flew with the Plaintiffs for the first leg of the trip from Texas to Florida."  Opp.

Br. at 35 (citing SAC ¶ 138); *accord* FAC ¶ 131.  Plaintiffs also repeat their allegation that Mr.

Montgomerie disembarked in Crestview, Florida.  SAC ¶ 138; *accord* FAC ¶ 131.  The Court has

already determined that this allegation counsels *against* exercising personal jurisdiction over Mr.

Montgomerie.   *See* Mem. & Order at 26 ("Montgomerie did not travel with Plaintiffs to

Massachusetts . . . . The Court therefore finds insufficient facts to exercise jurisdiction over . . .

Montgomerie under § 3(c)."); *see also id.* (exercising jurisdiction over Vertol because "at least

one of its employees [was] on board, [and] flew into Massachusetts, where the injuries described

above occurred").

As for the case law on these issues, Mr. Montgomerie argued that Plaintiffs would not be

able to identify any "case from a Massachusetts court in support of" their "primary participant"

theory that is not factually distinguishable from the current action.  Opening Br. at 13.  This has

proven correct.

To begin, the three main cases Plaintiffs cite to support their argument on this point

resulted in a complete dismissal for lack of personal jurisdiction.   They support Mr.

Montgomerie's position, not Plaintiffs'.  *See Peterson v. Burke*, 433 F. Supp. 3d 212, 218–19 (D.

Mass. 2020) (no jurisdiction where "plaintiff has failed sufficiently to allege that any of the

Individual Defendants was a primary participant in the alleged wrongful activity" and that they

personally "benefitted" from the wrongful activity); *M-R Logistics*, 537 F. Supp. 2d at 280 (D.

Mass. 2008) (no jurisdiction where "there [was] no allegation, much less evidence, that either

[corporate officer] gained any personal benefit from the alleged breach of contract or acted

outside the scope of his or her employment"); *Sensitech Inc. v. Limestone FZE*, 548 F. Supp. 3d

244, 254 (D. Mass. 2021) (rejecting "primary participant" doctrine because plaintiff "has alleged

no specific forum-based contacts of [the defendant] providing an independent basis for jurisdiction as a result of his personal conduct").

Plaintiffs do cite three cases that found personal jurisdiction. But Mr. Montgomerie had already shown, however, that the defendants in these cases had "far more intentional and substantial" contacts with Massachusetts than Mr. Montgomerie. Opening Br. at 14–15, *citing Cossart v. United Excel Corp.*, 804 F.3d 13 (1st Cir. 2015), *Post v. Mark Edward Partners LLC*, 2022 WL 5118214 (D. Mass. Oct. 3, 2022), *and Galletly v. Coventry Healthcare, Inc.*, 956 F. Supp. 2d 310, 313–15 (D. Mass. 2013). Plaintiffs simply do not engage with the distinctions made in that Opening Brief. *See* Opp. Br. at 33–36.[2]

The only other case that Plaintiffs cite in support of their "primary participant" theory is *Johnson v. Creative Arts, Inc.*, 573 F. Supp. 1106 (D. Mass. 1983). *See* Opp. Br. at 34, 35. In *Johnson*, the court declined to exercise jurisdiction over one of two individual defendants because his status as "the corporation's secretary" and owner of a "substantial portion of the corporation's stock does not without more establish that he was transacting business in Massachusetts for jurisdictional purposes." 573 F. Supp. at 1111. As to the other individual defendant, the court found that there was evidence "sufficient to establish an independent basis

---

[2] Plaintiffs also mischaracterize Mr. Montgomerie's argument that *Cossart* and *Post* are distinguishable because they involved claims arising under the Massachusetts Wage Act. Those cases are distinguishable on that basis because the Wage Act itself assigns liability for the wages of Massachusetts workers to the president and treasurer of a company having such workers as though such officers were *themselves* the employer of the Massachusetts workers. Opening Br. at 14. A court in Massachusetts simply has more basis for imputing a company's jurisdiction-conferring actions to a corporate officer where there is a statute that specifically imposes a Massachusetts duty on that corporate officer. *See* Opening Br. at 14, *citing Barthel v. One Community, Inc.*, 233 F. Supp. 2d 125, 127–28 (D. Mass. 2002) (denying motion to dismiss for lack of personal jurisdiction where the plaintiff argued "[a]s further evidence that personal jurisdiction . . . exists" that the "Wage Act expressly provides that the President and Treasurer of an Employer party are liable" for Wage Act violations), *and Karlis v. Tradex Swiss AG*, 2007 WL 2705572, at *4, *5 (Mass. Super. Ct. Sept. 7, 2007) (finding court "may well have such jurisdiction over" corporate officers "under the Wage Act claims at least" where the corporate officers exercised "almost total control over" the corporate employer and "may well be deemed 'employers' [under the Wage Act] and thereby subject to this Court's jurisdiction under the Longarm Statute"). Contrary to Plaintiffs' arguments, *see* Opp. at 34 n.1, 35, Mr. Montgomerie did not and does not claim that the "primary participant" doctrine can apply only in a Wage Act case. Wage Act cases simply have a feature favoring application of that doctrine that does not exist here.

for long-arm jurisdiction" (separate from the basis for jurisdiction over the corporation) because he "planned the incorporation" of the corporate defendant, "composed and mailed the solicitation letter" at the core of the dispute, and "even accepted telephone orders from Massachusetts retailers." *Id.* Mr. Montgomerie's Opening Brief explains how he is more like the corporate officer over which the *Johnson* court declined to exercise jurisdiction. Plaintiffs do not refute that explanation. Nor do they explain why this Court should instead treat Mr. Montgomerie like the other individual defendant in *Johnson*.

B.   Plaintiffs Do Not Allege That Mr. Montgomerie Derived a Personal Benefit or Acted Outside the Scope of His Employment in Support of Vertol's Jurisdiction-Conferring Conduct.

The "primary participant" theory "necessarily entails an inquiry, under general principles of agency law, of whether an officer or employee derived personal benefit from their contacts in Massachusetts and/or acted beyond the scope of their employment." *M-R Logistics*, 537 F. Supp. 2d at 280 (quoting *LaVallee*, 193 F. Supp. 2d at 301); *see also* Opening Br. at 13–16; Opp. Br. at 34, 36. Plaintiffs argue that Mr. Montgomerie "directly benefitted" from Vertol's actions because Vertol received a $615,000 payment for the flights ending in Massachusetts, Opp. Br. at 36 (citing SAC ¶ 58), and "[a]s the owner of Vertol, Montgomerie directly benefitted from those payouts." Opp. Br. at 36.[3] They do not allege anything about the scope of his employment, much less that he acted outside of it.

---

[3] Plaintiffs also allege that Vertol received a $950,000 payment for other flights that never occurred. Opp. Br. at 36 (citing SAC ¶ 59). Yet they concede that these flights would have been to destinations other than Massachusetts. *See* SAC ¶¶ 221–25 (alleging that FDOT planned to conduct additional flights to Delaware and Illinois). Thus, even if Plaintiffs had adequately alleged that Mr. Montgomerie personally benefited from the payment to Vertol for such flights, they could not be used to support personal jurisdiction over him in Massachusetts because the allegation about the other flights "does not allege that [the defendant] derived a personal benefit from *any contact in Massachusetts*." *Wang v. Schroeter*, 2011 WL 6148579, at *5 (D. Mass. 2011) (denying jurisdiction under primary participant theory) (emphasis added).

Plaintiffs' own cases directly contradict their conclusion that he derived a direct personal benefit sufficient for jurisdiction over him in Massachusetts. For example, Plaintiffs construe *Johnson* as holding that "[a] defendant may personally benefit from the corporate contacts with Massachusetts where he owns a significant stake in the corporation and directs the activities of the corporation." *Id.* at 35 (citing *Johnson*, 573 F. Supp. at 1111–12). Yet the *Johnson* decision actually says that a "conclusory allegation that [an] individual defendant[] own[s] and control[s] the corporate defendant is insufficient to show that [he] transacted business with Massachusetts." *Johnson*, 573 F. Supp. at 1111. Plaintiffs' allegations about Mr. Montgomerie are inadequate for just this reason: they say no more than that he is the owner of Vertol, and therefore benefits from its success.[4]

III.     **Plaintiffs Incorrectly Argue that Mr. Montgomerie Does Not Dispute that the Exercise of Personal Jurisdiction Does Not Comport with Due Process.**

Plaintiffs argue that "Montgomerie does not dispute that the exercise of personal jurisdiction over him would comport with the constitutional requirements of due process." Opp. Br. at 36. This is wrong. Mr. Montgomerie explicitly incorporated by reference into this motion the previous briefing by him and Vertol challenging Plaintiffs' jurisdictional case under the Due Process Clause. *See* Opening Br. at 8 ("The claims against [Mr. Montgomerie] in the Second

---

[4] While Plaintiffs cite *Johnson* as support for an argument that they have shown that Mr. Montgomerie "personally benefit[ed]" from the corporate action of Vertol, *see* Opp. Br. at 35, this actually is not possible because the "personal benefit" analysis was not established until nineteen years later in *LaVallee*. The court in *Johnson* held only that the "fiduciary shield" doctrine did not prevent a Massachusetts court from exercising personal jurisdiction under the Massachusetts long-arm statute over a corporate officer for corporation-related conduct. 573 F. Supp. at 1111. Nineteen years after *Johnson*, no court had yet decided what standard applied in the absence of the fiduciary shield doctrine. So, in *LaVallee*, the court adopted language from the U.S. Supreme Court's decision in *Calder*, 465 U.S. at 790, and held that, in lieu of the fiduciary shield doctrine, a court should apply "agency principles" to determine whether an individual defendant was the "'primary participant' in the alleged wrongdoing" committed by the corporation. *LaVallee*, 193 F Supp. 2d at 302. The court held that the defendant in that case was not the primary participant in the corporate action at issue because "he did not *act in the forum* to serve his personal interests," did not "derive[] any personal benefit from *his contacts in the Commonwealth* nor . . . act[] beyond the scope of his employment." *Id.* (emphasis added). This is the test that Massachusetts courts have used ever since and that, plainly, Plaintiffs have not satisfied.

Amended Complaint rest chiefly on the same allegations that this Court held were insufficient in the First Amended Complaint.   Montgomerie therefore incorporates by reference his prior arguments under Federal Rule of Civil Procedure 12(b)(2) against personal jurisdiction under the First Amended Complaint."), 25 ("For the reasons above and in their prior briefing incorporated by reference, Vertol and Mr. Montgomerie respectfully request that the Court enter an order [of dismissal as to Mr. Montgomerie]"); *see also* ECF No. 83 at 11–12 (Montgomerie's opening brief in support of motion to dismiss First Amended Complaint); ECF No. 107 at 6–7 (Montgomerie's reply brief in further support of motion to dismiss the First Amended Complaint).   Because Plaintiffs have not advanced any new jurisdictionally significant allegations against Mr. Montgomerie in the Second Amended Complaint, his previous arguments that Plaintiffs' allegations do not satisfy due process carry the same force.

Plaintiffs, in contrast, do not appear to incorporate by reference their previous briefing. Instead, they argue that the exercise of personal jurisdiction over Mr. Montgomerie would be constitutionally appropriate because the "constitutional analysis is the same for Mr. Montgomerie as it is for Vertol."  Opp. Br. at 36.  Except, of course, it is not the same.  Plaintiffs have alleged that Vertol sent planes and employees into Massachusetts and committed tortious conduct there. Plaintiffs have not alleged that Mr. Montgomerie has ever been in Massachusetts or that he intentionally directed any of his actions towards Massachusetts.  Put another way, Plaintiffs have not established that Mr. Montgomerie has had "minimum contacts" with Massachusetts because they have not established that he has had *any* contacts with Massachusetts.

IV.   **Plaintiffs Incorrectly Argue that Mr. Montgomerie Does Not Dispute that Plaintiffs Have Adequately Pleaded a Claim for a Violation of Substantive Due Process.**

Plaintiffs also incorrectly assert that Mr. Montgomerie has not raised any challenge to the claims against him other than ones of personal jurisdiction.  *See* Opp. Br. at 49 n.20 (as to substantive due process); Opp. Br. at 54 n.23 (as to the Fourth Amendment).  To the contrary, Mr. Montgomerie explicitly incorporated by reference into this motion his arguments for a dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Opening Br. at 17 ("To the extent that this Court determines that it may exercise personal jurisdiction over Montgomerie, Montgomerie expressly incorporates by reference his arguments in his original motion to dismiss the First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted."); *see also* ECF No. 83 at 22–24, 27–28 (Mr. Montgomerie's opening brief in support of motion to dismiss the First Amended Complaint), ECF No. 107, at 11, 12–13 (Mr. Montgomerie's reply brief in further support of motion to dismiss the First Amended Complaint).

Plaintiffs represented that they would not be making any new arguments concerning the adequacy of their claims.  *See* ECF No. 128 at 1–2 (representation by Plaintiffs that they have added allegations in the Second Amended Complaint only to "permit the Court to exercise personal jurisdiction over . . . Montgomerie with respect to Plaintiffs' claims"), 22–23 ("Plaintiffs have asserted the same claims against DeSantis, Keefe, Uthmeier, Huerta, and Montgomerie" which they defend as adequate for "substantially the same reasons as . . . explained in Plaintiffs' memorandum in opposition to defendants' motions to dismiss [the First Amended Complaint].").  In reliance on Plaintiffs' representations, Mr. Montgomerie rested by incorporation by reference on his prior briefing concerning the inadequacy of those claims.  The Court should disregard any argument by Plaintiffs that conflicts with this.

16

## CONCLUSION

For the reasons above, and as set forth in Mr. Montgomerie's Opening Brief (which incorporates by reference his previous briefing in support of his motion to dismiss the First Amended Complaint), Mr. Montgomerie respectfully requests that this Court dismiss him from the Second Amended Complaint.

<div style="margin-left: 40%;">

Respectfully submitted,

*/s/ Brian T. Kelly*
Brian T. Kelly (BBO No. 549566)
Ross MacPherson (BBO No. 705598)
NIXON PEABODY LLP
Exchange Place
53 State Street
Boston, Massachusetts 02109-2835
Tel: (617) 345-1000
Fax: (855) 714-9513
bkelly@nixonpeabody.com
rmacpherson@nixonpeabody.com

Christopher M. Mason (admitted *pro hac vice*)
NIXON PEABODY LLP
Tower 46
55 West 46th Street
New York, New York 10036
Tel: (212) 940-3000
cmason@nixonpeabody.com

*Counsel for Defendants James Montgomerie and Vertol Systems Company, Inc.*

</div>

Dated: November 8, 2024

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically on November 8, 2024, and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing.

<div style="margin-left: 40%;">

*/s/ Ross MacPherson*
Ross MacPherson

</div>

17