**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ALIANZA AMERICAS, YANET DOE, PABLO DOE, and JESUS DOE, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> VERTOL SYSTEMS COMPANY, INC., <br><br> Defendant. | Civil Action No.: 1:22-cv-11550-ADB |

## PLAINTIFFS' OPPOSITION TO VERTOL'S MOTION TO RECONSIDER

Plaintiff Alianza Americas ("Alianza") and Plaintiffs Yanet Doe, Pablo Doe and Jesus Doe (the "Doe Plaintiffs"), on behalf of all those similarly situated (the "Class Plaintiffs," together with Alianza and the Doe Plaintiffs, the "Plaintiffs") respectfully submits this memorandum of law in opposition to the Motion to Reconsider the Court's Order Granting Plaintiffs' *Ex Parte* Motion to Proceed Pseudonymously ("Motion to Reconsider"), filed by Defendant Vertol Systems Company, Inc. ("Vertol").

## INTRODUCTION

Vertol's Motion to Reconsider is not a good-faith attempt to correct manifest error or present newly discovered evidence—it is a cynical, calculated maneuver designed to subject the Doe Plaintiffs to public harassment and harm. Vertol's timing is telling. The Court's order on Plaintiffs' Motion to Proceed Pseudonymously was entered on September 21, 2022, with an express invitation for defendants to seek reconsideration "[o]nce counsel for Defendants have entered appearance." Vertol's lead counsel entered his appearance more than three years ago. Yet Vertol said nothing. It raised no objection, gave no notice of intent to challenge the Order, and made no effort to revisit the issue while this litigation proceeded through years of motion practice

1

and, now, discovery disputes.  But somehow, Vertol suddenly claims the pseudonyms are now improper.

Vertol, however, fails to identify any newly discovered evidence, no intervening change in law, and no manifest error.  Instead, Vertol's entire motion is premised on the long-known and unremarkable fact that some of the Class Plaintiffs' names have appeared in the media.  But Vertol does not explain—because it cannot—how that justifies reconsideration of the Pseudonym Order.  Vertol concedes that there is nothing in the public record that reveals the critical information that the Pseudonym Order protects, *i.e.*, the identities of the three Doe Plaintiffs who are bringing this litigation.  The Court has rightly shielded that information from disclosure, in light of their reasonable fear that linking them to this lawsuit will cause harm to themselves and their families and will chill similarly vulnerable would-be litigants.  Indeed, if anything, the political climate today surrounding highly charged litigation about immigration makes the situation even more perilous for the named Plaintiffs than when the Court first issued its Pseudonym Order.

Nonetheless, Vertol asks this Court to reward its years of silence with an order that would strip protections from Yanet Doe, Pablo Doe, and Jesus Doe, individuals who face genuine risks of physical harm, harm to innocent non-party family members, and the chilling of future litigation by similarly vulnerable immigrants.  The Court should decline Vertol's transparent invitation to weaponize the judicial process against the very people Vertol has already victimized.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Martha's Vineyard Flights[1]

On September 14, 2022, Vertol transported approximately forty-nine immigrants, including Plaintiffs Yanet Doe, Pablo Doe, and Jesus Doe, by chartered aircraft from San Antonio,

---

[1] The following facts are from Plaintiffs' Second Amended Complaint.  Although pleaded as allegations, there is no serious dispute about these facts.

Texas to Martha's Vineyard, Massachusetts.  These individuals were lawfully present in the United States pending resolution of their immigration proceedings, having fled violent and unstable conditions in their home countries.  Vertol knew the names of all forty-nine of these individuals—and in fact had required all of them to provide Vertol's agent with their immigration documents while they were being lured by false promises to board the flights.  Although Vertol told these individuals that the flights were being funded by "a wealthy benefactor," in fact, the flights were a publicity stunt engineered to further Florida Governor Ron DeSantis' role on the national political stage.

Only minutes before landing did the individuals aboard the flight learn for the first time that their destination was Martha's Vineyard, a small island off Massachusetts accessible only by boat or plane.  No Massachusetts officials, federal governmental agencies, providers of social services, or local organizations had been notified of their impending arrival.  Further, upon disembarking, the individuals were met by a videographer, whose footage was promptly provided to Fox News, and loaded onto vans that deposited them at an unsuspecting community center.

In this manner, Vertol purposefully thrust these forty-nine vulnerable individuals—against their will—into the national media spotlight.  *See* Memorandum and Order, ECF No. 112, at 58 (characterizing Vertol's conduct as "nothing short of extreme, outrageous, uncivilized, intolerable, and stunning."); *see also id*. at 72 (highlighting "the anxiety that comes with being unwillingly inserted into a divisive national debate").  Moreover, because it turned out that it was the State of Florida that had engineered the flights—not the "wealthy benefactor" that Vertol had deceived the Plaintiffs into believing—media, print journalists, and photographers all descended on Martha's Vineyard, just as Vertol had hoped.  In In the aftermath of the flights, the incident received extensive national and local media coverage.

## II.    Class Plaintiffs' *Ex Parte* Motion to Proceed Pseudonymously

On September 20, 2022, Plaintiffs Yanet Doe, Pablo Doe, and Jesus Doe filed this action in this Court, along with an *ex parte* motion seeking to allow them to proceed under pseudonyms. *See* Motion to Proceed Pseudonymously, ECF No. 5.

In support of the motion, the Doe Plaintiffs submitted a memorandum of law and an attorney declaration from Plaintiffs' counsel, Iván Espinoza-Madrigal.  The motion argued that the Doe Plaintiffs aligned with three of the four paradigms for exceptional cases warranting pseudonyms: (1) that the Doe Plaintiffs reasonably feared unusually severe physical or psychological harm if their identities were revealed; (2) that revealing the Doe Plaintiffs' identities would expose innocent non-parties-including Plaintiff Yanet Doe's minor son and the Doe Plaintiffs' family members remaining in Venezuela-to harm; and (3) that forcing the Doe Plaintiffs to reveal their identities would produce a chilling effect on similarly situated future litigants with vulnerable immigration status.  The attorney declaration attested that the Doe Plaintiffs fled Venezuela to protect themselves and their families from gang, police, and state-sponsored violence and the oppression of political dissent.  It further stated that they have family members remaining in Venezuela who are vulnerable to persecution, violence, and extortion, and that the matter had already generated significant controversy, including threats of violence against counsel and the class members.

The following day, this Court granted the Doe Plaintiffs' motion to proceed pseudonymously.  *See* Electronic Order, ECF No. 7 (the "Pseudonym Order").  In the Pseudonym Order, the Court acknowledged the "strong presumption against the use of pseudonyms in civil litigation" but found that the Doe Plaintiffs had "rebutted the presumption in favor of disclosure" based on the circumstances presented, citing the same paradigms identified in the Doe Plaintiffs' motion.  *Id.*  Critically, the Pseudonym Order expressly reserved the right for Defendants to seek

reconsideration once they entered appearances in the case. *Id.* (stating "[o]nce counsel for Defendants have entered appearances, they may elect to file a motion for reconsideration.").

This case has been pending for over three years. Vertol has filed two motions to dismiss, the second of which was denied on March 31, 2025, nearly a year ago. Until the instant motion, neither Vertol nor any of the former Defendants have brought a motion for reconsideration of the Pseudonym Order.

## III.    Identification of the Legal Names of Doe Plaintiffs to Vertol

In response to an Interrogatory, Plaintiffs disclosed the actual legal names of Plaintiffs Yanet Doe, Pablo Doe, and Jesus Doe to Vertol's counsel under a preliminary "Highly Confidential – Attorneys Eyes Only" designation, since after six months of negotiation, a protective order had not yet been agreed upon or entered.[2] The only information in the response that was "new" to Vertol was who were the Doe Plaintiffs. In connection with its participation in the Martha's Vineyard flights and contemporaneous with those flights Vertol had acquired and possessed identifying information about the Class Plaintiffs. Thus, Vertol has been fully aware of the names of all the putative Class Plaintiffs since September 2022.

## IV.    Vertol's Motion for Reconsideration

At no point during the three years prior to this date did Vertol represent to Plaintiffs' counsel that it intended to file a motion for reconsideration or otherwise indicate that it was considering filing a motion for reconsideration of the Pseudonym Order. ██████████████

████████████████████████████████████████████████

---

[2] On January 30, 2026, the parties filed a Joint Motion for Entry of Protective Order to govern the disclosure and use of confidential information during discovery.

███████████████████████████████████

████████████████████████████

On December 30, 2025, Vertol informed Plaintiffs of its intent to seek reconsideration or clarification of the Pseudonym Order, "as invited by the Court." On January 13, 2026, the parties conferred on the motion. During the conferral, Vertol's counsel acknowledged: (1) they are not aware of anything publicly identifying Yanet Doe, Pablo Doe, and Jesus Doe as the three named Plaintiffs in the lawsuit, and (2) that Vertol sought to invoke the traditional justifications for litigation being public as a motivating factor for wanting Class Plaintiffs' names to be public, including subjecting the Class Plaintiffs to "public scrutiny." *See* Declaration of Jasmine N. Brown, ¶¶ 6-9.

## ARGUMENT

### I.    Vertol fails to satisfy the threshold questions necessary to bring a motion for reconsideration.

In entering its Pseudonym Order, the Court noted that defendants could seek reconsideration of it. Nevertheless, that right is not unlimited. In order to bring a motion for reconsideration, the moving party must satisfy two threshold questions. The first is whether the motion demonstrates (1) newly discovered evidence, (2) an intervening change in the law, or (3) that there was a manifest error in the law or the decision was unjust. *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009). The second is whether the motion is timely. *Allen v. Michael Fuller & Xvsouth, LLC*, No. 23-CV-10549-AK, 2025 U.S. Dist. LEXIS 256568, at *2 (D. Mass. Dec. 11, 2025) (stating that, in considering a motion for consideration, "the Court must first address a threshold issue. . . the timeliness of the motion."). Vertol has failed to satisfy either question.

**A.      None of the evidence that Vertol has identified is "newly discovered"**

Vertol does not contend that there has been an intervening change in the law or manifest error. Instead, Vertol argues that it has discovered "new evidence" that warrants reversal of the Pseudonym Order. But the cited "evidence" does nothing of the sort. All of the forty-nine passengers on the Martha's Vineyard flights were thrust into the public spotlight as a result of Vertol's deception. That is not news. Indeed, it was the very purpose of the scheme. ██████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

Thus, the so-called "new evidence" is based on information that was previously available to Vertol and that, with reasonable diligence, could have been obtained and presented much earlier in these proceedings. *Torosian v. Garabedian*, No. 15-11887-FDS, 2016 U.S. Dist. LEXIS 136992, at *7 (D. Mass. Oct. 3, 2016) ("evidence is not 'new' if the underlying facts were previously discoverable with appropriate diligence"). All Vertol has done is "google" each of the names that it has had in its possession since 2022. If it has taken offense to the order since it entered the case in December 2022, Vertol has not provided a convincing explanation as to why it could not have reasonably engaged in this overly simple exercise between then and now. *See In re Genzyme Corp*., No. 09-11267-GAO, 2012 U.S. Dist. LEXIS 180973, at *2 (D. Mass. Dec. 21, 2012) (quoting *Fisher v. Kadant*, 589 F.3d 505, 513 (1st Cir. 2009)) ("At the very least the [moving party] must put forth a 'cogent reason' as to why this evidence could not have been offered at an earlier stage of the proceedings.").

Additionally, the evidence presented does not provide the Court with any new information.



Counsel for Vertol acknowledged this point before filing the motion.  *See* Brown Dec. at ¶ 7.  During discussions regarding this motion, Plaintiffs' counsel requested that Vertol's counsel supply information linking the named individuals to the litigation as Doe Plaintiffs.  Vertol's counsel responded that they were unaware of any such articles establishing that connection and thus could not provide it.  This remains accurate.  If it were not the case, then Vertol would not have needed Plaintiffs to identify the Doe Plaintiffs (as it complains).

As such, Vertol's delay and lack of justification underscore that its motion is not grounded in any legitimate discovery of new facts, but rather in an untimely attempt to relitigate matters already decided by the Court, and to bring each of the individuals that it has already harmed into the public sphere.

### B.    Vertol is inexcusably late in bringing this motion.

Vertol has also filed this motion extremely late.  "[W]hether a motion for reconsideration has been timely filed or not rests solely on whether or not the motion was filed unreasonably late." *Villanueva-Mendez v. Nieves Vazquez*, 360 F. Supp. 2d 320, 323 (D.P.R. 2005), aff'd, 440 F.3d 11 (1st Cir. 2006).  The clock for Vertol to file its motion for reconsideration started ticking more

than three years ago.  The Pseudonym Order was clear about the absentee defendants' timeline: "[o]nce counsel for Defendants have entered appearances, they may elect to file a motion for reconsideration."  *See* Joint Motion for Entry of Protective Order ("Joint Motion"), ECF No. 212, at 11.  Lead counsel for Vertol entered his appearance on December 22, 2022, over two weeks after Vertol had been served with the First Amended Complaint.  *See* Notice of Appearance for Brian Kelly, ECF No. 30; Proof of Service on Vertol Systems Company, Inc., ECF No. 34.  Vertol had all the necessary information to file this motion at that point, but did not do so.

Vertol's passing reference to "due process concerns" and cases cited are also unpersuasive. Vertol is not litigating against a plaintiff that is anonymous to them.  *But see United States v. Microsoft Corp.*, 56 F.3d 1448, 1463 (D. C. Cir. 1995) ("We are not aware of any case in which a plaintiff was allowed to sue a defendant and still remain anonymous to that defendant.").  They knew each of the individuals who were on their planes.  *See* Joint Motion, at 11 (stating that Vertol "has possessed the Doe Plaintiffs' and putative class members' identifying information for **more than three years**.") (emphasis in original).  In *In re Sealed Case*, 971 F.3d 324 (D.C. Cir. 2020), the court refused to address whether the pseudonym order took "into account the risk of unfairness to the opposing party" because, like Vertol, the Environmental Protection Agency was aware of the plaintiff's identity.  *Id.* at 326 n.1.  Also, as Vertol has had the Class Plaintiffs' information since September 2022, it is not the case that Vertol is "being forced to proceed with insufficient information to present their arguments against the plaintiff's case," as Vertol contends.  *But see DeAngelis v. Nat'l Entm't Grp. LLC*, No. 2:17-cv-00924, 2019 U.S. Dist. LEXIS 36420, at *5 (S.D. Ohio Mar. 7, 2019).

Thus, Vertol cannot use this as a cause of its delay.  Vertol's supposed "new evidence" consists of google searches of each of the Class Plaintiffs' names, ███████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████  And even to the extent that they took issue with the Doe Plaintiffs not being identified by their legal names in the initial disclosures (even though there had not been a protective order in place), Vertol was the cause of their own delay by failing to raise the issue until November 2025, 6 months after the initial disclosures were exchanged.  *See* Exhibit 1.  Therefore, this motion is three years overdue.

## II.    The Doe Plaintiffs have satisfied their burden to proceed under pseudonym

The burden has not shifted to Plaintiffs to demonstrate that a Pseudonym Order must stay in place.  "In order for a court to reconsider," the moving party "must set forth facts or law of a strongly convincing nature to induce the court to reverse [the] prior decision."  *See Davis v. Lehane*, 89 F. Supp. 2d 142, 149 (D. Mass. 2000).  Thus, Vertol must show that the Court was wrong in finding that the Doe Plaintiffs successfully overcame the "strong presumption against the use of pseudonyms in civil litigation."  *Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 67 (1st Cir. 2022) (quoting *Does 1–3 v. Mills*, 39 F.4th 20, 24 (1st Cir. 2022)).  It has made no such showing.

### A.    Vertol misstates the standard for a Motion to Proceed under Pseudonym

Vertol, by choice or by fault, fails to correctly identify the standard established under *Mass. Inst. of Tech.*, which guides courts in the First Circuit in determining when a party has overcome the presumption against the use of pseudonyms.  In *Mass. Inst. of Tech*, the First Circuit deliberately declined to adopt a complex multi-factor test for determining whether a party should be permitted to proceed under a pseudonym, preferring a clearer standard over the more complex approaches taken by other circuits.  46 F.4th at 69 ("In deciding when the use of a pseudonym in civil litigation may be warranted, several of our sister circuits have devised elaborate multi-factor tests.  These various tests pit the movant's quest for anonymity against an array of countervailing

interests. . . Regrettably, these multi-factor tests do not establish a clear standard." [internal citations omitted]). Thus, Vertol's citation to multi-factor tests from courts in other circuits is unavailing. *See Doe v. Merten*, 219 F.R.D. 387, 388 (E.D. Va. 2004); *Doe v. Barr*, No. 20-cv-02917-JSC, 2020 U.S. Dist. LEXIS 91691, at *1 (N.D. Cal. May 26, 2020); *Doe v. Shakur*, 164 F.R.D. 359, 362 (S.D.N.Y. 1996); *Rapp v. Fowler*, 537 F. Supp. 3d 521, 529 (S.D.N.Y. 2021).[3]

Additionally, the First Circuit cases that Vertol does cite predate *Mass. Inst. of Tech.* and use a different test to analyze if pseudonymity should be granted. *See Doe v. Word of Life Fellowship, Inc.,* 2011 U.S. Dist. LEXIS 78383, at *2 (D. Mass. Jul. 18, 2011) (applying a multi-factor test set by the Third Circuit); *Doe v. Bell Atlantic Bus. Sys. Servs., Inc.*, 162 F.R.D. 418, 422 (D. Mass. 1995) (applying a simple balancing test). However, the First Circuit has now established a standard based on four general categories, or paradigms, which delineates "exceptional cases in which party anonymity ordinarily will be warranted." *Mass. Inst. of Tech.*, 46 F.4th at 71. These paradigms include where: (1) "a would-be Doe reasonably fears that coming out of the shadows will cause them unusually severe harm (either physically or psychologically)," (2) the identification of a "would-be Doe would harm 'innocent non-parties,'" (3) "anonymity is necessary to forestall a chilling effect on future litigants who may be similarly situated," and (4) lawsuits are "bound up with a prior proceeding made confidential by law." *Id.* at 71-72.

In stepping away from the other circuits, the First Circuit urged "courts—in balancing the relevant interests—[to] not lose sight of the big picture." *Id.* at 70. The First Circuit did not intend for these paradigms to be rigid. "[I]t is possible that a party whose case for pseudonymity appears weak when each paradigm is analyzed separately may nonetheless make a persuasive showing

---

[3] Even if these cases were relevant in light of the governing First Circuit standard, they are all readily distinguishable. *See infra* at 17-18.

when multiple paradigms are implicated. *Id*. at 72 (citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 n.9 (1987)) ("The various types of abstention are not rigid pigeonholes into which federal courts must try to fit cases.").  Instead, courts must proceed cautiously when determining that a person should not be allowed to proceed pseudonymously because "once the litigant's name is revealed on the public docket, the toothpaste is out of the tube and the media or other interested onlookers may take notice in a way that cannot be undone by an appellate decision down the road." *Mass. Inst. of Tech*., 46 F.4th at 66.  As such, the Court must balance the interests asserted by the movant in favor of privacy against the public interest in transparency, taking all relevant circumstances into account. *Id*. at 72.

> **B.    The Doe Plaintiffs satisfied their burden of demonstrating a need for pseudonymity.**

Vertol relies heavily on *Mass. Inst. of Tech* to argue that there is a strong presumption against the use of pseudonyms in litigation simply based on the "[n]ation's tradition of doing justice out in the open." *Mass. Inst. of Tech*., 46 F.4th at 67-68.  Yet Vertol fails to analyze whether any of the four paradigms that would allow for parties to proceed pseudonymously apply to the plaintiffs. *Id*. at 71-72.

> **1.    Plaintiffs satisfy three of the four paradigms.**

The First Circuit has continuously affirmed the notion that any singular or combination of the four paradigms can be used to justify a pseudonym order.  *See Doe v. City of Springfield,* No. 25-30092, 2025 U.S. Dist. LEXIS 96699, at *2-3 (D. Mass. May 16, 2025); *Doe v. Noem*, No. 1:25-cv-10495-IT, 2025 U.S. Dist. LEXIS 63145, at *5-6 (D. Mass. April 2, 2025); *In re Exch. Union Co.*, No. 24-mc-91645-ADB, 2025 U.S. Dist. LEXIS 53669, at *12-13 (D. Mass. March 24, 2025); *Doe v. Morgan Stanley & Co., LLC*, No. 1:24-cv-10391-JEK, 2024 U.S. Dist. LEXIS

139169, at *26 (D. Mass. Aug. 6, 2024). As set forth in their original motion, the Doe Plaintiffs satisfy three of the four paradigms.

### a. *The Doe Plaintiffs fear physical or psychological harm.*

The Doe Plaintiffs meet the first standard. They express concern that disclosing their identities would threaten them with significant harm due to the politically sensitive nature of immigration. Given the increasing polarization surrounding immigration, the Doe Plaintiffs are validly apprehensive that public identification may subject them to violence, threats, or substantial backlash. *See Molina v. U.S. Dep't of Homeland Security*, No. 25-3417, 2025 U.S. Dist. LEXIS 194750 at *5-6 (D.D.C. Oct. 1, 2025) (crediting Doe plaintiffs' argument that "disclosure of [plaintiffs'] identities and immigration statuses would expose them and their families to potential harassment and intimidation in the United States, citing recent high-profile immigration cases where other litigants have faced similar abuse."); *Doe v. Noem*, No.2:25-cv-00633-DGE, 2025 U.S. Dist. LEXIS 85350 at *9 (W.D. Wash. May 5, 2025) (collecting cases).

Additionally, all of the Doe Plaintiffs and putative Class Plaintiffs are from Venezuela, a country which has been the focus of enhanced immigration and deportation scrutiny by the current administration. Consequently, the Doe Plaintiffs reasonably fear that revealing their identities in this case could place them at risk of immediate physical harm.

### b. *Innocent non-parties could face harm via disclosure.*

Additionally, the Class Plaintiffs fear that identifying themselves in this litigation would harm "innocent non-parties," more specifically, their family members still living in Venezuela. Due to the Plaintiffs' decision to flee Venezuela, Plaintiffs fear if they are named in the litigation, their family members in Venezuela would face immediate risk of retaliatory violence. Indeed, this risk is even greater as a result of recent political changes following the United States's actions

involving Venezuelan President Nicolás Maduro.  Furthermore, Plaintiff Yanet Doe has a minor son who is also a victim in this scheme.

### c. *There is significant risk that disclosure could have a chilling effect on potential future litigants.*

Class Plaintiffs were targeted for this scheme by the Defendant due to their immigrant status.  Therefore, if Doe Plaintiffs were required to reveal themselves going forward, others with vulnerable immigration status, or no immigration status at all, will be hesitant to seek redress in the court.  *See Doe v. Noem*, No. 1:25-cv-10495-IT, 2025 U.S. Dist. LEXIS 63145, at *7 (D. Mass. Apr. 2, 2025) (finding that if the court ordered the disclosure of Miguel Doe's identity, it would "likely deter similarly situated individuals from litigating cases such as these" with the perceived risk of deportation due to immigration status).  *See also Lozano v. City of Hazleton*, 620 F.3d 170, 195 (3rd Cir. 2010) (considering the fact that "prospective litigants lacking lawful status, would be deterred from bringing cases clarifying constitutional rights, if doing so required alerting federal immigration authorities to their presence" in affirming grant of pseudonym status), judgment vacated on other grounds by 563 U.S. 1030 (2011).

As such, Plaintiffs continue to satisfy three of the four paradigms, which should compel this Court to keep the Pseudonym Order.

### 2.    The record amply supports the Pseudonym Order.

Facts aligning with one or more of the paradigms can be shown by "a declaration or affidavit either by the moving party or by someone with special knowledge who can speak to the need for anonymity in that case."  *Doe v. Mass. Inst. of Tech*., 46 F.4th at 73.  As Vertol acknowledges, Plaintiffs' Motion to Proceed Pseudonymously was accompanied by a declaration by Plaintiffs' counsel, Ivan Espinoza-Madrigal.  Far from being "inaccurate," as Vertol baldly states, the declaration provided several specific, not speculative, facts, including, that the Class

Plaintiffs "fled to the United States in a desperate attempt to protect themselves and their families from gang, police, and state-sponsored violence[,] and the oppression of political dissent," had "family members remaining in Venezuela, where they are vulnerable to persecution, violence, and extortion," and that "[t]his matter has already generated significant controversy, including threats of violence against undersigned counsel and the class members."

Class Plaintiffs' fears have never been and certainly are not currently untethered from the real world. Indeed, the entire basis of this case is that the Class Plaintiffs were targeted by government officials for improper and illegal treatment. The thrust of Vertol's main argument, that Class Plaintiffs have nothing to fear from being publicly linked to this suit, relies on the 2004 case of *Doe v. Merten*. Memo. at 11 ("Equally implausible is the notion that the federal government would heed any such request by the state or have a sufficient interest in plaintiffs' suit challenging a state policy to cause the appropriate federal officials to initiate deportation proceedings.") (*citing Merten*, 219 F.R.D. at 393). However, this argument is as callous as it is fanciful. If anything, the risks outlined in the declaration have only escalated since the Pseudonym Order was first entered. As numerous courts have recognized, the current climate around immigration puts litigants at extreme risk of harm from both governmental and non-governmental actors if they are identified as Plaintiffs in a lawsuit that raises these politically charged issues. *See*, *e.g.*, *Does 1-158 v. Rubio*, No. 25-3032, 2025 U.S. Dist. LEXIS 186924 at *6 (D.D.C. Sep. 23, 2025) (highlighting the current "period of heightened public scrutiny of immigration matters" in granting Doe status); *Doe #1 v. Noem*, No. 25-cv-317-wmc, 2025 U.S. Dist. LEXIS 79400, at *2-3 (W.D. Wis. Apr. 25, 2025) (citing *Ozturk v. Trump*, 777 F. Supp. 3d 26, 30 (D. Mass. Apr. 4, 2025)) (noting named plaintiffs' "extreme anxiety" and that fear of retaliation in the current climate is "more than speculative"); *Doe v. Noem*, 2025 U.S. Dist. LEXIS 85350 at *7 (W.D.

Wash. May 5, 2025) (finding that "Plaintiff's fear of severe online or public harassment if he were named as the Plaintiff in a high-profile immigration case is not unreasonable," and noting that "[t]he Court cannot know *ex ante* how severe any online harassment would be if Plaintiff's name were revealed, but the Court need not—and will not—expose Plaintiff to a social experiment to find out."). The current presidential administration has also, at times, been doggedly focused on Venezuela and Venezuelans in particular, coupling derogatory rhetoric with specific actions such as revoking the temporary protected status of Venezuelans, to deporting hundreds of Venezuelans—not to their home country, but to a notorious torture prison in El Salvador.[4]

Moreover, the situation in Venezuela is increasingly unstable, as the recent capture and ousting of Venezuelan president Nicolás Maduro has exacerbated the political destabilization of the county.[5] The Department of States continues to have a "Level 4: Do Not Travel" advisory for Venezuela, warning individuals "Do not travel to Venezuela for any reason." *See Miot v. Trump*, No. 25-cv-02471 (ACR), 2026 U.S. Dist. LEXIS 21504, at *6 (D.D.C. Feb. 2, 2026) (stating that "'Do not travel to [] for any reason' does not exactly scream. . . suitable for return."). Yet, Vertol would have the Court to believe that it is unfounded for Yanet Doe, Pablo Doe, and Jesus Doe to

---

[4] *See* Vacatur of 2025 Temporary Protected Status Decision for Venezuela, 90 Fed. Reg. 8807; Termination of the Oct. 3, 2023 Designation of Venezuela for Temporary Protected Status, 90 Fed. Reg. 9043–9044; Nicholas Riccardi and Regina Garcia Cano, *Trump administration deports hundreds of immigrants even as a judge orders their removals be stopped*, ASSOCIATED PRESS (Mar. 17, 2025); Marcos Alemán and Regina Garcia Cano, *What to know about El Salvador's mega-prison after Trump sent hundreds of immigrants there*, ASSOCIATED PRESS (Mar. 16, 2025). *See also* HUMAN RIGHTS WATCH, "YOU HAVE ARRIVED IN HELL": TORTURE AND OTHER ABUSES AGAINST VENEZUELANS IN EL SALVADOR'S MEGA PRISON (2025), https://www.hrw.org/sites/default/files/media_2025/12/elsalvador1125%20web.pdf.

[5] *See* María Luisa Paúl, *Fear grips Caracas as a new wave of repression is unleashed in Venezuela*, THE WASHINGTON POST (Jan. 6, 2026), https://www.washingtonpost.com/world/2026/01/06/venezulea-maduro-rodriguez-government-repression/.

fear severe harm, including risks of detention, deportation, harassment, and transnational retaliation to them and their families, if their identities are revealed. Forcing the Doe Plaintiffs to litigate under their legal names would significantly heighten the risks to them and their families and runs the risk of chilling future for searches for justice.

### 3.    Vertol's arguments to the contrary are not persuasive

The cases that Vertol identifies do not bind the court and are otherwise unavailing because pseudonymity was denied for reasons entirely attenuated from the instant case. For example, in *Rapp* and *Barr*, pseudonymity was denied as a result of the Doe party's self-identification in connection with the litigation. *See Rapp*, 537 F. Supp. 3d at 524 ("Some of the key facts derive from an article . . . describ[ing] an interview with a 'man' who 'approached' the magazine and made allegations against [the defendant] that are virtually identical to [the plaintiff]'s allegations in the complaint."); *Barr*, 2020 U.S. Dist. LEXIS 91691, at *3-4 (denying pseudonymity because the plaintiff "filed an application for release in [another case] under his real name," which "identified him as an asylum seeker, the basis for his asylum claim, and disclosed his diagnosis of schizophrenia and adjustment disorder" and therefore contradicted his "concern[] about disclosure of information regarding his mental health diagnosis and his status as an asylum seeker"). Importantly, there is nothing in the public record here linking the Doe Plaintiffs to this litigation.

As another example, in *Shakur*, pseudonymity was denied because although the plaintiff had alleged receipt of death threats, "those who presumably would have any animosity toward her already know her true identity" thereby reducing the likelihood that the public disclosure of her identity would increase such threats. *See Shakur*, 164 F.R.D. at 362. Here, considering the increased politicalization of the issue of immigration, the potential threat to the Doe Plaintiffs stretches beyond just Vertol's door. And, as addressed *supra*, the court in *Merten* was of a different time and the risks dismissed by that court are very different from the very real risks the Doe

Plaintiffs and immigrants face today. *But cf. Merten*, 219 F.R.D. at 388 (stating that "a party's immigration status is not 'a matter of sensitive and highly personal nature'" and discussing the risk of retaliation and deportation for plaintiffs).

Vertol has not identified any facts or law, let alone strongly convincing ones, that should compel this Court to reverse a more than three-year-old order. Thus, proceeding under pseudonyms remains not only warranted, but essential to protect the Doe Plaintiffs from the very real and ongoing dangers that disclosure would provoke.

### III.    Vertol's real purpose is to subject the Doe Plaintiffs to harassment and harm, and in turn have not alleged any real harm or prejudice to itself by the Pseudonym Order.

Vertol identifies no prejudice to its defense from the continued protection of Doe Plaintiffs' names. Nor could it. While cloaking themselves in the mantle of the First Amendment, it is clear that Vertol's true motivation is a "litigation strategy" designed to deter Plaintiffs from asserting their rights. When asked why disclosure matters in the instant action, counsel for Vertol stated that they were not required to disclose their "litigation strategy" to Plaintiffs' counsel and otherwise refused to answer. *See* Brown Decl. ¶¶ 8-9. Therefore, Plaintiffs are left to presume that the only purpose that Vertol now seeks disclosure of the Class Plaintiffs' names is that they hope that by putting Class Plaintiffs in the public domain that it would realize the Class Plaintiffs' fear and potentially chill litigation. That cannot be so.

Unlike the District of Columbia Circuit or the Sixth Circuit, the First Circuit has declined to adopt a test giving express weight to the defendant's interest. *But see In re Sealed Case*, 971 F.3d at 326; *DeAngelis*, 2019 U.S. Dist. LEXIS 36420, at *5. Even if that were a factor that was proper for this Court to consider, there is no risk of unfairness to Vertol. Due to its deception, Vertol has known the names—and other highly sensitive information such as immigration status— of all the putative class since 2022. It also knows who Yanet Doe, Pablo Doe, and Jesus Doe are.

Despite numerous questions from Plaintiffs' counsel asking how the non-public nature of the Class Plaintiffs' names harms Vertol, Vertol continue to rely on conclusory allegations and arguments that "it does." This is a smokescreen. The Pseudonym Order does not "hamstring" discovery or prejudice Vertol's ability to defend itself in this litigation. Vertol is not the first party, nor will it be the last, to have to litigate against a Doe party. It cannot explain what circumstances make it so different from those other parties that have successfully navigated the discovery stage and litigated a suit that it is unable to do the same. As addressed in the Plaintiffs' Position in the Joint Motion for Protective Order, the Pseudonym Order also coexists with Plaintiffs' requested protective order in order to facilitate discovery while keeping the Class Members' identities out of the public record.

Accordingly, because Vertol has not provided an explanation regarding the necessity for relief from the Pseudonym Order, it has not met the substantial burden required to warrant reversal.

## **<u>CONCLUSION</u>**

For all the foregoing reasons, Plaintiffs respectfully request that the Court deny Vertol's Motion to Reconsider in full and grant such other and further relief as is just and proper.

Dated: February 17, 2026

Respectfully submitted,

*/s/ Kenneth S. Leonetti*

Kenneth S. Leonetti (BBO #629515)
Madeleine K. Rodriguez (BBO #684394)
Matthew E. Miller (BBO #655544)
Rachel L. Kerner (BBO #703341)
Jasmine N. Brown (BBO #710073)
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000
ksl@foleyhoag.com
mrodriguez@foleyhoag.com
mmiller@foleyhoag.com
rkerner@foleyhoag.com
jnbrown@foleyhoag.com

Oren Sellstrom (BBO #569045)
Iván Espinoza-Madrigal (BBO #708080)
Mirian Albert (BBO #710093)
Lawyers for Civil Rights
61 Batterymarch Street, 5th Floor
Boston, MA 02110
(617) 482-1145
osellstrom@lawyersforcivilrights.org

*Attorneys for Plaintiffs Alianza Americas,
Yanet Doe, Jesus Doe, and Pablo Doe*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed electronically on February 17, 2026, and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing.

*/s/ Kenneth S. Leonetti*
Kenneth S. Leonetti