UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ALIANZA AMERICAS, YANET DOE, PABLO DOE, and JESUS DOE, on behalf of themselves and all others similarly situated, | * * * * * * | |
| Plaintiffs, | * | Civil Action No. 22-cv-11550-ADB |
| v. | * * | |
| VERTOL SYSTEMS COMPANY, INC., | * * | |
| Defendant. | * * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Before the Court is a joint motion for a protective order by Plaintiffs Alianza Americas, Yanet Doe, Pablo Doe, and Jesus Doe, on behalf of themselves and all others similarly situated, (together, "Plaintiffs,") and Defendant Vertol Systems Company ("Defendant" or "Vertol") (collectively, the "Parties"). [ECF No. 212 ("Joint Mot. for Protective Order")].[1] "The parties agree that a protective order is necessary and appropriate in this case because discovery in this matter is likely to include disclosure of confidential and sensitive information. Through reasonable and good-faith efforts to meet and confer, the Parties have reached agreement on many . . . terms" of a protective order. [Id. at 1–2]. The motion is **GRANTED**. The Court will

---

[1] Defendant's motion for reconsideration, [ECF No. 215], of the Court's order granting Plaintiffs' ex parte motion to proceed pseudonymously remains under consideration.

issue a protective order that contains the terms agreed on by the parties, see generally [ECF No. 212-3], and resolves the disputed terms as follows.

## I.    RESOLUTION OF DISPUTED TERMS

The Court has broad discretion to, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). This litigation stems from Defendant's alleged participation, see [ECF No. 137 ¶¶ 56–61, 108–09, 118–19, 128], in a scheme designed to generate political and media attention, e.g., [id. ¶¶ 121, 174, 177, 183, 214, 220], by deceiving Plaintiffs into boarding a flight operated by Defendant, see, e.g., [id. ¶¶ 65, 75, 80–86, 121, 137, 141–50], after which they were deposited, against their expectations, on an unfamiliar island accessible only by air and sea, [id. ¶¶ 150, 153]. Plaintiffs allege that the underlying scheme generated significant media attention, see, e.g., [id. ¶¶ 206–20], and involved bad-faith acts by multiple third parties coordinating with Defendant, e.g., [id. ¶¶ 82–97]; [id. ¶ 98 ("[Perla] Huerta made . . . promises to numerous other recent immigrants from Venezuela and Peru to convince them to accept transportation. In each instance, she concealed [who she was working for] . . . and that she was arranging for immigrants to be transported not to a major city, but to the small, isolated island of Martha's Vineyard.")]; [id. ¶ 49 ("[Lawrence] Keefe continued to shepherd Defendant Vertol through the Bidding Process.")]; [id. ¶ 56 ("Text messages . . . indicate that [Lawrence] Keefe was in San Antonio with representatives from Vertol . . . [, during which time he] met with both [James] Montgomerie and [Perla Huerta] . . . regarding the flights to Martha's Vineyard and Vertol's proposal.")].

In light of Plaintiffs' allegations, at this stage of the litigation the Court is satisfied that good cause exists to issue a protective order that protects Plaintiffs' identities, including their

2

names and other identifying information, to the greatest extent possible without prejudicing Defendant's defense. Unlike a case relied upon by Defendant, <u>Martinez v. City of Ogden</u>, No. 08-cv-00087, 2009 WL 424785 (D. Utah Feb. 18, 2009), here, the threat of judicial "sanctions, coupled with the clear imposition of obligations under the protective order," <u>id.</u> at *3, is not by itself adequate to guarantee the safety of Plaintiffs' personal information. That the parties will conduct themselves properly is not in doubt, but due to the tortuous history of this litigation and its complicated underlying facts, as well as the sprawling nature of this discovery, which includes third parties in several states, there is a risk that any information not carefully accounted for could slip through a crack without any misdeed on the part of either party. The extensive media coverage of this scheme—which allegedly exploited and humiliated Plaintiffs on the basis of their national origin—persuades the Court that such information, once released, could expose Plaintiffs to unwanted attention, perhaps even animosity and harassment, from third parties, which even the most severe sanctions on Defendant could not remedy or deter. Accordingly, the Court seeks to provide maximal protection to Plaintiffs' personal information while recognizing Defendant's need to conduct discovery free of excessive administrative burdens.

The parties agree that there should be three standards of protection: (1) Confidential, (2) Confidential—Doe Plaintiff ("DP"), and (3) Highly Confidential—Attorneys' Eyes Only ("AEO"). <u>See</u> [ECF No. 212-1 ("Pls.' Proposed Order") §§ 2.1, 2.2, 2.5]; [ECF No. 212-2 ("Def.'s Proposed Order") §§ 2.1, 2.2, 2.5]. They disagree as to the access procedures that should be required at each level of protection and the kinds of documents and information that should receive each level of protection. A summary of the contested issues follows.

3

| Access Disputes | | |
|---|---|---|
| **Topic** | **Pls.' Proposed Order** | **Def.'s Proposed Order** |
| Who retains Declaration and Confidentiality Undertakings ("DCUs"). | DCUs "shall be made available to the counsel for the Party who [designated the information as AEO]." [§ 5.1(c)]; <u>accord</u> [§ 5.3]. | DCUs remain in the possession of counsel for the "retaining" party. [§ 5.1(c)]; <u>accord</u> [§ 5.3(b)]. |
| Who may view Doe Plaintiff information | People who both (1) have access to AEO information and (2) have executed DCUs. [§ 5.3]. | People who have access to AEO information, people who have access to Confidential information, and third-party witnesses. [§ 5.3(a)–(b)]. People without AEO access must execute a DCU. [§ 5.3(b)]. |
| Whether certain third-party witnesses may view certain documents | No provision. | "[T]hird-party witnesses who appear on the face of a document as an author, recipient, or custodian, or who have already been identified through discovery as having authored or received the document (or related documents), may have such information disclosed without [executing a DCU] . . . ." [§ 5.4 (d)]. |

4

| Tier-of-Protection Disputes | | |
|---|---|---|
| **Information type** | **Pls.' Proposed Order** | **Def.'s Proposed Order** |
| Protected health information | AEO protection. [§ 2.5]. | Confidential protection. [§ 2.1(b)]. |
| Names of Doe Plaintiffs | DP protection. [§ 2.2]. | Confidential protection, [§ 2.1(c)], except where the name "appear[s] together with at least one additional personal identifier," [§ 2.2(a)], in which case DP protection. |
| Personally identifying information related to Doe Plaintiffs (e.g., date of birth, immigration case details, alien registration number, government-issued identification, residential address, phone number, email address) | AEO protection. [§ 2.5]. Also DP protection. [§ 2.2]. | Confidential protection, [§ 2.1(c)], but if the information appears "together with" the Doe Plaintiff's true legal name, [§ 2.2(a)], or if it "consists of other personally identifying information" about the Doe Plaintiff, [§ 2.2(b)], then it will receive DP protection. "A designation of [DP] should be made in good faith and narrowly tailored to information for which such protection is necessary and appropriate." [§ 2.2]. "For the avoidance of doubt, [DP] information may not serve as the basis for an [AEO] designation." [§ 2.5]. |
| Personally identifying information related to putative or actual class members | AEO protection. [§ 2.5]. Also DP protection. [§ 2.2]. | Confidential protection. [§ 2.1(c)]. |
| Personally identifying information related to current or former Vertol employees or contractors, including photographs and videos | AEO protection, except for photos and videos (not listed). [§ 2.5]. | Confidential protection. [§ 2.1(d)]. |

**A.      Specific protection for information related to Doe Plaintiffs and putative or actual class members**

Plaintiffs have shown good cause for the Court to protect their identities and the identities of putative or actual class members from unnecessary disclosure and association with this litigation during the discovery process.  At the same time, Defendant is reasonable to object that the protective order as proposed by Plaintiffs would hamper Defendant's ability to participate in its own defense.  [Joint Mot. for Protective Order at 12].  Accordingly, the Court will permit the individuals proposed by Defendants—that is, anybody who may view AEO or confidential information, and any third-party witnesses—to view DP information, but as requested by Plaintiffs, the Court will require each such person to execute a DCU prior to viewing DP information.

Concerning which information is entitled to DP protection, the Court sees minimal difference between the parties' positions.  Defendants propose that "other personally identifying information" about a Doe Plaintiff will be entitled to DP protection, see [Def.'s Proposed Order § 2.2(b)], which would give DP protection to everything that Plaintiffs seek except (1) the names of Doe Plaintiffs, appearing by themselves, and (2) personally identifying information relating to putative or actual class members.  The names of Doe Plaintiffs identify them, of course, and the Court sees no reason to treat their names differently from other identifying information.  Similarly, the concerns of the putative class—including the risks associated with disclosure of putative class members' personal information—are sufficiently similar to those of Doe Plaintiffs to justify a similar level of protection.  Accordingly, the Court will grant DP protection to the categories of information and documents proposed by Plaintiffs.

6

**B.      Protection for other personally identifying information**

Plaintiffs have not explained why protected health information ("PHI") should categorically be subject to an AEO designation, and the Court does not see good cause for such a blanket rule.  Accordingly, the Court will accord Confidential protection to PHI, while noting that a party may apply an AEO designation to any information that is "extremely sensitive" and "the disclosure of which to another [p]arty or non-party would create a substantial risk of serious harm that could not be avoided by less restrictive means."  [Def.'s Proposed Order § 2.5].  Similarly, Plaintiffs have not explained why other forms of personally identifying information, such as that related to Defendant's employees or third parties, should receive an AEO designation.  Accordingly, the Court will adopt Defendant's preferred definition of AEO information and designate personally identifying information not related to Doe Plaintiffs or putative or actual class members as Confidential except where the information is subject to another provision of the protective order.[2]

**C.      Retention of Declaration and Confidentiality Undertakings**

The Court understands Plaintiffs' argument that DCUs should amount to more than an honor code self-administered by the parties, see [Joint Mot. for Protective Order at 9], but it also recognizes Defendant's concern that requiring the parties to provide executed DCUs to their opponents could reveal their litigation strategy, see [id. at 23].  To resolve both concerns, the Court will instruct the parties to, once per week, file ex parte and under seal any new DCUs that were executed.  The Court will record those documents without disclosing them to the opposing

---

[2] Because the information that is subject to each level of protection is clear on the face of the protective order adopted by the Court, the Court will not include Defendant's language clarifying that DP information may not serve as the basis for an AEO designation.

party.  Upon a showing of good cause, a party may petition the Court for confirmation that a DCU was executed by a particular person.

### D.      Whether third-party witnesses may view certain documents

With slight modification, the Court will include the language proposed by Defendant as to the right of third-party witnesses who are authors, recipients, and custodians to view documents without executing DCUs.  It is logical that a person should be able to view a document that he or she authored, had custody of, or received prior to the commencement of this litigation.  Defendant's proposed protective order, however, would also permit a third-party witness who authored or received a document to view any other "related document" without executing a DCU.  [Def.'s Proposed Order § 5.4(d)].  The notion of a "related document" is too vague to be manageable, and it is unclear why a person should be entitled to view something that he or she did not author, had not previously received, and did not have custody over.  The Court will adopt Defendant's proposal with the "related document" provision omitted.

### E.      Miscellaneous disagreements

There are other, minor differences between the versions proposed by the parties, which the Court resolves here.  First, Defendant seeks to remove the emphasized words from the following sentence: "[DP-designated information shall not be used for] initiating or referring any immigration enforcement action against any Plaintiff or putative *or actual* class member."  [ECF No. 212-3 § 4.3 (emphasis added)].  The Court does not see any reason why the protections afforded to putative class members and named plaintiffs should not also be afforded to actual class members, so it will not remove those words.  Second, in certain places, Defendants seek to replace Plaintiffs' references to "Doe Plaintiffs" with the words "pseudonymous litigants."  E.g., [id. at 11].  The Court is satisfied with the language proposed by Plaintiffs, and Defendants have

not articulated a clear reason why it should be changed.  Finally, Defendants seek to remove the emphasized words from this sentence: "For avoidance of doubt, a Party's receipt of a document in discovery in this Action that it previously possessed or obtained from an independent source *that had a lawful right to provide such document or information to such Party* does not impose any restriction on the Party's use of the information . . . ."  [Id. § 20].  Documents obtained outside the scope of the discovery process are not covered by this Rule 26 order, which applies to documents exchanged through the parties' discovery process, and neither party has identified a legal basis for their preferred language.  The Court will remove the entire disputed sentence from the protective order.  If the issue is subsequently presented, the Court will invite briefing from the parties.

### F.    Additional language

The Court will also add standard language concerning its right to allow disclosure of information covered by the protective order or to modify the order at any time in the interests of justice and to ensure that any proceeding before the Court is fair, efficient, and consistent with the public interest.

## II.    CONCLUSION

The motion for protective order, [ECF No. 212], is **GRANTED**.  The Court will issue a full protective order incorporating the details described above.

**SO ORDERED.**

March 16, 2026                                           */s/ Allison D. Burroughs*
                                                        ALLISON D. BURROUGHS
                                                        U.S. DISTRICT JUDGE

9