**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ALIANZA AMERICAS, YANET DOE, PABLO DOE, and JESUS DOE, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>VERTOL SYSTEMS COMPANY, INC.,<br><br>    Defendant. | Civil Action No.: 1-22-cv-11550-ADB |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS**

Defendant Vertol Systems Company, Inc. ("Vertol") submits this memorandum of law in opposition to Plaintiffs' Motion to Compel the Production of Documents (the "Motion"), ECF No. 230.

**INTRODUCTION**

This case is a putative class action brought by an advocacy organization and three migrants (the "Doe Plaintiffs") seeking to represent "approximately 46 other immigrants" (the "Putative Class Members") that were "transported to Martha's Vineyard" on flights funded by the Florida government (the "Martha's Vineyard Flights"). Second Amended Class Action Compl. ("SAC"), ECF No. 137, ¶ 279. This case originally named as defendants the Governor of Florida, his chief of staff, the Florida Public Safety Czar, the Florida Department of Transportation, Vertol's chief executive officer, and Vertol's independent contractor, Perla Huerta. Every one of those defendants has been dismissed for lack of personal jurisdiction, leaving Vertol—a small private contractor— as the sole remaining defendant. ECF No. 181. The Court also partially granted Vertol's motion to dismiss certain claims under Fed. R. Civ. P. 12(b)(6), including Plaintiffs' equal protection,

1

procedural due process, and standalone fraud claims. *Id.* What remains is a narrow set of claims—substantive due process, unlawful seizure, civil rights conspiracy, false imprisonment, intentional and negligent infliction of emotional distress, civil conspiracy, and aiding and abetting—each resting on allegations that Ms. Huerta, at Vertol's direction, induced the Doe Plaintiffs and Putative Class Members to board the Martha's Vineyard Flights by falsely promising that the flights would travel to "a large city in the Northeast" and that "there would be jobs, humanitarian services, and benefits" awaiting them. SAC ¶ 294; *accord id.* ¶¶ 331, 342, 348, 356, 366, 378, 387. Vertol has denied these allegations.

Plaintiffs' Motion lacks merit and should be rejected. Vertol has already produced 513 documents responsive to Plaintiffs' requests, comprising 945 pages, including Vertol's contracts with the Florida Department of Transportation; the flight manifests for the Martha's Vineyard Flights; other identification information for the passengers on the Martha's Vineyard Flights; waivers of liability executed by the Doe Plaintiffs and Putative Class Members; Vertol's contract and non-disclosure agreement with Perla Huerta; and approximately 503 documents consisting of Perla Huerta's written, electronic communications concerning the Martha's Vineyard Flights. Plaintiffs, by contrast, **have not produced a single document** in response to Vertol's document requests or in response to interrogatories where Plaintiffs claimed they would produce business records pursuant to Fed. R. Civ. P. 33(d).

The present dispute is narrow and straightforward. Plaintiffs propounded 82 document requests—of those, Plaintiffs challenge Vertol's responses to just seven. For four of them (Request Nos. 35, 36, 43, and 46), the dispute is not whether Vertol will produce responsive documents—it will—but whether Vertol must also search for and produce documents concerning individuals **who are not Doe Plaintiffs or Putative Class Members.** It should not have to. Those individuals are

not parties, are not part of the putative class, and documents about them are not proportional to the needs of this case. For two others (Request Nos. 81 and 82), Plaintiffs seek Vertol's flight manuals and standard operating procedures, even though **another** independent company, Ultimate Jet LLC, provided the planes and crew for the **Martha's Vineyard Flights** and Vertol's procedures were never used. As to the final request (Request No. 40), Vertol has conducted a reasonable search and has no additional responsive documents in its possession, custody, or control.

Finally, Plaintiffs argue—for the first time in their brief and without having raised the issue during the parties' meet-and-confer process—that Vertol has an obligation to search for and produce documents held by Ms. Huerta and Ultimate Jet because they are purportedly under Vertol's control due to an agency or contractual relationship. But Ms. Huerta's contract with Vertol ████████████████████████████████, and Plaintiffs' reliance on a contractual return-of-materials provision in Ms. Huerta's NDA conflates ███████████████████████ ████████████████ with broad agency-based "control" over all of Ms. Huerta's personal files. That Plaintiffs themselves have served Ms. Huerta with a third-party subpoena (and litigated multiple motions to effectuate service) confirms their own recognition that she is not within Vertol's control. As to Ultimate Jet, Plaintiffs establish no agency or contractual relationship, and instead cite inapposite authority concerning work product protections for non-testifying experts, a doctrine that has no application here. Accordingly, the Court should deny Plaintiffs' Motion.

## ARGUMENT

I.  **Vertol Has Reasonably Narrowed Request Nos. 35, 36, 43, and 46 to Focus on the Doe Plaintiffs and Putative Class Members.**

Parties are entitled to discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). While civil discovery may be broad, it is not boundless. *Salem v. Stoneham Police Dept.*, 662 F. Supp.

3

3d 41, 43 (D. Mass. 2023) ("Discovery is not unlimited and has 'ultimate and necessary boundaries.'") (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Plaintiffs are not entitled to conduct a "fishing expedition" for information that goes beyond the claims and defenses or seeks information based on speculation or hunches. Accordingly, Plaintiffs "are not entitled to discovery on facts they did not allege in their complaint." *Leaver v. Life Care Ctrs. of Am., Inc.*, 712 F. Supp. 3d 194, 200 (D. Mass. 2024). Plaintiffs also cannot use discovery to develop new claims they might assert against Vertol or others. *See, e.g.*, *Landry v. Swire Oilfield Servs. LLC*, 323 F.R.D. 360, 377 (D.N.M. 2018) ("'[P]arties . . . have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings.'") (quoting Fed. R. Civ. P. 26, advisory committee notes). And plaintiffs are not entitled to conduct fishing expeditions to expand their proposed class. *See, e.g.*, *In re Williams-Sonoma, Inc.*, 947 F.3d 535 (9th Cir. 2020) (vacating order directing class-action defendant to produce records sufficient to identify potential class members in California); *Lopez v. Mercantile Adj. Bureau, LLC*, 2019 WL 2118787 (D.N.J. May 15, 2019) (collecting cases and affirming magistrate's denial of motion to compel discovery because "[t]he Complaint limited the putative class to consumers whose debts originated with Bally's Total Fitness, . . . so any discovery regarding consumers whose debts originated elsewhere is irrelevant").

With respect to Request Nos. 35, 36, 43, and 46, Vertol has expressed that it is willing to produce records in response to these requests that relate to the Doe Plaintiffs and Putative Class Members. With respect to Request Nos. 35, 36, and 43, Plaintiffs seek an order compelling Vertol to produce documents that **do not relate to the Doe Plaintiffs and Putative Class Members**. With respect to Request No. 46, it is not clear what else Plaintiffs request that Vertol produce. Plaintiffs identify no reason why discovery concerning individuals outside the putative class is

proportional to the needs of this case.  The more plausible explanation for Plaintiffs' insistence on this broader discovery is that given the weakness of their current case they hope to identify additional individuals who could expand a larger proposed class or to develop new theories of liability.  Discovery is not the appropriate vehicle for either purpose.

A.      **Request Nos. 35 and 36.**

Request No. 35 seeks "all documents and communications concerning or relating to the decision or instruction that Vertol recruit and/or provide transportation to immigrants located or residing in the State of Texas pursuant to the Immigrant Relocation Program."  Request No. 36 seeks the production of the same documents related to "immigrants located or residing outside the State of Florida."   Vertol agreed that it will search for and produce any documents responsive to these requests involving the decision or instruction to recruit the Doe Plaintiffs and Putative Class Members who boarded the Martha's Vineyard Flights.  These individuals were located in Texas (as requested in Request No. 35) and outside Florida (as requested in Request No. 36).

Plaintiffs insist that Vertol must produce documents regarding recruitment efforts related to individuals **other than the Doe Plaintiffs and Putative Class Members**, arguing that Vertol's "decision-making process existed independently of which individuals ultimately boarded the flights."  Pls.' Br. at 11.  Vertol has assured Plaintiffs that it would produce documents responsive to these Requests, even if they do not expressly name the Doe Plaintiffs or Putative Class Members, if the documents related to any decision or instruction that affected the Doe Plaintiffs or Putative Class Members.  As Vertol stated in its December 2025 letter, it still does not understand what documents are in dispute.  *See* Pls.' Ex. 4 (Dec. 3, 2025 Letter), at 3.

Plaintiffs also challenge Vertol's objection that Request No. 36 (recruitment efforts outside Florida) is duplicative of Request No. 35 (recruitment efforts inside Texas).  Plaintiffs argue that Vertol's objection is "easily dismissed" because "Texas is one state outside Florida; there are 48

others." Pls.' Br. at 11. But Plaintiffs have not advanced a single allegation that Vertol recruited any Doe Plaintiff or Putative Class Member outside the State of Texas. The request for documents about recruitment in 48 other states where no putative class member was located is not proportional to the needs of this case.

B.      **Request No. 43.**

Request No. 43 requests the production of "[a]ll documents and communications concerning or relating to efforts to identify, locate, and recruit immigrants, including the Class Plaintiffs, who wished to travel to Martha's Vineyard, including documents and communications between Vertol, Perla Huerta, Sam Miller, the Recruiter, and/or any other person regarding the same." This request is duplicative of Request Nos. 41 and 42, which call for the production of documents and communications "concerning or relating to efforts taken by Vertol to identify, locate, and recruit immigrants residing or located in the State of Florida" and "outside the State of Florida" "for the Martha's Vineyard Flights and/or the Immigrant Relocation Program, including documents and communications between Vertol, Perla Huerta, Lawrence Keefe, James Uthmeier, the Recruiter, and/or any other person regarding the same." In response to these Requests, Vertol has agreed to search for and produce responsive documents that relate to the Doe Plaintiffs and Putative Class Members.

For unpersuasive reasons, Plaintiffs again seek to compel Vertol to produce documents that do not relate to the Doe Plaintiffs or Putative Class Members who boarded the Martha's Vineyard Flights. First, they contend that this information is relevant to Vertol's Tenth Affirmative Defense, which asserts that Vertol cannot be held liable because the Doe Plaintiffs and Putative Class Members consented to the Martha's Vineyard Flights.[1] Neither Plaintiffs nor Vertol have alleged

---

[1]     Vertol has already produced signed liability waivers for all migrant passengers on the Martha's Vineyard Flights.

that anyone other than the Doe Plaintiffs and Putative Class Members consented to board the Martha's Vineyard Flights.  Even if they had, consent is individualized: whether anyone else consented to board the Martha's Vineyard Flights has no bearing on whether the Doe Plaintiffs and Putative Class Members did.  Second, Plaintiffs argue that this information is "relevant to class certification." *id.*  But it cannot be relevant to class certification because Plaintiffs are seeking documents relating to individuals outside of their proposed class, which only includes those migrants who actually boarded the Martha's Vineyard Flights.  *See* SAC ¶¶ 279, 282(c) (defining the proposed class to include individuals who were "transported" to Martha's Vineyard).  Plaintiffs' intentions could not be clearer: they are seeking impermissibly to expand their proposed class to include individuals who were not transported to Martha's Vineyard.

Finally, Plaintiffs argue that these documents unrelated to the Doe Plaintiffs and Putative Class Members are necessary to establish that "Vertol acted intentionally" with respect to Plaintiffs' false imprisonment, intentional and negligent infliction of emotional distress, and civil conspiracy and aiding and abetting claims.  Plaintiffs have not made any allegation that anyone other than the Doe Plaintiffs and Putative Class Members were falsely induced to board the Martha's Vineyard Flights or any other flights.  Even if there were a factual basis for this request, Plaintiffs cannot explain how such information would be relevant to show that Vertol acted intentionally with respect to the Doe Plaintiffs and Putative Class Members.

Accordingly, the Court should deny Plaintiffs' Motion with respect to Request No. 43.

C.      **Request No. 46.**

Request No. 46 broadly seeks "[a]ll documents and communications concerning or relating to the race, ethnicity, and/or national origin of immigrants recruited or to be recruited for Martha's Vineyard Flights and/or the Immigrant Relocation Program, including the Class Plaintiffs."  Vertol

7

has expressed that it is willing to produce documents in response to this Request so long as the Request is confined to documents relating to the Doe Plaintiffs and Putative Class Members.

Plaintiffs seem not to understand Vertol's position.  First, they criticize Vertol for asserting a justification for its relevance/overbreadth objection that Vertol withdrew five months ago.[2] Second, Plaintiffs argue, incorrectly, that Vertol "stated that it would not affirmatively search for documents responsive to this Request, but that it would produce any documents responsive to Request No. 46 if those documents happened to be responsive to another Request."  Pls.' Br. at 7 (citing Rodriguez Decl. ¶ 13).  That is not Vertol's position.  Vertol has clearly stated its willingness to produce records in response to this Request.  Pls.' Ex. 4 (Dec. 3, 2025 Letter), at 4 ("Without waiving its objections, Vertol is willing to meet and confer about a narrowly tailored request limited to the named Plaintiffs and putative class members who actually traveled on the flights at issue."); Pls.' Ex. 5 (Dec. 19, 2025 Email) ("In its December 3, 2025 letter, Vertol objected to this request on the grounds that it is overbroad and not proportional to the needs of the case, and offered to limit the scope of this request to migrants who traveled to Martha's Vineyard.").

It is not clear what remains at issue.  Plaintiffs do not appear to make any argument that they are entitled to documents other than the ones Vertol has agreed to search for and produce.  If Plaintiffs are again seeking documents and information unrelated to the Doe Plaintiffs and Putative Class Members, Plaintiffs have offered no justification for such discovery.  Nor could they; as above, information about the race and ethnicity of other immigrants outside the proposed class

---

[2]    Vertol originally objected to this Request on the ground that it sought irrelevant information because the Court dismissed Plaintiffs' Equal Protection claim.  Subsequently, Vertol acknowledged that "Plaintiffs' surviving § 1985(3) claim alleges an invidious, race-based conspiracy and does not dispute that Plaintiffs may seek appropriate discovery on that theory."  Pls.' Ex. 4 (Dec. 3, 2025 Letter), at 4.  Vertol has not asserted the objection in subsequent correspondence.  See Pls.' Ex. 5 (Dec. 19, 2025 Email).

could only be used to impermissibly expand the scope of the proposed class.  Therefore, the Court should deny Plaintiffs' Motion as to Request No. 46.

D.        **Request Nos. 81 and 82.**

Request No. 81 requests "[a]ll documents and communications concerning or relating to information routinely provided to passengers on other flights operated by Vertol, including without limitation any training materials, pamphlets or other documents used by Vertol with respect to such information."  Request No. 82 requests "[a]ll documents and communications concerning or relating to Vertol's standard operating procedures, other standards, and/or processes for flights operated by Vertol."  These materials are irrelevant and not proportional to the needs of this case for two reasons.  First, Vertol's standard operating procedures were not used on the Martha's Vineyard Flights.   Second, even if they were used, they are still irrelevant because Plaintiffs do not allege that "the flights were operated unsafely or in violation of aviation safety standards, and so generic checklists or procedures for aviation safety and efficiency would not bear on the issues raised in the Complaint."  Pls.' Ex. 4 (Dec. 3, 2025 Letter).

Plaintiffs deliberately mischaracterize Vertol's Answer to argue that Vertol owned and operated the planes used for the Martha's Vineyard Flights.  Plaintiffs argue that Vertol admitted that "it retained responsibility for chartering the planes and the operational oversight of the Martha's Vineyard Flights."  Pls.' Br. at 15–16 (citing Answer ¶ 128).  But Vertol's Answer only admitted that "two chartered planes" were "provided by Vertol through funding provided by FDOT." Answer ¶ 128.  There is a significant difference between arranging for chartered planes and operating them.  Vertol has consistently represented that it does not own the planes and that its manuals and procedures were not used in the flights.  *See* Pls.' Ex. 2 (Vertol's Responses and Objection), at 42 ("[T]he Martha's Vineyard Flights were operated by Ultimate Jet LLC—not Vertol."); Pls.' Ex. 3 (Dec. 3, 2025 Letter), at 5 (". . . [T]he flights were operated by Ultimate Jet

LLC, not Vertol, so any such documents (to the extent they exist) would be in Ultimate Jet's possession, custody, or control."). These representations are supported by the fact that the flight manifests—which Vertol has produced to Plaintiffs—contain Ultimate Jet's header and list "Vertol Systems" as the "Requester."

Plaintiffs argue that these operational documents are relevant to "showing boarding disclosures, timing of destination disclosure, ability to decline or deplane, custody and escort protocols, seating or movement restrictions, access to phones and translation services, in-flight announcements, and post-landing handoff logistics." Pls.' Br. at 16. As an initial matter, these documents would only be relevant to Vertol's planes—not Ultimate Jet's—so it would not be evidence of the procedures used for the Doe Plaintiffs and Putative Class Members. Furthermore, **Vertol does not even own the type of planes that were used to fly the Martha's Vineyard Flights, so its standard operating procedures would differ from those used for the Martha's Vineyard Flights.** Although this Court has entered a protective order, these documents also contain proprietary information, the disclosure of which should be limited given their lack of relevance. *See Striegel v. Am. Family Mut. Ins. Co.*, 2014 WL 6473597 (D. Nev. Nov. 18, 2014) (denying motion to compel where requests for all insurance policies were "overbroad" and the material sought was "proprietary and should be protected from disclosure"). This is not an empty concern, as Plaintiffs already breached the protective order only three weeks after it was entered by publicly filing documents Vertol had produced under a "Confidential" designation in support of their motion to compel. *See* ECF No. 236 (motion to impound documents filed in connection with Plaintiffs' motion to compel).

Accordingly, the Court should deny Plaintiffs' Motion as to Request Nos. 81 and 82.

10

II.     **Plaintiffs Arguments Regarding the Adequacy of Vertol's Search as to Request No. 40 Violates the Meet-and-Confer Requirement, and is Nonetheless Legally and Factually Baseless.**

Plaintiffs next challenge the sufficiency of Vertol's search for documents because Vertol's counsel did not confirm whether Vertol has searched for documents responsive to their requests that are in the possession of Ms. Huerta and Ultimate Jet.  Plaintiffs argue that both Ms. Huerta and Ultimate Jet are within Vertol's "control" under Fed. R. Civ. P. 34.  Plaintiffs' argument is procedurally and substantively defective.

As an initial matter, Plaintiffs have not adequately met and conferred with Vertol as required under Local Rule 37.1.  In their self-serving attorney declaration, Plaintiffs assert that Vertol's counsel "would not confirm whether it had searched for documents and communications from Perla Huerta" and that Vertol's counsel "stated that they did not consider Perla Huerta . . . a custodian for purposes of document collection and review" during a January 23, 2026 conference.  *See* Rodriguez Decl. ¶ 12.  But Plaintiffs never told Vertol's counsel that they regarded this search to be insufficient because they believed Ms. Huerta was within Vertol's "control."  Abandoning their façade of compliance with Local Rule 37.1 entirely, Plaintiffs make no representation that they ever sought to confer about the sufficiency of Vertol's search as to Ultimate Jet.  Since the parties' last discovery conference nearly three months ago, Plaintiffs have not made any attempt to raise these issues with Vertol, instead attempting to surprise Vertol with four-and-a-half pages of argument in their brief.

Plaintiffs' own conduct contradicts their position.  Plaintiffs have served Ms. Huerta with a subpoena pursuant to Fed. R. Civ. P. 45.  They have twice moved this Court for an order authorizing alternative service.  *See* ECF Nos. 199 (first motion), 201 (granting same), 208 (second motion), 211 (granting same).  Upon information and belief, Ms. Huerta has responded and objected to the subpoena.  *See* ECF No. 209 (granting motion to extend time for responses and

11

objections).  If Plaintiffs genuinely believed Ms. Huerta was within Vertol's control, there would have been no reason to serve her with a separate subpoena or to litigate multiple motions for alternative service.  That Plaintiffs pursued those avenues confirms that they, too, recognize Ms. Huerta is a third party outside Vertol's control, making their weak argument to the contrary impossible to reconcile with the record.

Plaintiffs' argument also fails on the merits.  Under Fed. R. Civ. P. 34, a party is obligated only to produce documents within its "possession, custody, or control."  "[C]ontrol is defined as the legal right, authority or ability to obtain documents on demand." *Mantha v. QuoteWizard.com, LLC*, 2021 WL 981815, at * 3 (D. Mass. Mar. 16, 2021) (quoting *Addamax Corp. v. Open Software Found., Inc.*, 148 F.R.D. 462, 467 (D. Mass. 1993)).  "'Such "control" may be established by the existence of a principal-agent relationship or a legal right pursuant to a contractual provision.'" *Id.* (quoting *Rosie D. v. Romney*, 256 F. Supp. 2d 115, 119 (D. Mass. 2003)).

Plaintiffs cannot show that Ms. Huerta is Vertol's agent or that Vertol has a contractual right to demand documents from her.  Ms. Huerta's contract with Vertol explicitly states that the ███████████████████████████████████████████████████████████ ███████████████████████████████████ Pls.' Ex. 6 (Huerta Contract), § III.E. Plaintiffs' argument that Vertol has a contractual right to obtain records from Ms. Huerta is deliberately misleading because Plaintiffs fail to mention that the relevant provision only requires ███████████████████████████████████████████████████████████ ████████████████████. *See* Pls.' Ex. 7 (Huerta NDA), §§ 1, 12.  Plaintiffs advance no argument that the documents they are seeking are the type of ███████████████████████ ████████████████████████████████.  These facts are similar to *Anthony v. Federal Savings Bank*, 2021 WL 12383408, at *4 (N.D. Ill. Nov. 23, 2021), in which the court denied a

motion to compel a bank to search for documents in its independent contractor's possession because the contract between the parties "does not address control," "does not contain a provision obligating [the independent contractor] to produce its documents to [the bank] on demand," and characterized the third party "as an 'independent contractor' and not an agent, employee, partner, or joint venturer of the bank."

Plaintiffs wrongly argue that this case "bears remarkable resemblance" with *Mantha v. QuoteWizard.com LLC*, 2021 WL 981815 (D. Mass. Mar. 16, 2021).  In *Mantha*, the court granted a motion to compel a telephone company to produce do-not-call text message requests in the possession of a third-party company it hired to communicate with consumers.  The court found that the third party was within the telephone company's control because (1) the telephone company had previously obtained consumer communications from the third party to settle an earlier discovery dispute; (2) **their contract designated the third party as the telephone company's agent** and required the telephone company to respond to subpoenas on the third party's behalf; (3) the telephone company had the right to audit do-not-call requests in the third party's possession; and (4) the telephone company had subjected the third party to its litigation hold and the third party acknowledged it was bound by it. *Id.* at *3–4.  Here, Plaintiffs have not demonstrated that Vertol has present access to Ms. Huerta's documents; have not established any legal or contractual right entitling Vertol to demand records from Ms. Huerta; have not identified any right by Vertol to audit records in Ms. Huerta's possession; and make no representation about whether Vertol has sent its litigation hold to Ms. Huerta or whether she acknowledged she was bound to it.  That Vertol previously obtained certain communications from Ms. Huerta—and promptly produced them to Plaintiffs—does not establish that Ms. Huerta is under Vertol's ongoing control.  To the contrary, Vertol's voluntary production of those materials reflects its good-faith effort to provide Plaintiffs

with responsive documents in its possession.  But good-faith cooperation is not a concession that Vertol has the legal right to demand any and all records Ms. Huerta may possess.

Plaintiffs' argument as to Ultimate Jet fares no better.  Plaintiffs do not even attempt to argue that Vertol had a principal-agent relationship with Ultimate Jet or a contractual right to obtain records from it.  Instead, Plaintiffs argue that "Vertol cannot absolve itself of its responsibility to produce standard practices by pointing to a subcontractor's role," citing *In re PolyMedica Corp. Sec. Litig.*, 235 F.R.D. 28, 33 (D. Mass. 2006).  *See* Pls.' Br. at 20.  But *PolyMedica* does not support Plaintiffs' position.  In *PolyMedica*, the Court denied a motion to compel a defendant's non-testifying expert to produce documents underlying the expert's report because such records were protected from disclosure by the work-product protections under Fed. R. Civ. P. 26(b)(4)(B).  *See* 235 F.R.D. at 33.  In dicta, the court noted that the defendant "may not shield relevant information from discovery by merely passing it off to a third party, including a non-testifying expert." *Id.*  Those circumstances are not present here: Ultimate Jet is not a non-testifying expert; Vertol has not given Ultimate Jet documents to avoid producing them; and Vertol is not asserting work-product protections over documents in Ultimate Jet's possession.

Accordingly, the Court should deny Plaintiffs' request that Vertol search for and collect documents held by Ms. Huerta and Ultimate Jet.

## CONCLUSION

Vertol has agreed to produce all relevant information concerning the Doe Plaintiffs and Putative Class Members.  Despite this, Plaintiffs moved to compel Vertol to produce information that relates to individuals who will **not** be represented in this litigation, to produce records that had **no bearing** on the relevant conduct at issue in this case, and to require Vertol to collect documents

14

from third parties that are **not within its control**.  For the reasons set forth above, the Court should

deny Plaintiffs' motion to compel.

Respectfully submitted,

Dated: April 21, 2026

/s/ Brian T. Kelly
Brian T. Kelly (BBO No. 549566)
Ross MacPherson (BBO No. 705598)
NIXON PEABODY LLP
Exchange Place
53 State Street
Boston, Massachusetts 02109-2835
Tel: (617) 345-1000
Fax: (855) 714-9513
bkelly@nixonpeabody.com
rmacpherson@nixonpeabody.com

Christopher M. Mason (admitted *pro hac vice*)
NIXON PEABODY LLP
55 West 46th Street
New York, New York 10036-4120
(212) 940-3000
cmason@nixonpeabody.com

*Counsel for Defendant Vertol Systems
Company, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing was filed electronically on April 21, 2026,

and thereby delivered by electronic means to all registered participants as identified on the

Notice of Electronic Filing.

/s/ Ross MacPherson
Ross MacPherson

15