**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| YANET DOE, PABLO DOE, and JESUS DOE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VERTOL SYSTEMS COMPANY, INC.,<br><br>Defendant. | Civil Action No.: 1:22-cv-11550-ADB |

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF**
**MAINTENANCE OF PSEUDONYM ORDER**

Plaintiffs Yanet Doe, Pablo Doe, and Jesus Doe ("Doe Plaintiffs") respectfully submit this supplemental brief and the accompanying declarations pursuant to the Court's June 22, 2026 Order.  ECF No. 256.  As set forth below, the evidence satisfies the applicable legal standards for pseudonymity: the Doe Plaintiffs face a reasonable fear of severe physical and psychological harm, disclosure of their identities would harm innocent non-parties, and disclosure would chill similarly situated future vulnerable litigants from coming forward to assert their rights.  Vertol, for its part, has identified no prejudice resulting from continued use of pseudonyms, and seeks to strip away that protection to inflict further harm on the individuals it has already aggrieved and victimized. The Court should reject that attempt and maintain the Pseudonym Order.

**FACTUAL AND PROCEDURAL BACKGROUND**

On September 14, 2022, Vertol lured approximately forty-nine immigrants—including Yanet Doe, Pablo Doe, and Jesus Doe—onto chartered flights from San Antonio, Texas to Martha's Vineyard, Massachusetts, under the false pretense that a "wealthy benefactor" was funding their transport, when in truth, the flights were a publicity stunt engineered to advance Florida Governor Ron DeSantis's presidential campaign.  Only shortly before landing did the immigrants learn their true destination—a small island accessible only by boat or plane, where no officials or service providers had been notified of their arrival—and of Vertol's scheme to thrust them into a media spectacle against their will.  Pablo and Jesus Doe found themselves swept into some of that early coverage, largely unaware of who was photographing or interviewing them, why they were being approached, or how extensively their images and stories would be disseminated.  *See* Jesus Doe Decl. ¶¶ 18-20; Pablo Doe Decl. ¶¶ 24-25.[1]

---

[1] Each of the Doe Plaintiffs has executed original versions of their respective declaration.  To maintain their anonymity, counsel has filed on the public docket versions signed with their

On September 20, 2022, the Doe Plaintiffs initiated this action, ECF No. 1, and filed an *ex parte* motion to proceed under pseudonyms, ECF No. 5. The Court granted that motion, while noting that "[o]nce counsel for Defendants have entered appearances, they may elect to file a motion for reconsideration." ECF No. 7 (the "Pseudonym Order"). More than three years later, on January 30, 2026, Vertol moved for reconsideration. ECF No. 215. Vertol's principal argument was that the appearance of Pablo and Jesus Doe in the news media rendered continued pseudonymity improper, and that the Doe Plaintiffs had not provided adequate evidence supporting pseudonymity. ECF No. 256 at 4-6 (citing ECF No. 216 at 9-10).

On June 22, 2026, the Court granted in part and denied in part Vertol's motion. *Id.* at 8. The Court rejected Vertol's argument that Jesus and Pablo Doe's prior public statements prevented them from proceeding pseudonymously, reasoning that "the harms that the Doe Plaintiffs seek to prevent are specifically tied to disclosure of their identity *as litigants in this matter*, not the disclosure of their identity as people connected to the underlying events" generally. ECF No. 256 at 5 (emphasis added). Furthermore, because "eleven of the approximately forty-six other migrants involved with this case have also publicly disclosed their names," it was "not possible to infer the identities of Pablo or Jesus Doe from the fact that they are among those who have identified themselves publicly." *Id.* (cleaned up). Continued pseudonymity, therefore, remained available in this case. *Id.*

At the same time, the Court directed the Doe Plaintiffs to "provide the Court with specific factual evidence, supported by declarations or affidavits where appropriate, and a brief explaining how that evidence establishes the Doe Plaintiffs' continued need for pseudonymity[.]" *Id.* at 8.

---

respective pseudonyms. Counsel has retained the original declarations, true signed copies of which it has served on counsel for Vertol and will file under seal if desired by the Court.

Pursuant to the Court's instruction, the Doe Plaintiffs respectfully submit this supplemental brief and accompanying declarations, which establish that pseudonymity remains necessary and appropriate in this action. The declarations demonstrate that being identified as a person associated with the flights was already jarring and unwanted—an experience that would only be intensified by public identification as a plaintiff affirmatively challenging those responsible for these harms. The latter disclosure would make the Doe Plaintiffs newly searchable by name in connection with this litigation, identify them as adversaries of the Defendant and other participants in the scheme, including public officials, and expose them to renewed attention throughout the remaining course of the case. The declarations thus establish prospective harms specifically attributable to public identification as litigants—not merely to their historical connection with the flights.

## ARGUMENT

Vertol's position turns the wrongdoing in this case on its head. Despite deliberately orchestrating a media spectacle by transporting vulnerable immigrants across the country under false pretenses so they could be used as props in a political campaign, Vertol seeks to use that media attention to compound the harm it has already caused by forcing three of those same immigrants to litigate under their own names. Vertol's efforts should be rejected.

As explained further below and in the accompanying declarations, publicity surrounding the Martha's Vineyard flights has already subjected the Doe Plaintiffs and their families to unwanted surveillance, workplace and public encounters, school bullying, psychological distress, and significant restrictions on their daily lives. Publicly connecting their names to this lawsuit would renew those harms, threaten innocent children and relatives abroad, and deter similarly situated immigrants from seeking judicial redress. Continued pseudonymity, meanwhile, causes Vertol no litigation prejudice: Vertol knows the Doe Plaintiffs' identities and possesses the

3

information necessary to defend the case. Because the substance of the litigation will remain fully public, maintaining the Pseudonym Order will not prevent meaningful public scrutiny of these proceedings.

The First Circuit has recognized "four general categories of exceptional cases in which party anonymity ordinarily will be warranted." *Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 71-72 (1st Cir. 2022). These categories include where: (1) "a would-be Doe reasonably fears that coming out of the shadows will cause him unusually severe harm (either physical or psychological)"; (2) the identification of a "would-be Doe would harm 'innocent non-parties'"; (3) "anonymity is necessary to forestall a chilling effect on future litigants who may be similarly situated"; or (4) lawsuits are "bound up with a prior proceeding made confidential by law." *Id.* Moreover, these categories are not meant to be construed rigidly or in isolation. Rather, "it is possible that a party whose case for pseudonymity appears weak when each paradigm is analyzed separately may nonetheless make a persuasive showing when multiple paradigms are implicated." *Id.* at 72 (citation omitted).

Here, the Doe Plaintiffs satisfy the first three categories, and their combined weight reinforces the continued need for the Pseudonym Order.

## I.    Public Identification In This Litigation Would Subject The Doe Plaintiffs To Unusually Severe Physical And Psychological Harm.

The Doe Plaintiffs have experienced harassment, serious psychological distress, withdrawal from ordinary public life, workplace intrusions, fear of travel, and bullying of one of their children in school. Those experiences provide an objective basis for their fear that attaching their names to this high-profile litigation would renew and amplify the injuries they have already suffered. Their fears of unusually severe physical and psychological harm are therefore reasonable. *Id.* at 71.

4

First, the Doe Plaintiffs reasonably fear harassment and intimidation from members of the public. *See Molina v. U.S. Dep't of Homeland Sec.*, No. 25-3417, 2025 U.S. Dist. LEXIS 194750, at *5 (D.D.C. Oct. 1, 2025) (crediting fear that "disclosure of [plaintiffs'] identities and immigration statuses would expose them and their families to potential harassment and intimidation"); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008) (listing, as factor favoring anonymity, "whether identification poses a risk of retaliatory physical or mental harm" (citation omitted)).

The Martha's Vineyard flights generated extraordinary media attention that spanned weeks and reached national and international audiences. That publicity was no accident. Defendant Vertol and others orchestrated the scheme to generate widespread media coverage and to elevate Governor DeSantis's national political profile, at the expense of the vulnerable individuals they deceived and transported. As a result, the Doe Plaintiffs were thrust into a political firestorm and subjected to intense, sustained public scrutiny, causing them and their families personal harm. *See* Yanet Doe Decl. ¶¶ 18-33; Jesus Doe Decl. ¶¶ 18-28; Pablo Doe Decl. ¶¶ 24-30. Pablo Doe, for example, was hounded by reporters and others who followed him and waited outside his home and workplace, insisting he speak to them about the flights. Pablo Doe Decl. ¶¶ 13-14. This harassment persisted for months. *Id.* ¶ 15. Jesus Doe's family members and friends in Venezuela sent him news articles about the incident, "and some even made terrible jokes about what had happened," while strangers who recognized him from news coverage approached him in public to ask about the flights, the Florida governor, and his recruitment by Perla Huerta. Jesus Doe Decl. ¶¶ 21-22. Yanet Doe's family fared no better: since the flights, they have "become the subject of intense public attention and the butt of jokes," with political commentators "treating [them] as political talking points rather than as people." Yanet Doe Decl. ¶ 16. The toll extended to Yanet

Doe's child, who was subjected to significant bullying at school—compounding the emotional and psychological harm Yanet Doe herself has endured as a mother because of Defendant's scheme. *Id.* ¶ 22.

To avoid further recognition and unwanted attention, each Doe Plaintiff has altered how they live and interact with the public. For months, Jesus Doe concealed his face beneath the hood of his sweatshirt whenever he ventured out, and now travels exclusively by car. Jesus Doe Decl. ¶¶ 15-17. Pablo Doe has "severely limit[ed] [his] daily routine to going to work and returning home. [He] tried to avoid parks, restaurants, community events, and other public places" to minimize the risk of being recognized and confronted by strangers about the flights. Pablo Doe Decl. ¶ 26. He has also "been afraid to travel out of Massachusetts because boarding a plane reminds [him] of the deception that brought [him] to Martha's Vineyard." *Id.* ¶ 31; *see also* Yanet Doe Decl. ¶ 28 (attesting she and her family "have deliberately, intentionally, and successfully kept a low profile to protect [their] privacy and reduce scrutiny and harassment directed towards [them]"). All three Doe Plaintiffs avoid reporters and the media. *See* Yanet Doe Decl. ¶ 28; Jesus Doe Decl. ¶ 26; Pablo Doe Decl. ¶ 28.

These harms stem solely from the fact that these individuals were duped by Defendant into boarding a plane, wholly apart from any involvement in this lawsuit, and disclosure of their identities as plaintiffs here would only compound the damage. Requiring the Doe Plaintiffs to litigate under their own names would force them to relive their trauma and inevitably deepen the emotional and personal harm Defendant's conduct has already inflicted. *See* Jesus Doe Decl. ¶ 28 ("Publicly identifying me as a named plaintiff or class representative in this lawsuit would … expose me to toxic publicity and renewed harassment. I cannot relive that hell."); *see also* Yanet Doe Decl. ¶ 29; Pablo Doe Decl. ¶ 21. The high-profile nature of this case—born of a widely

publicized political stunt, still the subject of active public and political debate, and regularly reported on—only amplifies these risks. *See Doe v. Noem*, No. 2:25-cv-00633, 2025 U.S. Dist. LEXIS 85350, at *6-7 (W.D. Wash. May 5, 2025) (crediting fear of "severe online or public harassment" in "a high-profile immigration case" and refusing to "expose Plaintiff to a social experiment to find out" how severe it would be); *Does 1-158 v. Rubio*, No. 25-3032, 2025 U.S. Dist. LEXIS 186924, at *6 (D.D.C. Sep. 23, 2025) (crediting similar fears amid current "period of heightened public scrutiny of immigration matters"). The Court should prevent that outcome. *See Mass. Inst. of Tech.*, 46 F.4th at 66 (cautioning that "[o]nce the litigant's true name is revealed on the public docket, the toothpaste is out of the tube and the media or other interested onlookers may take notice in a way that cannot be undone by an appellate decision down the road").

Second, the Doe Plaintiffs reasonably fear that identification as plaintiffs would expose them to heightened scrutiny in their own immigration proceedings. *See K.O. ex rel. E.O. v. United States,* 651 F. Supp. 3d 331, 343 (D. Mass. 2023) (crediting "fears of retaliation" as a reason the court "allowed the plaintiffs to proceed pseudonymously" in a case involving family separation at the border); *Does I thru XXIII v. Advanced Textile*, 214 F.3d 1058, 1071 (9th Cir. 2000) (allowing use of pseudonym for plaintiffs who "fear[ed] extraordinary retaliation, such as deportation, arrest, and imprisonment").

Any single member of the public who disapproves of this lawsuit need only report the Doe Plaintiffs to immigration authorities to disrupt their lives and expose them to the risk of detention. Jesus Doe, who resides in Florida "where co-conspirators are involved in the scheme," and where anti-immigrant sentiments run high—including through frequent ICE raids—is especially concerned for his safety. Jesus Doe Decl. ¶ 14. He has seen "news reports of immigrants being reported to [ICE] by employers, landlords, and neighbors as a form of retaliation," and attests that

the mere possibility that "someone could maliciously report [him] to immigration authorities to target [him] simply because they disagree with this lawsuit" causes him significant distress. Jesus Doe Decl. ¶ 16; *see also* Yanet Doe Decl. ¶ 33 (fearing that public identification "could subject [her] to additional scrutiny or negatively affect the outcome of [her] pending immigration applications"); Pablo Doe Decl. ¶ 21 ("I fear that any publicity linking me to this lawsuit … could put me at risk of retaliation, particularly regarding my immigration proceedings.").

This fear is entirely reasonable. Retaliatory reporting of immigrants seeking legal accountability is well documented.[2] And the threat is particularly acute here because the current administration has singled out Venezuelans as targets of its immigration and deportation policy by revoking Temporary Protected Status ("TPS"), along with other humanitarian parole protections, and deporting hundreds of them to a notorious mega-prison in El Salvador.[3] Florida also remains

---

[2] *See, e.g.*, Shannon Dooling, *Man Arrested By ICE Following Workers' Comp Meeting Is Released From Custody*, WBUR (June 5, 2017) https://www.wbur.org/news/2017/06/05/ice-arrest-flores-release (illustrating the possibility of immigration enforcement when immigrant communities seek legal remedies or participate in legal proceedings by exposing them to immigration detention); Michael Loria, *Illinois Landlord Ordered to Pay Former Tenant $80K After Threatening to Call* ICE, USA Today (Mar. 5, 2025), https://www.usatoday.com/story/news/nation/2025/03/05/chicago-illinois-landlords-immigration-customs-enforcement/81649092007/; Angeline McCall, *Advocates Sound the Alarm on Wage Theft and Workplace Retaliation With Deportation Threats*, 9NEWS (Sept. 8, 2025, 8:47 PM), https://www.9news.com/article/news/local/local-politics/immigrant-wage-theft-workplace-retaliation-deportation-threats-ice/73-c9093016-26bd-4284-b849-e8e079909d58 (reporting Colorado Attorney General's warning that his office had received reports of employers using deportation threats and ICE referrals as retaliation against workers asserting legal rights).

[3] *See* Vacatur of 2025 TPS Decision for Venezuela, 90 Fed. Reg. 8807; Termination of the Oct. 3, 2023 Designation of Venezuela for TPS, 90 Fed. Reg. 9043–9044; U.S. Dep't of Homeland Sec., *DHS Issues Notices of Termination for the CHNV Parole Program, Encourages Parolees to Self-Deport Immediately* (June 12, 2025), https://www.dhs.gov/news/2025/06/12/dhs-issues-notices-termination-chnv-parole-program-encourages-parolees-self-deport; Nicholas Riccardi & Regina Garcia Cano, *Trump Administration Deports Hundreds of Immigrants Even as a Judge Orders Their Removals Be Stopped*, ASSOCIATED PRESS (Mar. 17, 2025), https://apnews.com/article/trump-venezuela-el-salvador-immigration-dd4f61999f85c4dd8bcaba7d4fc7c9af; Marcos Alemán & Regina Garcia Cano, *What to know about El Salvador's mega-prison after Trump sent hundreds of immigrants there*, ASSOCIATED

among the most aggressive states in immigration enforcement.[4]  Simply put, having already been deceived once into boarding the very flights that gave rise to this suit, the Doe Plaintiffs have every reason to fear that public identification as plaintiffs would invite hostile actors—both private citizens and government officials—to monitor, target, or retaliate against them.  *See* Yanet Doe Decl. ¶ 31; Jesus Doe Decl. ¶ 30; Pablo Doe Decl. ¶ 22; *see also Plaintiffs # 1-21 v. County of Suffolk*, 138 F. Supp. 3d 264, 273-74 (E.D.N.Y. 2015) (the risk of retaliation by government actors was a significant factor supporting pseudonymity where plaintiffs had previously suffered intentional and potentially unlawful conduct by law enforcement officials).

## II.    Disclosure Of The Doe Plaintiffs' Identities Would Harm Innocent Non-Parties.

Pseudonymity is independently warranted because identifying the Doe Plaintiffs would harm "innocent non-parties." *Mass. Inst. of Tech.*, 46 F.4th at 71.  Disclosure would jeopardize the safety of family members who remain in Venezuela and have been unable to leave.  *See Doe v. U.S. Sec'y of State*, 707 F. Supp. 3d 142, 144 (D.N.H. 2023) (recognizing that revealing an Afghan plaintiff's identity in litigation could expose his non-party family members to substantial harm); *see also Doe v. U.S. Citizenship & Immigr. Servs.*, No. 1:21-cv-00576, 2021 U.S. Dist.

---

PRESS (Mar. 16, 2025), https://apnews.com/article/el-salvador-trump-prison-immigrants-4ab3fc3c0474efb308084604b61f8a37; *see also* HUMAN RIGHTS WATCH, "YOU HAVE ARRIVED IN HELL": TORTURE AND OTHER ABUSES AGAINST VENEZUELANS IN EL SALVADOR'S MEGA PRISON (2025), https://www.hrw.org/report/2025/11/12/you-have-arrived-in-hell/torture-and-other-abuses-against-venezuelans-in-el.

[4] *See, e.g.*, Governor Ron DeSantis Highlights Success of Florida-Federal Immigration Partnership as Operation Tidal Wave Reaches More Than 10,000 Arrests, Exec. Off. of the Governor (Jan. 5, 2026), https://www.flgov.com/eog/news/press/2026/governor-ron-desantis-highlights-success-florida-federal-immigration-partnership (describing Florida's partnership with ICE and other federal agencies to identify, detain, and process noncitizens for immigration enforcement); *see also* Nancy Guan, *There Were 20,000+ ICE Arrests in Florida Last Year. Here's a Closer Look*, WLRN (Mar. 11, 2026), https://www.wlrn.org/immigration/2026-03-11/20-000-ice-arrests-in-florida (noting that Florida accounted for approximately 10% of all immigration arrests nationwide—only second to Texas).

LEXIS 91006, at *10-12 (E.D. Cal. May 12, 2021) (permitting pseudonymity where disclosure of petitioner's identity in asylum application posed a risk of harm to family members in Russia and Chechnya by foreign government) (collecting similar cases).

Each of the Doe Plaintiffs has close family members who remain in Venezuela, and each reasonably fears that the publicity surrounding this case will "expose family members to extortion, intimidation, or violence," including by creating the false impression that they have access to resources or influence.  Yanet Doe Decl. ¶ 11; *see also* Pablo Doe Decl. ¶ 11; Jesus Doe Decl. ¶¶ 9-12.  These fears are grounded in their direct experience.  Yanet Doe was herself "identified, surveilled, and targeted" by Venezuelan officials and fled the country after enduring violent threats from Venezuelan law-enforcement officials. She fears that public disclosure "could renew attention to [her] family and increase the risk that they will be subjected to intimidation, retaliation, or other harm by government officials or those acting on their behalf."  Yanet Doe Decl. ¶ 12. Pablo Doe "know[s] firsthand how quickly people can become targets when they are believed to possess property or influence," as his family was targeted in Venezuela; he "fear[s] that if people in Venezuela mistakenly believe this lawsuit will raise [his] profile or unlock funds, [his] relatives could again become targets for extortion, kidnapping, or violence."  Pablo Doe Dec. ¶ 11.  And Jesus Doe fled after his family was targeted for their political views and voting patterns, Jesus Doe Decl. ¶ 7, and worries daily about their safety, "because the Venezuelan government does not look kindly on people who speak ill of the regime . . . [and disclosure] could trigger dire consequences for [his] family members who have not been able to escape Venezuela," *id.* ¶ 8-9.  Renewed public attention from this litigation could well prompt those or other bad actors to target Doe Plaintiffs' relatives in Venezuela through retaliation, intimidation, extortion, or violence.  *See* Yanet Doe Decl. ¶¶ 10-12; Jesus Doe Decl. ¶¶ 10-13; Pablo Doe Decl. ¶¶ 10-12.  The Court should credit

these sworn proffers.  *See, e.g.*, *Doe v. U.S. Dep't of State*, No. 15-cv-01971, 2015 U.S. Dist. LEXIS 173937, at *1 (D.D.C. Nov. 3, 2015) (granting motion to proceed pseudonymously due to proffer that "potential litigation that reveals his work with U.S.-led reconstruction efforts in Iraq will expose him and his family to life-threatening danger").

The risk to the Doe Plaintiffs' families is heightened by recent political upheaval in Venezuela following U.S. military action against Venezuelan President Nicolás Maduro, which has further destabilized the country.[5]  The United States government's own risk assessment confirms this grim reality: Venezuela remains at "Level 3: Reconsider Travel" due to the risks of "crime, kidnapping, and terrorism."[6]  The danger is especially acute now because U.S. Secretary of State Marco Rubio—who claims he "is running Venezuela from afar"[7]—has publicly condemned this lawsuit and criticized the Plaintiffs for asserting their rights.[8]  Public disclosure would identify the Doe Plaintiffs—and, by extension, their families—as the individuals pursuing a lawsuit that the senior official now directing U.S. operations in Venezuela has publicly attacked. Given their families' prior targeting, that risk is concrete and specific, not speculative. These circumstances make pseudonymity all the more necessary.

---

[5] *See* María Luisa Paúl, *Fear grips Caracas as a new wave of repression is unleashed in Venezuela*, THE WASHINGTON POST (Jan. 6, 2026), https://www.washingtonpost.com/world/2026/01/06/venezulea-maduro-rodriguez-government-repression/.

[6] *See* U.S. Dep't of State, Venezuela Travel Advisory (June 27, 2026), https://travel.state.gov/en/international-travel/travel-advisories/venezuela.html.

[7] Tyler Pager & Anatoly Kurmanaev, *How Marco Rubio Is Running Venezuela From Afar*, New York Times (July 11, 2026), https://www.nytimes.com/2026/07/11/us/politics/how-marco-rubio-runs-venezuela.html ("Mr. Rubio now effectively controls Venezuela's finances, the distribution of its natural resources and its government, according to interviews with more than a dozen officials and people close to both governments in Washington and Caracas, who provided details about his involvement in steering the country's policies.").

[8] *Rubio Responds to Migrants' Lawsuit Against DeSantis Over Martha's Vineyard Flight*, Forbes, https://www.youtube.com/watch?v=aW5K56RySd8 (condemning the plaintiffs and their lawsuit).

Disclosure would also harm Yanet Doe's minor children.[9]  Her older child has already borne the brunt of this scheme's and lawsuit's publicity: classmates recognized them, asked whether they were "one of the migrants on the planes," and "bullied and taunted" them to the point that they became "so intimidated, embarrassed, ashamed, and fearful that [they] did not want to attend school."  Yanet Doe Decl. ¶¶ 18-21; *see id.* ¶¶ 23-26 (recounting that she had to intervene with school administrators to stop the harassment).  Publicly identifying Yanet Doe as a plaintiff would not only intensify the harassment her older child has already endured, but extend it to her younger child, whom Yanet fears would be "singled out by others and forced to relive the same experience."  *Id.* ¶ 26.  The Pseudonym Order exists to prevent precisely this kind of harm and should be maintained.  *See Doe v. Eason*, No. 98-2454, 1999 U.S. Dist. LEXIS 23392, at *9-10 (N.D. Tex. Aug. 4, 1999) (granting pseudonym status to parents in litigation involving their minor child).  Children should not assume the burdens of public litigation.

### III.    Disclosure Of The Doe Plaintiffs' Identities Would Chill Future Litigants.

Pseudonymity in this case is also "necessary to forestall a chilling effect on future litigants who may be similarly situated."  *Mass. Inst. of Tech.*, 46 F.4th at 71.  The harms and fears detailed above—including potential harassment and intimidation directed at the Doe Plaintiffs and their families, renewed government targeting, jeopardized immigration status, violence against relatives who remain in their home country, and the extreme psychological toll—would deter any similarly situated immigrant from coming forward to challenge unlawful conduct.  *See MM v. Mayorkas*, No. 24-CV-02090, 2024 U.S. Dist. LEXIS 76678, at *5 (S.D.N.Y. Apr. 25, 2024) ("At the same time, the public's interest is furthered by granting Plaintiff anonymity to not hinder or chill other

---

[9] In its order, the Court sought further clarity on how disclosure of Yanet Doe's identity in this lawsuit would harm her minor son.  ECF No. 256 at 6 n.1.  The accompanying declaration now supplies that information.  *See* Yanet Doe Decl. ¶¶ 17-23.

asylum applicants from challenging our nation's immigration laws due to fears of further retaliation and persecution from public disclosure of their asylum claims.").

The Doe Plaintiffs can attest to this: had they understood at the outset that bringing this suit would require revealing their identities publicly, they "would have had serious reservations about participating because of the risks to [themselves] and [their] family." Jesus Doe Decl. ¶ 31; *see also* Yanet Doe Decl. ¶ 34; Pablo Doe Decl. ¶ 32. This Court should not permit such an outcome. *See Mass. Inst. of Tech.*, 46 F.4th at 71 (courts "must be wary of 'deter[ring] the legitimate exercise of the right to seek a peaceful redress of grievances through judicial means.'" (quoting *Talamini v. Allstate Ins. Co.*, 470 U.S. 1067, 1070-71 (1985) (Stevens, J., concurring))).

## IV.    Maintaining The Pseudonym Order Will Cause No Prejudice To Vertol.

The First Circuit has recognized that "rare cases may arise in which—although they fall within one or more of [the] paradigms," "the prospect of serious prejudice to other parties from a grant of pseudonymity overwhelms the movant's privacy concerns." *Mass. Inst. of Tech.*, 46 F.4th at 72. This is not such a case.

Vertol has identified no prejudice, let alone "serious" prejudice, from the continued protection of the Doe Plaintiffs' identities. Nor could it. Vertol has known the names—and other highly sensitive information such as immigration status—of all the putative class members since 2022. ECF No. 220 at 18. It has also known who Yanet Doe, Pablo Doe, and Jesus Doe are— Doe Plaintiffs disclosed this information in discovery. *Id.* Vertol has been able to take the deposition of each of them. Despite repeated inquiries from the Doe Plaintiffs' counsel about how the non-public nature of the Doe Plaintiffs' names would impair Vertol's defenses, Vertol has offered nothing but conclusory assertions, while declaring it was not required to disclose its "litigation strategy." ECF No. 220-1 (Jasmine N. Brown Decl.), ¶¶ 8-9. In short, Vertol has failed

13

to distinguish this case from the countless others in which defendants have successfully litigated against parties proceeding under pseudonyms.

Vertol does not seek protection from prejudice.  It is yet another disguised opportunity to expose the Doe Plaintiffs to the very harms that justified the Court's original pseudonymity order, and to chill their pursuit of the rights this lawsuit seeks to vindicate.  The Court should not hand Vertol that opportunity.

## CONCLUSION

For the foregoing reasons, the Court should maintain the Pseudonym Order.

Dated: July 13, 2026                            Respectfully submitted,

*/s/ Kenneth S. Leonetti*
Kenneth S. Leonetti (BBO # 629515)
Madeleine K. Rodriguez (BBO #684394)
Matthew E. Miller (BBO # 655544)
Rachel L. Kerner (BBO #703341)
Zoe T. Sun (*pro hac vice*)
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000
ksl@foleyhoag.com
mrodriguez@foleyhoag.com
mmiller@foleyhoag.com
rkerner@foleyhoag.com
zsun@foleyhoag.com

Mirian Albert (BBO #710093)
Iván Espinoza-Madrigal (BBO #708080)
Lawyers for Civil Rights
61 Batterymarch Street, 5th Floor
Boston, MA 02110
(617) 482-1145
malbert@lawyersforcivilrights.org
iespinoza@lawyersforcivilrights.org

*Attorneys for Plaintiffs Yanet Doe, Jesus Doe, and Pablo Doe*

15

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2026, and pursuant to Local Rule 5.4(c), a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Kenneth S. Leonetti*
Kenneth S. Leonetti

16