**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

YANET DOE, PABLO DOE, and JESUS DOE, on
behalf of themselves and all others similarly
situated,

     Plaintiffs,

   v.

VERTOL SYSTEMS COMPANY, INC.,

     Defendant.

Civil Action No. 22-cv-11550-ADB

**DECLARATION OF JESUS DOE**

I, Jesus Doe, declare under penalty of perjury that the following is true and correct:

1.  I am one of the named plaintiffs in this action and my pseudonym is "Jesus Doe." I respectfully submit this declaration in support of my request to continue proceeding under a pseudonym.

2.  I am a Venezuelan national.

3.  I reside in Florida.

4.  I currently have an asylum application pending based on the violence and threats that I endured in Venezuela.

5.  I also have a pending U Visa humanitarian petition seeking immigration protection and relief.

6.  Through both of my immigration applications, I also have employment authorization.

7.  I fled Venezuela because I feared for my safety after my family was targeted and threatened by the Venezuelan government. My mother worked for the Venezuelan government,

1

but she voted against the ruling party during an election. Because voting is not truly secret in Venezuela, government officials learned how she voted and considered her vote a betrayal. After that election, my mother and our family began receiving menacing threats, singling us out for our political views, political expression, and voting pattern. We were considered undesirable, treacherous, and even expendable. The threats became so serious that, fearing for my life, I fled the country.

8.      Unfortunately, my mother remains in Venezuela, and so does my minor child. I worry about their safety and well-being every day, especially as I see devastating news about conditions in Venezuela, including political instability.

9.      I worry that if my name gets disclosed in a case with so much negative media attention, even the Venezuelan government could easily become aware of my identity, address, and asylum-seeking status. This worries me because the Venezuelan government does not look kindly on people who speak ill of the regime. What I say—even from abroad—could trigger dire consequences for my family members who have not been able to escape Venezuela.

10.     Based on my family's experiences with threats from government officials and the unstable conditions that continue to exist in Venezuela, I also fear that publicly identifying me as a plaintiff in this lawsuit could expose my family to further intimidation and bodily harm. Kidnapping, extortion, and even disappearances are alarmingly common in Venezuela. The thought that my decision to participate in this lawsuit as a named plaintiff or class representative could place my family at greater danger causes me significant stress, fear, and anxiety.

11.     I am worried that all the public attention surrounding this lawsuit could make people think I am a troublemaker, triggering a new round of threats against my family. Even though the regime has been recently weakened by U.S. intervention and earthquakes, it has a

2

monopoly on power, force, and resources.

12.     I also worry about the Venezuelan perception of the potential recovery of damages through this lawsuit. In Venezuela, even the thought that I stand to benefit from litigation will undoubtedly expose my family members to scrutiny, extortion, threats, or violence. Those risks are especially acute given the recent earthquakes and U.S. intervention, where ongoing political and economic turmoil has heightened desperation and insecurity. The risk is even greater than it was when the lawsuit started. My family's history of political opposition makes them particularly vulnerable to being targeted based on inaccurate assumptions about my circumstances.

13.     With so much corruption and criminal activity in Venezuela, I do not want to endanger my family, especially because I am too far away to help them when the inevitable happens.

14.     I also fear that publicly revealing my identity as a plaintiff could subject me to harassment, especially here in Florida, where co-conspirators are involved in the scheme. The climate in Florida is rough. Immigration issues are constantly in the news. People talk about immigration everywhere, even in the supermarket, and ICE raids are frequent.

15.     Because of my immigration status, if my identity were publicly connected to my role as a named plaintiff or as one of the class representatives in this lawsuit, I believe it would make me intensely vulnerable to harassment because I am an immigrant affected by the Martha's Vineyard political stunt and because I am seeking to hold the people involved accountable, and those people include Florida government officials.

16.     I am especially concerned because I have seen news reports of immigrants being reported to U.S. Immigration and Customs Enforcement (ICE) by employers, landlords, and neighbors as a form of retaliation, even when those immigrants have pending immigration

applications. Seeing these news reports makes me extremely worried about my own safety, security, and wellbeing. I am afraid that someone could maliciously report me to immigration authorities to target me simply because they disagree with this lawsuit.

17.     I do not want to be subjected to additional scrutiny or retaliation simply because I chose to seek justice for myself and all others on the flights through this lawsuit.

18.     The political stunt was meant to use me as a puppet. They set up news cameras to get news coverage. I did not know what I was walking into. I was in early news coverage without fully appreciating the circumstances. I did not understand at the time how the scheme unfolded or who was behind the scheme.

19.     In the immediate aftermath of the scheme, I was focused on finding safety and stability, not on the media attention surrounding the events. When people asked to take photographs of me, or asked me questions, I did not know who they were or understand their intentions or purpose. Maybe I was naïve, but I didn't appreciate the long-term consequences that would result from that publicity. I went from believing that a Good Samaritan—Perla Huerta— was helping us to start a new life in the United States to realizing that we had been deceived and abandoned on an island. I was left stranded.

20.     The resulting media attention had a profound impact on me. While I was still trying to process the trauma of being deceived and abandoned, my experience was suddenly being broadcasted across the United States and even internationally.

21.     Family members and friends in Venezuela began sending me news articles about the flights, and some even made terrible jokes about what had happened.

22.     Random strangers recognized me from the news coverage and would approach me in public to ask questions about the flights, the Florida governor, and Perla Huerta. These

unexpected encounters were difficult and uncomfortable, as I was repeatedly forced to discuss a deeply personal and traumatic experience with people I did not know.

23.     I also noticed unfamiliar cars parked outside my home for hours at a time. This was extremely disconcerting because I did not know whether I was being monitored by the people who defrauded us or whether the vehicles belonged to reporters seeking to harass me.

24.     Instead of being able to move forward, build a stable life for myself, and help my family navigate the unfolding crisis in Venezuela, I found myself repeatedly reliving one of the most traumatic experiences of my life.

25.      Due to this incident, I no longer speak with reporters or participate in media interviews.

26.     For months after the incident, I wore the hood of my sweatshirt whenever I went out in public in the hope that people would not recognize me. Even today, I intentionally keep a low profile to protect my privacy and avoid unwanted attention from strangers.

27.     Publicly identifying me as a named plaintiff or class representative in this lawsuit would undo all those efforts and expose me to toxic publicity and renewed harassment. I cannot relive that hell.

28.     Since the incident involving the Martha's Vineyard flights, I have been afraid to travel. I do not travel by airplane. I now go only by car.

29.     The events surrounding the flights fundamentally changed the way I view my own safety. After the flights, I learned that Perla Huerta, the spy who recruited me, was working on behalf of or along with the State of Florida. Learning this reinforced my fear that government officials could misuse their authority to deceive, monitor, or target vulnerable immigrants like me.

30.     I fear that publicly associating me as a named plaintiff or class representative in

this lawsuit could subject me to increased government scrutiny or retaliation because I chose to come forward and seek justice. These fears are real to me, based on my past experiences, and the trauma affects the decisions I make every day, including how I travel, what transportation I take, who I can trust, and how I conduct my daily life.

31.    If I believed that filing this lawsuit required revealing my identity publicly as a named plaintiff or class representative, I would have had serious reservations about participating because of the risks to myself and my family. Those concerns remain today.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 13th day of July 2026.


/s/ Jesus Doe
Jesus Doe

**CERTIFICATE OF INTERPRETATION AND TRANSCRIPTION**

I, Mirian Albert, certify that I am fluent in English and Spanish, that I am competent to interpret between these languages, and that I transcribed the foregoing between English and Spanish accurately. I further certify that I provided a translation of the foregoing to Jesus Doe in Spanish and that he affirmed that it is true and correct.

Executed this 13th day of July 2026.

_Mirian Albert_
_____

Mirian Albert

1